

Historical Price and Trading Volume of Countrywide Common Stock From March 12, 2004 Through March 10, 2008

7/24/07, $30.50

3/10/08, $4.36

1078. During the Class Period, Countrywide common stock traded as high as $45.03 per share as recently as February 2, 2007, and closed at $34.06 per share just prior to the July 24, 2007 conference call. Over the next five and a half months, as the truth continued to emerge, Countrywide's common stock price plummeted to $5.12 per share on January 9, 2008, just prior to the announcement of the Bank of America merger. While this announcement was viewed as a positive event, causing Countrywide's stock price to partially recover, additional revelations soon came to light causing the stock to fall, from a high (after the announcement) of $7.75 per share, by another 44% to the end of the Class Period, to $4.36 per share.

1079. In all, as a consequence of the revelation of the truth concerning Countrywide during the Class Period, *Countrywide common stock lost in excess of $25 billion in market capitalization, or more than 90% of its value.*

1080. Specific dates of adverse disclosure, and corresponding declines in the price of Countrywide common and preferred stock, and representative debt securities, are set forth in Section IX above.

1081. Moreover, the adverse consequences of Countrywide's partial disclosures beginning on July 24, 2007 through the end of Class Period, and the adverse impact of those circumstances on the Company's business going forward, were entirely foreseeable to Defendants at all relevant times. Defendants' conduct, as alleged herein, proximately caused foreseeable losses and damages to Plaintiffs and members of the Class.

1082. As set forth above, the Company's failure to maintain effective internal controls, its substantially loosened loan origination and underwriting standards, and its failure to report its 2004-2006 financial statements in accordance with GAAP not only were material, but also triggered foreseeable and grave consequences for the Company. The prices of the Company's securities during the Class Period were based upon its public position that Countrywide was

1   different and unique in its business model as opposed to its competitors.  The
2   materially false and misleading statements relating to Countrywide's uniqueness
3   bore a direct impact on the Company's financial reporting and required such
4   reporting to violate GAAP.  In turn, the financial reporting that was presented in
5   violation of GAAP conveyed the impression that the Company was more
6   profitable, better capitalized, and would have better access to liquidity than was
7   actually the case.  Thus, the precipitous declines in value of the securities
8   purchased by the Class were a direct, foreseeable, and proximate result of the
9   corrective disclosures of the truth with respect to Defendants' materially false and
10  misleading statements.

11       1083. Similarly, the fact that the Company's end-of-Class Period adverse
12  disclosures triggered governmental investigations into the Company's Class
13  Period statements, reported financial results and insider selling, was an entirely
14  foreseeable consequence of the misconduct complained of herein.

15       1084. The Company's undisclosed strategy shift from its materially more
16  conservative 2003 underwriting practices, which provides the background for
17  much of the above-referenced misconduct, had been completed substantially
18  before the time of (a) Defendant Kurland's alleged false and misleading
19  statements regarding whether Countrywide had in fact loosened its underwriting
20  standards and (b) his subsequent departure from Countrywide in September 2006.
21  There was no direct intervening or independent cause for any or all of the losses
22  the members of the class suffered from the time of those two events and the time
23  the losses were incurred.  As such, Kurland's alleged misconduct was equally a
24  foreseeable cause of those losses, with those losses dependent in part on
25  Kurland's earlier role in actively masquerading the truth with regard to
26  Countrywide's improper practices.  Kurland's misconduct related to precisely the
27  zone of risk relating to an investment in Countrywide securities that members of
28  the class had considered remote, in part because of misleading statements such as

1   those that Kurland made, and only began to take seriously when the
2   aforementioned corrective disclosures started in July 2007, causing substantial
3   losses to Class members. The mere passage of time between Kurland's departure
4   from Countrywide and the beginning of the corrective disclosures did not
5   constitute a break in the causal link between his misrepresentations relating to
6   Countrywide's practices and the substantial losses that occurred when the market
7   began to appreciate the truth relating to those practices.

8

9   **XI.   POST-CLASS PERIOD EVENTS**

10      1085. On March 12, 2008, Fitch Ratings further downgraded
11  Countrywide's long-term issuer default rating from BBB+ to BBB-, its lowest
12  investment-grade rating, citing rapidly rising delinquency rates in the Company's
13  home equity loan portfolio.

14      1086. On March 23, 2008, *Bloomberg News* reported that *Barron's*
15  magazine published its annual list of the thirty best CEOs worldwide, chosen
16  among CEOs who have been on the job for at least three years and have
17  "delivered for shareholders" while building their reputations as executives. After
18  including Defendant Mozilo on last year's list, *Barron's* removed him this year,
19  calling him *"the biggest embarrassment"* owing to Countrywide's collapse.

20      1087. On March 27, 2008, CNN reported that Assured Guaranty Ltd., an
21  insurance company that provided credit enhancement products to Countrywide
22  during the Class Period, was re-examining the Company's lending documents for
23  some of the $2.1 billion in guarantees Assured wrote for Countrywide's
24  securitized HELOCs. This $2.1 billion in mortgage-backed securities "has run
25  into trouble as defaults on the loans rose above expectations in the last few
26  quarters." Assured is investigating whether Countrywide's representations and
27  warranties meet the terms of the loans; if they do not, Assured will require
28  Countrywide to repurchase them or replace them with better loans.

1088. On April 2, 2008, as reported in *The Wall Street Journal*, the United States Bankruptcy Court for the Western District of Pennsylvania authorized an in-depth probe of Countrywide's mortgage processing systems by bankruptcy investigators hunting for evidence that the Company systematically abuses borrowers. The Bankruptcy Court is presiding over 293 cases alleging widespread misconduct involving Countrywide, including claims that the Company imposed improper fees on bankrupt homeowners, refused to cash mortgage payments from court officials, violated court orders while pursuing troubled customers and, in one case, fabricated documents. The Bankruptcy Court gave a green light to an inquiry by the United States Trustee into "the impact of Countrywide's bankruptcy procedures on the integrity of the bankruptcy process," based on a showing by the Trustee that several bankruptcy cases involving Countrywide had "a common thread of potential wrongdoing."

1089. On April 4, 2008, Moody's downgraded Countrywide Bank's financial strength rating to D, or default, from C-, citing Countrywide's severe liquidity woes. A Moody's Vice President stated that these liquidity issues could threaten Countrywide Bank's current ability to continue its "franchise."

## XII. CLASS ACTION ALLEGATIONS

1090. Plaintiffs bring this action on their own behalf and as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons and entities which, between March 12, 2004 and March 7, 2008, inclusive (the "Class Period"), purchased or otherwise acquired the publicly traded common stock or other equity securities, debt securities, or call options of or guaranteed by Countrywide, or sold Countrywide put options, either in the open market or pursuant or traceable to a registration statement, and were damaged thereby (the "Class"). Excluded from the Class are the Defendants; the members of the immediate families of the Individual

1  Defendants; the subsidiaries and affiliates of Defendants; any person who is an
2  officer, director, partner or controlling person of Countrywide (including any of
3  its subsidiaries or affiliates, which include but are not limited to Countrywide
4  Home Loans, Inc., Countrywide Capital V and Countrywide Capital IV) or any
5  other Defendant; any entity in which any Defendant has a controlling interest; and
6  the legal representatives, heirs, successors and assigns of any such excluded
7  person or entity.

8      1091. The members of the Class are so numerous that joinder of all
9  members is impracticable.    As of February 24, 2006, Countrywide had
10 602,995,163 shares of common stock outstanding and actively trading on the
11 NYSE with the ticker symbol "CFC."   Additionally, during the Class Period,
12 Countrywide and CCV issued billions of dollars worth of debt and preferred
13 securities through the Underwriter Defendants.  While the exact number of Class
14 members is unknown to Plaintiffs at this time and can only be ascertained through
15 appropriate discovery, Plaintiffs believe that the proposed Class numbers in the
16 thousands and is geographically widely dispersed.   Record owners and other
17 members of the Class may be identified from records maintained by Countrywide
18 or its transfer agent and may be notified of the pendency of this action by mail,
19 using a form of notice similar to that customarily used in securities class actions.

20     1092. Plaintiffs' claims are typical of the claims of the members of the
21 Class. All members of the Class were similarly affected by Defendants' allegedly
22 wrongful conduct in violation of the Securities Act and Exchange Act as
23 complained of herein.

24     1093. Plaintiffs will fairly and adequately protect the interests of the
25 members of the Class.    Plaintiffs have retained counsel competent and
26 experienced in class and securities litigation.

