1  JORDAN ETH (SBN 121617)
   JEth@mofo.com
2  JUDSON E. LOBDELL (SBN 146041)
   JLobdell@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105
   Telephone:  415-268-7000
5  Facsimile:   415-268-7522

6  Attorneys for Defendants
   HENRY CISNEROS, JEFF
7  CUNNINGHAM, ROBERT DONATO,
   BEN M. ENIS, EDWIN HELLER,
8  GWENDOLYN S. KING, MARTIN
   MELONE, ROBERT PARRY,
9  OSCAR ROBERTSON, KEITH
   RUSSELL and HARLEY SNYDER

10

11            UNITED STATES DISTRICT COURT

12           CENTRAL DISTRICT OF CALIFORNIA

13                 WESTERN DIVISION

14  IN RE COUNTRYWIDE FINANCIAL          Case No.  CV 07-05295-MRP
    CORPORATION SECURITIES              (MANx)
15  LITIGATION
                                        **OUTSIDE DIRECTORS'**
16                                      **NOTICE OF MOTION AND**
                                        **MOTION TO DISMISS**
17                                      **SECOND CONSOLIDATED**
                                        **AMENDED CLASS ACTION**
18  ────────────────────────────────    **COMPLAINT; SUPPORTING**
                                        **MEMORANDUM OF POINTS**
    This Document Relates To:  All Actions  **AND AUTHORITIES**
19

20                                      Hearing:   April 13, 2009
                                        Time:      10:00 a.m.
21                                      Court:     Courtroom 12
                                        Judge:     Mariana R. Pfaelzer
22

23

24

25

26

27

28

1    **NOTICE OF MOTION AND MOTION TO DISMISS**

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on April 13, 2009, at 10:00 a.m., or as soon

4    thereafter as the matter may be heard, in the Courtroom of the Honorable Mariana

5    R. Pfaelzer, United States District Court, Central District of California, Western

6    Division, Courtroom 12, Defendants Henry Cisneros, Jeff Cunningham, Robert

7    Donato, Ben M. Enis, Edwin Heller, Gwendolyn S. King, Martin Melone, Robert

8    Parry, Oscar Robertson, Keith Russell and Harley Snyder (collectively, the

9    "Outside Directors") will, and hereby do, move the Court for an order dismissing

10   Counts I, IV, and VII of the Second Consolidated Amended Class Action

11   Complaint against them pursuant to Federal Rules of Civil Procedure 8 and

12   12(b)(6).  This motion is made following a conference of counsel pursuant to Civil

13   Local Rule 7-3, which took place on January 28, 2009.

14   This motion is based on this Notice of Motion and Motion; the Memorandum

15   of Points and Authorities; the accompanying Request for Judicial Notice; the

16   February 6, 2009 Declaration of Judson E. Lobdell and its exhibits ("Lobdell

17   Decl."); the pleadings and other records in the Court's file; the motions to dismiss

18   and related materials filed by all other defendants; and such other written and oral

19   argument as may be presented to the Court before this motion is taken under

20   submission.

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3

TABLE OF AUTHORITIES ................................................................. iii

4

INTRODUCTION ............................................................................... 1

5

ARGUMENT ...................................................................................... 2

6

I.     THE CLAIMS ASSERTED AGAINST THE OUTSIDE DIRECTORS
IN COUNT I SHOULD BE DISMISSED ....................................... 3

7

8

     A.    Plaintiffs Fail to Allege Facts Showing that Countrywide's 2003
Annual Report on Form 10-K Contained an Actionable
Misrepresentation ...................................................................... 3

9

          1.    Plaintiffs do not allege contemporaneous facts
inconsistent with statements in Countrywide's 2003 10-K
that loans were "high quality" or "prime." ............................... 4

10

          2.    The terms "high quality" and "prime," as used to describe
fiscal year 2003 operations, are not actionable ........................ 7

11

12

     B.    The Claims Asserted Against the Outside Directors in Count I
Are Time Barred ......................................................................... 7

