1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WILLIAM F. SULLIVAN (SB# 078353)
williamsullivan@paulhastings.com
THOMAS A. ZACCARO (SB# 183241)
thomaszaccaro@paulhastings.com
JOSHUA G. HAMILTON (SB# 199610)
joshuahamilton@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant
*Thomas K. McLaughlin*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Applies to:  All Actions | LEAD CASE NO.:  07-CV-05295-MRP (MANx)<br><br>**DEFENDANT THOMAS K. MCLAUGHLIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**[Notice of Motion and Motion to Dismiss and Request for Judicial Notice Filed and Served Concurrently Herewith]**<br><br>Date:      April 13, 2009<br>Time:      10:00 a.m.<br>Courtroom:  12<br>Judge:     Hon. Mariana R. Pfaelzer |

1

# TABLE OF CONTENTS

2

**Page**

3

4    I.     PRELIMINARY STATEMENT ...................................................................4

      II.    FACTUAL AND PROCEDURAL BACKGROUND...................................5
5
             A.     Relevant Procedural Background..............................................5
6
             B.     Allegations Relating to Mr. McLaughlin ...................................7
7
                    1.     Count I for Alleged Violation of Section 11 of the
                           Securities Act ................................................................7
8
                    2.     Count III for Alleged Violation of Section 15 of the
9                          Securities Act ................................................................8

10                  3.     Plaintiffs' allegations concerning 2003 are not actionable. .......9

      III.   THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 11
11           CLAIM BECAUSE IT IS BARRED BY THE STATUTE OF
             REPOSE.....................................................................................................10
12
             A.     Section 11 Claims Are Subject to Section 13 and the Statute of
13                  Repose ..........................................................................................11

             B.     Mr. McLaughlin Was Not a Defendant in this Case Until
14                  April 11, 2008 And Thus Must Be Dismissed...................................12

             C.     Count I Should Be Dismissed Because the Three-Year Period of
15                  Repose for Mr. McLaughlin Begins on the Effective Date of the
                    Initial Shelf Registration Statement ..........................................12
16
                    1.     For the purposes of Section 11 liability, unlike for issuers
                           and underwriters, a supplemental prospectus does not
17                         extend the effective date of a shelf registration for officers
                           and directors ..................................................................13
18
                    2.     The face of the SAC demonstrates that Plaintiffs' Section
19                         11 claim against Mr. McLaughlin is barred by the statute
                           of repose ........................................................................15

20    IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL
             PERSON LIABILITY AGAINST MR. MCLAUGHLIN ...........................16
21
      V.     THE COURT SHOULD DISMISS ALL CLAIMS AGAINST MR.
22           MCLAUGHLIN WITH PREJUDICE .........................................................19

      VI.    CONCLUSION ........................................................................................20

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. City of Beverly Hills,*
911 F.2d 367 (9th Cir. 1990) ................................................................ 16

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007) ...................................................... 7

*Brown v. Enstar Group, Inc.,*
84 F.3d 393 (11th Cir. 1996) .............................................................. 14

*Burgess v. Premier Corp.,*
727 F.2d 826 (9th Cir. 1984) .............................................................. 14

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005) ........................................................................ 16

*Christoffel v. E.F. Hutton & Co., Inc.,*
588 F.2d 665 (9th Cir. 1978) .............................................................. 13

*Durham v. Kelly,*
810 F.2d 1500 (9th Cir. 1987) ............................................................ 13

*Finkel v. Stratton Corp.,*
962 F.2d 169 (2d Cir. 1992) ................................................................ 9

*Hertzberg v. Dignity Partners, Inc.,*
191 F.3d 1076 (9th Cir. 1999) .............................................................. 8

*In re Broderbund/Learning Co. Sec. Litig.,*
294 F.3d 1201 (9th Cir. 2002) ............................................................ 15

*In re Digi Intern., Inc. Sec. Litig.,*
6 F. Supp. 2d 1089 (D. Minn. 1998) ...................................................... 14

*In re GlenFed, Inc. Sec. Litigation,*
60 F.3d 591 (9th Cir. 1995) .............................................................. 13

*In re Immune Response Sec. Litig.,*
375 F. Supp. 2d 983 (S.D. Cal. 2005) ...................................................... 8

*In re Infonet Services Corp. Sec. Litig.,*
310 F. Supp. 2d 1106 (C.D. Cal. 2003) ...................................................... 8

*In re Metropo. Sec. Litig.,*
532 F. Supp. 2d 1260 (E.D. Wash. 2007) ........................................ 8, 9, 10, 17

*In re Mutual Funds Inv. Litig.,*
384 F. Supp. 2d 845 (D. Md. 2005) ...................................................... 15

i

1

## TABLE OF AUTHORITIES (cont.)

2

Page

3

*Iqbal v. Hasty*,
  490 F.3d 143 (2d Cir. 2007) .................................................................. 7

4

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ................................................................ 7

5

6

*Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc.*,
  32 F.3d 697 (2d Cir. 1994) .................................................................... 8

