CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL, SBN 106790
Email: caldwell@caldwell-leslie.com
DAVID C. CODELL, Of Counsel, SBN 200965
Email: codell@caldwell-leslie.com
ANDREW ESBENSHADE, SBN 202301
Email: esbenshade@caldwell-leslie.com
1000 Wilshire Blvd., Suite 600
Los Angeles, California 90017-2463
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant STANFORD L. KURLAND

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION | Lead Case No. 07-CV-005295-MRP (MANx)<br><br>Honorable Mariana R. Pfaelzer<br><br>**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 AND 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**<br><br>Date: April 13, 2009<br>Time: 10:00 a.m.<br>Courtroom: 12 |

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS
COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. Plaintiffs Admit They Have Pled No New Facts to Establish Loss Causation, and They Instead Attempt to Rely on a Legal Theory that the Court Has Already Rejected ....................................................................... 2

II. The Timing and Circumstances of Kurland's Stock Sales Were Not Suspicious and Do Not Give Rise to a Strong Inference of Scienter ............. 6

III. Conclusion ........................................................................................................ 9

-i-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*AUSA Life Ins. Co. v. Ernst & Young*,
    119 F.Supp.2d 394 (S.D.N.Y. 2000) ...............................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955 (2007) ......................................................... 4-5

*Castellano v. Young & Rubicam*,
    257 F.3d 171 (2d Cir. 2001) ...............................................................................5

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................................... 3-4

*Fouad v. Isilon Sys., Inc.*,
    2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ...........................................5

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985) ...........................................................................8

*In re Dura Pharms., Inc. Sec. Litig.*,
    452 F.Supp.2d 1005 (S.D. Cal. 2006) ........................................................3, 4

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F.Supp.2d 1248 (N.D. Cal. 2000) ...........................................................5

*In re Nike, Inc. Sec. Litig.*,
    181 F.Supp.2d 1160 (D.Or. 2002) ...................................................................7

*In re Party City Sec. Litig.*,
    147 F.Supp.2d 282 (D.N.J. 2001) ............................................................. 6-7

*In re Read-Rite Corp. Sec. Litig.*,
    115 F.Supp.2d 1181 (N.D. Cal. 2000) ......................................................7, 8

CALDWELL LESLIE & PROCTOR

-ii-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

*In re The Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ........................................................................7

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F.Supp.2d 1148 (C.D.Cal. 2007) .............................................................6

*In re Winstar Commc'ns*,
   2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ...................................................5

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049, 1057 (9th Cir. 2008) ..............................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S.Ct. 2499 (2007) ..............................................................8

*The WU Group v. Synopsys, Inc.*, No. C04-3580 MJJ,
   2005 WL 1926626 (N.D. Cal. Aug. 10, 2005) ........................................... 7-8

<u>Statutory Authorities</u>

15 U.S.C. § 78u-4(b)(2) .........................................................................................8

CALDWELL
LESLIE &
PROCTOR

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' Opposition to the motion to dismiss the Second Consolidated Amended Complaint ("SCAC") filed by Defendant Stanford L. Kurland ("Kurland") is notable for what it does not contend. It does not argue that Plaintiffs have alleged or could allege that Kurland made any misstatements after July 2005, much less after he was terminated without cause by Countrywide Financial Corporation ("Countrywide") on September 7, 2006. Nor does it argue that they have alleged (or could allege) that there were corrective disclosures before July 24, 2007. This is because Plaintiffs *cannot* plead such facts.

Moreover, the Opposition admits that Plaintiffs have pled no additional facts to overcome the Court's conclusion that it is "too far a stretch" to suggest that Kurland's pre-September 7, 2006 statements caused losses almost a year later. The Opposition also admits that Kurland was *contractually required* to exercise all of his vested stock options within 90 days after his termination from Countrywide, the sale of which serves as a basis for plaintiffs' insider trading claim against Kurland.

