DEAN J. KITCHENS, SBN 82096
DKitchens@gibsondunn.com
LINDSAY PENNINGTON, SBN 249879
LPennington@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

JONATHAN DICKEY, SBN 88226
JDickey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 48th Floor
New York, New York 10166-0193
Telephone:  (212) 351-2399
Facsimile:  (212) 351-6399

Attorneys for Underwriter Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re Countrywide Financial Corp. Securities Litigation<br><br>This Document Applies to:<br>All Actions | Lead Case No.<br>07-CV-05295-MRP(MANx)<br><br>**REPLY IN SUPPORT OF MOTION OF UNDERWRITER DEFENDANTS TO DISMISS PORTIONS OF SECOND AMENDED COMPLAINT**<br><br>Hon. Mariana R. Pfaelzer<br>Hearing Date: April 13, 2009<br>Hearing Time: 10:00 a.m.<br>Courtroom: 12 |

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION OF UNDERWRITER DEFENDANTS TO DISMISS PORTIONS OF
SECOND AMENDED COMPLAINT; CASE No. CV 07-05295-MRP (MANx)

## I. INTRODUCTION

Plaintiffs' onus on this Motion to Dismiss was to demonstrate how the purported "new" allegations in their Second Amended Complaint ("SAC") overcome the Court's holding that the Underwriter Defendants' due diligence defense was established on the face of the First Amended Complaint ("FAC"), insofar as the claims relate to the reasonableness of the Underwriters' reliance on portions of the prospectuses through 2006 that were expertised by Countrywide's auditors. Instead, Plaintiffs' Opposition, like the SAC, simply repackages the same inadequate allegations, and speculates that *if* an investigation had been done in accordance with Plaintiffs' hindsight standards, *then* the Underwriters would have discovered information triggering an obligation to verify the work done by the independent auditors. (Opp. at 93.)

That is not the legal standard as to expertised statements, as the Court held before with respect to the FAC. Underwriters are not obliged to conduct a plenary investigation into such expertised portions, but are instead entitled to rely (without an *affirmative* duty to investigate) on statements "made on the authority of an expert" provided they have no reasonable ground to believe them to be untrue. (1933 Act, Sec. 11(b)(3)(C).) That holding is not only consistent with settled law, *see, e.g., In re Worldcom, Inc. Securities Litigation*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004), but is also law of the case in this action.

Nothing in the Opposition shows why the Underwriters lacked reasonable grounds to rely on the expertised portions of the prospectuses through 2006. Indeed, to this day there has been no restatement whatsoever of any of Countrywide's historic financial statements. As shown below, the purported "red flags" on which Plaintiffs rely are, in the end, the same ones that they advanced before. Accordingly, the Underwriter Defendants request that the Court grant the Motion to Dismiss the SAC as to accounting-related statements because their due diligence defense appears on the face of the SAC, just as it did on the face of the FAC.

Gibson, Dunn & Crutcher LLP

2

REPLY IN SUPPORT OF MOTION OF UNDERWRITER DEFENDANTS TO DISMISS PORTIONS OF SECOND AMENDED COMPLAINT; CASE No. CV 07-05295-MRP (MANx)

## II. The Law of the Case Is That Underwriters Are Entitled to Rely on Expertised Portions of a Prospectus Unless They Have Reasonable Grounds To Believe Them to Be Untrue.

Plaintiffs ignore settled law and, more fundamentally, the law of this case, in attempting to expand the standards under Section 11 applicable to Underwriters' due diligence obligations relating to expertised portions of a prospectus. Despite this Court's very clear ruling in respect of the FAC, Plaintiffs' Opposition persists in arguing that "the underwriters are made responsible for the truth of the prospectus," (Opp. at 92), that the Underwriters "are generally required to conduct a 'reasonable investigation' into all statements made in the registration statement," (Opp. at 93), and that the Underwriters must conduct "a complete review of the financial statements of the issuer for a considerable period in the past" and must "go behind such statements to appraise the true value of the assets shown." (*Id.*)

