WILLIAM F. SULLIVAN (SB# 078353)
williamsullivan@paulhastings.com
THOMAS A. ZACCARO (SB# 183241)
thomaszaccaro@paulhastings.com
JOSHUA G. HAMILTON (SB# 199610)
joshuahamilton@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant
*Thomas K. McLaughlin*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Applies to:  All Actions | LEAD CASE NO.:  07-CV-05295-MRP (MANx)<br><br>**DEFENDANT THOMAS K. MCLAUGHLIN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Date:          April 13, 2009<br>Time:          10:00 a.m.<br>Courtroom:   12<br>Judge:         Hon. Mariana R. Pfaelzer |

1

## TABLE OF CONTENTS

2

**Page**

3

I.    PRELIMINARY STATEMENT ................................................................... 1

4

5

II.   PLAINTIFFS' SECTION 11 CLAIM IS BARRED BY THE THREE-
      YEAR STATUTE OF REPOSE ............................................................... 3

6

7

      A.    Rule 430B Provides That the Filing of a Prospectus Supplement
            Will Not Be a New Bona fide Offering For Directors and
            Officers ......................................................................................... 4

8

9

      B.    Plaintiffs' Argument That Rule 430B Does Not Apply Because
            It Was Amended in 2005 Is Without Merit ........................................ 8

10

11

III.  PLAINTIFFS CANNOT ADEQUATELY ALLEGE CONTROL
      PERSON LIABILITY UNDER SECTION 15 OF THE SECURITIES
      ACT AGAINST MR. MCLAUGHLIN ...................................................... 10

12

13

      A.    Plaintiffs Fail to Properly Plead Control Person Liability
            Against Mr. McLaughlin ................................................................ 10

14

15

      B.    Plaintiffs Cannot Allege Control Person Liability Against Mr.
            McLaughlin Based on Notes Issued Before His Resignation
            from Countrywide ......................................................................... 11

16

17

18

IV.   THIS COURT SHOULD DISMISS ALL CLAIMS AGAINST MR.
      MCLAUGHLIN WITH PREJUDICE ...................................................... 14

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

*ABKCO Music, Inc. v. LaVere,*
   217 F.3d 684 (9th Cir. 2000) ............................................................................... 9

*Amtower v. Photon Dynamics, Inc.,*
   158 Cal. App. 4th ............................................................................................. 15

*Bell Atl. Corp. v. Twombly,*
   127 S. Ct. 1955 (2007)..................................................................................... 13

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) ......................................................................................... 12

*Finkel v. Stratton Corp.,*
   962 F.2d 169 (2d Cir. 1992) ............................................................................... 4

*Griffin v. PaineWebber Inc.,*
   84 F. Supp. 2d 508 (S.D.N.Y. 2000)............................................................. 4, 5

*Guenther v. Cooper Life Scis., Inc.,*
   759 F. Supp. 1437 (N.D. Cal. 1990) .................................................................. 8

*Howard v. Everex Sys., Inc.,*
   228 F.3d 1057 (9th Cir. 2000) .................................................................... 10, 11

*In re GlenFed, Inc. Sec. Litig.,*
   60 F.3d 591 (9th Cir. 1995) ............................................................................. 10

*In re Infonet,*
   310 F. Supp. at 1113......................................................................................... 15

*In re Metro. Sec. Litig.,*
   532 F. Supp. 2d 1260 (E.D. Wash. 2007) ................................................... 6, 15

*In re Mut. Funds Inv. Litig.,*
   384 F. Supp. 2d 845 (D. Md. 2005) ...................................................... 3, 11, 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Kaplan v. Rose,*
    49 F.3d 1363 (9th Cir. 1994) ................................................................... 10, 11

*Ove v. Gwinn,*
    264 F.3d 817 (9th Cir. 2001) ........................................................................ 13

*P. Stolz Family P'ship L.P. v. Daum,*
    355 F.3d 92 (2d Cir. 2004) ..................................................................... 3, 7, 9

*Paracor Fin., Inc. v. Gen. Elec. Corp.,*
    96 F.3d 1151 (9th Cir. 1996) ........................................................................ 13

*SEC v. C. Paul Sandifur, Jr.,*
    2006 U.S. Dist. LEXIS 12243 (W.D. Wash. Mar. 2, 2006) ........................... 13

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) ...................................................................... 13

**STATUTES**

15 U.S.C. § 77m ......................................................................................... 1, 3, 15

Securities Act of 1933, ch. 38, Title I, § 11, 48 Stat. 82 (codified as amended
    at 15 U.S.C. § 77k) ...........................................................................*passim*

Securities Act of 1933, ch. 38, Title I, § 13, 48 Stat. 84 (codified as amended
    at 15 U.S.C. § 77m) ..........................................................................*passim*

Securities Act of 1933, ch. 38, Title I, § 15, 48 Stat. 84 (codified as amended
    at 15 U.S.C. § 77o) ...........................................................................*passim*

