1  MICHAEL D. TORPEY (SBN 79424)
   *mtorpey@orrick.com*
2  PENELOPE A. GRABOYS BLAIR (SBN 214742)
   *pgraboysblair@orrick.com*
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, California 94105-2669
5  Telephone:   415-773-5700
   Facsimile:   415-773-5759
6
   MICHAEL C. TU (SBN 186793)
7  *mtu@orrick.com*
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
   Los Angeles, California 90017
9  Telephone:   213-629-2020
   Facsimile:   213-612-2499
10
   Attorneys for Defendant
11 David Sambol

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS. | Lead Case No. CV 07-5295 MRP (MANx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DAVID SAMBOL'S MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  April 13, 2009<br>Time:  10:00 a.m.<br>Judge: Hon. Mariana R. Pfaelzer<br>          Courtroom 12<br>          Spring Street Courthouse |
|---|---|

OHS West:260623982.6

REPLY ISO DEFENDANT DAVID SAMBOL'S
MOTION TO DISMISS THE SAC
LEAD CASE NO. CV 07-5295 MRP (MANx)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1
II.  ARGUMENT .......................................................................................................2
   A.  The Opposition Confirms That Plaintiffs' Attempted Pleading Of Scienter As To Mr. Sambol Is Deficient ...........................................2
       1.  Plaintiffs' Insider Trading Allegations Regarding Mr. Sambol Affirmatively Refute Any Inference Of Scienter ..........2
       2.  Plaintiffs' "Confidential Witness" Allegations As To Mr. Sambol Fail Under *Zucco* ........................................................4
       3.  The "Core Operation" Allegations Are Insufficient...................7
   B.  Plaintiffs' Control Person Allegations Fail To State A Claim .............9
   C.  Plaintiffs' Section 20(A) Claim Should Be Dismissed.......................10
III. CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

*In re 2007 Novastar Fin., Inc., Sec. Litig.*,
  2008 WL 2354367 (W.D. Mo. June 4, 2008) ...................................................... 7

*Berson v. Applied Signal Tech.*,
  527 F.3d 982 (9th Cir. 2008) ................................................................................ 8

*Brodsky v. Yahoo! Inc.*,
  592 F. Supp. 2d 1192 (N.D. Cal. 2008) ................................................................ 9

*Constr. Laborers' Pension Trust v. Neurocrine Biiscis., Inc.*,
  2008 WL 2053733 (S.D. Cal. May 13, 2008) ....................................................... 4

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................. 2

*In re Cray Inc. Deriv. Litig.*,
  431 F. Supp. 2d 1114 (W.D. Wash. 2006) ............................................................ 4

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ................................................................................ 3

*In re Downey Sec. Litig.*,
  2009 WL 736802 (C.D. Cal. Mar. 18, 2009) .................................................. 2, 10

*Grillo v. Tempur-pedic Int'l, Inc.*,
  553 F. Supp. 2d 809 (E.D. Ky. 2008) ................................................................. 11

*In re Guidant Corp. Sec. Litig.*,
  536 F. Supp. 2d 913 (S.D. Ind. 2008) ................................................................. 11

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) .......................................................... 3, 10

*Howard v. Everex*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................................ 10

*In re Impac Mortgage Holdings, Inc., Sec. Litig.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................................ 6, 7

*In re InfoSonics Corp. Sec. Litig.*,
  2007 WL 2301757 (S.D. Cal. Aug. 7, 2007) .................................................. 4, 12

*In re LeapFrog Enters., Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007) ................................................................ 4

*Limantour v. Cray, Inc.*,
  432 F. Supp. 2d 1129 (W.D. Wash. 2006) ............................................................ 4

*Lipton v. PathoGenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .............................................................................. 3

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Lockheed Martin Corp. Sec. Litig.*,
  272 F. Supp. 2d 928 (C.D. Cal. 2002) .................................................................... 10

*McCasland v. FormFactor Inc.*,
  2008 WL 2951275 (N.D. Cal. July 25, 2008) ......................................................... 4

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ........................................................................ *passim*

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ...................................................................... 3

*Middlesex Ret. Sys. v. Quest Software Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................................. 10

*In re Miva, Inc., Sec. Litig.*,
  544 F. Supp. 2d 1310 (M.D. Fla. 2008) ................................................................. 11

