KREINDLER & KREINDLER LLP
GRETCHEN M. NELSON (#112566)
*gnelson@kreindler.com*
MARK LABATON (#159555)
*mlabaton@kreindler.com*
707 Wilshire Boulevard, Suite 4100
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

*Liaison Counsel for Lead Plaintiffs*

LABATON SUCHAROW LLP
JOEL H. BERNSTEIN
*jbernstein@labaton.com*
JONATHAN M. PLASSE
*jplasse@labaton.com*
IRA A. SCHOCHET
*ischochet@labaton.com*
DAVID J. GOLDSMITH
*dgoldsmith@labaton.com*
MICHAEL H. ROGERS
*mrogers@labaton.com*
JOSHUA L. CROWELL
*jcrowell@labaton.com*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

[additional counsel listed on signature page]

*Lead Counsel for Lead Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Applies to: All Actions | Lead Case No.<br>CV 07-05295 MRP (MANx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COUNTRYWIDE DEFENDANTS' MOTION FOR PROTECTIVE ORDER LIMITING PLAINTIFFS' DISCOVERY REQUESTS**<br><br>Date: July 7, 2009<br>Time: 1:30 p.m.<br>Judge: Hon. Mariana R. Pfaelzer |

Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fund; Lead Plaintiffs New York City Employees' Retirement System, New York City Police Pension Fund, New York City Fire Department Pension Fund, New York City Board of Education Retirement System, and Teachers' Retirement System of the City of New York (collectively, "Lead Plaintiffs" or the "New York Funds"); and Plaintiffs Barry Brahn and Shelley B. Katzeff, on behalf of the Class (collectively, with Lead Plaintiffs, "Plaintiffs"), respectfully submit this memorandum of points and authorities in opposition to the Countrywide Defendants' Motion for a Protective Order.[1]

**Preliminary Statement**

Through a misguided request for a protective order, Countrywide hopes to deny the New York Funds access to documents relevant to their claims. Countrywide argues that the documents are not relevant, and also argues that it would be unfair, unduly prejudicial, and excessively burdensome to require it to produce them. These arguments lack merit and the Court should deny the motion.

A party seeking a protective order carries a heavy burden, which Countrywide fails to satisfy. These Defendants argue that they are entitled to a protective order because Lead Plaintiffs have requested documents pertaining to certain classes of securities not individually enumerated and discussed in Lead Plaintiffs' Second Amended Complaint (the "SAC"). This argument is absurd because the Plaintiffs have alleged claims under the Securities Exchange Act of

---

[1] The Countrywide Defendants are defined in their papers to include Defendants Countrywide Financial Corporation ("Countrywide"), Countrywide Capital V, and Countrywide Securities Corporation. They are collectively referred to herein as "Countrywide."

1934 (the "Exchange Act") on behalf of investors in *all* publicly traded securities—which necessarily encompasses the disputed securities—and because Plaintiffs are not required to specifically list or otherwise describe every security that falls within their claims in the SAC. It is sufficient that those securities fall within the claims, which they clearly do.

Aside from the SAC, Lead Plaintiffs have consistently represented that they are pursuing Exchange Act claims on behalf of *all* Countrywide security purchasers, and this Court appointed the New York Funds as Lead Plaintiffs precisely for this purpose—to represent *all* purchasers of publicly traded securities during the Class Period. A plain reading of the SAC and this Court's Orders clears up any misunderstanding regarding the investors on whose behalf this action was brought and is being pursued, or the claims Lead Plaintiffs have asserted.

Alternatively, Countrywide contends that it would be unfair and prejudicial to require it to produce the requested documents, and that Lead Plaintiffs should be judicially estopped from seeking such discovery. Yet here too these Defendants fall woefully short of carrying their burden. This catch-all argument relies on distortions and misrepresentations of facts.

Indeed, one of many glaring exaggerations they make is as to the number of additional securities for which information must be produced and examined given Lead Plaintiffs' clear allegations. Comparing apples to oranges, Countrywide claims that including the "other securities" in the case—those that had been publicly traded but not offered during the Class Period—"quadrupled" the number of relevant securities beyond what they claim they had understood. But their own discovery requests, detailing the number of securities as to which *the Countrywide Defendants* sought information, compared to the number of such additional individual securities that *they* claim would be at issue if their motion was denied, shows a much greater ratio—going the other way! Further, Lead

Plaintiffs have acted with practicality, winnowing down the list of relevant securities at various steps based on considerations of market efficiency, such that the *total* number of securities that may be at stake for Plaintiffs' Exchange Act claims—including those Countrywide does and does not dispute—is now likely *13* (not counting the common stock and put and call options, which are undisputed). This compares with the approximately 180 individual securities Countrywide claimed it believed were the "only" relevant securities.[2]

In short, Countrywide neither has demonstrated that it has suffered manifest prejudice, nor has it satisfied the elements of estoppel. The motion for a protective order lacks substance, and upon close inspection it appears designed to stonewall the Lead Plaintiffs and delay this action.