27
28

1094. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. The questions of law and fact common to the Class include:

(a)   whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

(b)   whether the registration statements and prospectuses for the Company's Offerings contained material misstatements or omitted to state material information;

(c)   whether the SEC filings, press releases and other public statements made to the investing public during the Class Period contained material misstatements or omitted to state material information;

(d)   whether and to what extent the Company's financial statements were not presented in conformity with GAAP during the Class Period;

(e)   whether and to what extent KPMG's audits of the Company's financial statements and management's assessments of internal controls during the Class Period were not conducted in accordance with the standards of the Public Company Accounting Oversight Board;

(f)   whether and to what extent the market prices of Countrywide common stock and other publicly traded securities were artificially inflated during the Class Period because of the material misrepresentations and/or omissions complained of herein;

(g)   whether, with respect to Plaintiffs' claims for violations of the Securities Act, the Defendants named in those claims can sustain their burden of establishing an affirmative defense pursuant to the applicable statute;

(h)    whether, with respect to Plaintiffs' claims for violations of the Exchange Act, the Defendants named in those claims acted with the requisite level of scienter;

(i)    whether, with respect to Plaintiffs' claims pursuant to Section 15 of the Securities Act and Section 20(a) of the Exchange Act, the Defendants named in those claims were controlling persons of Countrywide;

(j)    whether reliance may be presumed pursuant to the fraud-on-the-market doctrine; and

(k)    whether the members of the Class have sustained damages as a result of the conduct complained of herein and, if so, the proper measure of damages.

1095. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things, joinder of all members of the Class is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## XIII. PRESUMPTION OF RELIANCE

1096. Plaintiffs are entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated in part upon omissions of material fact which there was a duty to disclose.

1097. In the alternative, Plaintiffs are entitled to a presumption of reliance on Defendants' material misrepresentations and omissions pursuant to the fraud-on-the-market doctrine because:

(a)  Countrywide's common stock was actively traded in an efficient market on the NYSE during the Class Period;

(b)  Countrywide's common stock traded at high weekly volumes during the Class Period;

(c)  As a regulated issuer, Countrywide filed periodic public reports with the SEC;

(d)  During the Class Period, Countrywide was eligible to file, and did file, registration statements with the SEC on Form S-3;

(e)  Countrywide regularly communicated with public investors by means of established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services;

(f)  The market reacted promptly to public information disseminated by Countrywide;

(g)  Countrywide securities were covered by numerous securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective firms. Each of these reports was publicly available and entered the public marketplace;

(h)  The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of Countrywide's securities; and

(i)  Without knowledge of the misrepresented or omitted material facts alleged herein, Plaintiffs and other members of the Class purchased Countrywide securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed.

1098. In addition to the foregoing, Plaintiffs are entitled to a presumption of reliance because, as more fully alleged above, Defendants failed to disclose material information regarding Countrywide's business, financial results and business prospects throughout the Class Period.

## XIV.  INAPPLICABILITY OF STATUTORY SAFE HARBOR

1099. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the materially false and misleading statements alleged in this Complaint.  The statements alleged to be false and misleading all relate to historical facts or existing conditions and were not identified as forward-looking statements.  To the extent any of the false statements alleged herein may be characterized as forward-looking, they were not adequately identified as "forward-looking" statements when made, and were not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly "forward-looking" statements.  Alternatively, to the extent that the statutory safe harbor would otherwise apply to any statement pleaded herein, Defendants are liable for those materially false forward-looking statements because, at the time each of those forward-looking statements was made, the speaker knew the statement was false or the statement was authorized or approved by an executive officer of Countrywide who knew that those statements were false.

## XV.   CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 11 of the Securities Act, on Behalf of Purchasers of Series A Medium-Term Notes, Asserted Against Defendants Countrywide, Mozilo, Kurland, McLaughlin, Cisneros, Cunningham, Donato, Dougherty, Enis, Garcia, Heller, King, Melone, Robertson, Russell, and Snyder; and Banc of America Securities, Barclays Capital, Citigroup Global Markets, Countrywide Securities, Deutsche Bank, Greenwich Capital, HSBC, J.P. Morgan Securities, Morgan Stanley, RBC Dominion, and Wachovia Capital**

1100. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.  For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1101. This Count is brought pursuant to Section 11 of the Securities Act against Defendant Countrywide; Individual Defendants Mozilo, Kurland, McLaughlin, Cisneros, Cunningham, Donato, Dougherty, Enis, Garcia, Heller, King, Melone, Robertson, Russell, and Snyder; and Underwriter Defendants Banc of America Securities, Barclays Capital, Citigroup Global Markets, Countrywide Securities, Deutsche Bank, Greenwich Capital, HSBC, J.P. Morgan Securities, Morgan Stanley, RBC Dominion, and Wachovia Capital.

1102. This claim is brought on behalf of Lead Plaintiff New York City Pension Funds and other members of the Class who, during the Class Period, purchased or otherwise acquired Countrywide Series A Medium-Term Notes issued pursuant or traceable to the Series A Medium-Term Notes Registration Statement.

1103. Countrywide was the registrant for the Series A Medium-Term Notes Registration Statement and issued Series A Medium-Term Notes pursuant to that registration statement.

1104. Defendants Mozilo, McLaughlin, Kurland, Cisneros, Cunningham, Donato, Dougherty, Enis, Garcia, Heller, King, Melone, Robertson, Russell and Snyder each signed the Series A Medium-Term Notes Registration Statement.

1105. At the time the Series A Medium-Term Notes Registration Statement and prospectus supplements were filed, Defendants Mozilo, Cisneros, Cunningham, Donato, Dougherty, Enis, Heller, King, Melone, Robertson, Russell and Snyder were each directors of Countrywide.

1106. Defendants Banc of America Securities, Barclays Capital, Citigroup Global Markets, Countrywide Securities, Deutsche Bank, Greenwich Capital, HSBC, J.P. Morgan Securities, Morgan Stanley, RBC Dominion, and Wachovia Capital acted as underwriters with respect to the offering of Series A Medium-Term Notes.

1107. As set forth above, the Series A Medium-Term Notes Registration Statement contained untrue statements of material fact, including the financial statements of Countrywide.   In addition, the Series A Medium-Term Notes Registration Statement omitted to state other facts required to be stated therein or necessary to make the statements therein not misleading, including Countrywide's violations of GAAP.  The facts misstated and omitted would have been material to a reasonable person reviewing the Series A Medium-Term Notes Registration Statement.

1108. Countrywide, as issuer of the Series A Medium-Term Notes, is strictly liable for the material misstatements and omissions contained in the Series A Medium-Term Notes Registration Statement.

1109. The other Defendants named in this Count owed to Lead Plaintiff New York City Pension Funds and the Class the duty to make a reasonable and diligent investigation of the statements contained in the Series A Medium-Term Notes Registration Statement, to ensure that the statements contained or incorporated by reference therein were true and that there was no omission to

1    state a material fact required to be stated therein in order to make the statements
2    contained therein not misleading.

3    1110. These Defendants did not make a reasonable and diligent
4    investigation of the statements contained or incorporated by reference in the
5    Series A Medium-Term Notes Registration Statement, and did not possess
6    reasonable grounds for believing that the Series A Medium-Term Notes
7    Registration Statement did not contain an untrue statement or omit to state a
8    material fact required to be stated therein or necessary to make the statements
9    therein not misleading.

10   1111. The Underwriter Defendants named in this Count did not conduct a
11   reasonable investigation of the statements contained in and incorporated by
12   reference in the Series A Medium-Term Notes Registration Statement and did not
13   possess reasonable grounds for believing that the statements contained therein
14   were true and not materially misstated.   In particular, these Underwriter
15   Defendants did not conduct a reasonable investigation into the accuracy of the
16   statements regarding Countrywide's reported financial performance, internal
17   controls, underwriting standards and lending practices.   These Underwriter
18   Defendants could not simply rely on the work of Countrywide's auditors because
19   the investing public relies on the underwriters to obtain and verify relevant
20   information and then make sure that important facts are accurately disclosed.
21   Thus, the Underwriter Defendants must conduct their own, independent and
22   reasonable investigation into the accuracy of the Company's financial statements
23   and assessments of internal controls, and they were negligent in failing to do so
24   sufficiently in connection with the offering.

25   1112. Similarly, the Individual Defendants named in this Count were
26   negligent in failing to conduct a reasonable investigation of the statements
27   contained in the Series A Medium-Term Notes Registration Statement regarding
28   Countrywide's financial performance, internal controls, underwriting standards

and lending practices and did not possess reasonable grounds for believing that the statements contained therein were true and not materially misstated.

1113. Lead Plaintiff New York City Pension Funds and members of the Class purchased Series A Medium-Term Notes issued pursuant or traceable to the Series A Medium-Term Notes Registration Statement and were damaged thereby.