13

II.    ALL ACCOUNTING-RELATED CLAIMS AGAINST THE
OUTSIDE DIRECTORS SHOULD BE DISMISSED ..................... 8

14

     A.    Plaintiffs Do Not Plead Facts Showing a GAAP Violation .......... 8

15

     B.    Plaintiffs Do Not Plead Facts Showing the Outside Directors'
Reliance on Management and KPMG Was Unreasonable ............. 8

16

CONCLUSION .................................................................................. 13

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Ash v. McCall,*

5
   No. 17132, 2000 Del. Ch. LEXIS 144 (Del. Ch. Sept. 15, 2000) ......................10

6
*Bell Atlantic Corp. v. Twombly,*

7
   530 U.S. 544, 127 S. Ct. 1955 (2007) ..........................................................passim

8
*Garber v. Legg Mason, Inc.,*

9
   537 F. Supp. 2d 597 (S.D.N.Y. 2008) ..................................................................2

10
*In re Harmonic, Inc., Sec. Litig.,*
   No. C-00-2287-PJH, 2006 U.S. Dist. LEXIS 90450

11
   (N.D. Cal. Dec. 11, 2006) ....................................................................................3

12
*In re HealthSouth Corp. S'holders Litig.,*

13
   845 A.2d 1096 (Del. Ch. 2003) ..........................................................................10

14
*In re VeriFone Sec. Litig.,*

15
   11 F.3d 865 (9th Cir. 1993) ..................................................................................2

16
*In re Worlds of Wonder Sec. Litig.,*

17
   35 F.3d 1407 (9th Cir. 1994) ................................................................................9

18
*Kane v. Madge Networks N.V.,*
   No. C-96-20652-RMW, 2000 U.S. Dist LEXIS 19984

19
   (N.D. Cal. May 26, 2000) ....................................................................................3

20
*Prince v. Bensinger,*

21
   244 A.2d 89 (Del. Ch. 1968) ........................................................................10, 11

22
*Steckman v. Hart Brewing, Inc.,*

23
   143 F.3d 1293 (9th Cir. 1998) ..............................................................................6

24
STATUTES AND RULES

25
15 U.S.C. § 77k...........................................................................................................9

26
Del. Code Ann. tit. 8, § 141(e)..............................................................................9, 10

27
Federal Rule of Civil Procedure 8 .......................................................................2, 12
28

**INTRODUCTION**

Eleven former outside directors of Countrywide Financial Corporation (the "Outside Directors")[1] move to dismiss the claims asserted against them in Count I and the accounting-related claims asserted against them in Counts IV and VII of the Second Consolidated Amended Class Action Complaint ("SAC").

The Outside Directors served on the Countrywide Board at various times during the Class Period.[2] The SAC does not allege that any Outside Director was an officer or employee of Countrywide, participated in the conduct that allegedly caused certain of Countrywide's SEC filings to be false or misleading, or was even aware of such conduct occurring. All claims against the Outside Directors are for violation of Section 11 of the Securities Act for signing registration statements that allegedly contained material misrepresentations.

The claims asserted against the Outside Directors in Count I of the SAC (which are the only claims asserted against Outside Director Gwendolyn King) should be dismissed on two independent grounds. First, Plaintiffs have not

---

[1] The Outside Directors are Henry Cisneros, Jeff Cunningham, Robert Donato, Ben M. Enis, Edwin Heller, Gwendolyn S. King, Martin Melone, Robert Parry, Oscar Robertson, Keith Russell and Harley Snyder. Two other former outside directors of Countrywide, Michael Dougherty and Kathleen Brown, are separately represented.

[2] Some Outside Directors joined or left the Countrywide Board during the Class Period; as a result, not all the Outside Directors signed all the shelf registration statements at issue in the SAC. Ms. King retired from the Board in 2004 and did not sign the shelf registration statements at issue in Counts IV and VII of the SAC – the Series B Medium-Term Notes Registration Statement, the 6.25% Subordinated Notes Registration Statement, or the 7% Capital Securities Registration Statement. (SAC ¶¶ 43, 935, 941, 947.) Mr. Parry joined the Board in late 2004 and did not sign the shelf registration statement at issue in Count I of the SAC – the Series A Medium-Term Notes Registration Statement. (*Id.* ¶¶ 46, 930.) Mr. Heller and Mr. Enis retired from the Board in June 2006 and did not sign the shelf registration statement at issue in Count VII – the 7% Capital Securities Registration Statement. (*Id.* ¶¶ 39, 42, 947.) Mr. Cisneros resigned from the Board on October 24, 2007. (*Id.* ¶ 35.)