7

*Louisiana-Pacific Corp. v. ASARCO, Inc.*,
  5 F.3d 431 (9th Cir. 1993) ..................................................................... 9

8

9

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004) ................................................................. 8, 9

10

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .......................................................... 17, 19

11

12

*S.E.C. v. Seaboard Corp.*,
  677 F.2d 1301 (9th Cir. 1982) ............................................................... 8

13

*Mitan v. Feeney*,
  497 F. Supp. 2d 1113 (C.D. Cal. 2007) ................................................ 7

14

15

*Toombs v. Leone*,
  777 F.2d 465 (9th Cir. 1985) ................................................................ 8

16

### STATUTES

17

15 U.S.C. § 77m ................................................................................... 1, 8

18

### OTHER AUTHORITIES

19

Securities Offering Reform,
  Securities Act Release No. 8591, Exchange Act Release
  No. 52,056, 70 Fed. Reg. 44,722 (Aug. 3, 2005) .......................... 1, 12

20

### RULES

21

Fed. R. Civ. P. 12(b)(6) ..................................................................... 7, 14

22

Fed. R. Civ. P. 8(a)(2) ....................................................................... 7, 15

23

### REGULATIONS

24

17 C.F.R. § 230.430B (2005) ............................................................ 5, 11

25

17 C.F.R. § 230.430B(f)(2) (2005) ................................................. 10, 12

26

17 C.F.R. § 230.430B(f)(4) ...................................................................... 2

27

17 C.F.R. § 230.430B(f)(4)(ii) (2005) ............................................... 2, 11

28

1

## TABLE OF AUTHORITIES (cont.)

2

**Page**

3    17 C.F.R. § 230.430B(f)(5)(i) (2005)....................................................................... 12

4    17 C.F.R. § 230.430B(f)(5)(ii) (2005) ................................................................ 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    PRELIMINARY STATEMENT

Defendant Thomas K. McLaughlin brings this motion to dismiss on the grounds that, under Section 13 of the Securities Act of 1933 (the "Securities Act"), the claims against him in the Second Consolidated Amended Class Action Complaint ("SAC") are barred by the absolute three-year statute of repose for claims brought under Section 11 of the Securities Act. *See* 15 U.S.C. § 77m ("In no event shall any action be brought to enforce a liability created under [Section 11] **more than three years after** the security was bona fide offered to the public . . . .") (emphasis added). The face of the SAC reveals that Plaintiffs' Section 11 claim is barred by the three-year statute of repose and must be dismissed, with prejudice.

Mr. McLaughlin, the former Chief Financial Officer ("CFO") of Countrywide Financial Corporation ("Countrywide"), resigned from Countrywide effective April 1, 2005 (SAC ¶ 44), and was not named as a defendant in this action until April 11, 2008 when the Consolidated Amended Class Action Complaint ("CAC") was filed. He is named in only two counts in the SAC – Count 1 for violation of Section 11 based on Countrywide's offering of Series A Medium-Term Notes "offered and sold pursuant to a shelf registration" on April 7, 2004 (SAC ¶¶ 930, 1101-03) and Count III for control person liability under Section 15 of the Securities Act based on the same offering. (SAC ¶ 1131.)

Under the Securities Offering Reform of 2005, the three-year statute of repose begins at the effective date of the initial registration statement, **and the filing of a supplemental prospectus "will not create a new effective date for directors or signing officers**." Securities Offering Reform, Securities Act Release No. 8591, Exchange Act Release No. 52,056, 70 Fed. Reg. 44,722, 44,774 (Aug. 3, 2005) ("Securities Offering Reform Release")[1] (RJN, Ex. 28 at 107) (emphasis added); *see also* Securities Offering Reform, 17 C.F.R. § 230.430B(f)(4)(ii) (2005).

---

[1] A true and correct copy of relevant portions of the Securities Offering Reform Release are attached to Thomas K. McLaughlin's Request for Judicial Notice ("RJN") filed and served concurrently herewith.

4

MEMO. OF POINTS & AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS
07-CV-05295-MRP (MANx)

1   Plaintiffs allege that the Series A Medium-Term Notes were "offered and sold

2   pursuant to a shelf-registration statement on Form S-3 and prospectus, dated April 7

3   and April 21, 2004" (SAC ¶ 930) and that on February 7, 2005, Countrywide

4   "commenced" a public offering of the Series A Medium Term Notes.  (SAC ¶ 929.)

5   Under either date, the statute of repose bars Plaintiffs' Section 11 claim against

6   Mr. McLaughlin, requiring dismissal.[2]

7       Plaintiffs also assert a claim against Mr. McLaughlin as a "control person"

8   under Section 15 of the Securities Act based on the same Series A Medium-Term

9   Notes.  As Plaintiffs acknowledge in the SAC, Mr. McLaughlin resigned from

10  Countrywide effective April 1, 2005, and thus could not control any activities at

11  Countrywide after that point.  (SAC ¶ 44.)  In addition, Plaintiffs cannot allege that

12  they suffered any injury under Section 11 or 12(a)(2) based on any Series A

13  Medium-Term notes offered for sale by Countrywide while Mr. McLaughlin was

14  the CFO.  Consequently, Plaintiffs' Section 15 claim against Mr. McLaughlin

15  should be dismissed.