The Opposition's short discussion of Kurland's motion largely boils down to the following: (1) Plaintiffs claim they need not allege any additional facts directed to loss causation, despite the Court's finding that the Consolidated Amended Complaint's ("CAC") allegations regarding loss causation were deficient; and (2) Kurland's decision to sell the stock underlying his exercised options is supposedly suspicious because, when exercising his options, he *could have* purchased the underlying stock at a cost of over $40 million, instead of selling it, and held onto millions of shares in a company that had just terminated his employment contract without cause. On their face and as further explained below, Plaintiffs' arguments are unavailing.

Appropriately taking into account that Kurland left the company long before the disclosures at issue in this case, this Court correctly dismissed the CAC's Section 10(b)/Rule 10b-5 and Section 20(a) counts against him. The Court should

-1-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

reaffirm its prior ruling on those counts, as well as dismiss the Section 20A count alleged against Kurland.[1]

## I. Plaintiffs Admit They Have Pled No New Facts to Establish Loss Causation, and They Instead Attempt to Rely on a Legal Theory that the Court Has Already Rejected

With respect to Count 10 under Section 10(b) and Rule 10b-5, and Count 11 under Section 20(a), Plaintiffs acknowledge that they have not pled any new facts that would overcome the Court's conclusion that they failed adequately to allege loss causation as to Kurland. (*See* Plaintiffs' Opposition to Defendants' Motions to Dismiss ("Opp.") at 110:21-111:8.) Instead, they argue that they should be permitted to pursue their claims against Kurland anyway because they have purportedly now pleaded a legal theory linking statements made by Kurland before September 7, 2006 to alleged losses that occurred between ten and eighteen months later. What Plaintiffs fail to mention is that their legal theory is the *same* theory that they relied upon in their Consolidated Amended Complaint ("CAC"), and the *same* theory that the Court rejected in its Omnibus Order. Simply restating the theory in a new paragraph, as Plaintiffs do in Paragraph 1084 of the SCAC, does not render their legally deficient theory viable.

A review of Paragraph 1084 demonstrates that although Plaintiffs have added boilerplate language, including catch phrases such as "zone of risk" and "foreseeable cause," they have *not*, despite their contentions, actually alleged a new theory or any new factual allegations.[2] Rather, by adding Paragraph 1084's

---

[1] In addition, having joined in the Countrywide Defendants' Motion to Dismiss, Kurland also joins in the Countrywide Defendants' Reply Memorandum.

[2] *Compare* CAC, ¶ 935 (alleging that "[b]etween July 24, 2007 and March 10, 2008, the revelation of the truth concerning such material facts caused Plaintiffs and the Class to suffer substantial losses" and that Plaintiffs suffered losses as "a direct result of the revelation of the truth about the materially false and misleading statements alleged herein") *with* SCAC, ¶ 1084 (alleging that "Kurland's

-2-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

argument that "[t]he mere passage of time between Kurland's departure from Countrywide and the beginning of the corrective disclosures did not constitute a break in the causal link" between Kurland's alleged statements and Plaintiff's alleged losses, Plaintiffs have simply disputed this Court's conclusion in its Omnibus Order that "it is too far a stretch . . . to state a claim that Kurland's 2005-2006 statements could have proximately caused losses almost a year later" (Omnibus Order at 104:8-10.)  The few sentences of argument that Plaintiffs have added in Paragraph 1084 of the SCAC do not address the fatal flaw in their count against Kurland—the implausibility of loss causation given the timing of Kurland's alleged statements in 2005, his departure from Countrywide in late 2006, and the corrective disclosures in July 2007.

In support of their position that "[t]here is no rule that an amended complaint necessarily must include additional facts, particularly when the defect that is alleged in the original complaint is a failure to allege an adequate legal theory," Plaintiffs cite, in a footnote, to *In re Dura Pharmaceuticals, Inc. Securities Litigation*, 452 F.Supp.2d 1005 (S.D. Cal. 2006) ("*In re Dura*").  (*See* Opp. at 110:21 – 111:1 & 111 n.98.)  However, contrary to Plaintiffs' representation, the amended complaint in *Dura* was saved by the pleading of several crucial new *factual* allegations, not simply by the pleading of a legal theory.