The Court has already addressed the relevant standard pertaining to expertised portions of registration statements, *In re Countrywide Securities Litigation*, 2008 U.S. Dist. LEXIS 102000 (C.D. Cal., Dec. 1, 2008), and that ruling is now the "law of the case." *United States v. Almazan-Becerra*, 537 F.3d 1094, 1096-97 (9th Cir. 2008) ("Under the law of the case doctrine, a court is generally precluded from considering an issue that has already been decided by the same court, or a higher court in the identical case.") (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)); *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 766 (9th Cir. 2001) (same). As this Court recognized, the adequacy of plaintiffs' allegations concerning audited financials contained in prospectuses through 2006 turns on the specific Section 11(b)(3)(C) defense applicable to expertised portions of a prospectus, not the more general due diligence defense of Underwriters.[1] As discussed in the

---

[1] Plaintiffs' fall-back argument is that even if the Underwriters are entitled to rely on the accounting related statements made in the context of a year-end audit of the financial statements, they are not entitled to rely on accounting related
[Footnote continued on next page]

Gibson, Dunn &
Crutcher LLP

3

REPLY IN SUPPORT OF MOTION OF UNDERWRITER DEFENDANTS TO DISMISS PORTIONS OF
SECOND AMENDED COMPLAINT; CASE No. CV 07-05295-MRP (MANx)

Court's ruling and at length in the Opening Brief (pages 3 to 4 and 8 to 9), persons otherwise potentially liable for misstatements under Section 11 are not liable for statements made on the authority of an expert (such as accounting related statements made by an auditor) unless the non-expert had a reasonable ground to believe them to be untrue. And absent sufficient "red flags," there is no affirmative obligation to conduct an investigation.

Plaintiffs' Opposition nonetheless retreads old ground, and attempts to argue for a different, plenary standard that would impose on Underwriters an affirmative duty to conduct a complete review and analysis of the financial statements of the issuer, and to appraise the true value of the assets shown. (Opp. at 92 - 104.) These legal standards, however, have already been settled in this case and are the controlling law of this case. And nothing in the Opposition presents any new authority that could support revisiting or rearguing those standards. *See, e.g., Stern v. Cingular Wireless Corp.*, 2008 U.S. Dist. LEXIS 103246, at *3-*4 (C.D. Cal., Oct. 6, 2008).[2]

---

[Footnote continued from previous page]
statements made in connection with interim periods. (Opp. at 94, 95.) Plaintiffs cite authority from several district courts to support their position; but none of those district courts is within the Ninth Circuit and there is no Ninth Circuit authority limiting the defense in that manner. Nor would such a rule make sense, because it would impose upon all underwriters of securities offerings the obligation to undertake a review of the issuer's financial statements that is even more exacting, rigorous and searching than the review of those same financial statements which the independent audit firm is itself expected to conduct. This would redefine the allocation of responsibilities between the auditors and underwriters, and create a "patchwork effect," rendering the underwriters' reliance on some accounting related statements per se impermissible while recognizing the defense regarding other accounting related statements. This approach is unworkable in the real world. Rather, this Court should conclude that absent a reason to disbelieve them, the Underwriters are entitled to rely on accounting related statements incorporated by reference into the offering documents at issue – a conclusion consistent with Section 11(b)(3)(C).

2   Indeed, the authority advanced by Plaintiffs as a basis to overturn the Court's prior analysis is a thirty-one year old district court case which has nothing
[Footnote continued on next page]

4

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION OF UNDERWRITER DEFENDANTS TO DISMISS PORTIONS OF SECOND AMENDED COMPLAINT; CASE No. CV 07-05295-MRP (MANx)

There is accordingly no basis for Plaintiffs' proposed standard, which focuses not on whether Underwriters had reasonable grounds to question the expertised portions, but instead whether they would have detected such grounds had they conducted what Plaintiffs claim was a proper investigation. Indeed, Plaintiffs' standard would eviscerate the entire purpose of the Section 11(b)(3)(C) defense by requiring an investigation into the question of whether the non-expert has the right to rely on expertised statements. Settled law (and the law of this case) is to the contrary, rejects the obligation to conduct plenary due diligence as to expertised portions of a prospectus, and holds that a "red flag" as to the reasonableness of relying on such portions is not a "red flag" unless it is seen.[3]

### III. Alleged "New Facts" Have Already Been Considered and Found Insufficient to Create a Duty to Investigate Expertised Portions of the Registration Statements.

---

[Footnote continued from previous page]
whatsoever to do with the Section 11(b)(3)(C) defense regarding reliance on experts, and is simply quoting in a footnote statements in a 1969 Law Review article dealing generally with the role of underwriters in securities offerings. *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 300 n. 19 (N.D. Cal 1978).