**OTHER AUTHORITIES**

Securities Offering Reform, Securities Act Release No. 33-8591, Exchange
    Act Release No. 52,056 (Jul. 19, 2005), 70 Fed. Reg. 44,772, 44,774
    (August 3, 2005) ............................................................................................ 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**RULES**

Fed. R. Civ. Proc. 8 ........................................................................................... 13

**REGULATIONS**

17 C.F.R. § 229.512 .............................................................................................. 7

17 C.F.R. § 229.512(a)(2) ...................................................................................... 7

17 C.F.R. § 229.529(a)(2) ...................................................................................... 7

17 C.F.R. § 229(a)(2) ............................................................................................ 7

17 C.F.R. § 230.158(c) .......................................................................................... 2

17 C.F.R. § 230.430B (2005) ................................................................................ 2

17 C.F.R. § 230.430B(f) ........................................................................................ 6

17 C.F.R. § 230.430B(f)(4)(ii) (2005) .................................................................. 2

17 C.F.R. § 430.230(B)(f)(2) ................................................................................ 5

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1

## I.   PRELIMINARY STATEMENT

2        In his Motion to Dismiss, Defendant Thomas K. McLaughlin

3  ("Mr. McLaughlin") demonstrated that the claims against him for alleged violation

4  of Section 11 of the Securities Act of 1933 ("Securities Act") are unequivocally

5  barred by the absolute three-year statute of repose under Section 13 of the

6  Securities Act.  *See* 15 U.S.C. § 77m ("In no event shall any [ ] action be brought to

7  enforce a liability created under [Section 11] *more than three years after* the

8  security was bona fide offered to the public . . . .") (emphasis added).  Plaintiffs

9  concede in their Opposition that

10       •   "Countrywide offered the Series A Medium-Term Notes pursuant to a

11            shelf registration and prospectus dated April 7 and April 21,

12            2004 . . . ."  (Opp. at 128; SAC, ¶ 930);

13       •   At the very latest, the Series A Medium-Term Notes were "bona fide

14            offered to the public" on February 7, 2005.  (Opp. at 128:10-11;

15            Compl., ¶ 929); and

16       •   Mr. McLaughlin was not named in this case until April 11, 2008, more

17            than three years after he resigned from Countrywide and more than

18            three years after Plaintiffs acknowledge that the Series A Medium-

19            Term Notes were "bona fide offered to the public."  (Opp. at 128:15-

20            16.)

21       Indeed, Plaintiffs plainly state in their Opposition that February 7, 2005 "is

22  the date the three-year clock began to run as to Notes offered on that date."  (Opp.

23  at 128:11-12.)  Plaintiffs then state that their Section 11 claim against

24  Mr. McLaughlin rests solely on "prospectus supplements filed on and after

25  April 11, 2005."  (Opp. at 128:15-18.)  The law could not be clearer, however, that

26  for directors and officers, such as Mr. McLaughlin, who have signed a shelf

27  registration statement, the date of a new prospectus filing "shall *not* be an effective

28

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1   date [for purposes of imposing Section 11 liability]"; instead, the effective date of

2   the initial registration statement controls for Section 11 liability purposes.  17

3   C.F.R. § 230.430B(f)(4)(ii) (2005) (emphasis added).

4         Left with no alternative, Plaintiffs completely ignore the articulated

5   distinction in Rule 430B[1] for Section 11 liability for shelf offerings and offer the

6   hollow argument that Rule 430B does not apply because it was not passed until

7   December 2005.  Both arguments fail on their face.  Rule 430B did not alter the

8   standard for the effective date of a registration statement for officers and directors;

9   it changed the standard only for issuers and underwriters.  *See* Securities Offering

10  Reform, Securities Act Release No. 8591, Exchange Act Release No. 52,056,70

11  Fed. Reg. 44,722, 44,773-774 (August 3, 2005) ("Securities Offering Reform

12  Release") (RJN, Ex. 28 at 107-08, attached to Motion to Dismiss ("Rule 430B also

13  establishes a new effective date for a shelf registration statement for Section 11

14  liability purposes only for the issuer and for . . . an underwriter.").)[2]  Therefore, the

15  applicability of the statute of repose to bar Plaintiffs' claims against

16  Mr. McLaughlin is well-settled, and the claims should be dismissed.

17        Aware that their Section 11 claim is fatally defective, Plaintiffs vainly

18  attempt to keep Mr. McLaughlin in this case based on "control person" liability

19  under Section 15 of the Securities Act.  This claim also fails because Plaintiffs

20  cannot allege any injury.  Plaintiffs' Opposition admits that Mr. McLaughlin cannot

21  be liable under Section 15 for any securities offered after he resigned on April 1,

22  2005.  (Opp. at 136:26-28.)  As set forth in the Motion to Dismiss, Countrywide

23  made only a single offering of Series A Medium-Term Notes, pursuant to a pricing

24  [1] Rule 430B is codified at 17 C.F.R. § 230.430B (2005).