*Nelson v. Adams USA, Inc.*,
  529 U.S. 460 (2000) .................................................................................................. 9

*In re Netflix, Inc. Sec. Litig.*,
  2005 WL 1562858 (N.D. Cal. June 28, 2005) ....................................................... 11

*In re Nike, Inc. Sec. Litig.*,
  181 F. Supp. 2d 1160 (D. Or. 2002) ...................................................................... 12

*Paracor Fin., Inc. v. General Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .................................................................................. 10

*In re Party City Sec. Litig.*,
  147 F. Supp. 2d 282 (D.N.J. 2001) ........................................................................ 12

*Pittleman v. Impac Mortgage Holdings, Inc.*,
  2009 WL 648983 (C.D. Cal. Mar. 9, 2009) .................................................... 1, 7, 9

*In re Read-Rite Corp. Sec. Litig.*,
  335 F.3d 843 (9th Cir. 2003) ................................................................................ 7, 9

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ................................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights*,
  551 U.S. 308, 127 S. Ct. 2499 (2007) ..................................................................... 2

*Thornton v. Micrografx, Inc.*,
  878 F. Supp. 931 (N.D. Tex. 1995) ......................................................................... 3

*Tripp v. IndyMac Fin., Inc.*,
  2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) ..................................................... 2, 7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*U.S. v. Smith*,
 155 F.3d 1051 (9th Cir. 1998) .................................................................................. 12

*In re Vantive Corp. Sec. Litig.*,
 283 F.3d 1079 (9th Cir. 2002) .................................................................................... 6

*Wietschner v. Monterey Pasta Co.*,
 294 F. Supp. 2d 1102 (N.D. Cal. 2003) ...................................................................... 4

*In re Worlds of Wonder Sec. Litig.*,
 35 F.3d 1407 (9th Cir. 1994) ...................................................................................... 3

*Zucco Partners, LLC* v. *Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ............................................................................. *passim*

### STATUTES AND RULES

17 C.F.R. § 230.405 ........................................................................................................ 10

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 9

SEC Rule 10b-5 .......................................................................................................*passim*

## I. INTRODUCTION

Following the Court's Omnibus Order on the prior complaint, the Ninth Circuit in *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) clarified the application of the stringent pleading standards for establishing a "strong inference" of scienter, and a comparative analysis between *Zucco* and this case affirms that the plaintiffs' *Second Consolidated Amended Class Action Complaint* (the "SAC") fails to plead the required "strong inference" of scienter against Mr. Sambol.

Plaintiffs' Opposition Brief ("Opp.") concedes that the SAC does not add any new allegations against Mr. Sambol. As established in the Opening Brief ("OB"), plaintiffs' insider trading allegations against Mr. Sambol actually *negate* any inference of scienter. With respect to the plaintiffs' confidential witness allegations, *Zucco* is instructive regarding plaintiffs' inability to overcome the "two hurdles to satisfy the PSLRA pleading requirements." 552 F.3d at 995. *Zucco* is also dispositive regarding the inadequacy of "core operations" allegations similar to those that plaintiffs rely upon in the SAC to establish scienter. *Id.* at 1000-01. Indeed, when the allegations as to Mr. Sambol are reviewed in light of *Zucco's* application of the stringent pleading standards governing this motion, the SAC comes up short.

As another judge of this court recently recognized in dismissing with prejudice securities claims against a mortgage lender and its executives accused of misstating loan underwriting practices, the "cogent and compelling" inference was not necessarily that of fraud, but rather of "a company involved in a volatile industry at the onset of a long, destructive economic downturn." *Pittleman v. Impac Mortgage Holdings, Inc.*, 2009 WL 648983, at *4 (C.D. Cal. Mar. 9, 2009) (rejecting plaintiffs' assertion of "a staggering race-to-the-bottom of loan quality and underwriting standards as part of an effort to originate more loans"). It is the plaintiffs' burden to plead a "cogent and compelling" case of scienter against Mr. Sambol, and plaintiffs' failure to do so here requires dismissal with prejudice.