## **ARGUMENT**

Lead Plaintiffs' Opposition to the Countrywide Defendants' Motion for Judgment on the Pleadings (the "Opposition Brief"), filed concurrently herewith, addresses at length arguments made in Countrywide's motion for judgment on the Pleadings and the present motion for a protective order. To avoid duplication, Lead Plaintiffs respectfully refer the Court and the parties to the recitation of facts and argument made in the Opposition Brief.

---

[2] These approximately 180 "undisputed" securities comprise: (i) Countrywide common stock; (ii) put and call options; (iii) the Countrywide Capital V 7% Capital Security; (iv) the 6.25% Subordinated Notes Due May 15, 2016; (v) the Series A Medium-Term Notes (24 separate CUSIP numbers); and (vi) the Series B Medium-Term Notes (153 CUSIP numbers). The Series A and Series B Medium-Term Notes are listed by Defendants' expert Andrew S. Carron, Ph.D. in an exhibit to his recently submitted report. *See* Exhibit A to the Declaration of Joel H. Bernstein in support of Plaintiffs'' Memorandum of Law in Opposition to the Countrywide Defendants' Motion for Judgment on the Pleadings, filed concurrently herewith ("Bernstein Decl.").

# THE COUNTRYWIDE DEFENDANTS FAIL TO MEET THEIR BURDEN OF ESTABLISHING THAT A PROTECTIVE ORDER IS NECESSARY

A party requesting a protective order bears a heavy burden—one which Countrywide does not come close to satisfying. As shown below and in the Opposition Brief, the discovery Lead Plaintiffs seek is relevant and Countrywide fails to provide countervailing facts justifying the extraordinary relief it seeks.

## A. The Requested Discovery Is Relevant

The requested discovery is relevant because it relates directly to claims made on behalf of security purchasers that Lead Plaintiffs represent. *See* Opposition Br. at 4-6. The operative complaint, the SAC, alleges such claims on behalf of all Countrywide public investors—including those who purchased the disputed securities. *Id.* Moreover, this Court's Orders make clear that the claims are alleged on behalf of a class of purchasers of all of Countrywide's publicly traded securities. *Id.*

Countrywide argues erroneously that Lead Plaintiffs must nonetheless plead separate allegations for every security covered by their Exchange Act claims, even though no such requirement exists. *See* Mot. for Protective Order at 9-11. It is, however, sufficient that the SAC contains claims encompassing such publicly traded securities without limitation. Opposition Br. at 6-11. Case law fully supports Lead Plaintiffs' position as to the breadth of the Exchange Act claims asserted in the SAC, and the SAC adequately alleges loss causation for these claims. *See id.* at 4-6.

## B. Countrywide Grossly Overstates the Burden, Prejudice or Unfairness, if any, Entailed in its Having to Produce Relevant Discovery

Countrywide also contends that it should not be required to produce documents pertaining to certain securities simply because: (a) it somehow "understood" these securities were not at issue in this action, and (b) it would be cumbersome to produce these documents now. *See* Mot. for Protective Order at

11. Specifically, Countrywide argues that it was misled by counsel for Lead Plaintiffs' remarks as to the remaining claims during the April 30, 2009 Status Conference. *Id*. at 6, 7, 11-13. As a result, Countrywide maintains, it would be too difficult to produce the requested documents. *Id*.

Countrywide's "understanding" regarding the scope of this action is unfounded, and they vastly exaggerate the burdens, if any, imposed upon these Defendants. In fact, these defendants were not misled, given the clear allegations in the Exchange Act counts and the Orders of this Court. *See* Opposition Br. at 5-7. And if they had any doubts arising from the Status Conference, they merely needed to confer with Lead Plaintiffs' counsel. And in any event, their self-serving "confusion" would have been cleared up no later than two weeks later on May 14, 2009, when Lead Plaintiffs requested the discovery at issue. At that point, even if Countrywide disputed the inclusion of certain securities in the case, it could have participated in discovery as to those securities (which it did to the extent they were supplied relevant documents and data that Lead Plaintiffs received from third parties), directed its experts to analyze for market efficiency the marginally greater number of securities Defendants' claim do not belong in the case, and moved to exclude those securities at a later time. There was more than enough time to do this—Lead Plaintiffs managed to take discovery of and analyze the few additional securities, along with all of the undisputed securities. Instead, Countrywide strategically decided to stonewall.