1114. Lead Plaintiff New York City Pension Funds and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the Series A Medium-Term Notes Registration Statement when they purchased or acquired their securities. Less than one year has elapsed between the time they discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought. Less than three years have elapsed between the time that the securities upon which this Count is brought were *bona fide* offered to the public and the time this action was commenced.

1115. By reason of the foregoing, the Defendants named in this Count are liable to Lead Plaintiff New York City Pension Funds and members of the Class for violations of Section 11 of the Securities Act.

## COUNT II

**For Violations of Section 12(a)(2) of the Securities Act on Behalf of Purchasers of Series A Medium-Term Notes, Asserted Against Defendants Countrywide and J.P. Morgan Securities**

1116. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein. For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1117. This Count is brought pursuant to Section 12(a)(2) of the Securities Act against Defendant Countrywide and Underwriter Defendant J.P. Morgan Securities.

1  1118. This claim is brought on behalf of Lead Plaintiff New York City
2  Pension Funds and other members of the Class who, during the Class Period,
3  purchased or otherwise acquired Countrywide Series A Medium-Term Notes
4  issued pursuant to the Series A Medium-Term Notes Prospectus.

5  1119. Countrywide solicited the purchase of its Series A Medium-Term
6  Notes by the use of means or instruments of transportation or communication in
7  interstate commerce or of the mails and by means of the Series A Medium-Term
8  Notes Prospectus.

9  1120. Underwriter Defendant J.P. Morgan Securities is a seller within the
10  meaning of the Securities Act because it transferred title to Lead Plaintiff New
11  York City Pension Funds and other purchasers of the Series A Medium-Term
12  Notes.  In particular, Underwriter Defendant J.P. Morgan Securities directly sold
13  Series A Medium Term Notes to Lead Plaintiff New York City Pension Funds.

14  1121. As alleged herein, the Series A Medium-Term Notes Prospectus
15  contained untrue statements of material fact, including the financial statements of
16  Countrywide.  In addition, the Series A Medium-Term Notes Prospectus omitted
17  to state material facts required to be stated therein or necessary to make the
18  statements therein not misleading, including Countrywide's violations of GAAP.
19  The facts misstated and omitted would have been material to a reasonable person
20  reviewing the Series A Medium-Term Notes Prospectus.

21  1122. Countrywide and J.P. Morgan Securities owed to Lead Plaintiff New
22  York City Pension Funds and the Class the duty to make a reasonable and diligent
23  investigation of the statements contained in the Series A Medium-Term Notes
24  Prospectus, to ensure that the statements contained or incorporated by reference
25  therein were true and that there was no omission to state a material fact required
26  to be stated therein in order to make the statements contained therein not
27  misleading.

28

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT                                    384
LEAD CASE NO. CV 07-05295 MRP (MANx)

1123. Countrywide and J.P. Morgan Securities did not make a reasonable and diligent investigation of the statements contained or incorporated by reference in the Series A Medium-Term Notes Prospectus and did not possess reasonable grounds for believing that the Series A Medium-Term Notes Prospectus did not contain an untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

1124. Lead Plaintiff New York City Pension Funds and members of the Class purchased Series A Medium-Term Notes pursuant to the Series A Medium-Term Notes Prospectus and were damaged thereby.

1125. Lead Plaintiff New York City Pension Funds and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the Series A Medium-Term Notes Prospectus when they purchased or acquired the securities. Less than one year has elapsed between the time they discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought. Less than three years have elapsed between the time that the securities upon which this Count is brought were *bona fide* offered to the public and the time this action was commenced.

1126. By reason of the foregoing, Countrywide and J.P. Morgan Securities are liable to Lead Plaintiff New York City Pension Funds and members of the Class for violations of Section 12(a)(2) of the Securities Act. Lead Plaintiff New York City Pension Funds and Class members hereby tender their securities to their respective sellers and seek rescission of their purchases to the extent that they continue to own such securities.

## COUNT III

**For Violations of Section 15 of the Securities Act on Behalf of Purchasers of Series A Medium-Term Notes, Asserted Against Defendants Mozilo, Kurland, and McLaughlin**

1127. Lead Plaintiff New York City Pension Funds repeats and realleges each and every allegation above as if fully set forth herein.  For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1128. This Count is brought pursuant to Section 15 of the Securities Act against Defendants Mozilo, Kurland, and McLaughlin, on behalf of Lead Plaintiff New York City Pension Funds and members of the Class who purchased or acquired Countrywide Series A Medium-Term Notes pursuant or traceable to the Series A Medium-Term Notes Registration Statement or pursuant to the Series A Medium-Term Notes Prospectus.

1129. Countrywide violated Section 11 of the Securities Act by issuing the Series A Medium-Term Notes Registration Statement which contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary in order to make the statements therein not misleading.  The facts misstated and omitted would have been material to a reasonable person reviewing the Series A Medium-Term Notes Registration Statement.

1130. Countrywide violated Section 12(a)(2) of the Securities Act by soliciting the purchase of Series A Medium-Term Notes by means of the Series A Medium-Term Notes Prospectus which contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary in order to make the statements therein not misleading.  The facts misstated and omitted would have been material to a reasonable person reviewing the Series A Medium-Term Notes Prospectus.

1131. Defendants Mozilo, Kurland, and McLaughlin were controlling persons of Countrywide when each of the Series A Medium-Term Notes

1  Registration Statement and Series A Medium Term Notes Prospectus was filed
2  and became effective, because of their senior executive positions with
3  Countrywide; their direct involvement in the Company's day-to-day operations,
4  including its mortgage banking and lending practices and financial reporting and
5  accounting functions; and their signatures on and participation in the preparation
6  and dissemination of this Registration Statement and Prospectus.

7      1132. By virtue of the foregoing, Defendants Mozilo, Kurland, and
8  McLaughlin each had the power to influence and control, and did influence and
9  control, directly or indirectly, the decision-making of Countrywide, including the
10  content of its financial statements and this Registration Statement and Prospectus.

11      1133. Defendants Mozilo, Kurland, and McLaughlin acted negligently and
12  without reasonable care regarding the accuracy of the information contained and
13  incorporated by reference in this Registration Statement and Prospectus and
14  lacked reasonable grounds to believe that such information was accurate and
15  complete in all material respects.

16      1134. Lead Plaintiff New York City Pension Funds and members of the
17  Class purchased Countrywide Series A Medium-Term Notes pursuant or
18  traceable to the Registration Statement for this offering, or pursuant to the
19  Prospectus for this offering, and were damaged thereby.

20      1135. Lead Plaintiff New York City Pension Funds and the Class did not
21  know, nor in the exercise of reasonable diligence could have known, of the untrue
22  statements of material fact or omissions of material facts in the Series A Medium-
23  Term Notes Registration Statement and Prospectus when they purchased or
24  acquired the securities.

25      1136. By reason of the foregoing, Defendants Mozilo, Kurland and
26  McLaughlin are liable to Lead Plaintiff New York City Pension Funds and
27  members of the Class for violations of Section 15 of the Securities Act.

28

## COUNT IV

**For Violations of Section 11 of the Securities Act on Behalf of Purchasers of Series B Medium-Term Notes and 6.25% Subordinated Notes Due May 15, 2016, Asserted Against Defendants Countrywide, Mozilo, Sambol, Kurland, Sieracki, Brown, Cisneros, Cunningham, Donato, Dougherty, Enis, Garcia, Heller, Melone, Parry, Robertson, Russell, and Snyder; KPMG; and ABN AMRO, Banc of America Securities, Barclays Capital, BNP Paribas, BNY Capital, Citigroup Global Markets, Countrywide Securities, Deutsche Bank, Goldman Sachs, Greenwich Capital, HSBC, J.P. Morgan Securities, Merrill Lynch, Morgan Stanley, RBC Dominion, Scotia Capital, TD Securities, UBS Securities, and Wachovia Capital**

1137. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein. For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1138. This Count is brought pursuant to Section 11 of the Securities Act against Defendant Countrywide; Individual Defendants Mozilo, Sambol, Kurland, Sieracki, Brown, Cisneros, Cunningham, Donato, Dougherty, Enis, Garcia, Heller, Melone, Parry, Robertson, Russell, and Snyder; Defendant KPMG; and Underwriter Defendants ABN AMRO, Banc of America Securities, Barclays Capital, BNP Paribas, BNY Capital, Citigroup Global Markets, Countrywide Securities, Deutsche Bank, Goldman Sachs, Greenwich Capital, HSBC, J.P. Morgan Securities, Merrill Lynch, Morgan Stanley, RBC Dominion, Scotia Capital, TD Securities, UBS Securities, and Wachovia Capital.