1  adequately alleged that Countrywide's 2003 Form 10-K, incorporated by reference

2  into the Series A Medium-Term Notes Registration Statement at issue in Count I,

3  contained a material misrepresentation.  Second, these claims are time barred.

4      The Court should also dismiss all claims against the Outside Directors in

5  Counts IV and VII arising out of accounting-related statements on two independent

6  grounds:  First, Plaintiffs have not adequately alleged that Countrywide's financial

7  statements were prepared in violation of GAAP; second, Plaintiffs have not pled

8  facts establishing that the Outside Directors' reliance on Countrywide's

9  management and its independent auditor, KPMG, was unreasonable.

10                              **ARGUMENT**

11     Federal Rule of Civil Procedure 8 requires that a complaint allege "facts,"

12  not "labels and conclusions."  *Bell Atlantic Corp. v. Twombly*, 530 U.S. 544,

13  127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also In re VeriFone Sec.*

14  *Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and

15  unwarranted inferences are insufficient to defeat a motion to dismiss for failure to

16  state a claim.").  To state a claim under Section 11, Plaintiffs must plead facts

17  sufficient to establish that the registration statement at issue contained a material

18  misrepresentation.  *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 613

19  (S.D.N.Y. 2008) (dismissing Section 11 claim under Rule 12(b)(6) where plaintiffs

20  alleged the issuer was "'experiencing an increase'" in attrition, but failed to plead

21  supporting facts, citing *Twombly*).  These facts must be sufficient to carry the

22  plaintiff across "the line between possibility and plausibility of 'entitlement to

23  relief.'"  *Twombly*, 127 S. Ct. at 1966.

24     For the reasons discussed below, the SAC's allegations regarding statements

25  made in Countrywide's 2003 Form 10-K and the SAC's allegations that the Outside

26  Directors were "negligent" in relying on management and KPMG do not meet this

27  standard.

28

OUTSIDE DIRS.' MOTION TO DISMISS & MPA
MASTER FILE NO. CV-07-5295-MRP(MANx)

sf-2631469

I.   **THE CLAIMS ASSERTED AGAINST THE OUTSIDE DIRECTORS IN COUNT I SHOULD BE DISMISSED.**

A.   **Plaintiffs Fail to Allege Facts Showing that Countrywide's 2003 Annual Report on Form 10-K Contained an Actionable Misrepresentation.**

In Count I, Plaintiffs allege that Countrywide's Series A Medium-Term Notes Registration Statement incorporated allegedly false and misleading statements from the Company's 2003 annual report on Form 10-K (the "2003 10-K"). (SAC ¶¶ 606-612, 1107.) Plaintiffs allege that the 2003 10-K contains two categories of misrepresentations.[3]

The first category concerns loan quality. Plaintiffs allege that the following statements were false: that Countrywide was "consistently producing quality mortgages" (*id.* ¶ 610); that it had a "major focus on ensuring the quality of [its] mortgage loan production" (*id.*); that it "managed [its] credit risk by producing high quality loans" (*id.* ¶ 611); and that its "loan origination standards and procedures are designed to produce high quality loans" (*id.*).

The second category of misrepresentations concerns Countrywide's categorization of loans as "prime" or "subprime." (*Id.* ¶¶ 607, 608, 609.) Specifically, Plaintiffs allege that Countrywide misclassified as "prime" (1) some of