16      In addition to moving on the statute of repose, Mr. McLaughlin also joins in

17  the Motions to Dismiss the SAC filed by Countrywide and the Outside Director

18  Defendants relating to arguments that apply to the deficiency in Plaintiffs'

19  allegations in Counts I and III of the SAC relating to the Series A Medium-Term

20  Notes.

21  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

22      **A.    Relevant Procedural Background**

23      Mr. McLaughlin, one of forty-four defendants targeted by Plaintiffs in their

24  sweeping SAC, was Countrywide's Executive Managing Director and Chief

25  Financial Officer beginning in 2004, and resigned effective April 1, 2005.  (SAC

26  _____

27  [2] Mr. McLauglin's statute of repose defense is unique to officers and directors
    because regulations governing shelf registrations, as are at issue here, provide
    different standards of liability for officers and directors than they do for issuers and
28  underwriters.  17 C.F.R. § 230.430B(f)(4).

MEMO. OF POINTS & AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS
07-CV-05295-MRP (MANx)

1   ¶ 44.)  He was not an officer of Countrywide during most of the alleged class

2   period in this case, March 12, 2004 through March 7, 2008 ("Class Period").  (*See*

3   *id.*, ¶ 1.)

4   On August 14, 2007, George Pappas, on behalf of himself and other

5   individuals, filed suit against Countrywide and several other individuals.  On

6   November 28, 2007, this Court consolidated the *Pappas* action with four other

7   cases.  On March 28, 2008, this Court further consolidated two more cases with the

8   original five cases previously consolidated.  Despite the number of cases filed,

9   Mr. McLaughlin was not named in this case until April 11, 2008, when Plaintiffs

10  filed their CAC, nearly eight months after the *Pappas* action was filed.[3]

11  On December 1, 2008, addressing six separate motions to dismiss, the Court

12  issued its Omnibus Order on Defendants' Motions to Dismiss the CAC ("Omnibus

13  Order"), granting in part and denying in part defendants' motions to dismiss and

14  granting Plaintiffs' leave to amend their CAC (Omnibus Order at 111-12.)  On

15  January 6, 2009, Plaintiffs filed their SAC, dropping Mr. McLauglin from two out

16  of the original four counts alleged against him in the CAC.  (SAC ¶¶ 1100-15,

17  1127-36.)  Out of thirteen counts asserted in the new and equally expansive SAC,

18  only Counts I and III are asserted against Mr. McLaughlin.  (*Id.*)  Count I, alleging

19  a violation of Section 11 of the Securities Act, and Count III, alleging a violation of

20  Section 15 of the Securities Act are both premised on the allegation that

21  Mr. McLaughlin signed a registration statement and prospectus filed with the

22  Securities and Exchange Commission ("SEC") on April 7, 2004 in connection with

23  the offering of Series A Medium-Term Notes.  (SAC ¶¶ 44, 1104.)  The Series A

24  Medium-Term Notes registration statement incorporated by reference

25  Countrywide's 2003 Form 10-K, which plaintiffs contend contained false

26  ───────────────

27  [3] In fact, Plaintiffs did not identify Mr. McLaughlin as a possible defendant in the
    case in the Stipulation Regarding Consolidation of Actions and Scheduling filed
    March 28, 2008, just two weeks before Plaintiffs' filed the CAC first naming
28  Mr. McLaughlin.  (*See* Docket No. 167.)

MEMO. OF POINTS & AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS
07-CV-05295-MRP (MANx)

1   representations.  (SAC ¶¶ 931-33.)

2       **B.    Allegations Relating to Mr. McLaughlin**

3       In its Omnibus Order, the Court pointed out that "the vast majority" of

4   Individual Defendants are not "alleged to have participated in the fraud" in the

5   CAC.  (Omnibus Order at 38.)  This is certainly true of Mr. McLaughlin, who

6   resigned from Countrywide effective April 1, 2005.  (SAC ¶ 44.)  Despite the lack

7   of any real temporal connection with the bulk of Plaintiffs' allegations, Plaintiffs

8   unnecessarily included him in the SAC.

9       **1.    Count I for Alleged Violation of Section 11 of the Securities**

10          **Act**

11      Count I of the SAC against Mr. McLaughlin is based on an offering of Series

12  A Medium-Term Notes.  (SAC ¶ 1102.)  The SAC groups a series of documents

13  following the April 7, 2004 shelf registration statement together and defines them

14  as "Series A Medium-Term Notes Prospectus" (SAC ¶ 930.), which are described

15  below:

16      •   Shelf Registration Statement (dated April 7, 2004):  Plaintiffs allege

17  that Mr. McLaughlin signed this initial shelf registration statement.  (SAC ¶ 930,

18  Ex. 1.)

19      •   Prospectus (dated April 21, 2004):  Plaintiffs allege that this

20  prospectus was included initially as one of the base prospectuses with the initial

21  shelf registration statement.  Mr. McLaughlin did not sign this prospectus, contrary

22  to Plaintiffs' allegation.  (*Id*.; RJN, Ex. 2.)