*Dura* was a securities fraud action in which plaintiffs alleged the defendants had falsely claimed the FDA would soon approve their new asthmatic spray device, Albuterol Spiros.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 339 (2005).  The United States Supreme Court deemed the complaint's allegations insufficient, as

---

misconduct related to precisely the zone of risk relating to an investment in Countrywide securities that members of the class had considered remote, in part because of misleading statements such as those that Kurland made, and only began to take seriously when the aforementioned corrective disclosures started in July 2007, causing substantial losses to Class members").

-3-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

they did not spell out the alleged loss, or the causal connection between the loss and the alleged misrepresentations. *Id*. at 347. On remand, the *Dura* plaintiffs cured the defect by adding several factual allegations. In particular, the district court cited to 24 paragraphs of the newly amended complaint adding allegations "that Defendants' misrepresentations regarding Albuterol Spiros artificially inflated Dura's stock price" and cited to 21 paragraphs of the newly amended complaint adding allegations that "Defendants made corrective disclosures regarding Albuterol Spiros' stability and functionality on [three dates], and the resulting stock drop on those dates." *In re Dura*, 452 F.Supp.2d at 1021-22. Based on those new allegations, which included numerous new factual allegations, the district court found the loss causation pleading requirements satisfied. By contrast, Plaintiffs here acknowledge that they have pled no new facts. *Dura* thus in no way supports the notion that, without alleging new facts, Plaintiffs can revive their claim against Kurland simply by rewording a legal theory that this Court already has rejected as to the facts alleged about Kurland.

There is yet another reason why *Dura* fails to support Plaintiffs' position. The pleading defect in Plaintiffs' case concerns the implausibility of the alleged causal link, and not (as in *Dura*) the failure to allege any causal link. This Court properly determined that it is not plausible—*i.e.*, it is "too far a stretch"— to claim that Kurland's pre-September 7, 2006 statements could have caused losses after July 24, 2007. (*See* Omnibus Order at 104:8-10.) As the United States Supreme Court recently made clear, even under Rule 8's liberal pleading standards, loss causation allegations must be plausible, not merely conceivable, to withstand a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007); *see also id.* at 1966 ("[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so

CALDWELL
LESLIE &
PROCTOR

-4-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

representing an *in terrorem* increment of the settlement value.'") (quoting *Dura*, 544 U.S. at 347).

This Court correctly determined that Plaintiffs failed to meet this standard in the CAC, given that Kurland had left Countrywide in September 2006 and that the last statement alleged of Kurland was made in July 2005.[3]  Because, as Plaintiffs admit, the SCAC contains no additional facts whatsoever regarding Kurland, Plaintiffs have failed to "nudge[] their claim[ ] across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974.  Consequently, this Court should dismiss Count 10 against Kurland for alleged violation of Section 10(b) and Rule 10b-5.[4]

For the same reasons, this Court also should dismiss Count 11 against Kurland for alleged violation of Section 20(a).  In its Omnibus Order, the Court

---

[3] This timeline—Kurland's departure from Countrywide on September 7, 2006, and the fact that his last alleged statement was made in July 2005—distinguishes him from the other defendants named in Counts 10, 11, and 13, who were still employed by Countrywide as of July 2007 (SCAC, ¶¶ 26-28), and who allegedly made statements in March and/or April 2007.  (*See, e.g.*, SCAC, ¶¶ 895-97, 899, 905-07.)  Without in any way suggesting that Plaintiffs have stated claims against any of the other defendants, it is important to consider each defendant's situation individually.  The Court therefore should reject out of hand Plaintiffs' effort to keep its claim alive "by alleging Kurland's role in the same general 'practices' as all other Officer Defendants." (Opp. at 116:4-5.)