[3] Plaintiffs describe as "irrelevant" the cases cited in the Motion for the proposition that a "red flag" cannot put a defendant on notice unless it was seen (*See* discussion of *In re Van Wagoner Funds Inc. Sec. Litig.*, 382 F. Supp. 2d 1173 (N.D. Cal. 2004) and *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp 2d 1003 (S.D. Cal. 2000) at Opening Brief, page 8). The cases are "irrelevant," they say, because they are Section 10(b) cases and involve intentional, not negligent, conduct. But the point of a "red flag" under any securities claim is that something the defendant has seen has put that defendant on notice to look further. That cannot be the case if the defendant is not aware of the "red flag" in the first place – and it is especially true where, as here, there was not duty to investigate in the first place. In that respect, Plaintiffs' reliance on *In re Software Toolworks*, 50 F. 3d 615 (9th Cir. 1994), is misplaced, as the backdated contract in that case was specifically found but ignored.

Plaintiffs' Opposition identifies no materially new allegations in the SAC that overcome the Underwriter Defendants' due diligence defense on the face of the pleading as to the expertised portions through 2006. The supposedly new facts are contained in SAC paragraph 605, subparts (a) to (j) (attached as Exhibit A to the Underwriters' Motion to Dismiss). In the Opening Brief (pages 5-7) the Underwriter Defendants showed in detail how at least seven of the ten "new facts," and arguably all ten of them, were before the Court by reason of the FAC and, indeed, virtually all of them were discussed in the Omnibus Order. Plaintiffs do not seriously dispute that these facts are essentially all in the FAC, they just re-argue their sufficiency under the incorrect legal standard they espouse.

Many of Plaintiffs' ten "red flags" are simply references to non-accounting related statements which, of course, the Court already addressed, finding them sufficient to state a claim as to ***non***-accounting statements but ***not*** sufficient to overcome the due diligence defense as to accounting-related misstatements. (*See, e.g.*, Subparagraphs 605(b) (alleging the deterioration of Countrywide's loan origination and underwriting standards), (c) (alleging the inclusion of sub-prime loans in securitizations was increasing), and (d) alleging that Countrywide was making loans to high-risk borrowers and not doing adequate diligence on the loans.) It is self-evident that the Court already had these and many other similar allegations before it on the prior Motion to Dismiss, and decided after extensive consideration that these facts were not sufficient to overcome the diligence defense as of 2006. Yet Plaintiffs accuse the Underwriters of "missing the point," (Opp at 96), arguing that if the misstatements put them on notice of a problem with the expertised financial statements then they must investigate further.

But it is Plaintiffs who miss the point – that is, the Court already had before it these same core allegations and found that they were not sufficient (through 2006, but not after) to preclude the Underwriters' reliance on the statements of the experts. *See, e.g.,* Subparagraphs 605 (b) – (d) (discussed *supra* at page 6), Subparagraph (a)

6

**REPLY IN SUPPORT OF MOTION OF UNDERWRITER DEFENDANTS TO DISMISS PORTIONS OF SECOND AMENDED COMPLAINT; CASE No. CV 07-05295-MRP (MANx)**

Gibson, Dunn & Crutcher LLP

(repeating word-for-word claims in paragraph 94 of the FAC regarding Countrywide's aggressive growth plans), Subparagraph (h) (repeating allegations from paragraphs 293-97 of the FAC regarding delinquency rates on HELOC's and Pay Option ARMs) and Subparagraph (j) (alleging the same facts alleged in paragraph 290 of the FAC regarding a "dramatic increase" from 2004-05 in negative amortization of Countrywide's Pay Option ARMs, which is itself a fact also discussed at length in the Omnibus Order at 67-69). Simply repleading the same allegations as "red flags" adds nothing to the analysis already conducted in the Omnibus Order.

## IV. CONCLUSION

Based on the foregoing, the Underwriter Defendants request that the Court grant their Motion to Dismiss respecting all claims based on accounting-related statements contained in the Second Amended Complaint through year-end 2006 (thereby reaffirming the prior Order regarding the First Amended Complaint, but this time dismissing the claims without leave to amend).

DATED: March 26, 2009

DEAN J. KITCHENS
JONATHAN DICKEY
LINDSAY PENNINGTON
GIBSON, DUNN & CRUTCHER LLP

By: /s/ Dean Kitchens/LP
      Dean J. Kitchens

Attorneys for Underwriter Defendants

100621991_1.DOC