25  [2] In the SEC's release concerning Rule 430B, the SEC specifically stated that "we
    believe that, for other persons, including directors, signing officers, and experts, the
26  filing of a form prospectus should not result in later liability than which applied
    prior to our new rules."  (RJN, Ex. 28 at 108, attached to Motion to Dismiss (noting
27  that Rule 430B merely adopted the same rule for liability for directors and signing
    officers as was previously contained in Rule 158(c) of the Securities Act, 17 C.F.R.
28  230.158).)

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1   supplement dated March 16, 2005, while Mr. McLaughlin was employed at

2   Countrywide.  (Opp. at 128:5-10.)  The Opposition fails to point to any allegation

3   in the SAC, however, that Plaintiffs purchased any Series A Medium-Term Notes

4   offered on March 16, 2005, much less that they suffered any loss related to such a

5   purchase.  Indeed, Plaintiffs fail to allege anything more than the mere possibility

6   that they "*may*" have been injured.  (Opp. at 136:19-20.)  This defect is fatal,

7   because "the only damages recoverable under [Section 11] are based upon price

8   differentials," and without pleading such purchase and sale prices, Plaintiffs cannot

9   "state any cognizable harm" under Section 11.  *See In re Mut. Funds Inv. Litig.*, 384

10   F. Supp. 2d 845, 867 (D. Md. 2005).  Absent an underlying violation of Section 11,

11   Plaintiffs cannot maintain a claim under Section 15.

12       Mr. McLaughlin has established that Plaintiffs' claims against him in the

13   Complaint should be dismissed.  Plaintiffs have not sought leave to amend, as none

14   of the defects in the complaint can be cured.  Accordingly, Mr. McLaughlin

15   requests that the Court dismiss with prejudice the claims alleged against him in the

16   Complaint for violation of Section 11 and Section 15 of the Securities Act.[3]

17
**II.   PLAINTIFFS' SECTION 11 CLAIM IS BARRED BY THE THREE-
18        YEAR STATUTE OF REPOSE.**

19       The three-year statute of repose under Section 13 operates as an absolute bar

20   to Plaintiffs' Section 11 claim against Mr. McLaughlin.  15 U.S.C. § 77m.

21   Section 13 provides that "[i]n no event shall any [ ] action be brought to enforce a

22   liability created under [Section 11 or Section 12] . . . more than three years after the

23   security was bona fide offered to the public . . . ."  *Id.*  "Therefore, a statute of

24   repose begins to run without interruption once the necessary triggering event has

25   occurred, even if equitable considerations would warrant tolling or even if the

26

27   [3] Mr. McLaughlin also joins the Motions to Dismiss and Reply Memoranda filed by
     Countrywide Defendants and the Outside Director Defendants relating to the Series
28   A Medium Term Notes.

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1  plaintiff has not yet, or could not yet have, discovered that she has a cause of

2  action." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004).

3  Plaintiffs do not dispute that any claim against Mr. McLaughlin is barred if filed

4  more than three years after the bona fide offering of the Series A Medium-Term

5  Notes, which they admit occurred no later than February 7, 2005.  (Opp. at 128:10-

6  14.)[4]  Plaintiffs also acknowledge that Mr. McLaughlin was not named in this suit

7  until April 11, 2008.  (Opp. at 128:15.)  Thus, the only issue the Court must resolve

8  is whether Mr. McLaughlin can be liable under Section 11 based on prospectus

9  supplements for the Series A Medium-Term Notes issued after April 11, 2005.  The

10  law clearly provides that for directors and officers, such as Mr. McLaughlin, the

11  filing of a prospectus supplement will not be a new bona fide offering, and the

12  claims are barred under Section 13.[5]

13      **A.**   **Rule 430B Provides that the Filing of a Prospectus Supplement**
           **Will Not Be a New Bona Fide Offering for Directors and Officers.**
14

15           **1.**   **The Securities Offering Reform Clearly Equates the Bona**
                    **Fide Offering Date with the Effective Date of the**
                    **Registration Statement.**
16

17           Plaintiffs' Opposition attempts to create confusion where none exists and

18  conspicuously misconstrues the applicable law.[6]  Plaintiffs erroneously contend that

---

19  [4] The registration statement for the notes incorporated Countrywide's 2003 Form
20  10-K.  (SAC, ¶¶ 930-31.)  As articulated by the Reply Brief concurrently filed by
    Outside Director Defendants, which Mr. McLaughlin joins and incorporates herein,
21  the alleged misstatements in the 2003 Form 10-K are not actionable under Section
    11.  (Outside Directors Reply at 1-6.)

22  [5] Recognizing that they cannot overcome the fatal deficiencies in their allegations,
    Plaintiffs brazenly suggest that this Court should allow facially and fatally defective
23  allegations to stand because Defendants did not move to dismiss the Consolidated
    Amended Complaint on identical grounds.  (Opp. at 126:9-12 & n.7.)  This
24  argument is patently absurd – Plaintiffs effectively suggest that the Court waste
    judicial resources, Mr. McLaughlin be forced to defend this case, and the parties
25  incur increased litigation costs just so Plaintiffs' facially defective claims can be
    dismissed on some future dispositive motion rather than on this motion.