## II. ARGUMENT

### A. The Opposition Confirms That Plaintiffs' Attempted Pleading Of Scienter As To Mr. Sambol Is Deficient

#### 1. Plaintiffs' Insider Trading Allegations Regarding Mr. Sambol Affirmatively Refute Any Inference Of Scienter

Conceding that this Court's Omnibus Order made no inferences regarding plaintiffs' insider trading allegations,[1] plaintiffs insist that "[Mr.] Sambol's trading plans and continued holding of . . . Countrywide shares have no bearing on whether the SAC sufficiently pleads scienter as to him." Opp. at 72-73. But under the "holistic" approach mandated by the *Tellabs* and *Zucco* decisions, Mr. Sambol's sales (or lack thereof) must be considered as part of the comparative evaluation of all inferences, including inferences which favor Mr. Sambol. *See Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 127 S. Ct. 2499, 2504 (2007) ("a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences"); *Zucco*, 552 F.3d at 991 ("A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing inference.").

Plaintiffs ignore the dispositive case law which establishes that their insider trading allegations actually negate any inference of scienter as to Mr. Sambol. *Compare* OB at 8-9 *with* Opp. at 72-74. As Judge Walter recently recognized in dismissing a securities class action complaint against several mortgage lender executives, "[a] strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal." *In re Downey Sec. Litig.*, 2009 WL 736802, at *14 (C.D. Cal. Mar. 18, 2009); *see also Tripp v. IndyMac Fin. Inc.*, 2007 WL 4591930, at *4 (C.D. Cal. Nov. 29, 2007) (defendants "retained such a large percentage of their stock that an inference of scienter is functionally negated").

---

[1] *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1188-89 (C.D. Cal. 2008) ("The CAC . . . gives aggregate sales data for Sambol . . . . The Court will not draw any inference based on that . . . .").

This inference is further strengthened by the judicially noticeable and unchallenged fact that Mr. Sambol held on to nearly 2.5 million shares of Countrywide stock at the end of the class period, and thereby suffered *personal losses of over $90 million*. OB at 9. The most "cogent and compelling" inference from these facts – indeed the *only* reasonable inference – is that he did not have any motive to commit securities fraud. *See, e.g.*, *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424-25 (9th Cir. 1994) ("[I]f, as Plaintiffs allege, the Officers knew [the company] was heading for financial disaster, they probably would have bailed out of their substantial holdings. Each of the Officer Defendants, by contrast, held onto most of their [company] stock and incurred the same large losses as did the Plaintiffs themselves.") (internal citations omitted).[2] Plaintiffs' suggestion that Mr. Sambol simply had bad timing (Opp. at 73:18-74:8)[3] assumes completely irrational behavior. *See, e.g.*, *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) ("People sometimes act irrationally, but indulging ready inferences of irrationality would too easily allow the inference that ordinary business reverses are fraud. One who believes that another has behaved irrationally has to make a strong case.").[4]

---

[2] *Accord Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002) (no inference of scienter where insider retained majority of stock and experienced large losses as stock price declined); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) ("[A]ny inference of scienter is defeated when an insider sells only a portion of his stock holdings and 'end[s] up reaping the same large losses as did' Plaintiff when the stock price dropped.").

[3] Plaintiffs' reliance on *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) is misplaced. In *MicroStrategy*, over half of the insider sales during a two year period occurred "within a single 8-day period" of an allegedly premature major contract announcement "termed by analysts as a 'watershed event' in [the Company's] history." *Id.* at 646. Given the magnitude and suspicious timing, the insider sales "did not entail near-total divestment of their total holdings" and did "not preclude an inference of an intent on the Individual Defendants' part to profit from fraud *and* maintain control of the Company." *Id.* at 646-47.

[4] *See also Thornton v. Micrografx, Inc.*, 878 F. Supp. 931, 938 (N.D. Tex. 1995) ("Why would the Defendants expend so much time and effort to conceal facts and misrepresent information . . . successfully orchestrating the artificial inflation of [company] stock . . . and then [wait] to begin enjoying the fruits of their fraud by selling their stock? . . . Plaintiffs' unpersuasive explanation appears to be, 'they committed fraud, they just weren't very good at it.' The Court refuses to leave its common sense at the courthouse steps, and concludes that the Plaintiffs have failed to make the requisite showing of scienter.").