As part of this strategy, on June 23, 2009, more than a month after they claim to have realized Lead Plaintiffs' position, and well after the parties had served notices and subpoenas for facts in aid of their expert discovery, and after the exchange of initial expert reports, Countrywide made this motion for a protective order. The motion implies that Countrywide no longer has sufficient time to produce these documents because of a tight discovery schedule. But these Defendants omit a pertinent point: they are the source of this ostensible discovery

1  "time crunch," which they now use as a pretext to avoid producing relevant
2  documents; they created, or manufactured, the "tight" deadline they now
3  complain about.

4      Equally significant, Countrywide's argument is a red-herring for many
5  additional reasons.

6      <u>First</u>, as mentioned, the SAC and this Court's Orders—not any statements
7  made during a status conference—control what is at issue and what documents
8  are discoverable.  *See, e.g. Florida Dep't of State v. Treasure Salvors, Inc.,* 458
9  U.S. 670, 706 (1982) ("It is the complaint which defines the nature of an action . .
10 . .") (White, J., concurring in part and dissenting in part); *Green v. St. Vincent's*
11 *Med. Ctr.,* 252 F.R.D. 125, 129 (D. Conn. 2008) ("It is the Complaint that defines
12 the claims."); *see also* Opposition Br. at 6-11.  Contrary to an underlying and
13 necessary premise of Countrywide's argument, statements made during a status
14 conference do not amend the SAC by reducing the scope of Lead Plaintiffs'
15 claims.  *Id.*  Nor do such statements rewrite, limit, or supersede this Court's Order
16 appointing Lead Plaintiffs to pursue all claims for all purchasers of Countrywide
17 public securities.  *Id.*

18     <u>Second</u>, Countrywide overstates the categories of securities in dispute (*see*
19 Opposition Br. at 17), and fails to demonstrate that producing these documents
20 poses any burden, much less one that on balance outweighs the Lead Plaintiffs'
21 right to obtain relevant documents.  As noted in Lead Plaintiffs' brief in
22 opposition to the motion for judgment on the pleadings, Opposition Br. at 4,
23 17-18, Countrywide itself, as evidenced by its discovery requests, claimed to have
24 believed that approximately 180 separate securities were relevant to the action.
25 *See* Exhibit 3 to the Declaration of Jeffrey A. Simes on behalf of Countrywide.
26 As such, these Defendants can hardly complain as to the need to produce and
27 analyze at most a little more than a tenth of that number.  And, as further noted,
28 Opposition Br. at 17-18, and as evidenced in Plaintiffs' expert report on class

certification, Bernstein Decl. Ex. E, the total number of non-common stock and option securities that Plaintiffs currently believe will be in the case, based on current information related to their market efficiency analysis, is a total of *13,* including only *six* of what Defendants refer to as the "other securities." *See also* Bernstein Decl. Ex. F (summary of securities subject to Exchange Act claims). One is hard pressed to find *any* burden on Defendants, let alone a heavy one caused by this controversy.

Under Rule 26, each party generally has the right to discover "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Under the liberal discovery principles of the Federal Rules, the party seeking a protective order bears a heavy burden. *See id.*; *see also, e.g., Blankenship v. Hearst Corp.*, 519 F.2d 418, 429, 432 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005). To do this, the moving party must establish a particular and specific need for the order. *Blankenship*, 519 F.2d at 429; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test") (citation omitted). Moreover, "[e]ven if 'good cause' for a protective order is shown, the court must still balance the interests in allowing discovery against the relative burdens to the parties[.]" *Sullivan*, 233 F.R.D. at 575 (citation omitted).

Thus, Countrywide seeks a protective order here without regard to Rule 26's mandate requiring liberal access to relevant documents or the heavy legal burden they must overcome.