1139. This claim is brought on behalf of Lead Plaintiff New York City Pension Funds and other members of the Class who, during the Class Period, purchased or otherwise acquired Countrywide Series B Medium-Term Notes issued pursuant or traceable to the Series B Medium-Term Notes Registration Statement, or who purchased or otherwise acquired Countrywide 6.25% Notes pursuant or traceable to the 6.25% Notes Registration Statement. The Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement include the same Form S-3ASR shelf registration statement (and base

prospectus) dated February 9, 2006, and the Series B Medium-Term Notes and 6.25% Notes were offered pursuant to this same shelf registration statement.

1140. Countrywide was the registrant for the Series B Medium-Term Notes Registration Statement and 6.25% Notes Registration Statement, and issued Series B Medium-Term Notes and 6.25% Notes pursuant to those respective registration statements.

1141. Defendants Mozilo, Sambol, Kurland, Sieracki, Brown, Cisneros, Cunningham, Donato, Dougherty, Enis, Garcia, Heller, Melone, Parry, Robertson, Russell, and Snyder each signed the Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement.

1142. At the time the Series B Medium-Term Notes Registration Statement and 6.25% Notes Registration Statement and their respective prospectus supplements were filed, Defendants Mozilo, Brown, Cisneros, Cunningham, Donato, Dougherty, Enis, Heller, Melone, Parry, Robertson, Russell, and Snyder were each directors of Countrywide.

1143. Defendant KPMG was the auditor for Countrywide during the Class Period and consented to being named in the Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement as a party that certified the audited financial statements contained or incorporated by reference therein. KPMG's audit report incorrectly stated that its audits were performed in accordance with GAAS and that the Company's financial statements were fairly presented in accordance with GAAP.

1144. Defendants ABN AMRO, Banc of America Securities, Barclays Capital, BNP Paribas, BNY Capital, Citigroup Global Markets, Countrywide Securities, Deutsche Bank, Goldman Sachs, Greenwich Capital, HSBC, J.P. Morgan Securities, Merrill Lynch, Morgan Stanley, RBC Dominion, Scotia Capital, TD Securities, UBS Securities, and Wachovia Capital acted as underwriters with respect to the offering of Series B Medium-Term Notes.

1145. Defendants Banc of America Securities, J.P. Morgan Securities, Countrywide Securities, Barclays Capital, Deutsche Bank, HSBC, and Wachovia Capital acted as underwriters with respect to the offering of 6.25% Notes.

1146. As set forth above, the Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement contained untrue statements of material fact, including the financial statements of Countrywide. In addition, the Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement omitted to state other facts required to be stated therein or necessary to make the statements therein not misleading, including Countrywide's violations of GAAP. The facts misstated and omitted would have been material to a reasonable person reviewing the Series B Medium-Term Notes Registration Statement or the 6.25% Notes Registration Statement.

1147. Countrywide, as issuer of the Series B Medium-Term Notes and 6.25% Notes, is strictly liable for the material misstatements and omissions contained in the Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement.

1148. The other Defendants named in this Count owed to Lead Plaintiff New York City Pension Funds and the Class the duty to make a reasonable and diligent investigation of the statements contained in the Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement, to ensure that the statements contained or incorporated by reference therein were true and that there was no omission to state a material fact required to be stated therein in order to make the statements contained therein not misleading.

1149. These Defendants did not make a reasonable and diligent investigation of the statements contained or incorporated by reference in the Series B Medium-Term Notes Registration Statement or contained or incorporated by reference in the 6.25% Notes Registration Statement, and did not possess reasonable grounds for believing that the Series B Medium-Term Notes

1   Registration Statement or the 6.25% Notes Registration Statement did not contain
2   an untrue statement or omit to state a material fact required to be stated therein or
3   necessary to make the statements therein not misleading.

4        1150. The Underwriter Defendants named in this Count which acted as
5   underwriters with respect to the offering of Series B Medium Term Notes did not
6   conduct a reasonable investigation of the statements contained in and
7   incorporated by reference in the Series B Medium-Term Notes Registration
8   Statement, and did not possess reasonable grounds for believing that the
9   statements contained therein were true and not materially misstated.   The
10  Underwriter Defendants named in this Count which acted as underwriters with
11  respect to the offering of 6.25% Notes did not conduct a reasonable investigation
12  of the statements contained in and incorporated by reference in the 6.25% Notes
13  Registration Statement, and did not possess reasonable grounds for believing that
14  the statements contained therein were true and not materially misstated.   In
15  particular, these Underwriter Defendants did not conduct a reasonable
16  investigation into the accuracy of the statements regarding Countrywide's
17  reported financial performance, internal controls, underwriting standards and
18  lending practices.  These Underwriter Defendants could not simply rely on the
19  work of Countrywide's auditors because the investing public relies on the
20  underwriters to obtain and verify relevant information and then make sure that
21  important facts are accurately disclosed.  Thus, the Underwriter Defendants must
22  conduct their own, independent and reasonable investigation into the accuracy of
23  the Company's financial statements and assessments of internal controls, and they
24  were negligent in failing to do so sufficiently in connection with the offering.

25       1151. Similarly, the Individual Defendants named in this Count were
26  negligent in failing to conduct a reasonable investigation of the statements
27  contained in the Series B Medium-Term Notes Registration Statement and the
28  6.25% Notes Registration Statement regarding Countrywide's financial

performance, internal controls, underwriting standards and lending practices and did not possess reasonable grounds for believing that the statements contained therein were true and not materially misstated.

1152. Defendant KPMG, which consented to the inclusion of its opinions in the Series B Medium-Term Notes Registration Statement and the 6.25% Notes Registration Statement, negligently failed to perform its audits of Countrywide in a reasonable manner and, thus, its audits did not constitute a reasonable investigation of whether the Company's financial statements were presented in compliance with GAAP and whether management's assessment of internal controls was properly and accurately presented.

1153. Lead Plaintiff New York City Pension Funds and members of the Class purchased Series B Medium-Term Notes issued pursuant or traceable to the Series B Medium-Term Notes Registration Statement and were damaged thereby. Members of the Class purchased 6.25% Notes issued pursuant or traceable to the 6.25% Notes Registration Statement and were damaged thereby.

1154. Lead Plaintiff New York City Pension Funds and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the Series B Medium-Term Notes Registration Statement or the 6.25% Notes Registration Statement when they purchased or acquired their respective securities.  Less than one year has elapsed between the time they discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought.  Less than three years have elapsed between the time that the securities upon which this Count is brought were *bona fide* offered to the public and the time this action was commenced.

1155. By reason of the foregoing, the Defendants named in this Count are liable to Lead Plaintiff New York City Pension Funds and members of the Class for violations of Section 11 of the Securities Act.

## COUNT V

### For Violations of Section 12(a)(2) on Behalf of Purchasers of Series B Medium-Term Notes, Asserted Against Defendants Countrywide and Goldman Sachs

1156. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.  For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1157. This Count is brought pursuant to Section 12(a)(2) of the Securities Act against Defendant Countrywide and Underwriter Defendant Goldman Sachs.

1158. This claim is brought on behalf of Lead Plaintiff New York City Pension Funds and other members of the Class who, during the Class Period, purchased or otherwise acquired Countrywide Series B Medium-Term Notes issued pursuant to the Series B Medium-Term Notes Prospectus.

1159. Countrywide solicited the purchase of its Series B Medium-Term Notes by the use of means or instruments of transportation or communication in interstate commerce or of the mails and by means of the Series B Medium-Term Notes Prospectus.  Additionally, the Series B Medium-Term Notes Registration Statement, of which Countrywide is the registrant, states that "[f]or the purpose of determining liability of a registrant under the Securities Act of 1933 to any purchaser in the initial distribution of the securities, each undersigned registrant undertakes that in a primary offering of securities … regardless of the underwriting method used to sell the securities to the purchaser … the undersigned registrant will be a seller to the purchaser and will be considered to offer or sell such securities to such purchaser."

1160. Underwriter Defendant Goldman Sachs is a seller within the meaning of the Securities Act because it directly transferred title to Lead Plaintiff New York City Pension Funds and other purchasers of the Series B Medium-

1   Term Notes.  In particular, Goldman Sachs directly sold Series B Medium-Term
2   Notes to Lead Plaintiff New York City Pension Funds.

3       1161. As alleged herein, the Series B Medium-Term Notes Prospectus
4   contained untrue statements of material fact, including the financial statements of
5   Countrywide.  In addition, the Series B Medium-Term Notes Prospectus omitted
6   to state material facts required to be stated therein or necessary to make the
7   statements therein not misleading, including Countrywide's violations of GAAP.
8   The facts misstated and omitted would have been material to a reasonable person
9   reviewing the Series B Medium-Term Notes Prospectus.