_____

[3] A third category consists of the "Sarbanes Oxley" certifications signed by CEO Angelo Mozilo and CFO Thomas K. McLaughlin, which stated that the 2003 10-K did not "contain any untrue statement of a material fact." (SAC ¶ 612.) These statements are not alleged to be independently false. In any event, the Outside Directors cannot be liable for statements that another person has expressly characterized as his or her own. *Cf. In re Harmonic, Inc., Sec. Litig.*, Case No. C 00-2287-PJH, 2006 U.S. Dist. LEXIS 90450, at *48-49 (N.D. Cal. Dec. 11, 2006) (holding merger partner's statement in proxy was not attributable to other company's directors); *see also Kane v. Madge Networks N.V.*, No. C-96-20652-RMW, 2000 U.S. Dist LEXIS 19984, at *39-40 (N.D. Cal. May 26, 2000). For these same reasons, no liability attaches to the Outside Directors for the auditor attestations. (SAC ¶¶ 690, 792 (attestations).) Moreover, these statements are "accounting-related" and fail for the same reasons that the accounting claims fail. *See* Omnibus Order at 64, 68-69 (dismissing accounting-related claims for FY 2003, FY 2004, and FY 2005); *see also infra* § II.

1   the loans Countrywide originated during 2003 (*id.* ¶¶ 607, 608), and (2) some of the

2   loans Countrywide was holding for investment as of December 31, 2003 (*id.* ¶ 609).

3        As discussed below, both the "high quality" and the "prime" allegations are

4   not actionable on two related grounds.  First, the SAC does not plead that these

5   statements were inconsistent with facts existing during fiscal year 2003.  Second,

6   such vague and undefined statements are immaterial as a matter of law and do not

7   come within the exception the Court identified for vague statements that depart to

8   an extreme degree from the alleged true facts.

9             **1.    Plaintiffs do not allege contemporaneous facts inconsistent
                    with statements in Countrywide's 2003 10-K that loans were
10                   "high quality" or "prime."**

11       The SAC does not allege facts concerning Countrywide's operations in fiscal

12  year 2003 that are inconsistent with the statements about "high quality" and

13  "prime" loans in the 2003 10-K.[4]  Instead, the SAC makes numerous allegations

14  about Countrywide's operations during the "Class Period."  Allegations about Class

15  Period events, however, cannot show the falsity of the 2003 10-K, because the

16  Class Period begins on March 12, 2004 – nearly three months *after* the end of the

17  fiscal year that was the subject of Countrywide's 2003 10-K.  (SAC ¶¶ 1, 606.)

18       In the section of the SAC listing allegedly false statements (SAC ¶¶ 606-

19  928), Plaintiffs assert that the statements in the 2003 10-K concerning loan quality

20  are "false and misleading because Countrywide loosened its underwriting

21  guidelines *over the Class Period* to increase loan volume without regard to loan

22  quality."  (*Id.* ¶ 614 (emphasis added); *see also*, *e.g.*, *id.* ¶¶ 158, 221, 245.)

23  Similarly, to support their allegation that Countrywide misclassified loans as

24  "prime," Plaintiffs rely exclusively on allegations about Class Period events.

25  _____

26       [4] The distinction between the 2003 10-K and the other allegedly false
    statements – all made at later times – was not addressed in the prior round of
27  motions to dismiss.  Ms. King and the other Outside Directors were not separately
    represented at that time.

28

OUTSIDE DIRS.' MOTION TO DISMISS & MPA
MASTER FILE NO. CV-07-5295-MRP(MANx)

sf-2631469

1    (*Id.* ¶¶ 607-609, 614 (citing SAC ¶¶ 220-244).)  Indeed, the SAC alleges that

2    Countrywide employed its own "internal, undisclosed definition" of "prime" to

3    "conceal" the deterioration in loan quality that allegedly occurred *during the Class*

4    *period*.  (*See*, *e.g.*, *id.* ¶¶ 5-6.)  The earliest factual allegation offered in support of

5    the "internal definition" allegation is from *October 2005*.  (*See*, *e.g.*, SAC ¶ 231

6    (alleging "October 2005 'DLO Matrix' . . . supports . . . witness accounts"); *see*

7    *also id.* ¶¶ 220-30, 232-44, 181 (earliest factual allegations date to October 2005).)

8        To support their theory that loan quality deteriorated during the Class Period,

9    Plaintiffs contrast Countrywide's Class-Period practices with its practices in 2003,

10   when Countrywide had (according to Plaintiffs) "materially more conservative"

11   underwriting practices in place.  (SAC ¶ 1084.)  For example, Plaintiffs themselves

12   allege that "it would have been impossible for CLD [the Correspondent Lending

13   Division] to grow its business in the way Countrywide headquarters wanted had

14   Countrywide continued to use the Underwriting Matrices and guidelines in place in

15   2003."  (*Id.* ¶ 152.)