23      •   Prospectus Supplement (dated February 7, 2005):  Plaintiffs plead that

24  this is the date Countrywide "commenced" the public offering of Series A Medium-

25  Term Notes.  (SAC ¶ 929; RJN, Ex. 3.)

26      •   Prospectus Supplement (dated December 14, 2005):  Plaintiffs allege

27  that this prospectus supplement increased the size of the original offering of Series

28  A Medium-Term Notes from $8 billion to $8.627 billion.  (*Id*.; RJN, Ex. 4.)

1    •    <u>Free Writing Prospectus</u> (dated December 14, 2005):  This prospectus

2    supplement offered two separate types of notes:  (1) the 2yr Floating Rate Notes

3    due 2007 and (2) the 3yr Floating Rate Notes due 2008.  Both notes have already

4    matured.  (*Id*.; RJN, Ex. 5.)

5    •    <u>Pricing Supplements Nos. 1-18 & 20-24</u> (dated from March 16, 2005

6    to February 1, 2006):  The pricing supplements are also issued pursuant to the

7    initial shelf registration for the Series A Medium-Term Notes.  (*Id*.; RJN, Exs. 6-

8    27.)[4]

9        Plaintiffs indiscriminately lump all of these filings together and define them

10    as "Series A Medium-Term Notes Registration Statement."  (SAC ¶ 930.)[5]  The

11    shelf registration statement and prospectus filed on April 7 and 21, 2004 – and not

12    the subsequent prospectus supplements – establish the effective date as to

13    Mr. McLaughlin for the purpose of the statute of repose.  17 C.F.R.

14    § 230.430B(f)(4).   Under any circumstances, Plaintiffs allege that the offering

15    commenced on February 7, 2005, more than three years before Mr. McLaughlin

16    was named as a defendant in this case.  (SAC ¶ 929.)

17    **2.    Count III for Alleged Violation of Section 15 of the Securities Act**

18

19        Count III of the SAC alleges a violation of Section 15 of the Securities Act

20    against Mr. McLaughlin.[6]  (SAC ¶ 1128.)  The SAC alleges in conclusory fashion

21    that, because of his senior executive position, Mr. McLaughlin was a "controlling"

22    person responsible for the veracity of the information contained and incorporated

23

24    ---

[4] Pricing Supplement No. 11 offered Series M Medium-Term Notes rather than Series A Medium-Term Notes, which are not as issue here and is therefore irrelevant.  (RJN, Ex. 15.)  Moreover, a number of the pricing supplements for Series A Medium Term Notes, representing a significant percentage of the total offering amount, have already matured.

25

26    [5] Plaintiffs allege that "[t]he series A Medium-Term Notes Registration Statement expressly incorporated by reference Countrywide's Form 10-K Annual Report for the year ended December 31, 2003."  (SAC ¶ 931.)

27

28    [6] In addition to Mr. McLaughlin, Count III is alleged against Mr. Mozilo and Mr. Kurland.  (SAC ¶ 1128.)

8

by reference in the Series A Medium-Term Notes registration statement and prospectus. (SAC ¶¶ 1129-36.) Plaintiffs allege that Mr. McLaughlin was directly involved in Countrywide's day-to-day operations and possessed the power to influence and control, indirectly and directly, the content of the registration statement and prospectus, therefore making him liable for their allegedly false and misleading nature. (SAC ¶¶ 1131, 1132.) Plaintiffs, therefore, attempt to include Mr. McLaughlin as a "control person" for events that occurred after he resigned from Countrywide.

### 3. Plaintiffs' allegations concerning 2003 are not actionable.

As described in detail in the Motion to Dismiss brought by the Outside Director Defendants, which Mr. McLaughlin joins in part, Plaintiffs rely on allegations and events occurring **after** 2003 to support their allegations relating to statements made in the 2003 Form 10-K. Plaintiffs' allegations regarding 2003 are contained in paragraphs 606 through 616 in the SAC and are mainly twofold: (1) Countrywide made several misrepresentations because it misclassified subprime loans as prime; and (2) Countrywide's statements relating to its underwriting and loan origination practices were misleading. (SAC ¶¶ 606-16.) The allegations asserted against Mr. McLaughlin are lacking. Plaintiffs refer to an earlier section of the SAC, Section IV.D, to support the allegation that Countrywide misclassified subprime loans as prime loans in 2003. (SAC ¶ 614.) But Section IV.D fails to contain even a single statement alleging any fact that supports this allegation. (SAC ¶¶ 220-44.) In fact, within the entire section, there is only one reference to "2003," found in paragraph 228, which is a quote from Freddie Mac's "February 2003 public guidelines." Otherwise, every allegation in that section relates to 2004 and beyond, with a focus on 2007, in particular, leaving Plaintiffs' allegation relating to 2003 completely unsupported.