[4] Plaintiffs cite to no binding authority for their contention that the passage of a significant amount of time between Kurland's alleged statements and Plaintiffs' alleged losses should not be dispositive here.  The courts in three of the cases to which Plaintiffs cite did not discuss the significance of the passage of time.  *See Castellano v. Young & Rubicam*, 257 F.3d 171 (2d Cir. 2001), *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397 (W.D. Wash. Dec. 29, 2008), and *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248 (N.D. Cal. 2000).  The Court in *AUSA Life Insurance Company v. Ernst & Young*, 119 F.Supp.2d 394 (S.D.N.Y. 2000) held that the Plaintiffs had *not* shown loss causation.  *Id*. at 407.  Plaintiffs cite to only one case, an unpublished opinion from another district, that even arguably supports their contention about the passage of time.  *See In re Winstar Commc'ns*, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006).  This Court is not bound by that unpublished decision.

-5-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

CALDWELL LESLIE & PROCTOR

dismissed Plaintiffs' Section 20(a) claim against Kurland because Plaintiffs failed adequately to plead loss causation as to their Section 10(b)/Rule 10b-5 claim. As Plaintiffs have again failed to adequately allege loss causation against Kurland in the SCAC and have not otherwise added allegations regarding Kurland in connection with Section 20(a), Plaintiffs' count for violation of Section 20(a) should again be dismissed as to Kurland.

Given Plaintiffs' concession that they have not pled new facts going to loss causation as to Kurland in the SCAC, it is obvious that they cannot do so. Counts 10 and 11 should therefore be dismissed with prejudice as to Kurland. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F.Supp.2d 1148, 1181 (C.D.Cal. 2007) ("[t]he district court's discretion to deny leave to amend is particularly broad where [the] plaintiff has previously amended the complaint") (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

## II. The Timing and Circumstances of Kurland's Stock Sales Were Not Suspicious and Do Not Give Rise to a Strong Inference of Scienter

As demonstrated by Exhibits G and H to the SCAC, Plaintiffs have alleged no trades by Kurland after October 9, 2006, which is not soon enough before Countrywide's July 24, 2007 disclosure for Plaintiffs' Section 20A claim against Kurland (Count 13) to survive this motion to dismiss. In their Opposition, Plaintiffs make no effort to address or distinguish the many cases in which allegations of scienter were defeated by even shorter temporal gaps between the defendant's stock sales and the alleged corrective disclosures. *See, e.g., In re Party City Sec. Litig.*, 147 F.Supp.2d 282, 313 (D.N.J. 2001) (noting that "[a] broad temporal distance between stock sales and a disclosure of bad news defeats any inference of scienter" and concluding that sales of stock three, four and twelve months before the disclosure of bad news were too attenuated to draw an inference of scienter); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1057, 1067 (9th Cir. 2008) (timing of stock sales not suspicious where many of the trades

-6-

CALDWELL LESLIE & PROCTOR

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

took place in October 2003, two months before the December 2003 event that allegedly triggered a sell-off amongst insiders); *In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093-94 (9th Cir. 2002) (no inference of scienter where most stock sales occurred a year before bad news was released); *In re Nike, Inc. Sec. Litig.*, 181 F.Supp.2d 1160, 1170 (D.Or. 2002) (finding no scienter and noting that "[n]o sales occurred within the month prior to the negative announcement . . . which caused the stock price to plummet"); *In re Read-Rite Corp. Sec. Litig.*, 115 F.Supp.2d 1181, 1183 (N.D. Cal. 2000) (stock sales that occurred more than four and one-half months before negative announcement "do not amount to a strong implication of the requisite scienter").