26  [6] Plaintiffs spend a considerable portion of their Opposition to Mr. McLaughlin's
    motion arguing about whether the triggering event for the statute of repose should
27  be the effective date of the registration statement, April 21, 2004, or the date of the
    offering to the public, February 7, 2005.  (Opp. at 126:16-127:1.)  This is
28  completely irrelevant to Mr. McLaughlin, as both dates are more than three years

-4-

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1   Rule 430B(f)(2) and 430B(f)(4) "define the *effective date* of the registration

2   statement under certain circumstances, not the bona fide offering date."  (Opp. at

3   130:10-16 (emphasis in original).)  The plain language of the Rule 430B shows

4   otherwise:

5              The date on which a form of prospectus is deemed to be

6              part of and included in the registration statement pursuant

7              to paragraph (f)(1) of this section shall be deemed, for

8              purposes of liability under section 11 of the Act *of the*

9              *issuer and any underwriter at the time only*, to be a new

10             effective date of the part of such registration statement

11             relating to the securities to which such form of prospectus

12             relates . . . .  *The offering of such securities at that time*

13             *shall be deemed to be the initial bona fide offering*

14             *thereof*.

15   17 C.F.R. 430.230(B)(f)(2).[7]

16        Plaintiffs' Opposition completely ignores the actual language of the section

17   of Rule 430B that applies to directors and signing officers.  Indeed, the plain

18   language of Rule 430B(f)(4) provides that for directors and officers who have

19   signed a shelf registration statement, the date of a new prospectus filing "shall *not*

20   be an effective date *established pursuant to Section (f)(2) of this Section*."  *Id.*

21   (emphases added).  Reading Section (f)(2) and (f)(4) of Rule 430(B) together,

22   prior to his being named in this case.  This issue is not irrelevant, however, to other
     defendants first named in January 2008.  If the "effective date" of the registration
23   statement is deemed the "bona fide offering date," the claims against those
     defendants would likewise be barred.  Courts have consistently held that for
24   purposes of assessing Section 11 liability, the effective date of the registration
     statement is deemed the bona fide offering date.  *See, e.g., Griffin v. PaineWebber*
25   *Inc.*, 84 F. Supp. 2d 508, 512 (S.D.N.Y. 2000) (A security is bona fide offered to
     the public at the effective date of the registration statement.); *Finkel v. Stratton*
26   *Corp.*, 962 F.2d 169, 173 (2d Cir. 1992) (same).

27   [7] Case law also recognizes this principle.  *See Griffin*, 84 F. Supp. 2d at 512 ("[A]s
     a matter of law, the date a registration statement is declared effective by the SEC
28   constitutes the date the security is bona fide offered to the public.").

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

therefore, makes clear that the filing of a prospectus supplement does not create a new bona fide offering for the purposes of Section 11 liability against directors and signing officers.  The SEC interpretation of Rule 430B further supports this interpretation:

> Rule 430B also establishes a new effective date for a shelf registration statement for Section 11 liability purposes *only* for the issuer and for . . . an underwriter.  That new effective date will be the date a prospectus supplement filed in connection with the takedown or takedowns is deemed part of the relevant registration statement.
> ....
> Therefore, under rule  . . . the prospectus filing will *not* create a new effective date for directors or signing officers of the issuer.

*See* Securities Offering Reform Release at 44,773-774 (emphasis added); (RJN, Ex. 28 at 107-08, attached to Motion to Dismiss).  Thus, unlike for issuers and underwriters, for whom a prospectus supplement restarts the period of repose for securities offered under a shelf registration, subsequent prospectus supplements do not alter the effective date for officers and directors, and the statute of repose begins at the original effective date of the registration statement.  17 C.F.R. § 230.430B(f)(4).

### 2.    Plaintiffs' Authorities Are Inapposite to the Liability of Directors and Signing Officers.

Plaintiffs fail to cite any authority, nor can they, that contradicts the plain language of Section 13 and Rule 430B.  Instead, Plaintiffs grossly misconstrue statutory and case authority in an attempt to camouflage the deficiencies in their arguments.  Plaintiffs cite to *In re Metropolitan Securities Litigation*, 532 F. Supp. 2d 1260, 1281 (E.D. Wash. 2007) for the proposition that shelf registration liability

1   for prospectus supplements applies equally to "all Section 11 defendants."  (Opp. at

2   127:17-24.)  Nowhere in that case, however, does it analyze liability for a director

3   or officer for a prospectus supplement.  Rather, *In re Metropolitan* holds that the re-

4   starting of the repose period for shelf registrations is limited to securities offered in

5   or pursuant to a post-effective amendment.

6        Indeed, each of Plaintiffs' case citations applies only to post-effective

7   amendments, not to pricing supplements.  (Opp. at 128:17-128:04 & n.109.)