Finally, plaintiffs do not dispute that all of Mr. Sambol's trades during the class period occurred pursuant to pre-arranged SEC Rule 10b5-1 plans. OB at 8.[5] Instead, the Opposition erroneously asserts that "Rule 10b5-1 plans may provide an affirmative defense" which the Court should not consider "on a motion to dismiss." Opp. at 73. But the Ninth Circuit has expressly held that *at the motion to dismiss stage*, a defendant may be entitled to the inference that sales made pursuant to a Rule 10b-5 plan are not probative of scienter. OB at 8 (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) (at pleading stage, "[s]ales according to pre-determined plans may 'rebut an inference of scienter'")). Numerous decisions within the Ninth Circuit are in accord.[6]

### 2. Plaintiffs' "Confidential Witness" Allegations As To Mr. Sambol Fail Under *Zucco*

Prior to its decision in *Zucco*, the Ninth Circuit "ha[d] yet to fully explain how . . . *Tellabs*" impacts the pleading standards for scienter. *Zucco*, 552 F.3d at 987. *Zucco* provides invaluable guidance on the proper application of the pleading standards governing this motion. *Zucco* is particularly instructive regarding how plaintiffs' confidential witness allegations fail to overcome the "two hurdles to

---

[5] Plaintiffs also do not oppose Mr. Sambol's Request for Judicial Notice ("RJN"). *See* RJN, Ex. K (Form 4 filings by Mr. Sambol throughout the class period which specify that "the reported sale[s] w[ere] effected pursuant to a trading plan established under Rule 10b5-1"). The May 20, 2007 plan itself was previously submitted to the Court in support of the June 10, 2008 motion to dismiss. Joint Req. for Judicial Notice in Supp. of Mots. to Dismiss by CW Defs., Certain Ind. Defs., Underwriter Defs., and KPMG LLP ("Joint RJN"), Ex. 48.

[6] *See, e.g.*, *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1107 (N.D. Cal. 2003) (on motion to dismiss, defendant entitled to inference that sales made pursuant to a Rule 10b5-1 plan were not suspicious); *Limantour v. Cray, Inc.*, 432 F. Supp. 2d 1129, 1151 n.9 (W.D. Wash. 2006) (same); *McCasland v. FormFactor Inc.*, 2008 WL 2951275, at *10-11 (N.D. Cal. July 25, 2008) (Rule 10b5-1 plan considered on motion to dismiss); *In re InfoSonics Corp. Sec. Litig.*, 2007 WL 2301757, at *5 (S.D. Cal. Aug. 7, 2007) (same); *Constr. Laborers' Pension Trust v. Neurocrine Bioscis., Inc.*, 2008 WL 2053733, at *7 (S.D. Cal. May 13, 2008) (same); *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1052 (N.D. Cal. 2007) (same). Plaintiffs' sole authority is inapposite. *See* Opp. 73:7-11 (citing *In re Cray Inc. Deriv. Litig.*, 431 F. Supp. 2d 1114, 1126-27 (W.D. Wash. 2006) (declining to consider plans in determining whether demand was futile in derivative case and concluding that selling directors were not interested)).

satisfy the PSLRA pleading requirements": (i) "the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge"; and (ii) "those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.* at 995.

Although the Opposition acknowledges this stringent standard (Opp. at 75), plaintiffs merely repeat their insufficient allegations regarding their purported four confidential witnesses ("CWs")[7] without offering any meaningful explanation as to how those allegations suffice under the *Zucco* requirements. *See* Opp. at 76-78. Mr. Sambol's Opening Brief specifically points out that CW8 and CW12 base their allegations of scienter entirely on unreliable hearsay that is insufficient under *Zucco*. *See* OB at 10-11. Plaintiffs' only response is to reiterate CW12's hearsay "allegation of learning through specific named co-workers that Sambol was unhappy about the levels of EPS loan production" and state that the conclusory assertion "contains sufficient detail to be reliable." Opp. 79:6-10. But CW12's allegation of what CW12's boss's boss was supposedly told by Mr. Sambol at an unspecified time is even more extenuated than the confidential witness allegations which were rejected in *Zucco*. 552 F.3d at 997-98 (rejecting confidential witness accounts of what other named sources supposedly told them because "[n]one of these confidential witness statements establishes the witnesses' personal knowledge or reliability by recounting the particulars of the alleged transgressions."). Similarly