### C. <u>Judicial Estoppel Does Not Apply Here</u>

Judicial estoppel, an equitable doctrine, would at a minimum require that: (a) Lead Plaintiffs took a "clearly inconsistent" position; (b) the Court has been misled; and (c) Countrywide relied to its detriment on a statement made by Lead Plaintiffs. *See New Hampshire v. Maine,* 532 U.S. 742, 750-51 (2001); *see also*

1  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001);
2  *Contract Assocs. Office Interiors, Inc. v. Ruiter*, No. Civ. S 07-0334, 2008 WL
3  4845213, at *4 (E.D. Cal. Nov. 7, 2008).  None of these conditions are shown
4  here.
5        Lead Plaintiffs have consistently maintained—at the lead plaintiff
6  application stage and in all of their pleadings—that they represent and are
7  pursuing Exchange Act claims on behalf of all defrauded Countrywide public
8  investors.  While in hindsight, perhaps more could have been said during the
9  April 30 status conference, Plaintiffs' Counsel did not include any of the "other
10 securities" among those in the list of securities they recited as having previously
11 been dismissed by the Court.  *See* Opposition Br. at 14-16.  Moreover, there is no
12 suggestion, let alone evidence, that the Court has relied on any inconsistent
13 statement by Lead Plaintiff in determining the merits of the claims or the scope of
14 the Class.  To the contrary, the Court's Orders expressly note that the Exchange
15 Act counts are alleged on behalf of all of Countrywide's publicly traded
16 securities, "not limited" to the specified securities upon which Countrywide now
17 focuses.  *See id.* at 5-6.
18       Thus, Lead Plaintiffs' current position is the same one that they have taken
19 with the Court, which the Court has acknowledged in its Orders from the start.
20 Countrywide argues, however, that on April 30 Lead Plaintiffs took a different
21 position.  From that assertion, Countrywide argues that "the class certification
22 schedule that the Court established one day after the April 30, 2009 status
23 conference, which requires class certification fact discovery to be completed by
24 July 6, 2009, presumably was based on Plaintiffs' representations regarding the
25 scope of this case."  Countrywide Defs. Br. at 13.  Of course, the most important
26 word in that sentence is "presumably."  The notion that the "scope of the class"
27 may have played a role in the Court's decision may be a reasonable one; the
28 assumption, however, that the Court would have come to a different decision if it

had been provided by both parties with a detailed presentation showing that they agreed that about 180 separate securities were involved in the case but that there was a dispute about a maximum of 23 additional ones, is not. Compared with what the parties agree on, what they dispute is *de minimus,* hardly enough to have required the Court to expand the time available for class certification discovery.[3]

Last, there is no evidence that Countrywide was prejudiced by any statements made during the April 30 status conference. To the extent these Defendants were uncertain, confused or in doubt about the scope of the Lead Plaintiffs' claims as a result of this status conference, their "uncertainty" was soon quickly cleared up when they received Lead Plaintiffs' discovery requests two weeks later, with more than sufficient time remaining on the class certification discovery schedule to produce relevant documents, and having the benefit in any event of receiving all discovery that Plaintiffs received from third parties. Thus, Countrywide's argument that it detrimentally relied on any statement made at that status conference lacks credibility.

Judicial estoppel, therefore, should not be used to limit Lead Plaintiffs' right to discover relevant documents.

---

[3] *See Contract Assocs.,* 2008 WL 4845213 at *3-4. There, the court refused to narrow discovery requests based on the broad legal claims it found in the complaint, despite its other findings that "the factual allegations of the amended complaint, including defendants' alleged wrongful acts, and the facts alleged relative to causation, are generally limited to" projects specified in the complaint, *id.* at *4, and (1) an interrogatory response limiting the claimed damages to just those specified projects, (2) the narrowing of discovery to just those projects in exchange for the withdrawal of a motion to quash a subpoena served upon a third party, and (3) deposition testimony by both of the plaintiffs' owners concerning damages, which they limited to the specified projects—all on the eve of a discovery cutoff and trial. *Id.* at *3.

## Conclusion

For the foregoing reasons, the Countrywide Defendants' motion for a protective order should be denied in its entirety.

Dated: July 6, 2009

Respectfully submitted,

LABATON SUCHAROW LLP

By: */s/ Joel H. Bernstein*
JOEL H. BERNSTEIN
JONATHAN M. PLASSE
IRA A. SCHOCHET
DAVID J. GOLDSMITH
MICHAEL H. ROGERS
JOSHUA L. CROWELL

*Lead Counsel for Lead Plaintiffs New York Funds*

KREINDLER & KREINDLER LLP
GRETCHEN M. NELSON
MARK LABATON

*Liaison Counsel for Lead Plaintiffs New York Funds*

KAPLAN FOX & KILSHEIMER LLP
JOEL B. STRAUSS
jstrauss@kaplanfox.com
JEFFREY P. CAMPISI
jcampisi@kaplanfox.com
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
Facsimile:  (212) 687-7714

*Attorneys for Plaintiffs Barry Brahn and Shelley B. Katzeff*