10      1162. Countrywide and Goldman Sachs owed to Lead Plaintiff New York
11  City Pension Funds and the Class the duty to make a reasonable and diligent
12  investigation of the statements contained in the Series B Medium-Term Notes
13  Prospectus, to ensure that the statements contained or incorporated by reference
14  therein were true and that there was no omission to state a material fact required
15  to be stated therein in order to make the statements contained therein not
16  misleading.

17      1163. Countrywide and Goldman Sachs did not make a reasonable and
18  diligent investigation of the statements contained or incorporated by reference in
19  the Series B Medium-Term Notes Prospectus and did not possess reasonable
20  grounds for believing that the Series B Medium-Term Notes Prospectus did not
21  contain an untrue statement of material fact or omit to state a material fact
22  required to be stated therein or necessary to make the statements therein not
23  misleading.

24      1164. Lead Plaintiff New York City Pension Funds and members of the
25  Class purchased Series B Medium-Term Notes pursuant to the Series B Medium-
26  Term Notes Prospectus and were damaged thereby.

27      1165. Lead Plaintiff New York City Pension Funds and the Class did not
28  know, nor in the exercise of reasonable diligence could have known, of the untrue

statements of material fact or omissions of material facts in the Series B Medium-Term Notes Prospectus when they purchased or acquired the securities. Less than one year has elapsed between the time they discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought. Less than three years have elapsed between the time that the securities upon which this Count is brought were *bona fide* offered to the public and the time this action was commenced.

1166. By reason of the foregoing, Countrywide and Goldman Sachs are liable to Lead Plaintiff New York City Pension Funds and members of the Class for violations of Section 12(a)(2) of the Securities Act. Lead Plaintiff New York City Pension Funds and Class members hereby tender their securities to their respective sellers and seek rescission of their purchases to the extent that they continue to own such securities.

## COUNT VI

**For Violations of Section 15 of the Securities Act on Behalf of Purchasers of Series B Medium-Term Notes and 6.25% Subordinated Notes Due May 15, 2016, Asserted Against Defendants Mozilo, Sambol, Sieracki, and Kurland**

1167. Lead Plaintiff New York City Pension Funds repeats and realleges each and every allegation above as if fully set forth herein. For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1168. This Count is brought pursuant to Section 15 of the Securities Act against Defendants Mozilo, Sambol, Sieracki, and Kurland, on behalf of Lead Plaintiff New York City Pension Funds and members of the Class who purchased or acquired Countrywide Series B Medium-Term Notes pursuant or traceable to the Series B Medium-Term Notes Registration Statement or pursuant to the Series

1   B Medium-Term Notes Prospectus, or who purchased or acquired Countrywide
2   6.25% Notes pursuant or traceable to the 6.25% Notes Registration Statement.

3       1169. Countrywide violated Section 11 of the Securities Act by issuing the
4   Series B Medium-Term Notes Registration Statement which contained untrue
5   statements of material fact and omitted to state material facts required to be stated
6   therein or necessary in order to make the statements therein not misleading.  The
7   facts misstated and omitted would have been material to a reasonable person
8   reviewing the Series B Medium-Term Notes Registration Statement.

9       1170. Countrywide violated Section 12(a)(2) of the Securities Act by
10   soliciting the purchase of Series B Medium-Term Notes by means of the Series B
11   Medium-Term Notes Prospectus which contained untrue statements of material
12   fact and omitted to state material facts required to be stated therein or necessary
13   in order to make the statements therein not misleading.  The facts misstated and
14   omitted would have been material to a reasonable person reviewing the Series B
15   Medium-Term Notes Prospectus.

16       1171. Defendants Mozilo, Sambol, and Kurland were controlling persons
17   of Countrywide when each of the Series B Medium-Term Notes Registration
18   Statement and Series B Medium Term Notes Prospectus was filed and became
19   effective, because of their senior executive positions with Countrywide; their
20   direct involvement in the Company's day-to-day operations, including its
21   mortgage banking and lending practices and financial reporting and accounting
22   functions; and their signatures on and participation in the preparation and
23   dissemination of this Registration Statement and Prospectus.

24       1172. Countrywide violated Section 11 of the Securities Act by issuing the
25   6.25% Notes Registration Statement which contained untrue statements of
26   material fact and omitted to state material facts required to be stated therein or
27   necessary in order to make the statements therein not misleading.  The facts

28

1  misstated and omitted would have been material to a reasonable person reviewing
2  the 6.25% Notes Registration Statement.

3      1173. Defendants Mozilo, Sambol, Sieracki, and Kurland were controlling
4  persons of Countrywide when the 6.25% Notes Registration Statement was filed
5  and became effective, because of their senior executive positions with
6  Countrywide; their direct involvement in the Company's day-to-day operations,
7  including its mortgage banking and lending practices and financial reporting and
8  accounting functions; and their signatures on and participation in the preparation
9  and dissemination of each of this Registration Statement and Prospectus.

10      1174. By virtue of the foregoing, Defendants Mozilo, Sambol, Sieracki,
11  and Kurland each had the power to influence and control, and did influence and
12  control, directly or indirectly, the decision-making of Countrywide, including the
13  content of its financial statements and these Registration Statements and
14  Prospectuses.

15      1175. Defendants Mozilo, Sambol, Sieracki, and Kurland acted negligently
16  and  without reasonable care regarding the accuracy of the information contained
17  and incorporated by reference in these Registration Statements and Prospectuses
18  and lacked reasonable grounds to believe that such information was accurate and
19  complete in all material respects.

20      1176. Lead Plaintiff New York City Pension Funds and members of the
21  Class purchased Countrywide Series B Medium-Term Notes or 6.25% Notes
22  pursuant or traceable to the Registration Statements for these respective offerings,
23  or pursuant to the Prospectuses for these respective offerings, and were damaged
24  thereby.

25      1177. Lead Plaintiff New York City Pension Funds and the Class did not
26  know, nor in the exercise of reasonable diligence could have known, of the untrue
27  statements of material fact or omissions of material facts in the Series B Medium-
28

Term Notes Registration Statement and Prospectus and the 6.25% Notes Registration Statement when they purchased or acquired the securities.

1178. By reason of the foregoing, Defendants Mozilo, Sambol, Sieracki, and Kurland are liable to Lead Plaintiff New York City Pension Funds and members of the Class for violations of Section 15 of the Securities Act.

## COUNT VII

**For Violations of Section 11 of the Securities Act on Behalf of Purchasers of 7% Capital Securities, Asserted Against Defendants Countrywide and CCV; Mozilo, Kurland, Sambol, Sieracki, Brown, Cisneros, Cunningham, Donato, Dougherty, Garcia, Gissinger, Melone, Parry, Robertson, Russell, and Snyder; KPMG; and Citigroup Global Markets, J.P. Morgan Securities, Merrill Lynch, UBS Securities, Wachovia Capital, Countrywide Securities, A.G. Edwards, Banc of America Securities, RBC Dain Rauscher, Barclays Capital, Deutsche Bank, Goldman Sachs, and HSBC**

1179. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.  For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1180. This Count is brought pursuant to Section 11 of the Securities Act against Defendants Countrywide and CCV; Individual Defendants Mozilo, Kurland, Sambol, Sieracki, Brown, Cisneros, Cunningham, Donato, Dougherty, Garcia, Gissinger, Melone, Parry, Robertson, Russell, and Snyder; Defendant KPMG; and Underwriter Defendants Citigroup Global Markets, J.P. Morgan Securities, Merrill Lynch, UBS Securities, Wachovia Capital, Countrywide Securities, A.G. Edwards, Banc of America Securities, RBC Dain Rauscher, Barclays Capital, Deutsche Bank, Goldman Sachs, and HSBC.

1181. This claim is brought on behalf of Plaintiffs Barry Brahn and Shelley B. Katzeff and other members of the Class who, during the Class Period, purchased or otherwise acquired CCV 7% Capital Securities pursuant or traceable to the 7% Capital Securities Registration Statement.

1182. Countrywide and CCV were the registrants for the 7% Capital Securities Registration Statement, and CCV issued the 7% Capital Securities pursuant to that registration statement.

1183. Defendants Mozilo, Kurland, Sambol, Sieracki, Brown, Cisneros, Cunningham, Donato, Dougherty, Garcia, Gissinger, Melone, Parry, Robertson, Russell, and Snyder each signed the 7% Capital Securities Registration Statement.