16       In those instances where Plaintiffs allege the date or time period of an

17   allegedly significant change in underwriting, loan quality or loan classification,

18   those dates or time periods are *after* 2003.  In particular, Plaintiffs allege facts about

19   an "Exception Processing System" supposedly used to approve loans that "'violated

20   the rules.'"  (SAC ¶ 182.)  According to Plaintiffs, this system did not even exist in

21   2003 and was rolled out only in late 2004 or early 2005.  (*Id.* ¶ 186.)  And,

22   Plaintiffs allege an increase in loan amounts to "lower quality" borrowers during

23   the Class Period, but allege that the increase became significant only in March

24   2006.  (*See*, *e.g.*, *id.* ¶ 144; *see also id.* ¶¶ 139-150 (discussing gradual relaxing of

25   lending standards).)

26       This Court recognized the critical temporal aspect of Plaintiffs' theory when

27   it dismissed claims based on the financial statements contained in the 2003 10-K

28   with prejudice.  Omnibus Order at 36.  In support of its dismissal, the Court

5

1   explained that "the most egregious departures from sound underwriting are not

2   alleged to have occurred until *after* GT completed its work in February 2004."

3   Omnibus Order at 34 (emphasis added).

4        The Court also noted that, while Plaintiffs made conclusory allegations that

5   changes were occurring at Countrywide as early as mid-2003, the supporting facts

6   went back only to December 2003.  Omnibus Order at 35 n.33 (*citing* CAC ¶¶ 128,

7   131, now SAC ¶¶ 132, 135, respectively.)  These December allegations consist of a

8   December 4, 2003 e-mail stating that CLD's "recently released new guidelines"

9   were designed to eliminate the need for a separate exception process (SAC ¶ 132),

10  and a December 22, 2003 matrix for CLD that showed changes in its subprime

11  underwriting practices (*id.* ¶¶ 135-37).  Neither of these documents, dated just days

12  before the end of the fiscal year, demonstrates a material change in the overall

13  quality of Countrywide's loans or underwriting practices for fiscal year 2003.

14  Moreover, both documents relate only to "subprime" lending and neither purports

15  to reflect or change Countrywide's classification of its "prime" and "subprime"

16  loans.

17       In dismissing all claims against Grant Thornton *with prejudice*, the Court

18  necessarily determined that Plaintiffs could plead no set of facts, consistent with the

19  theory of their complaint, establishing that Countrywide's 2003 financial statements

20  were materially false.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298

21  (9th Cir. 1998) (affirming dismissal with prejudice where amendment "would be an

22  exercise in futility").  The same is true with respect to the non-accounting

23  allegations in the 2003 10-K.  At best, Plaintiffs' allegations suggest that

24  Countrywide's subprime guidelines began to expand in December 2003 – this

25  allegation falls far short of making out a plausible case that Countrywide's 2003

26  loans were not, in the aggregate, "high quality" or that Countrywide misclassified

27  subprime loans as prime in 2003.

28

6

1

2

      **2.     The terms "high quality" and "prime," as used to describe fiscal year 2003 operations, are not actionable.**

3

4

5

6

7

8

     As the Court recognized in its Omnibus Order, "descriptions such as 'high quality' are generally not actionable; they are vague and subjective puffery not capable of being material as a matter of law." Omnibus Order at 6.  The Court declined to follow the puffery rule here, however, ruling that "the CAC adequately allege[d] that Countrywide's practices so departed from its public statements that even 'high quality' became materially false or misleading . . . ." *Id.*

9

10

11

12

13

14

15

16

17

     This reasoning does not apply to the 2003 10-K.  As discussed above, the SAC alleges that the quality of Countrywide's loans deteriorated *during the Class Period*, after the 2003 10-K was filed.  And Plaintiffs' attack on the use of the term "prime" – which has no clearly defined meaning – depends on their allegation that Countrywide changed its internal definition of this term *during the Class Period*. (*See, e.g.*, SAC ¶¶ 221, 229-30, 239.)  The standard rule in the Ninth Circuit that vague and subjective labels such as "high quality" or "prime" cannot constitute a material misrepresentation actionable under the federal securities laws, therefore, applies to the statements in the 2003 10-K.