## III.   THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 11 CLAIM BECAUSE IT IS BARRED BY THE STATUTE OF REPOSE.

A complaint is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure where it is apparent on the face of the pleading that plaintiffs' claims are barred by the statute of limitations. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  Because the SAC clearly demonstrates that the three-year statute of repose articulated under Section 13 of the Securities Act has run as to Mr. McLaughlin, Plaintiffs' Section 11 claim against him should be dismissed with prejudice.

Plaintiffs also cannot state a claim under Rule 8(a)(2) of the Federal Rules of Civil Procedure.  In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007), the Supreme Court concluded that Rule 8(a)(2) requires that a complaint allege facts establishing that a claim is not merely conceivable, but actually plausible.  *Id*. at 1965.  Rule 8(a)(2) requires a plaintiff to plead "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim's elements.  *Id*. at 1964-65 (allegations of ambiguous behavior are not enough to properly state a claim).  Courts in the Ninth Circuit have also applied the "tougher plausibility" standard for Rule 8 pleading.  *See, e.g., Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1124 (C.D. Cal. 2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 155-57 (2d Cir. 2007) (noting that *Twombly* would apply where "massive discovery is likely to create unacceptable settlement pressures").  As set forth below, Plaintiffs' claims under Section 11 are time-barred against Mr. McLaughlin and Plaintiffs cannot establish a control person violation under Section 15.

10

1

2

### A.   Section 11 Claims Are Subject to Section 13 and the Statute of Repose.

3

4

Plaintiffs' Section 11 claim, arising from the offering of a Series A Medium-Term Notes, is governed by Section 13 of the Securities Act [7]  Under Section 13 of the Securities Act, (**"In no event** shall any action be brought to enforce a liability created under [Section 11] more than three years after the security was bona fide offered to the public . . . .")  15 U.S.C. § 77m (emphasis added).  Section 13 of the Securities Act requires a plaintiff to "affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations."  *Toombs v. Leone*, 777 F. 2d 465, 468 (9th Cir. 1985); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1115 (C.D. Cal. 2003).

5

6

7

8

9

10

11

12

The three-year time period under Section 13 operates as an absolute bar to ill-timed lawsuits and is not subject to equitable principles.  This statute of repose – unlike a statute of limitations – "is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit."  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004); *see also In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1281 (E.D. Wash. 2007).  "Therefore, a statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."  *Id.* at 102-03 (*citing Jackson Nat'l. Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 32 F. 3d 697, 704 (2d Cir. 1994) ("The three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation.")); *see S.E.C. v. Seaboard Corp.*, 677 F. 2d 1301, 1308 (9th Cir. 1982) ("[W]e believe the statutory language requires the conclusion that Congress meant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[7] Section 11 confers standing to sue on any person who purchases a security pursuant to a registration statement that misrepresents or omits a material fact. *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1077 (9th Cir. 1999); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1039 (S.D. Cal. 2005).

27

28

11

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 07-CV-05295-MRP (MANx)

1  the bar to be absolute."). Congress, spurred by the "fear that lingering liabilities

2  would disrupt normal business and facilitate false claims," passed the statute "to

3  provide an easily ascertainable and certain date for the quieting of litigation."

4  *P. Stolz*, 355 F.3d at 104-05.

5          **B.    Mr. McLaughlin Was Not a Defendant in this Case Until April 11,**
             **2008 And Thus Must Be Dismissed.**
6

7          When an amended pleading adds a new defendant to the action, the amended

8  pleading does not relate back to the filing of the original complaint unless the

9  defendant "should have known that, but for a mistake concerning identity, the

10 action would have been brought against it." *Louisiana-Pacific Corp. v. ASARCO,*

11 *Inc.*, 5 F. 3d 431, 434 (9th Cir. 1993). It is undisputed that Mr. McLaughlin did not

12 appear in the case prior to April 11, 2008 when he was named in the CAC.

13 Plaintiffs allege no facts, nor can they, that Mr. McLaughlin should have known

14 that he would be named in this case prior to the filing of the CAC. Consequently,

15 the relevant date for calculating the statute of repose for liability under Section 11 is

16 the date of the filing of the CAC – April 11, 2008.

17         **C.    Count I Should Be Dismissed Because the Three-Year Period of**
             **Repose for Mr. McLaughlin Begins on the Effective Date of the**
18            **Initial Shelf Registration Statement.**

19         The three-year period of repose starts to run when a security is "bona fide

20 offered to the public," which is generally on the effective date of the registration

21 statement for the security. *See In re Metro. Sec. Litig.*, 532 F. Supp. at 1281;

22 *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) ("[O]rdinarily, a security

23 is 'bona fide offered to the public' at the effective date of the registration

24 statement.") (citation omitted). The SEC has set forth specific rules for the

25 effective date of shelf registrations, which are at issue for the Series A Medium-

26 Term Notes. (*See* SAC ¶ 930.) For the purpose of imposing liability, the SEC has

27

28

                                          12

1  distinguished between issuers and underwriters, on one hand, and officers and

2  directors, on the other.