Moreover, Plaintiffs concede that Kurland's employment contract required him to exercise his vested stock options within 90 days after he left the Company on September 7, 2006, and argue only that Kurland was not contractually obligated to *sell* the shares. (*See* Opp. at 140:3-7.) Although executives theoretically may exercise options without selling the stock, it is rarely done, and for good reason: Had Kurland exercised his options without selling the underlying stock, he would have had to *purchase* over three million shares of stock—of a company that had just terminated him without cause—at a cost of approximately $43.6 million. (*See* SCAC, Exh. G.)[5] Under these circumstances, Kurland's decision to exercise his options (as he was contractually bound to do) and sell the underlying stock was eminently rational and neither suspicious nor probative of scienter. *See The WU Group v. Synopsys, Inc.*, No. C04-3580 MJJ, 2005 WL 1926626, at *10 (N.D. Cal. Aug. 10, 2005) (granting defendants' motion to dismiss for failure to plead scienter and explaining that "[t]he sale of stock at or near the scheduled expiration of options is 'perfectly reasonable' and is not suspicious"); *In re Read-Rite*, 115

---

[5] According to Exhibit G, Kurland exercised 3,427,104 shares at exercise prices ranging from $9.60 to $18.98 between September 7, 2006 and October 9, 2006.

-7-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

F.Supp.2d at 1184 (holding that plaintiffs had not adequately pled scienter in part because "the sale of stock in conjunction with the departure of a high level executive . . . is insufficient to show scienter").

Plaintiffs' cursory citation to *Goldman v. Belden*, 754 F.2d 1059, 1071 (2d Cir. 1985), does not affect this analysis.[6] *Goldman* is based on outdated law, as it predates the Private Securities Litigation Reform Act ("PSLRA"), which requires securities plaintiffs to plead facts giving rise to a "strong" inference of scienter. 15 U.S.C. § 78u-4(b)(2). It also predates the United States Supreme Court's decision in *Tellabs*, which compels courts to take into account plausible opposing inferences in determining whether the pleaded facts give rise to a "strong" inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). Unlike the *Goldman* court, courts following the PSLRA and *Tellabs* may no longer simply note that an executive's decision to sell stock can give rise to many possible inferences, point out that one of these possible inferences could be probative of scienter, and deem scienter sufficiently alleged without weighing the plausibility of opposing inferences or considering whether the inference is a "strong" one. *See Tellabs*, 127 S.Ct. at 2509.

Once the opposing inferences are weighed in this case, it becomes clear that the only logical inferences to be drawn are (1) that Kurland exercised his options

---

[6] Plaintiffs selectively quote from *Goldman* without explaining the quotation's context. (*See* Opp. at 140:12-14 (excerpting the following language from *Goldman:* "desire to sell stock to fund retirement was an incentive . . . to cause the making of inflationary misstatements").) Plaintiffs fail to explain that the court in *Goldman* was merely conjecturing about the possible arguments that each party might draw from an executive's decision to sell stock in connection with his retirement. *See Goldman*, 754 F.2d at 1071 ("[E]ven if the court was correct that [the executive's] motivation in selling his stock was to fund retirement activities, plaintiff would doubtless argue that the desire to sell the stock to fund retirement was an incentive for [the executive] to cause the making of inflationary misstatements.").

-8-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS
COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**

because he was contractually required to do so; and (2) that he sold the underlying stock because the alternative—spending more than $40 million to purchase some 3.5 million shares in a company that had just terminated him without cause—would have been financially irrational. The timing and circumstances of Kurland's stock sales were therefore not suspicious, and the allegations of the SCAC are insufficient to give rise to the strong inference of scienter required by the PLSRA and cases such as *Tellabs*.

### III. Conclusion

For the foregoing reasons, Kurland respectfully requests that the Court grant his motion to dismiss Counts 10, 11, and 13 with prejudice. Kurland also joins in the dismissal requests contained in the Countrywide Defendants' Motion to Dismiss.

DATED: March 26, 2009

Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL
DAVID C. CODELL, Of Counsel
ANDREW ESBENSHADE

By _____/s/_____
ANDREW ESBENSHADE
Attorneys for Defendant STANFORD L. KURLAND

CALDWELL LESLIE & PROCTOR

-9-

**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS COUNTS 10, 11 & 13 OF THE SECOND CONSOLIDATED AMENDED COMPLAINT**