8   Plaintiffs do not allege any post-effective date amendment to the initial offering in

9   the SAC.  In addition, Plaintiffs cite to Rule 529(a)(2) for the proposition that "the

10  bona fide offering date and the effective date will not [ever] coincide," and that

11  each *pricing supplement* constitutes "a new registration statement" such that each

12  offering of the securities "shall be deemed to be [an] initial bona fide offering

13  [date]."  (Opp. at 127:1-16 (quoting 17 C.F.R. § 229.512(a)(2).)  However, Rule

14  529(a)(2) is irrelevant, as it applies to the undertakings that an issuer must take in

15  filing a shelf registration statement.  *See* 17 C.F.R. 229.512.  It has no applicability

16  to the liability of officers and directors relating to prospectus supplements.[8]

17       Plaintiffs' reliance on *P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92

18  (2d Cir. 2004), is misplaced.  In *P. Stolz*, the court simply recognized that in an

19  action under Section 12(a)(1), attempting to measure the statute of repose from the

20  effective date of a registration for an *unregistered* security (which, by definition,

21  *has* no registration date) would lead to "an absurd result."  *P. Stolz*, 355 F.3d at 99.

22  Absent an effective date, the court used the actual offering date as the "bona fide

23  offering" date from which to measure the statute of repose.  *Id*.  The court explained

24  that Section 12(a)(1) claims are "[u]nlike § 11 claims," because "[i]n the case of

25

26  _____

[8] In addition, Rule 529(a)(2) is also inapplicable because it applies only to post-effective date amendments, not to pricing supplements.  Indeed, Plaintiffs
27  conveniently ignore this qualifying language in citing the statute to the Court.
(Opp. at 127:7-16 (Omitting language "each such post-effective amendment" from
28  quotation to 17 C.F.R. § 229(a)(2)).)

1   § 11 liability, the repose period is triggered by the effective date of the (allegedly

2   false) registration statement for the offer[.]" *Id*. at 99, 104.  Plaintiffs

3   conspicuously ignore the most pertinent language in *P. Stolz* for the purposes of this

4   case – the court's recognition that "in the case of *registered* securities, the date of

5   registration has been treated as the date that starts the running of the repose period

6   (*most relevantly in the context of § 11 claims*)." *Id.* (emphases added).

7        Plaintiffs' reliance on *Guenther v. Cooper Life Scis.*, *Inc.* is similarly

8   misplaced and conflates post-effective amendments with supplemental filings in

9   general.  759 F. Supp. 1437 (N.D. Cal. 1990).  Plaintiffs cite *Guenther* to support

10  the premise that each offering "from the shelf" (or takedown) triggers a new statute

11  of repose.  (Opp. at 127:17-26.)  This misrepresents the holding in *Guenther* –

12  *Guenther* actually acknowledges that Section 11 liability may be extinguished by

13  the statute of repose before an investor purchased a security.  *Guenther*, 759 F.

14  Supp. at 1440.  Further, *Guenther* does not address whether a pricing supplement or

15  prospectus supplement affects the limitation period.  *Id*.  Rather, it addresses the

16  question of "how to treat an allegedly misleading *post-effective amendment.*"  *Id*.

17  (emphasis added).  Thus, the holding in *Guenther* applies only to the limitation

18  period applicable to securities offered pursuant to a post-effective amendment.

19        **B.    Plaintiffs' Argument That Rule 430B Does Not Apply Because It**
20             **Was Amended in 2005 Is Without Merit.**

21        Plaintiffs' Opposition erroneously argues that Rule 430B does not apply

22  because it became effective after the Series A Medium-Term Notes were offered

23  and has no retroactive application.  Plaintiffs are wrong and offer no valid support

24  for these arguments.

25        The Securities Offering Reform explicitly provides that it establishes "a new

26  effective date for a shelf registration statement *for Section 11 liability purposes only*

27  *for the issuer and for a person that at the time is an underwriter*."  Securities

28  Offering Reform Release at 44,773 (emphasis added).  It explicitly states that for

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1  officers (such as Mr. McLaughlin) and directors, the law is unchanged: "for other

2  persons, including directors, signing officers, and experts, the filing of a form

3  prospectus *should not result in a later Section 11 liability date than that which*

4  *applied prior to our new rules.*" *Id*. at 44,774 (emphasis added).[9]

5         Plaintiffs' contention that Rule 430B changed the law relating to directors

6  and signing officers is undermined by the clear statements in the SEC's comments

7  in the Securities Act Release for Rule 430B:

8                  We believe that for other persons, including directors,

9                  signing officers, and experts, the filing of a form

10                 prospectus should not result in a later Section 11 liability

11                 date *than which applied prior to our new rules.*

12 (RJN, Ex. 28 at 108, attached to Motion to Dismiss.)