---

[7] Only four of the SAC's fourteen confidential witnesses make any direct reference to Mr. Sambol. OB at 10:13-15. Plaintiffs' assertion that allegations by CW3 and CW11 "also support a strong inference of scienter" (Opp. at 78 n.60), is irreconcilable with *Zucco*. 552 F.3d at 995. Although CW3 is attributed as saying that Countrywide's loan products were "new" and "exotic," CW3 actually says that these were "similar to those that Coutrywide's competitors were offering" and "characterize[s] Countrywide as 'fast followers.'" SAC ¶ 154. Similarly insufficient is the conclusory assertion that "CW11 created EPS at Sambol's direction" (Opp. at 78 n.60). *See, e.g., Zucco*, 552 F.3d at 992, 998 (no strong inference of scienter from allegations that CW was "personally instructed . . . to 'reprogram the time and expense software to eliminate the required supervisor or manager approval of time'" and received email confirmation from defendant regarding same).

deficient are CW8's allegations of what unnamed "senior officials attending Business Review meetings described to CW8" at some undisclosed time. Opp. at 78:13-15.[8] The Opposition does nothing to refute the conclusion that these "confidential witnesses base their knowledge on vague hearsay, which is not enough to satisfy *Daou*'s reliability standard." *Zucco*, 552 F.3d at 997; *accord Downey*, 2009 WL 736802, at *12 ("the statements of a confidential witness are disregarded if lacking in specificity or based on hearsay, rumor, or speculation").

Plaintiffs' arguments regarding CW1 and CW14 fare no better. Plaintiffs attribute CW14 as having "warned Sambol about aggressive loan production and the dangers of lax underwriting standards" (Opp. 78:4-6) and CW1 as saying that "Sambol was aware of the declining credit quality of the loans being originated" (*id*. at 76:23-24). But such "generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter since they fail to establish that the witness reporting them has reliable personal knowledge of [Mr. Sambol's] mental state." *Zucco*, 552 F.3d at 998.[9] Even if these allegations were sufficient under prong one of the test, at best they "demonstrate only that there was some disagreement within the corporation over its [underwriting] process, and not . . .

---

[8] Plaintiffs concede that CW8's allegations are hearsay but argue that "it is hardly unreliable because it is supported by CW8's own observations." Opp. at 78:13-17. Although CW8 purportedly "attended *portions of two* Business Meetings at which Sambol and other[s] . . . questioned managers about *sections* of the monthly reports their divisions submitted" (SAC ¶ 445) (emphasis added), both the Opposition and the SAC are markedly silent as to CW8's purported personal "observations." There are no allegations regarding CW8's personal observations, which "portions" of the alleged meetings CW8 attended, how long these "portions" were, what "sections" of the reports were questioned by whom, or any other detail. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002) (no scienter inferred based on "defendants' attendance at meetings and their 'hands-on' managerial style"); *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1100 (C.D. Cal. 2008) ("Vague references to 'packages' and 'reports' are the type of boilerplate allegations that courts generally reject as evidence of scienter.").

[9] Similarly, in *Metzler*, the Ninth Circuit declined to infer that the principals of the company had knowledge of enrollment fraud based on their alleged "hands-on" management and access to a sophisticated computer tracking-system that monitored company-wide data, despite a confidential witness who alleged that the defendants were regularly made aware of the status of enrollment and placement figures. 540 F.3d at 1049, 1058, 1067-68.

deliberate recklessness." *Id.*[10]

### 3. The "Core Operation" Allegations Are Insufficient

The Opposition does not dispute that Mr. Sambol did not oversee credit risk management or the company's disclosures prior to becoming President of Countrywide in September 2006. Plaintiffs make no distinction in their allegations against Mr. Sambol before or after September 2006, and concede that no new allegations regarding Mr. Sambol were added by the SAC. Opp. at 71:19-23.

The Ninth Circuit's decision in *Zucco* clarified the rule established in *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003), that bare allegations of "facts critical to a business's core operations or an important transaction" are inadequate to attribute knowledge to a company and its key officers. *Zucco*, 552 F.3d at 1000. The Ninth Circuit recognized only two "*narrow*" exceptions to this general rule. *Id.* Neither the SAC nor the Opposition plead the particularized detail required for these narrowly tailored exceptions.