1184. At the time the 7% Capital Securities Registration Statement and prospectus supplement were filed, Defendants Mozilo, Brown, Cisneros, Cunningham, Donato, Dougherty, Melone, Parry, Robertson, Russell, and Snyder were each directors of Countrywide.

1185. Defendant KPMG was the auditor for Countrywide during the Class Period and consented to being named in the 7% Capital Securities Registration Statement as a party that certified audited financial statements contained or incorporated by reference therein. KPMG's audit report incorrectly stated that its audits were performed in accordance with GAAS and that the Company's financial statements were fairly presented in accordance with GAAP.

1186. Defendants Citigroup Global Markets, J.P. Morgan Securities, Merrill Lynch, UBS Securities, Wachovia Capital, Countrywide Securities, A.G. Edwards, Banc of America Securities, RBC Dain Rauscher, Barclays Capital, Deutsche Bank, Goldman Sachs and HSBC acted as underwriters with respect to the offering of 7% Capital Securities.

1187. As set forth above, the 7% Capital Securities Registration Statement contained untrue statements of material fact, including the financial statements of Countrywide. In addition, the 7% Capital Securities Registration Statement omitted to state other facts required to be stated therein or necessary to make the statements therein not misleading, including Countrywide's violations of GAAP.

1    The facts misstated and omitted would have been material to a reasonable person
2    reviewing the 7% Capital Securities Registration Statement.

3        1188. CCV, as issuer of the 7% Capital Securities, is strictly liable for the
4    material misstatements and omissions contained in the 7% Capital Securities
5    Registration Statement.

6        1189. The other Defendants named in this Count owed to Plaintiffs Brahn
7    and Katzeff and the Class the duty to make a reasonable and diligent investigation
8    of the statements contained in the 7% Capital Securities Registration Statement,
9    to ensure that the statements contained or incorporated by reference therein were
10   true and that there was no omission to state a material fact required to be stated
11   therein in order to make the statements contained therein not misleading.

12       1190. These Defendants did not make a reasonable and diligent
13   investigation of the statements contained or incorporated by reference in the 7%
14   Capital Securities Registration Statement, and did not possess reasonable grounds
15   for believing that the 7% Capital Securities Registration Statement did not contain
16   an untrue statement or omit to state a material fact required to be stated therein or
17   necessary to make the statements therein not misleading.

18       1191. The Underwriter Defendants named in this Count did not conduct a
19   reasonable investigation of the statements contained in and incorporated by
20   reference in the 7% Capital Securities Registration Statement and did not possess
21   reasonable grounds for believing that the statements contained therein were true
22   and not materially misstated.  In particular, these Underwriter Defendants did not
23   conduct a reasonable investigation into the accuracy of the statements regarding
24   Countrywide's reported financial performance, internal controls, underwriting
25   standards and lending practices.  These Underwriter Defendants could not simply
26   rely on the work of Countrywide's auditors because the investing public relies on
27   the underwriters to obtain and verify relevant information and then make sure that
28   important facts are accurately disclosed.  Thus, the Underwriter Defendants must

1    conduct their own, independent and reasonable investigation into the accuracy of
2    the Company's financial statements and assessments of internal controls, and they
3    were negligent in failing to do so sufficiently in connection with the offering.

4        1192. Similarly, the Individual Defendants named in this Count were
5    negligent in failing to conduct a reasonable investigation of the statements
6    contained in the 7% Capital Securities Registration Statement regarding
7    Countrywide's financial performance, internal controls, underwriting standards
8    and lending practices and did not possess reasonable grounds for believing that
9    the statements contained therein were true and not materially misstated.

10       1193. Defendant KPMG, which consented to the inclusion of its opinions
11   in the 7% Capital Securities Registration Statement, negligently failed to perform
12   its audits of Countrywide in a reasonable manner and, thus, its audits did not
13   constitute a reasonable investigation of whether the Company's financial
14   statements were presented in compliance with GAAP and whether management's
15   assessment of internal controls was properly and accurately presented.

16       1194. Plaintiffs Brahn and Katzeff and members of the Class purchased 7%
17   Capital Securities issued pursuant or traceable to the 7% Capital Securities
18   Registration Statement and were damaged thereby.

19       1195. Plaintiffs Brahn and Katzeff and the Class did not know, nor in the
20   exercise of reasonable diligence could have known, of the untrue statements of
21   material fact or omissions of material facts in the 7% Capital Securities
22   Registration Statement when they purchased or acquired their securities. Less
23   than one year has elapsed between the time they discovered or reasonably could
24   have discovered the facts upon which this Count is based and the time this claim
25   was brought. Less than three years have elapsed between the time that the
26   securities upon which this Count is brought were *bona fide* offered to the public
27   and the time this action was commenced.

28

1     1196. By reason of the foregoing, the Defendants named in this Count are
2  liable to Plaintiffs Brahn and Katzeff and members of the Class for violations of
3  Section 11 of the Securities Act.

4
5                              **COUNT VIII**

6  **For Violations of Section 12(a)(2) of the Securities Act on Behalf of
Purchasers of 7% Capital Securities, Asserted Against Defendants
7  Countrywide and CCV; and Defendant Citigroup Global Markets**

8     1197. Plaintiffs repeat and reallege each and every allegation above as if
9  fully set forth herein.  For purposes of this Count, Plaintiffs assert only strict
10  liability and negligence claims and expressly disclaim any claim of fraud or
11  intentional misconduct.

12     1198. This Count is brought pursuant to Section 12(a)(2) of the Securities
13  Act against Defendants Countrywide and CCV and Underwriter Defendant
14  Citigroup Global Markets.

15     1199. This claim is brought on behalf of Plaintiff Shelley B. Katzeff and
16  other members of the Class who, during the Class Period, purchased or otherwise
17  acquired CCV 7% Capital Securities issued pursuant to the 7% Capital Securities
18  Prospectus.

19     1200. Countrywide and CCV solicited the purchase of its 7% Capital
20  Securities by the use of means or instruments of transportation or communication
21  in interstate commerce or of the mails and by means of the 7% Capital Securities
22  Prospectus.  Additionally, the 7% Capital Securities Registration Statement, of
23  which Countrywide and CCV are registrants, states that "[f]or the purpose of
24  determining liability of a registrant under the Securities Act of 1933 to any
25  purchaser in the initial distribution of the securities, each undersigned registrant
26  undertakes that in a primary offering of securities ... regardless of the
27  underwriting method used to sell the securities to the purchaser ... the

28

1  undersigned registrant will be a seller to the purchaser and will be considered to
2  offer or sell such securities to such purchaser."

3      1201. Underwriter Defendant Citigroup Global Markets is a seller within
4  the meaning of the Securities Act because it directly transferred title to Plaintiff
5  Katzeff and other purchasers of the 7% Capital Securities.   In particular,
6  Citigroup Global Markets directly sold 7% Capital Securities to Plaintiff Katzeff.

7      1202. As alleged herein, the 7% Capital Securities Prospectus contained
8  untrue statements of material fact, including the financial statements of
9  Countrywide.  In addition, the 7% Capital Securities Prospectus omitted to state
10  material facts required to be stated therein or necessary to make the statements
11  therein not misleading, including Countrywide's violations of GAAP.  The facts
12  misstated and omitted would have been material to a reasonable person reviewing
13  the 7% Capital Securities Prospectus.

14      1203. Countrywide and Citigroup Global Markets owed to Plaintiff Katzeff
15  and the Class the duty to make a reasonable and diligent investigation of the
16  statements contained in the 7% Capital Securities Prospectus, to ensure that the
17  statements contained or incorporated by reference therein were true and that there
18  was no omission to state a material fact required to be stated therein in order to
19  make the statements contained therein not misleading.

20      1204. Countrywide and Citigroup Global Markets did not make a
21  reasonable and diligent investigation of the statements contained or incorporated
22  by reference in the 7% Capital Securities Prospectus and did not possess
23  reasonable grounds for believing that the 7% Capital Securities Prospectus did not
24  contain an untrue statement of material fact or omit to state a material fact
25  required to be stated therein or necessary to make the statements therein not
26  misleading.

27
28

SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
LEAD CASE NO. CV 07-05295 MRP (MANx)

403

1205. Plaintiff Katzeff and members of the Class purchased 7% Capital Securities pursuant to the 7% Capital Securities Prospectus and were damaged thereby.

1206. Plaintiff Katzeff and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the 7% Capital Securities Prospectus when she purchased or acquired the securities. Less than one year has elapsed between the time she discovered or reasonably could have discovered the facts upon which this Count is based and the time this claim was brought. Less than three years have elapsed between the time that the securities upon which this Count is brought were *bona fide* offered to the public and the time this action was commenced.