18

19

20

21

22

     For all the reasons stated above, the Court should dismiss all claims against the Outside Directors asserted in Count I, with prejudice.  Outside Director Gwendolyn S. King, who retired from the Countrywide Board in 2004 (SAC ¶ 43) and is named only in Count I, should be dismissed from the case altogether, with prejudice.

23

24

     **B.     The Claims Asserted Against the Outside Directors in Count I Are Time Barred.**

25

26

27

28

     The Outside Directors join Thomas K. McLaughlin's motion to dismiss the claims asserted against them in Count I of the SAC on the ground that these claims are barred by the three-year statute of repose.  As McLaughlin's motion demonstrates, this statute began to run against the individual defendants (as

7

sf-2631469

1  opposed to Countrywide and the Underwriters) in April 2004, when the registration

2  statement at issue in Count I became effective.  Seven of the Outside Directors

3  named in Count I were first named as defendants in this action on September 19,

4  2007; the others were first named on January 25, 2008.  (Lobdell Decl., ¶¶ 1-2; *see*

5  Complaint, *McBride, et al. v. Countrywide Financial Corporation, et al.*, Case No.

6  CV-07-06083 (Lobdell Decl., Ex. A); Complaint, *New York City Employees'*

7  *Retirement System, et al. v. Countrywide Financial Corporation, et al.*, Case No.

8  CV-08-00492 (Lobdell Decl., Ex. B) (both cases consolidated with this action by

9  this Court's March 28, 2008 Order).)  These claims are, therefore, barred.  (*See*

10  McLaughlin Motion, § III(C).)

11  **II.    ALL ACCOUNTING-RELATED CLAIMS AGAINST THE OUTSIDE**
12  **DIRECTORS SHOULD BE DISMISSED.**

13      **A.    Plaintiffs Do Not Plead Facts Showing a GAAP Violation.**

14      Plaintiffs have attempted to fix the defects that led this Court to dismiss

15  accounting-related claims concerning fiscal years 2004 and 2005.  Countrywide's

16  and KPMG's motions to dismiss demonstrate that Plaintiffs still have not alleged

17  facts showing a GAAP violation in those years, and that new facts alleged in the

18  SAC expose the deficiency of Plaintiffs' allegations concerning fiscal year 2006 as

19  well.  For the reasons set out in those motions, all accounting-related claims against

20  all defendants should be dismissed, including the claims asserted against the

21  Outside Directors in Counts IV and VII of the SAC.

22      **B.    Plaintiffs Do Not Plead Facts Showing the Outside**
23  **Directors' Reliance on Management and KPMG Was Unreasonable.**

24      All accounting-related claims asserted against the Outside Directors in

25  Counts IV and VII should also be dismissed for the additional reason that the facts

26  pled in the SAC fail to show that the Outside Directors' reliance on Countrywide's

27  management and KPMG was unreasonable.  This Court previously dismissed all

28  fiscal year 2006 accounting-related claims against the Underwriters on this "due

OUTSIDE DIRS.' MOTION TO DISMISS & MPA
MASTER FILE NO. CV-07-5295-MRP(MANx)

sf-2631469

1  diligence" ground.  Omnibus Order at 70-71.  The Underwriter Defendants' motion

2  demonstrates that the reasoning underlying this dismissal applies equally to the

3  fiscal year 2004 and 2005 accounting-related claims.  The "due diligence" defense

4  on which the Underwriters rely is equally available to the Outside Directors.  *See*

5  15 U.S.C. § 77k(b)(3) (due diligence defense available to all defendants "other than

6  the issuer"); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994)

7  (defense available to directors, officers, and underwriters).  For the reasons stated in

8  the Underwriters' motion, therefore, all accounting-related claims against the

9  Outside Directors should be dismissed.

10  Plaintiffs do not allege the Outside Directors participated in (or were even

11  aware of) the operational practices and accounting judgments that allegedly

12  rendered Countrywide's financial statements misleading.  Plaintiffs fault members