### 1.  For the purposes of Section 11 liability, unlike for issuers and underwriters, a supplemental prospectus does not extend the effective date of a shelf registration for officers and directors.

In a typical shelf registration, a company/issuer is permitted to file a

registration statement and sell the securities described therein at a later time.  *See In*

*re Metro. Sec. Litig.*, 532 F. Supp. at 1284.  The registration statement is generally

placed "on the shelf" for up to three years.  *Id.*  Each time a company decides to sell

the securities to the public, it can pull the registration off the shelf (a "takedown")

and sell a portion of the securities by filing a prospectus supplement with the

relevant price and terms.  The company may repeat this process and "offer the

securities on a continued and delayed basis."  *Id.*

While the Court briefly mentioned shelf registrations in its Omnibus Order, it

did not address an important distinction between (1) issuers and underwriters and

(2) officers and directors.  The Court stated in the Omnibus Order:

> [w]here there are continuous or serial offerings under a
> shelf registration … each new issuance requires amending
> the "registration statement" for the shelf registration,
> thereby creating a new "registration statement" for
> purposes of giving rise to § 11 liability while comporting
> with § 6(a).

(Omnibus Order at 41.)

The Court's Omnibus Order, therefore, only addressed the rule as it applies

to issuers and underwriters.  For issuers and underwriters **only**, each new

prospectus establishes a new "bona fide offering" for the securities issued therein

and, as a consequence, a new effective date "for purposes of liability under

section 11 of the Act …."  17 C.F.R. § 230.430B(f)(2) (2005).  The new effective

13

1   date for issuers and underwriters is the date a prospectus is deemed part of and

2   included in the registration statement.  *See* 17 C.F.R. § 230.430B (2005).

3       In contrast, for directors and officers who have signed a shelf registration

4   statement such as Mr. McLaughlin, the filing of a new prospectus does **not**

5   establish a new effective date for Section 11 liability purposes.  As stated clearly in

6   the Securities Offering Reform, for directors and officers who have signed a shelf

7   registration, the date of a new prospectus filing "shall **not** be an effective date ….";

8   instead, the effective date of the initial registration statement continues to control

9   for Section 11 liability purposes.  17 C.F.R. § 230.430B(f)(4)(ii) (2005) (emphasis

10  added).  The SEC has clearly articulated this difference in discussing Rule 430B:

11
12          Rule 430B also establishes a new effective date for a shelf

13          registration statement for Section 11 liability purposes

14          **only** for the issuer and for … an underwriter.  That new

15          effective date will be the date a prospectus supplement

16          filed in connection with the takedown or takedowns is

17          deemed part of the relevant registration statement.

18                              ….

19          Therefore, under rule 430B … the prospectus filing will

20          **not** create a new effective date for directors or signing

21          officers of the issuer.

22
23                              ….

24          Including information contained in prospectus

25          supplements in registration statements and triggering new

26          effective dates for the issuer and underwriter will provide

27          and preserve important investor protections under the

28          Securities Act.

*See* Securities Offering Reform Release at 44,773-44,774 (emphasis added); (RJN, Ex. 28 at 107-08). Thus, unlike for issuers and underwriters, for whom a prospectus supplement restarts the period of repose for shelf registration, subsequent prospectus supplements do no impact the effective date for officers and directors, and the statute of repose begins at the original effective date. 17 C.F.R. § 230.430B(f)(2) (2005).[8]

The allegations in this case underscore the policy behind this distinction. Mr. McLaughlin resigned from Countrywide in April 2005. (SAC ¶ 44.) Consequently, he was not aware of or able to have any input on any decisions relating to Countrywide after that time. The statute of repose was designed to provide an absolute temporal limit on liability against such a defendant. As that absolute time limit clearly passed by the time Mr. McLaughlin was named in the CAC, this Court should dismiss all of the claims against him, with prejudice.

### 2. The face of the SAC demonstrates that Plaintiffs' Section 11 claim against Mr. McLaughlin is barred by the statute of repose.

Plaintiffs allege a cause of action against Mr. McLaughlin for violation of Section 11 based on a registration statement and prospectus dated April 7, 2004 that incorporated a 2003 Form 10-K signed by Mr. McLaughlin. (SAC ¶¶ 930-31.) Mr. McLaughlin was not named in the case until April 11, 2008, more than four years later and well after the expiration of the statute of repose in Section 13.

Under any circumstances, the face of Plaintiffs' SAC conclusively establishes that the Section 11 claim against Mr. McLaughlin is time-barred. Plaintiffs allege that:

> On or about February 7, 2005, Countrywide commenced a
> public offering of approximately $8.627 billion of Series

---

[8] SEC regulations contain distinct provisions for other participants such as auditors and experts. *See* 17 C.F.R. § 230.430B(f)(5)(i) (2005) and 17 C.F.R. § 230.430B(f)(5)(ii) (2005).