13        The policy behind the separate treatment for directors and signing officers is

14 self-evident.  Congress, spurred by the "fear that lingering liabilities would disrupt

15 normal business and facilitate false claims," passed the statute of repose "to provide

16 an easily ascertainable and certain date for the quieting of litigation." *P. Stolz*, 355

17 F.3d at 104-05.  Rule 430B and its predecessor, Rule 158C, providing that directors

18 and officers are not liable for prospectus supplements are consistent with this

19 Congressional intent.  An officer, such as Mr. McLaughlin, who signed a Form 10-

20 K that is incorporated into a shelf registration statement, should not be held liable in

21 perpetuity for each prospectus supplement issued pursuant to that shelf registration.

22 Instead, he may only be liable for three years after the bona fide offering of those

23 securities.

24

25

26 ───────────────
   [9] Moreover, there is no presumption against retroactivity and Rule 430B applies
   here because it does not substantively change the law relating to Section 11 liability
27 for officers and directors.  *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689
   (9th Cir. 2000) (noting that the Ninth Circuit has "long recognized that clarifying
28 legislation is not subject to any presumption against retroactivity").

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1    As demonstrated above, Plaintiffs' argument that Rule 430B cannot be
2  applied retroactively is completely irrelevant to the statute of repose argument for
3  directors and officers.  The Securities Offering Reform of 2005 did not alter the
4  existing law regarding the period of repose for officers and directors under
5  Section 11, but changed only the law as to issuers and underwriters.  Plaintiffs'
6  Section claims are barred by the absolute three-year statute of repose under
7  Section 13, and should be dismissed as to Mr. McLaughlin.

8  **III.    PLAINTIFFS CANNOT ADEQUATELY ALLEGE CONTROL
         PERSON LIABILITY UNDER SECTION 15 OF THE SECURITIES
9         ACT AGAINST MR. MCLAUGHLIN.**

10       **A.    Plaintiffs Fail to Properly Plead Control Person Liability Against
               Mr. McLaughlin.**
11

12    Plaintiffs fail to allege adequately that Mr. McLaughlin is liable as a control
13  person under Section 15 of the Securities Act.  The SAC alleges that, because of his
14  senior executive position, Mr. McLaughlin was involved in day-to-day operations
15  and possessed the power to control Countrywide such that he should be held
16  responsible for the veracity of the information contained and incorporated by
17  reference in the Series A Medium-Term Notes registration statement and
18  prospectus.  (SAC, ¶¶ 1129-36.)  These conclusory allegations are not adequate,
19  and Plaintiffs' Opposition fails to address this deficiency.

20    Instead, Plaintiffs argue only that culpable participation is not required to
21  satisfy the pleading requirements of Section 15.  (Opp. at 136:10-12.)  However, it
22  is clear that a plaintiff must allege more than the defendant's position to establish
23  control liability.  *See Kaplan v. Rose*, 49 F.3d 1363, 1982 (9th Cir. 1994) (affirming
24  district court's granting of summary judgment in favor of defendant regarding
25  Section 15 liability because, although defendant was "CEO and [ ] participat[ed] in
26  the day-to-day affairs of the company," he was not a "controlling person" because
27  plaintiff failed to adequately "support the contention that [defendant] was a
28  culpable participant in the violations[.]"); *accord In re GlenFed, Inc. Sec. Litig.*, 60

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1    F.3d 591, 593 (9th Cir. 1995).  Here, Plaintiffs have failed to do so.

2        Plaintiffs' reliance on *Howard v. Everex Sys., Inc.* to avoid the burden of

3    such factual pleading is misplaced.  (Opp. at 136:8-10.)  Even the *Howard* court

4    found that the question of whether a defendant is a "controlling person" is an

5    "intensely factual question, involving scrutiny of the defendant's participation in

6    the day-to-day affairs of the corporation and the defendant's power to control

7    corporate actions."  Plaintiffs have failed to *allege* any such facts other than

8    Mr. McLaughlin's position.  *Howard*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citing

9    *Kaplan*, 49 F.3d at 1382).

10        **B.    Plaintiffs Cannot Allege Control Person Liability Against**
11        **Mr. McLaughlin Based on Notes Issued Before His Resignation**
         **from Countrywide.**

12        Plaintiffs' Opposition also clarifies the allegations in the SAC and candidly

13    acknowledges that Mr. McLaughlin cannot be liable for conduct by Countrywide

14    following the effective date of Mr. McLaughlin's resignation.  (Opp. at 136: 26-28.)

15    Thus, Plaintiffs concede that Mr. McLaughlin cannot be liable as a "control person"

16    for Series A Medium-Term Notes issued after April 1, 2005, the date on which

17    Mr. McLaughlin resigned from Countrywide.  Therefore, to maintain a claim under

18    Section 15, Plaintiffs must adequately allege liability based *solely* on the Series A

19    Medium-Term Notes issued on March 16, 2005 – the only issuance that occurred

20    while Mr. McLaughlin was still employed by Countrywide.  (SAC, ¶¶ 44, 930;

21    RJN, Ex. 6, attached to Motion to Dismiss.)  Again, Plaintiffs have failed to do so.

22        First, Plaintiffs never allege that they purchased notes issued on March 16,

23    2005 – and thus, cannot allege that they suffered any injury as a result of such

24    purchases.  *See In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866 (D. Md.