The first exception permits allegations about management's role in a corporate structure to create a strong inference of scienter only when they are buttressed with "'*detailed and specific allegations* about management's exposure to factual information within the company.'" *Id.* at 1001 (emphasis added) (internal citations omitted). To satisfy this exacting standard, plaintiffs need to plead, for instance, "'specific admissions from top executives that they are involved in every detail of the company and that they monitored portions of the company's database.'" *Id.* (citation omitted). The SAC contains no such allegations regarding Mr. Sambol.

---

[10] *Accord Pittleman*, 2009 WL 648983, at *3 (rejecting allegations that lender's CEO and COO "were 'in violation of standard due diligence procedures'" and there was "'significant pressure' to approve . . . [and] purchase . . . loan[s] . . . that 'did not meet underwriting guidelines'"); *In re 2007 Novastar Fin., Inc., Sec. Litig.*, 2008 WL 2354367, at *2-3 (W.D. Mo. June 4, 2008) (dismissing claims that company deviated from underwriting guidelines, lacked internal controls and had inadequate allowances for loan losses); *Impac*, 554 F. Supp. 2d at 1101 (dismissing claims based on company's admission that its "internal control policies and procedures were deficient"); *Tripp,* 2007 WL 4591930, at *3 (dismissing allegations that lender "was plagued by profoundly flawed underwriting and hedging operations.").

The Opposition asserts that Mr. Sambol acted as the CEO's "lieutenant" and was at unspecified times a member of a committee that "ran the Company day-to-day" (Opp. at 81:19-25), but such conclusory allegations are insufficient under *Zucco.* 552 F.3d at 1001 (rejecting allegations that management had access to and "closely reviewed" accounting numbers and attended meetings where numbers were discussed). The Ninth Circuit has held that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter . . . absent some additional allegation of *specific information conveyed to management and related to the fraud.*" *Metzler*, 540 F.3d at 1068 (emphasis added). Without such specifics, the "more 'cogent and at least as compelling'" inference is not that there was fraud, but that the Company "maintained its information tracking systems for the necessary and legitimate purpose of running its business." *Id.*[11]

Nor do plaintiffs establish scienter under the second exception, which applies only "where the information misrepresented is readily apparent to the defendant corporation's senior management" and the "'facts [are] prominent enough that it would be 'absurd to suggest' that top management was unaware of them.'" *Zucco*, 552 F.3d at 1001 (citation omitted). The allegations against Mr. Sambol stand in stark contrast from those in *Berson v. Applied Signal Tech.*, 527 F.3d 982, 987-89 (9th Cir. 2008), where defendants failed to disclose "stop-work orders" from the two largest customers which contributed approximately 80% of the company's revenue. There is no analogue in this case to the stop-work orders in *Berson*. As in *Zucco*, the allegedly misleading information in this case is "definitional," dealing with the disclosure process, credit risk management and GAAP principles. *Zucco*, 527 F.3d at 1001 ("[t]hese misrepresentations are not the type that qualifies for the narrow exception to the general rule that falsity alone cannot create a strong inference of

---

[11] In *Metzler*, the Court declined to infer that executives had knowledge of enrollment fraud based on their "hands-on" management and access to a computer tracking-system that monitored companywide data, despite a confidential witness who alleged that defendants were regularly made aware of the status of enrollment figures. 540 F.3d at 1049, 1058, 1067-68.

1  scienter"). Moreover, in light of the public knowledge of Countrywide's expanded
2  loan guidelines and the comprehensive disclosures to investors, analysts, and those
3  who purchased the loans in the secondary market, the supposed "omissions" could
4  not have been patently obvious to Mr. Sambol, who played a limited role in these
5  areas, particularly prior to September 2006. OB at 14-20.[12]

6  Consistent with the Ninth Circuit's rejection of a broad core operations
7  inference, this court recently dismissed with prejudice securities fraud claims against
8  the former executives of Impac Mortgage Holdings, Inc., a mortgage lender that
9  specialized in "Alt-A" loans. *Pittleman,* 2009 WL 648983. In doing so, the Court
10 rejected plaintiff's attempt to invoke a "core operations inference" based on
11 allegations of violations of underwriting guidelines and "standard due diligence
12 procedures," among others. *Id.* at *4 (rejecting allegations of "a staggering race-to-
13 the-bottom of loan quality and underwriting standards as part of an effort to originate
14 more loans for sale through secondary market transactions").[13]