1207. By reason of the foregoing, Countrywide and Citigroup Global Markets are liable to Plaintiff Katzeff and members of the Class for violations of Section 12(a)(2) of the Securities Act. Plaintiff Katzeff and Class members hereby tender their securities to their respective sellers and seek rescission of their purchases to the extent that they continue to own such securities.

## COUNT IX

**For Violations of Section 15 of the Securities Act
on Behalf of Purchasers of 7% Capital Securities,
Asserted Against Defendants Mozilo, Sambol, and Sieracki**

1208. Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein. For purposes of this Count, Plaintiffs assert only strict liability and negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

1209. This Count is brought pursuant to Section 15 of the Securities Act against Defendants Mozilo, Sambol, and Sieracki on behalf of Plaintiffs Brahn and Katzeff and members of the Class who purchased or acquired CCV 7%

1  Capital Securities pursuant or traceable to the 7% Capital Securities Registration

2  Statement, or pursuant to the 7% Capital Securities Prospectus.

3      1210. Countrywide and CCV violated Section 11 of the Securities Act by

4  issuing the 7% Capital Securities Registration Statement which contained untrue

5  statements of material fact and omitted to state material facts required to be stated

6  therein or necessary in order to make the statements therein not misleading.  The

7  facts misstated and omitted would have been material to a reasonable person

8  reviewing the 7% Capital Securities Registration Statement.

9      1211. Countrywide and CCV violated Section 12(a)(2) of the Securities

10  Act by soliciting the purchase of 7% Capital Securities by means of the 7%

11  Capital Securities Prospectus which contained untrue statements of material fact

12  and omitted to state material facts required to be stated therein or necessary in

13  order to make the statements therein not misleading.  The facts misstated and

14  omitted would have been material to a reasonable person reviewing the 7%

15  Capital Securities Prospectus.

16      1212. Defendants Mozilo, Sambol, and Sieracki were controlling persons

17  of Countrywide and CCV when the 7% Capital Securities Registration Statement

18  and 7% Capital Securities Prospectus were filed and became effective, because of

19  their senior executive positions with Countrywide; their direct involvement in the

20  Company's day-to-day operations, including its mortgage banking and lending

21  practices and financial reporting and accounting functions; and their signatures on

22  and participation in the preparation and dissemination of the 7% Capital

23  Securities Registration Statement and 7% Capital Securities Prospectus.

24      1213. By virtue of the foregoing, Defendants Mozilo, Sambol, and Sieracki

25  each had the power to influence and control, and did influence and control,

26  directly or indirectly, the decision-making of Countrywide and CCV, including

27  the content of Countrywide's financial statements and the 7% Capital Securities

28  Registration Statement and 7% Capital Securities Prospectus.

1214. Defendants Mozilo, Sambol, and Sieracki acted negligently and without reasonable care regarding the accuracy of the information contained and incorporated by reference in the 7% Capital Securities Registration Statement and 7% Capital Securities Prospectus and lacked reasonable grounds to believe that such information was accurate and complete in all material respects.

1215. Plaintiffs Brahn and Katzeff and members of the Class purchased CCV 7% Capital Securities pursuant or traceable to the 7% Capital Securities Registration Statement, or pursuant to the 7% Capital Securities Prospectus, and were damaged thereby.

1216. Plaintiffs Brahn and Katzeff and the Class did not know, nor in the exercise of reasonable diligence could have known, of the untrue statements of material fact or omissions of material facts in the 7% Capital Securities Registration Statement and 7% Capital Securities Prospectus when they purchased or acquired the securities.

1217. By reason of the foregoing, Defendants Mozilo, Sambol, and Sieracki are liable to Plaintiffs Brahn and Katzeff and members of the Class for violations of Section 15 of the Securities Act.

## COUNT X

**For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 on Behalf of Plaintiffs, Asserted Against Countrywide and the Officer Defendants**

1218. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

1219. This Count is asserted pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, on behalf of Plaintiffs and members of the Class against Countrywide and the Officer Defendants Mozilo, Sambol, Sieracki, and Kurland.

1      1220. As alleged herein, throughout the Class Period, these Defendants,
2  individually and in concert, directly and indirectly, by the use of the means or
3  instrumentalities of interstate commerce, the mails and/or the facilities of national
4  securities exchanges, made untrue statements of material fact and/or omitted to
5  state material facts necessary to make their statements not misleading and carried
6  out a plan, scheme and course of conduct, in violation of Section 10(b) of the
7  Exchange Act and Rule 10b-5 promulgated thereunder.   These Defendants
8  intended to and did, as alleged herein, (i) deceive the investing public, including
9  Plaintiffs and members of the Class; (ii) artificially inflate and maintain the prices
10  of Countrywide common stock and other publicly traded securities, including but
11  not limited to public debt and preferred securities specifically alleged herein; and
12  (iii) cause Plaintiffs and members of the Class to purchase Countrywide securities
13  at artificially inflated prices.

14      1221. The   Officer   Defendants   were   individually   and   collectively
15  responsible for making the false and misleading statements and omissions alleged
16  herein and having engaged in a plan, scheme and course of conduct designed to
17  deceive Plaintiffs and members of the Class, by virtue of having prepared,
18  approved, signed and/or disseminated documents which contained untrue
19  statements of material fact and/or omitted facts necessary to make the statements
20  therein not misleading.

21      1222. As set forth above, Defendants made their false and misleading
22  statements and omissions and engaged in the fraudulent activity described herein
23  knowingly and intentionally, or in such a deliberately reckless manner as to
24  constitute willful deceit and fraud upon Plaintiffs and the other members of the
25  Class who purchased Countrywide common stock and/or other Countrywide
26  public securities, including but not limited to the securities specifically alleged
27  herein, during the Class Period.

28

1    1223. In ignorance of the false and misleading nature of these Defendants'

2    statements and omissions, and relying directly or indirectly on those statements or

3    upon the integrity of the market prices for Countrywide common stock and other

4    publicly traded securities, Plaintiffs and other members of the Class purchased

5    Countrywide securities at artificially inflated prices during the Class Period.  But

6    for the fraud, Plaintiffs and members of the Class would not have purchased

7    Countrywide securities at artificially inflated prices.  As set forth herein, when the

8    true facts were subsequently disclosed, the prices of Countrywide common stock

9    and other publicly traded securities declined precipitously and Plaintiffs and

10    members of the Class were harmed and damaged as a direct and proximate result

11    of their purchases of Countrywide securities at artificially inflated prices and the

12    subsequent decline in the prices of those securities when the truth began to be

13    disclosed.

14    1224. By virtue of the foregoing, Defendant Countrywide and the Officer

15    Defendants Mozilo, Sambol, Sieracki and Kurland are liable to Plaintiffs and

16    members of the Class for violations of Section 10(b) of the Exchange Act and

17    Rule 10b-5 promulgated thereunder.

18

19                     **COUNT XI**

20    **For Violations of Section 20(a) of the Exchange Act, on
Behalf of Plaintiffs, Asserted Against the Officer Defendants**

21

22    1225. Plaintiffs repeat and reallege each of the allegations set forth above

23    as if fully set forth herein.

24    1226. This Count is asserted pursuant to Section 20(a) of the Exchange Act

25    against the Officer Defendants Mozilo, Sambol, Sieracki, and Kurland, on behalf

26    of Plaintiffs and members of the Class.

27    1227. As alleged above, Countrywide violated Section 10(b) and Rule 10b-

28    5 promulgated thereunder by making false and misleading statements in

connection with the purchase and sale of securities and by participating in a fraudulent scheme and course of business or conduct throughout the Class Period. This fraudulent conduct was undertaken with scienter and the Company is charged with the knowledge and scienter of Defendants Mozilo, Sambol, Sieracki, and Kurland and others who knew of or acted with deliberate reckless disregard of the falsity of the Company's statements and the fraudulent nature of its scheme during the Class Period.

1228. The Officer Defendants were controlling persons of Countrywide during the Class Period, due to their senior executive positions with the Company; their direct involvement in the Company's day-to-day operations, including its mortgage banking and lending practices and financial reporting and accounting functions; and their signatures on and participation in the preparation and dissemination of the Company's public filings.

1229. By virtue of the foregoing, the Officer Defendants each had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Countrywide, including the content of its financial statements and other public statements.

1230. As set forth above, these Defendants acted knowingly and intentionally, or in such a deliberately reckless manner as to constitute willful fraud and deceit upon Plaintiffs and the other members of the Class who purchased Countrywide securities during the Class Period.