13  of management – not the Board – for these alleged practices.  Indeed, in the

14  hundreds of pages recounting emails, memoranda, meetings, conference calls,

15  matrices, policies, procedures, accounts, reserves, exceptions and other Class

16  Period conduct, the SAC does not refer to any Outside Director even once.

17  The absence of allegations against the Outside Directors is not surprising.  As

18  the SAC demonstrates (*see*, *e.g.*, SAC ¶¶ 75-79, 270-389, 538-560), and the

19  Omnibus Order recognizes (Omnibus Order at 32, 61 n.56), Countrywide's

20  operations were vast, and accounting for them was a complex task requiring the

21  gathering and processing of huge amounts of information and the application of

22  expert accounting judgments to that information.  The Outside Directors necessarily

23  and properly relied on management to prepare, and KPMG to audit, Countrywide's

24  financial statements.

25  Delaware law, which governs Delaware corporations, like Countrywide,

26  provides that outside directors may rely upon "information, opinions, reports or

27  statements presented to the corporation by any of the corporation's officers or

28  employees. . . ."  Del. Code Ann. tit. 8, § 141(e).  This includes the corporation's

OUTSIDE DIRS.' MOTION TO DISMISS & MPA
MASTER FILE NO. CV-07-5295-MRP(MANx)

sf-2631469

1    CEO, CFO and accounting department.  *See In re HealthSouth Corp. S'holders*
2    *Litig.*, 845 A.2d 1096, 1106-07 (Del. Ch. 2003) (holding that the "board of directors
3    was entitled to rely upon [the CEO] and his management team, particularly in the
4    preparation of the company's financial statements, an area in which management
5    has traditionally been preeminent"); *Prince v. Bensinger*, 244 A.2d 89, 94
6    (Del. Ch. 1968) (holding that directors properly relied on company books,
7    accounting department, and outside auditors).  Directors may also rely upon "any
8    other person as to matters the member reasonably believes are within such other
9    person's professional or expert competence and who has been selected with
10   reasonable care by or on behalf of the corporation."  Del. Code Ann. tit. 8, § 141(e).
11   This includes independent outside auditors like KPMG.  *See Ash v. McCall*,
12   No. 17132, 2000 Del. Ch. LEXIS 144, at *30-32 (Del. Ch. Sept. 15, 2000) (holding
13   that board properly relied on representations of outside accounting firm); *Prince*,
14   244 A.2d at 94 (same).

15          The facts alleged in the SAC do not show any instance during the Class
16   Period in which such reliance by any Outside Director was unreasonable; indeed,
17   they show the opposite.  Year after year, management certified that the Company's
18   financial statements fairly presented the financial condition of the Company; year
19   after year, management certified that the company had in place proper internal
20   procedures and controls; and year after year, the Company's external auditors – first
21   Grant Thornton and then KPMG – certified that the Company's financial
22   statements presented fairly, in all material respects, the financial position of
23   Countrywide.

24          As Plaintiffs allege, Countrywide's CEO and CFO provided "Sarbanes-
25   Oxley" certifications, such as in the Forms 10-K and 10-Q that are listed in Counts
26   IV and VII.  (SAC ¶¶ 691, 716, 753, 773, 793, 818, 840.)  In these certifications,
27   the CEO and CFO affirmed that the Forms 10-K and 10-Q did not "contain any
28   untrue statement of a material fact," and that "the financial statements, and other

OUTSIDE DIRS.' MOTION TO DISMISS & MPA
MASTER FILE NO. CV-07-5295-MRP(MANx)

sf-2631469

financial information included in [the Forms 10-K], fairly present in all material

respects the financial condition" of Countrywide.  (*Id.*)  The CEO and CFO further

certified that they were responsible for "establishing and maintaining disclosure

controls and procedures . . . and internal control over financial reporting," and that

those controls were designed "to provide reasonable assurance regarding the

reliability of financial reporting and the preparation of financial statements for

external purposes in accordance with generally accepted accounting principles[.]"

(*See*, *e.g.*, 2005 10-K, Ex. 31.1 (Lobdell Decl., Ex. I); *see also* Lobdell Decl.,

Exs. C-G, J-K.)