MEMO. OF POINTS & AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS
07-CV-05295-MRP (MANx)

1        A Medium-Term Notes to be offered on a continuous

2        basis.

3    (SAC ¶ 929.)  Even if the alleged February 7, 2005 "commencement," rather than

4    the April 7, 2004 registration statement, was the "bona-fide" offering date,

5    Plaintiffs' claims against Mr. McLaughlin are barred by the three-year statute of

6    repose under Section 13 because Mr. McLaughlin was not named as a defendant

7    until **April 11, 2008.**  (*See* CAC.)  Any subsequent prospectus supplements and

8    pricing supplements alleged in the SAC are irrelevant to the application of the

9    statute of repose to Mr. McLaughlin because they do not create new offerings for

10   the purpose of applying the statute of repose to officers and directors.  Count I is

11   time-barred against Mr. McLaughlin, and should be dismissed with prejudice.

12   **IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON
13          LIABILITY AGAINST MR. MCLAUGHLIN.**

14      Plaintiffs also fail to properly allege a claim for "control person" liability

15   under Section 15 of the Securities Act against Mr. McLaughlin.  (SAC ¶¶ 1127-36.)

16   In the Ninth Circuit, to state a claim for control person liability, a plaintiff must

17   allege that: (1) the defendant had the power to influence or control the primary

18   violator and (2) the defendant actively used this influence or control so as to be a

19   "culpable participant" in the primary violation.  *Durham v. Kelly*, 810 F.2d 1500,

20   1503-04 (9th Cir. 1987).  A plaintiff must allege more than the defendant's position

21   and committee membership.  *In re GlenFed, Inc. Sec. Litig*, 60 F.3d 591, 593 (9th

22   Cir. 1995).  The Ninth Circuit has indicated that there can be no liability if the

23   controlling person "was not a participant in ... activities which are claimed to

24   violate the securities laws."  *Christoffel v. E.F. Hutton & Co., Inc.*, 588 F.2d 665,

25   669 (9th Cir. 1978).  "There must be some showing of actual participation in the

26   corporation's operation or some influence before the consequences of control may

27   be imposed."  *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).[9]

28   _____
     [9] Mr. McLaughlin has joined the motion to dismiss of Countrywide Defendants

1    Plaintiffs acknowledge that Mr. McLaughlin resigned effective April 1, 2005.

2  Nevertheless, Plaintiffs allege that Mr. McLaughlin was a controlling person "when

3  each of the Series A Medium-Term Notes Registration Statement and Series A

4  Medium-Term Notes Prospectus was filed and became effective …." (SAC

5  ¶ 1131.)  However, Plaintiffs indiscriminately lump together pricing supplements

6  and prospectuses dated after April 1, 2005 into their definition of Series A Medium-

7  Term Notes Registration Statement. (*Id.*)  In its Omnibus Order, the Court noted

8  the rule, which applies to issuers but not officers, that each new offering pursuant to

9  a shelf registration creates a new registration statement for the purposes of giving

10  rise to Section 11 liability. (Omnibus Order at 41.)  Mr. McLaughlin cannot be

11  liable as a control person under Section 15 for any Series A Medium-Term notes

12  issued pursuant to prospectuses or pricing supplements after he left the company.

13  *See In re Digi Intern., Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1101 (D. Minn. 1998)

14  (CFO not liable as control person for alleged false and misleading disclosures made

15  after he left the company)*; Brown v. Enstar Group, Inc.*, 84 F.3d 393 (11th Cir.

16  1996) (Former founder of company held not to be a control person because he did

17  not have the power to control the corporation at the time the prospectus was

18  issued.).

19    In addition, Plaintiffs have failed to plead any loss relating to the Series A

20  Medium-Term Notes that Countrywide issued during the Class Period while Mr.

21  McLaughlin was the CFO.  As the Court stated in its Omnibus Order, "[t]here are

22  cases, of course, where the face of the complaint or judicially noticeable facts

23  demonstrate that the plaintiff cannot establish loss causation.  In such cases,

24  12(b)(6) dismissal may be appropriate." (Omnibus Order at 51.)   This is such a

25  case justifying dismissal.

26

27  relating to Count I.  To the extent the Court dismisses Count I against Countrywide, there can be no liability against Mr. McLaughlin under Section 15. *Paracor Fin.,*

28  *Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

1    Under the law of the Ninth Circuit, a person only may sue under Section 11

2 for "losses caused by the misstatement or omission." *In re Broderbund/Learning*

3 *Co. Sec. Litig.*, 294 F.3d 1201, 1203 (9th Cir. 2002).  In addition, under Section

4 12(a)(2), "there can be no recovery unless the purchaser has suffered a loss." *Id.* at

5 1205.  If a complaint demonstrates that a plaintiff cannot have suffered the type of

6 injury contemplated by the statute, then it fails Rule 8(a)(2) for failure to "show[]

7 that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).