25    2005) (failing to plead facts necessary to the existence of recoverable damages is

26    fatal to a Section 11 claim).  Because the only measure of damages for a Section 11

27    claim is the difference between the price paid for the security and the sales price or

28    reduced market value at the time the claim is brought, an allegation that Plaintiffs

-11-

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

purchased that particular security prior to bringing the claim is necessary to state a claim for Section 11 damages. *Id.* Thus, Plaintiffs' failure to allege facts necessary to support damages under Section 11 warrants dismissal.

Second, the Series A Medium-Term Notes issued on March 16, 2005 (pursuant to Pricing Supplement No. 1) matured and were repaid on March 21, 2006[10] – more than *sixteen months before July 24, 2007 – the date of the first alleged corrective disclosure*. (*See* RJN, Ex. 6 at 34 & Ex. 29, attached to Motion to Dismiss; Opp. at 136:13-20; SAC, ¶ 954.)  Both the SAC and the Opposition fail to point to a single corrective disclosure that might have damaged Plaintiffs who purchased notes pursuant to Pricing Supplement No. 1 before those notes matured. Indeed, even if Plaintiffs could allege that they purchased notes offered while Mr. McLaughlin was still an employee of Countrywide, they have not – and cannot – allege any resulting injury.  The SAC itself makes clear that the market was still enthusiastic about Countrywide securities in early 2007 (SAC, ¶ 878 ("On February 2, 2007, analysts at Citigroup rated Countrywide's shares a 'Buy' with 'Medium Risk.'"); SAC, ¶ 879 ("Further, [on January 31, 2007] several other analysts either raised or maintained their stellar recommendations and earnings estimates for Countrywide[.]").)  Consequently, Plaintiffs cannot allege the "type of injury" necessary to state a claim under Section 11 or Section 12 against Countrywide as a primary violator for the notes issued pursuant to the March 16, 2005 pricing supplement.  (Omnibus Order at 46 ("The 'type of injury' the statute contemplates is a decline in investment value due to materially false or misleading information in

---

[10] A "maturity date" is defined as "the date on which the principal amount of a note, draft, acceptance bond or other debt instrument becomes due and is repaid to the investor and interest payments stop.  It is also the termination or due date on which an installment loan must be paid in full."  Investopedia, http://www.investopedia.com/terms/m/maturitydate.asp (last visited Feb. 6, 2009); (RJN, Ex. 29, attached to Motion to Dismiss (emphasis added).)  By definition, therefore, the notes issued by Countrywide on March 16, 2005 were fully paid on March 21, 2006, and Plaintiffs have not and cannot allege that they suffered any loss from the purchase of those notes.

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1    the registration statement.").); *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d at

2    866 (A complaint is deficient under Section 11 when it fails to "plead facts

3    demonstrating that [plaintiff] suffered the particular type of injury contemplated by

4    the statute."); *cf. Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[L]oss

5    causation, [is] a causal connection between the material misrepresentation and the

6    loss.").  Absent the pleading of an underlying securities violation, there can be no

7    control person liability under Section 15.  *Paracor Fin., Inc. v. Gen. Elec. Corp.*, 96

8    F.3d 1151, 1161 (9th Cir. 1996).

9          Plaintiffs allege nothing more than the mere possibility that they are entitled

10   to relief based on a wholly unsupported inference.  Specifically, Plaintiffs allege

11   that because some corrective information may have leaked to the market before

12   July 24, 2007, "investors who purchased [Series A Medium-Term Notes that

13   matured on March 16, 2006], particularly those who purchased shortly before

14   maturity, *may* have suffered a loss when selling them."  (Opp. at 136:17-20

15   (emphasis added).)  Plaintiffs offer absolutely no facts, let alone citations to

16   complaint allegations, to support this blatant speculation.

17         This unsupported inference cannot defeat a motion to dismiss.  Even under

18   the notice pleading requirements of Federal Rule of Civil Procedure 8, a plaintiff

19   must offer more than mere speculation.  The complaint must allege "facts," and not

20   mere "labels and conclusions" to establish the grounds of his entitlement to relief.

21   *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1968 (2007) (Conclusory

22   allegations of law and unwarranted inferences are insufficient to defeat a motion to

23   dismiss for failure to state a claim.).  A complaint must contain factual allegations,

24   which establish more than a *mere possibility* that the plaintiff is entitled to relief –

25   the facts alleged must "raise a right to relief above the speculative level . . . ."  *Id*. at

26   1964-66, 1968-69.  A court is not required to accept the truth of unsupported

27   contentions, deductions, or conclusions of law alleged in the SAC merely because

28   they are cast as factual allegations.  *See id*. at 1965; *Warren v. Fox Family*

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1    *Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (court is not required to

2    accept legal conclusions cast as factual allegations); *SEC v. C. Paul Sandifur, Jr.*,

3    2006 U.S. Dist. LEXIS 12243, at *5-6 (W.D. Wash. Mar. 2, 2006) (unwarranted

4    inferences of fact cannot defeat a motion to dismiss) (citing *Ove v. Gwinn*, 264 F.3d

5    817, 821 (9th Cir. 2001)).