### B. Plaintiffs' Control Person Allegations Fail To State A Claim

16 The Opposition also fails to offer any meaningful response to Mr. Sambol's
17 argument that he was not a control person. *Compare* OB at 20 *with* Opp. at 135.[14]

---

[12] Plaintiffs' characterization of Mr. Sambol's references to news articles and comprehensive public disclosures (OB at 14-20) as a disguised "truth on the market" argument (Opp. at 82-84) is a *non sequitur*. Mr. Sambol is not attempting to refute an inference of reliance, rather he is arguing against an inference that he had *scienter* to commit fraud. These disclosures relate to Mr. Sambol's *state of mind* – supporting his belief that there were no false or misleading statements made and that the allegedly omitted information was actually disclosed. *See Read-Rite*, 335 F.3d at 846 (Ninth Circuit treats falsity and scienter as "a single inquiry, because falsity and scienter are generally inferred from the same set of facts"); *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (similar).

[13] *See also Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1204-05 (N.D. Cal. 2008) (rejecting "core operations" inference and allegations regarding defendants' high level positions, access to information and knowledge of alleged problems).

[14] The Opposition implies that Mr. Sambol has waived his right to oppose the control person claims. Opp. at 134. Mr. Sambol in fact moved to dismiss "*all* claims alleged in [prior complaint] . . . pursuant to Fed. R. Civ. P. 12(b)(6)." *See* Docket # 212 at 1 (emphasis added). The SAC is thus subject to the same challenges. *See, e.g.*, *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000) ("This opportunity to respond, fundamental to due process, is the echo of the opportunity to respond to original pleadings secured by Rule 12.").

1  Acknowledging that Mr. Sambol did not have control over the individual defendants,
2  plaintiffs nevertheless claim that "[Mr.] Sambol is alleged to be a control person
3  with respect to Countrywide, not the other Officer Defendants." Opp. at 135:6-8.
4      As a threshold matter, because plaintiffs have failed to state a valid primary
5  claim for a violation of Section 10(b) or Rule 10b-5 against Countrywide, their
6  control person liability claims against Mr. Sambol fail as a matter of law. *In re*
7  *Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 928, 958 (C.D. Cal. 2002).
8      Moreover, the SAC does not offer sufficient allegations that Mr. Sambol
9  "exercised actual power or control" over Countrywide, particularly before
10 September 2006. *Howard v. Everex*, 228 F.3d 1057, 1065 (9th Cir. 2000); *Paracor*
11 *Fin., Inc. v. General Elec.*, 96 F.3d 1151, 1163 (9th Cir. 1996) ("being an officer or
12 director does not create any *presumption* of control" and plaintiff must allege that
13 "[defendant] exercised direct or indirect control" over transaction in question);
14 *Downey*, 2009 WL 736802, at *15 (similar).[15] The SAC itself shows that Mr.
15 Sambol lacked the necessary control over both the "management and policies" of
16 Countrywide and its SEC reporting process, especially before September 2006.[16]

### C.  Plaintiffs' Section 20(A) Claim Should Be Dismissed

18 The Opposition relies on the flawed argument that it is inappropriate for the
19 Court to consider that Mr. Sambol made his July 19, 2007 trade pursuant to a trading

---

[15] Insufficient control person liability claims may be dismissed at the pleadings stage. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164 (C.D. Cal. 2007) (granting motion to dismiss control person claims against senior executive); *Hansen*, 527 F. Supp. 2d at 1163 (rejecting § 20(a) claim based on allegations of "high-level positions" and "participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements").

[16] *Paracor*, 96 F.3d at 1162 (quoting the SEC's definition of control at 17 C.F.R. § 230.405); *see also* SAC ¶ 27 (Mr. Sambol did not become a "C-level" executive of Countrywide until September 2006); ¶¶ 27, 29, 423 (Mr. Sambol did not join the Credit Committee until "after Kurland left the Company" on September 7, 2006); ¶ 27 (Mr. Sambol did not join Countrywide's Board until September 2007); ¶¶ 425-26, 428 (Mr. Sambol is not alleged to have served on the Board's Finance or Audit and Ethics Committees or to have been one of the "senior financial excecutives" on the Asset/Liability Committee, its Pipeline and Portfolio Risk Management Subcommittee, or its Earnings Forecasting Subcommittee).