1231. In ignorance of the false and misleading nature of these Defendants' statements and omissions, and relying directly or indirectly on those statements or upon the integrity of the market prices for Countrywide common stock and other publicly traded securities, Plaintiffs and other members of the Class purchased Countrywide securities at artificially inflated prices during the Class Period. But for the fraud, Plaintiffs and members of the Class would not have purchased Countrywide securities at artificially inflated prices. As set forth herein, when the

true facts were subsequently disclosed, the prices of Countrywide common stock and other public securities declined precipitously and Plaintiffs and members of the Class were harmed and damaged as a direct and proximate result of their purchases of Countrywide securities at artificially inflated prices and the subsequent decline in the prices of those securities when the truth began to be disclosed.

1232. By reason of the foregoing, the Officer Defendants are liable to Plaintiffs and the members of the Class for violations of Section 20(a) of the Exchange Act.

## COUNT XII

### For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 on Behalf of Plaintiffs, Asserted Against Defendant KPMG

1233. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

1234. This Count is asserted pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, on behalf of Plaintiffs and members of the Class against Defendant KPMG.

1235. As alleged herein, throughout the Class Period, KPMG, directly and indirectly, by the use of the means or instrumentalities of interstate commerce, the mails and/or the facilities of national securities exchanges, made untrue statements of material fact and/or omitted to state material facts necessary to make their statements not misleading and carried out a plan, scheme and course of conduct, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.   KPMG intended to and did, as alleged herein, (i) deceive the investing public, including Plaintiffs and members of the Class; (ii) artificially inflate and maintain the prices of Countrywide common stock and other publicly traded securities, including but not limited to public debt and

1   preferred securities specifically alleged herein; and (iii) cause Plaintiffs and
2   members of the Class to purchase Countrywide securities at artificially inflated
3   prices.

4       1236. KPMG was responsible for issuing its false and misleading audit
5   reports and opinions alleged herein and having engaged in a plan, scheme and
6   course of conduct designed to deceive Plaintiffs and members of the Class, by
7   virtue of having prepared, approved, signed and/or disseminated documents
8   which contained untrue statements of material fact and/or omitted facts necessary
9   to make the statements therein not misleading.

10      1237. As set forth above, KPMG made its false and misleading statements
11  and omissions and engaged in the fraudulent activity described herein knowingly
12  and intentionally, or in such a deliberately reckless manner as to constitute willful
13  deceit and fraud upon Plaintiffs and the other members of the Class who
14  purchased Countrywide common stock and/or other Countrywide public
15  securities, including but not limited to the securities specifically alleged herein,
16  during the Class Period.

17      1238. In ignorance of the false and misleading nature of KPMG's
18  statements and omissions, and relying directly or indirectly on those statements or
19  upon the integrity of the market prices for Countrywide common stock and other
20  publicly traded securities, Plaintiffs and other members of the Class purchased
21  Countrywide securities at artificially inflated prices during the Class Period.  But
22  for the fraud, Plaintiffs and members of the Class would not have purchased
23  Countrywide securities at artificially inflated prices.  As set forth herein, when the
24  true facts were subsequently disclosed, the prices of Countrywide common stock
25  and other publicly traded securities declined precipitously and Plaintiffs and
26  members of the Class were harmed and damaged as a direct and proximate result
27  of their purchases of Countrywide securities at artificially inflated prices and the

28

1  subsequent decline in the prices of those securities when the truth began to be

2  disclosed.

3      1239. By virtue of the foregoing, Defendant KPMG is liable to Plaintiffs

4  and members of the Class for violations of Section 10(b) of the Exchange Act and

5  Rule 10b-5 promulgated thereunder.

6

7                          **COUNT XIII**

8         **For Violations of Section 20A of the Exchange Act,**
          **on Behalf of Lead Plaintiffs, Asserted Against**
9            **Defendants Mozilo, Sambol and Kurland**

10      1240. Plaintiffs repeat and reallege each of the allegations set forth above

11  as if fully set forth herein.

12      1241. This Count is asserted pursuant to Section 20A of the Exchange Act

13  against Defendants Mozilo, Sambol, and Kurland, on behalf of Lead Plaintiffs

14  and all members of the Class who purchased Countrywide common stock

15  contemporaneously with any of these Defendants' sales of Countrywide common

16  stock during the Class Period.

17      1242. Each of these Defendants sold substantial numbers of shares of

18  Countrywide common stock during the Class Period while in possession of

19  material, adverse, nonpublic information.  This conduct violated Section 20A of

20  the Exchange Act.

21      1243. As set forth in the annexed certifications of Lead Plaintiffs and the

22  annexed Exhibit H, Lead Plaintiffs purchased shares of Countrywide common

23  stock on the same day as or close in time to sales of Countrywide common stock

24  made by the Defendants named in this Count while these Defendants were in

25  possession of material, adverse, nonpublic information.   These sales and

26  purchases were contemporaneous within the meaning of Section 20A of the

27  Exchange Act.

28

1244. Numerous other Class members also purchased Countrywide common stock contemporaneously with these Defendants' sales of stock during the Class Period based on material, adverse, nonpublic information.

1245. Accordingly, under Section 20A of the Exchange Act, the Defendants named in this Count are each liable to Lead Plaintiffs and the Class for all profits gained and losses avoided by them as a result of their stock sales.

1246. The Defendants named in this Count are required to account for all such stock sales and to disgorge their profits or ill-gotten gains.

## XVI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

A.     Determining that this action is a proper class action maintained under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, certifying Lead Plaintiffs as class representatives, and appointing Labaton Sucharow LLP as class counsel pursuant to Rule 23(g);

B.     Declaring and determining that Defendants violated the Securities Act and Exchange Act by reason of the acts and omissions alleged herein;

C.     Awarding preliminary and permanent injunctive relief in favor of Plaintiffs and Class against Defendants and their counsel, agents and all persons acting under, in concert with, or for them, including an accounting of and the imposition of a constructive trust and/or an asset freeze on Defendants' insider trading proceeds;

D.     Ordering an accounting of Defendants' insider trading proceeds;

E.     Disgorgement of Defendants' insider trading proceeds;

F.     Restitution of investors' monies of which they were defrauded;

G.     Awarding Plaintiffs and the Class compensatory damages against all Defendants, jointly and severally, in an amount to be proven at trial together with prejudgment interest thereon;

H.      Awarding Plaintiffs and the Class the right to rescind their Countrywide securities to the extent they continue to hold such securities;

I.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including but not limited to attorney's fees and fees and costs incurred by consulting and testifying expert witnesses; and

J.      Granting such other and further relief as the Court deems just and proper.

## XVII. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

1    Dated:  January 6, 2009

2                                          LABATON SUCHAROW LLP

       By: _____
3                                          JOEL H. BERNSTEIN
                                           JONATHAN M. PLASSE
                                           IRA A. SCHOCHET
4                                          DAVID J. GOLDSMITH
                                           ETHAN D. WOHL
5                                          ANN E. WALIER
                                           140 Broadway
6                                          New York, New York  10005
                                           Telephone:  (212) 907-0700
7                                          Facsimile:  (212) 818-0477
                                           jbernstein@labaton.com
8                                          jplasse@labaton.com
                                           ischochet@labaton.com
9                                          dgoldsmith@labaton.com
                                           ewohl@labaton.com
10                                         awalier@labaton.com

11                                         *Lead Counsel for Lead Plaintiff*
                                           *Thomas P. DiNapoli, Comptroller*
12                                         *of the State of New York, as*
                                           *Administrative Head of the New York*
13                                         *State and Local Retirement Systems*
                                           *and as Trustee of the New York State*
14                                         *Common Retirement Fund, and Lead*
                                           *Plaintiff New York City Pension Funds*
15

16                                         KREINDLER & KREINDLER LLP
                                           GRETCHEN M. NELSON (#112566)
17                                         MARK LABATON (#159555)
                                           707 Wilshire Boulevard, Suite 4100
18                                         Los Angeles, California  90017
                                           Telephone:  (213) 622-6469
19                                         Facsimile:  (213) 622-6019
                                           gnelson@kreindler.com
20                                         mlabaton@kreindler.com

21                                         *Liaison Counsel for Lead*
                                           *Plaintiffs New York Funds*
22
                                           KAPLAN FOX & KILSHEIMER LLP
23                                         FREDERIC S. FOX
                                           JOEL B. STRAUSS
24                                         JEFFREY P. CAMPISI
                                           850 Third Avenue
25                                         New York, New York  10022
                                           Telephone:  (212) 687-1980
26                                         Facsimile:  (212) 687-7714
                                           jstrauss@kaplanfox.com
27                                         jcampisi@kaplanfox.com

28                                         *Attorneys for Plaintiffs Barry*
                                           *Brahn and Shelley B. Katzeff*

---

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT                                    415
MASTER FILE NO. CV 07-05295 MRP (MANx)