In the annual reports on Form 10-K that underlie Counts IV and VII, KPMG

affirmed:

> [i]n our opinion, the consolidated financial statements
> referred to above present fairly, in all material respects,
> the financial position of Countrywide . . . and the results
> of their operations and their cash flows . . . . Also in our
> opinion, the related financial statement schedules, when
> considered in relation to the basic consolidated financial
> statements taken as a whole, present fairly, in all material
> respects, the information set forth therein.

(2004 Form 10-K at F-2 (Lobdell Decl., Ex. D); 2005 Form 10-K at F-2

(Lobdell Decl., Ex. I).)[5]  KPMG consented to the incorporation of those opinions

into the registration statements that are the subject of Counts IV and VII.  (2/9/2006

Form S-3ASR, Ex. 23.1 (Lobdell Decl., Ex. H); 10/30/2006 Post-Effective

Amendment to 2/9/2006 Form S-3ASR, Ex. 23.1 (Lobdell Decl., Ex. L).)  These

registration statements state that Countrywide's 2004 and 2005 Forms 10-K were

incorporated into those documents "upon the authority" of KPMG as "experts in

accounting and auditing."  (2/9/2006 Form S-3ASR at 22 (Lobdell Decl., Ex. H);

---

[5] The 2004 Form 10-K was incorporated by reference into the Series B
Medium-Term Notes and 6.25% Subordinated Notes Registration Statement (Count
IV), and the 2005 Form 10-K was incorporated by reference into the 7% Capital
Securities Registration Statement (Count VII).  (SAC ¶¶ 936, 942, 948.)

1  10/30/2006 Post-Effective Amendment to 2/9/2006 Form S-3ASR at 26 (Lobdell
2  Decl., Ex. L).)

3        Not only did KPMG provide its expert opinion that Countrywide's financial
4  statements fairly presented its financial position, KPMG also audited the
5  effectiveness of the Company's internal controls over financial reporting, and either
6  identified specific material weaknesses (in 2004) or provided an unqualified
7  opinion on the effective operation of internal controls (in 2005).  (2004 Form 10-K
8  at 93-94 (Lobdell Decl., Ex. D); 2005 Form 10-K at 110-11 (Lobdell Decl., Ex. I).)

9        In the face of these facts showing that the Outside Directors' reliance on
10  management and KPMG was reasonable and necessary, Plaintiffs allege only, in
11  conclusory language, that the Outside Directors were "negligent" in doing so.
12  (SAC ¶¶ 1112, 1151, 1192.)  Parroting a legal conclusion is not sufficient to state a
13  claim under Rule 8.  *See Twombly*, 127 S. Ct. at 1965 & n.3 (Rule 8 requires a
14  "'showing,' rather than a blanket assertion, of entitlement to relief").  But Plaintiffs
15  offer nothing more.

16        For these reasons, which are plain on the face of the SAC and the SEC filings
17  it cites, and for the reasons stated by the Underwriters in their Motion to Dismiss,
18  the Court should dismiss all accounting-related claims asserted against the Outside
19  Directors in Counts IV and VII.

20
21
22
23
24
25
26
27
28

OUTSIDE DIRS.' MOTION TO DISMISS & MPA
MASTER FILE NO. CV-07-5295-MRP(MANx)

sf-2631469

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, and the reasons stated in the other defendants' motions to dismiss, the Outside Directors respectfully request that the Court dismiss Count I with prejudice and dismiss the accounting-related claims against them in Counts IV and VII with prejudice.

Dated:      February 6, 2009                    MORRISON & FOERSTER LLP

By:/s/ Jordan Eth
_____
      Jordan Eth

Attorneys for Defendants HENRY
CISNEROS, JEFF CUNNINGHAM,
ROBERT DONATO, BEN M. ENIS,
EDWIN HELLER, GWENDOLYN S.
KING, MARTIN MELONE, ROBERT
PARRY, OSCAR ROBERTSON,
KEITH RUSSELL and HARLEY
SNYDER

OUTSIDE DIRS.' MOTION TO DISMISS & MPA
MASTER FILE No. CV-07-5295-MRP(MANx)

sf-2631469