8    Countrywide issued only one pricing supplement during the Class Period

9 while Mr. McLaughlin was the CFO.  (SAC ¶¶ 44, 930; RJN, Ex. 6.)  That pricing

10 supplement, dated March 16, 2005, was for notes that matured on March 21, 2006.

11 (RJN, Ex. 6 at 34.)   A "maturity date" is defined as "the date on which the

12 principal amount of a note, draft, acceptance bond or other debt instrument

13 becomes due and **is repaid** to the investor and interest payments stop.  It is also the

14 termination or due date on which an installment loan must be **paid in full**."

15 Investopedia, http://www.investopedia.com/terms/m/maturitydate.asp (last visited

16 Feb. 6, 2009); (RJN, Ex. 29.) (Emphasis added.)  By definition, therefore, the notes

17 issued by Countrywide on March 16, 2005 were fully paid on March 21, 2006, and

18 Plaintiffs have not and cannot allege that they suffered any loss from the purchase

19 of those notes.  Plaintiffs' SAC does not allege any corrective disclosure causing a

20 loss before that maturity date.

21    Consequently, Plaintiffs cannot allege the "type of injury" necessary to state

22 a claim under Sections 11 or 12 against Countrywide as a primary violator for the

23 notes issued pursuant to the March 16, 2005 pricing supplement.  (Omnibus Order

24 at 46 ("The 'type of injury' the statute contemplates is a decline in investment value

25 due to materially false or misleading information in the registration statement.").);

26 *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005) (A complaint is

27 deficient under Section 11 when it fails to "plead facts demonstrating that [plaintiff]

28 suffered the particular type of injury contemplated by the statute."); *cf. Dura*

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 07-CV-05295-MRP (MANx)

1    *Pharms., Inc. v. Broudo,* 544 U.S. 336, 342 (2005) ("Loss causation is a causal

2    connection between the material misrepresentation and the loss.").

3        Countrywide is not primarily liable under Section 11 for those notes issued

4    pursuant to the March 16, 2005 pricing supplement because Plaintiffs cannot show

5    any injury under Section 11 or Section 12(a)(2). There is, therefore, no basis to

6    hold Mr. McLaughlin liable under Section 15 under any circumstances. *See*

7    *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d at 1161 (9th Cir. 1996)

8    (Absent the pleading of an underlying securities violation, there can be no control

9    person liability under Section 15.).

10    **V.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST MR.**
      **MCLAUGHLIN WITH PREJUDICE.**

11

12        Plaintiffs have had ample opportunity to thoroughly investigate

13    Mr. McLaughlin's involvement and make sufficient allegations to state a claim, but

14    have failed to do so. Under such circumstances, the Court should dismiss the

15    claims against him, without leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d

16    367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is

17    particularly broad where [the] plaintiff has previously amended the complaint.").

18    Nearly seventeen months have passed since the first suit filed by George Pappas

19    and the recent SAC, yet Plaintiffs still have failed to allege a claim against

20    Mr. McLaughlin. The Court, in dismissing with prejudice all claims against Grant

21    Thornton ("GT") in this case, reasoned that Plaintiffs had "sufficient opportunity to

22    investigate GT's involvement and make allegations sufficient to state a claim" in

23    the eight months between the suit filed by George Pappas and the CAC. (Omnibus

24    Order at 36.) Likewise, Plaintiffs have had ample time and opportunity to

25    investigate any claims concerning Mr. McLaughlin and should not be given any

26    more time in a patently futile effort to state a claim against Mr. McLaughlin when

27    none exists.

28

1   Moreover, there is no question of fact at issue here as all relevant dates for

2  the Section 13 inquiry have been pleaded and established by Plaintiffs and are, thus,

3  beyond dispute.  The effective date of the registration statement occurred in

4  April 2004, and Plaintiffs allege that the offering "commenced" on February 7,

5  2005.  Mr. Mclaughlin was not named in the case until the CAC was filed on

6  April 11, 2008.   Thus, Plaintiffs cannot correct the Section 13 violation by

7  amendment – the flaw is fatal to their claims.  *In re Metro. Sec. Litig.*, 532 F. Supp.

8  at 1276 (An amendment cannot "cure … the bar imposed by a statute of repose.").

9  In addition, no amendment can cure the defects in the SAC alleging that

10  Mr. McLaughlin is a "control person" based on the Series A Medium-Term notes.

11 **VI.   CONCLUSION**

12   For the foregoing reasons, the Court should dismiss with prejudice Counts I

13  and III against Mr. McLaughlin for alleged violations of Sections 11 and 15 of the

14  Securities Act.  As these are the only claims against Mr. McLaughlin asserted in the

15  SAC, he should be dismissed from the entire action, with prejudice.

17  DATED:  February 6, 2009    PAUL, HASTINGS, JANOFSKY & WALKER LLP
WILLIAM F. SULLIVAN
18                              THOMAS A. ZACCARO
JOSHUA G. HAMILTON

21  By: _____/s/_____
WILLIAM F. SULLIVAN

23  Attorneys for Defendant
*Thomas K. McLaughlin*