6        As this Court's December 1, 2008 Omnibus Order on Defendants' Motions

7    to Dismiss the Consolidated Amended Complaint observed:  Even when the

8    corrective information is alleged to have slowly leaked into the market, "it is too far

9    a stretch . . . to state a claim that [2005] statements could have proximately caused

10   losses almost a year later."  (*See* Omnibus Order at 102-04.)  Here, Plaintiffs have

11   failed to allege either a purchase or loss in connection with the notes offered on

12   March 16, 2005, and neither can be inferred.

13   **IV.   THIS COURT SHOULD DISMISS ALL CLAIMS AGAINST MR.
         MCLAUGHLIN WITH PREJUDICE.**

14

15       Mr. McLaughlin respectfully requests that this Court dismiss all claims

16   against him, with prejudice.  Mr. McLaughlin notes that Plaintiffs have not

17   requested leave to amend, and that granting leave would be futile.

18       Plaintiffs cannot cure their Section 11 claim because the prospectus

19   supplements filed in this case do not start a new statute of repose, and any attempt

20   to plead that Mr. McLaughlin signed a post-effective amendment would fail.  As

21   explained above, Mr. McLaughlin resigned on April 1, 2005, more than three years

22   prior to the time he was named in this case.  Consequently, there are no

23   circumstances in which Mr. McLaughlin could have signed a post-effective

24   amendment for which he could be liable under Section 11.

25       Likewise, Plaintiffs cannot cure the pleading defects in their Section 15 claim

26   against Mr. McLaughlin.  While Plaintiffs concede that Mr. McLaughlin can be

27   liable only for the Series A Medium-Term Notes offered pursuant to Pricing

28   Supplement No. 1 on March 16, 2005, they fail to allege any purchase of these

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1    notes.  (*See* SAC, *passim*; Opp. at 136:5-20, *passim*.)  Moreover, Plaintiffs

2    impliedly concede that they have failed to allege any corrective disclosure that

3    could conceivably have caused a loss on notes purchased pursuant to Pricing

4    Supplement No. 1.  Other than referring to the Court's comment that a corrective

5    disclosure likely leaked to the market before July 24, 2007 – 27 months after Mr.

6    McLaughlin resigned – the Opposition points to no complaint allegations to support

7    this claim.  (Opp. at 136:16-18.)

8         Plaintiffs cannot cure this fatal defect without hoisting themselves on their

9    own petard.  If Plaintiffs attempt to allege they suffered a loss for Section 11

10   purposes because Countrywide made a corrective disclosure before the Series A

11   Medium-Term Notes matured on March 21, 2006, then they would have to concede

12   that they were on inquiry notice on the date of (or soon after) such disclosure.

13   Thus, Plaintiffs' claim would be barred by the one-year statute of limitations for

14   Section 11 claims because Mr. McLaughlin was not sued for more than two years

15   after those Notes matured.  *See* 15 U.S.C. 77m (providing a one-year statute of

16   limitations for liability under Section 11); *Amtower v. Photon Dynamics, Inc.*, 158

17   Cal. App. 4th at 1596 ("The limitations period for a section 11 claim begins to run

18   upon 'discovery of the untrue statement or omission."); *In re Metro.*, 532 F. Supp.

19   2d at 1285 (The one-year limitation period set forth in Section 13 is "triggered

20   either by 'actual notice' – the discovery of the untrue statement or omission – or

21   'inquiry notice' – when discovery should have been made by the exercise of

22   reasonable diligence.").

23        Indeed, if Plaintiffs were on inquiry notice on or about March 16, 2006, then

24   the one-year statute of limitations would bar all Section 11 and Section 15 claims

25   based on the Series A Medium-Term Notes.  Plaintiffs filed this action on

26   August 14, 2007, well after the statute of limitations expired.  (Omnibus Order, at

27   2:4-6.)

28

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1        For the foregoing reasons, the Court should dismiss Plaintiffs' Section 11 and

2  Section 15 claims against Mr. McLaughlin, with prejudice.

3

4  DATED:  March 26, 2009     PAUL, HASTINGS, JANOFSKY & WALKER LLP
                              WILLIAM F. SULLIVAN

5                              THOMAS A. ZACCARO
                              JOSHUA G. HAMILTON

6

7

8                          By: _____/s/_____
                                WILLIAM F. SULLIVAN

9

10                       Attorneys for Defendant
                       *Thomas K. McLaughlin*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY MEMO. ISO
MOTION TO DISMISS
SECOND AMENDED COMPLAINT