1  plan. But plaintiffs did not object to the Form 4's submitted in support of Mr.
2  Sambol's motion to dismiss the SAC which indisputably establish the existence of
3  the May 20, 2007 plan and the fact that the July 19, 2007 trade was made pursuant to
4  that plan. RJN, Ex. K at 110. These facts are therefore properly submitted to the
5  Court and appropriate for consideration in deciding Mr. Sambol's motion. *See, e.g.*,
6  *Metzler*, 540 F.3d at 1060, 1067 n.11 (9th Cir. 2008) (affirming grant of motion to
7  dismiss and noting that "[s]ales according to pre-determined plans may 'rebut an
8  inference of scienter'"); *In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *8 (N.D.
9  Cal. June 28, 2005) (granting motion to dismiss, in part, based on fact that
10  defendants' sales were made pursuant to Rule 10b5-1 trading plan).[17]

11      Plaintiffs make a halfhearted attempt to redefine the Court's ruling that only
12  insider sales "shortly before" Countrywide's July 24, 2007 disclosure suffice to state
13  a Section 20A claim. Opp. at 137-38. Plaintiffs argue that sales from as far back as
14  October 2006 should qualify, but the definition of "shortly" simply cannot be
15  understood to encompass a nine month time period in a case where the entire class
16  period is only four years long. Further, none of the additional sales alleged by
17  plaintiffs establish scienter given the temporal distance between the sales, which
18  took place between October 12, 2006 and June 14, 2007, and the July 24, 2007
19  disclosure. *See Metzler*, 540 F.3d at 1057, 1067 (timing of stock sales not suspicious
20  where many trades took place two months before disclosure event that allegedly
21  triggered sell-off by insiders); *Grillo v. Tempur-pedic Int'l, Inc.*, 553 F. Supp. 2d
22  809, 823 (E.D. Ky. 2008) (stock sales four to five months prior to disclosure do not
23  support inference of scienter because "[t]he longer the time between stock sales and

---

[17] *Accord In re Miva, Inc., Sec. Litig.*, 544 F. Supp. 2d 1310, 1311, 1316-17 (M.D. Fla. 2008) (considering a motion to dismiss and finding that trades "pursuant to a Rule 10b5-1 [p]lan . . . rebut[ ] any possible inference of scienter from the stock sales"); *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 930-32 (S.D. Ind. 2008) (in considering "competing inferences" on a motion to dismiss, fact that shares were sold under 10b5-1 plan weighed in favor of defendant).

OHS West:260623982.6                                    - 11 -                    REPLY ISO DEFENDANT DAVID SAMBOL'S
                                                                                        MOTION TO DISMISS THE SAC
                                                                            LEAD CASE NO. CV 07-5295 MRP (MANx)

the disclosure of bad news, the more scienter is negated").[18]

Finally, even assuming *arguendo* that these additional stock sales satisfy the Court's "shortly before" requirement, because each of the sales was made pursuant to Mr. Sambol's March 21, 2006 trading plan, they are not sales that make "actual use" of inside information. *See U.S. v. Smith*, 155 F.3d 1051, 1068 (9th Cir. 1998) ("[A]n investor who has a preexisting plan to trade, and who carries through with that plan after coming into possession of material nonpublic information, does not intend to defraud or deceive; he simply intends to implement his pre-possession financial strategy."); *InfoSonics*, 2007 WL 2301757, at *5 ("[Defendants'] June sales were pre-scheduled under Rule 10b-5 trading plans that were already in place. In order to prevent the sales, [Defendants] would have had to terminate the trading plans and then would be vulnerable to accusations that they terminated the plans to avoid selling shares at lower prices after the restatement.").

## III.  CONCLUSION

For the foregoing reasons, the Court should grant Mr. Sambol's motion to dismiss with prejudice.

Dated:  March 26, 2009

Respectfully submitted,

MICHAEL D. TORPEY
PENELOPE A. GRABOYS BLAIR
MICHAEL C. TU
ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   */s/ Michael D. Torpey*
Michael D. Torpey

Attorneys for Defendant David Sambol

---

[18] *See also In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d 1160, 1170 (D. Or. 2002) (no scienter where "[n]o sales occurred within the month prior to the negative announcement . . . which caused the stock price to plummet"); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) (sales of stock three, four, and twelve months before disclosure held too attenuated to draw an inference of scienter).