Lloyd Winawer (State Bar No. 157823)
*lwinawer@goodwinprocter.com*
**GOODWIN PROCTER LLP**
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067
Telephone: 310-788-5177
Facsimile: 310-286-0992

Brian E. Pastuszenski (*Pro Hac Vice*)
*bpastuszenski@goodwinprocter.com*
Inez H. Friedman-Boyce (*Pro Hac Vice*)
*ifriedmanboyce@goodwinprocter.com*
Stuart M. Glass (*Pro Hac Vice*)
*sglass@goodwinprocter.com*
Matthew G. Lindenbaum (*Pro Hac Vice*)
*mlindenbaum@goodwinprocter.com*
**GOODWIN PROCTER LLP**
Exchange Place
53 State Street
Boston, Massachusetts 02109
Telephone: 617-570-1000
Facsimile: 617-523-1231

*Attorneys for Defendants*
Countrywide Financial Corporation
Countrywide Securities Corporation
Countrywide Capital V

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. SECURITIES LITIGATION | Lead Case No. 07-CV-05295-MRP (MANx)<br><br>**COUNTRYWIDE DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR AN ORDER MODIFYING PRETRIAL SCHEDULE**<br><br>Judge: Mariana R. Pfaelzer |

# INTRODUCTION

Defendants Countrywide Financial Corporation, Countrywide Securities Corporation, and Countrywide Capital V (collectively, the "Countrywide Defendants" or "Countrywide") respectfully submit this opposition to Plaintiffs' *Ex Parte* Application for an Order Modifying Pretrial Schedule (the "Application"). Plaintiffs have misstated the facts concerning the discovery process to date. And, there are no "extraordinary circumstances" requiring the radical modification of this Court's scheduling order in the manner that Plaintiffs seek, which would be highly prejudicial to Defendants. Moreover, Plaintiffs have no basis for applying for *ex parte* relief concerning the scheduling order, because they themselves have manufactured any claimed "emergency" here by their own delay in conducting discovery.

On May 12, 2009, this Court issued a Civil Minutes Order (the "May 12 Scheduling Order"), providing for completion of fact discovery as to the Countrywide Defendants by January 31, 2010, followed by completion of other fact discovery, expert discovery, and summary judgment briefing, leading to an August 10, 2010 trial date. For the past seven months, the Countrywide Defendants have worked extremely hard to meet Plaintiffs' broad document discovery demands – producing approximately 25 million pages of documents and producing numerous witnesses for depositions. Yet Plaintiffs chose to delay commencement of depositions until November 2009, and to date have taken only 17 of some 65 depositions they have announced an intention to take.

In mid-December, Plaintiffs approached defendants requesting consent to a complete rearrangement of the schedule to give themselves an additional two-and-a-half months of fact discovery of the Countrywide Defendants (through April 15). At the same time, their proposal would unnecessarily and unfairly compress the summary judgment briefing and decision schedule. Their proposal would require Defendants to file reply briefs in response to Plaintiffs' opposition to summary judgment in only two weeks – in a case that will at that point have been going on for three years, and in

1

THE COUNTRYWIDE DEFENDANTS' OPPOSITION  LEAD CASE NO. 07-CV-05295-MRP (MANx)
TO PLAINTIFFS' EX PART APPLICATION

which over 25 million pages of documents will have been reviewed and produced. Moreover, the proposed schedule would truncate the amount of time the Court would have to consider the briefs, affidavits, expert reports and other summary judgment submissions and then render a decision before trial. Under Plaintiffs' proposal, the Court would be given only six weeks after the hearing to digest the factual and legal arguments. Given the complexity of the facts and issues in this case, Plaintiffs' proposed shortening of the summary judgment schedule would not allow adequate time in a case involving a four-year class period for either Defendants to present or the Court to consider why this case should be disposed of on summary judgment.

The principal justification that the Plaintiffs assert for this prejudicial schedule change is that they supposedly were surprised by the Countrywide Defendants' continued production of documents in December 2009. This is untrue. There is no basis for that assertion.

More specifically, Countrywide has been producing documents on an ongoing, rolling basis during the discovery period. Countrywide gathered, reviewed, and produced more than ten million pages of documents between July and October 2009. Consistent with Countrywide's practice from the outset of discovery of providing rolling, continuous production to the Plaintiffs, Countrywide never said that document production would be complete or had been completed in October. Indeed, throughout the remainder of October and November 2009, Countrywide continued to make periodic productions of documents to Plaintiffs. In short, Plaintiffs' counsel's representation to this Court that they need *ex parte* relief because of a surprise production in December is false. There is no emergency here – merely Plaintiffs' failure to commence and take deposition discovery in a timely fashion.

Nonetheless, the Countrywide Defendants recognize that a great deal of additional discovery remains to be completed in the next four weeks. Thus, along with the Underwriter Defendants and KPMG, the Countrywide Defendants have informed Plaintiffs that they would consent to a more reasonable adjustment of the

schedule – a 30-day extension of all existing deadlines, including the trial date. Such a schedule would not only provide greater time for Plaintiffs to complete discovery, but would also leave intact the framework that the Court ordered for the parties' briefing and the Court's consideration of summary judgment issues prior to the commencement of trial.

Plaintiffs' *ex parte* motion is inappropriate – not only is there no "emergency," but the motion does not accurately describe the progress of documentary discovery to date. The Court should not reward Plaintiffs' poor time management by burdening the Defendants with months of additional fact discovery and unfairly truncating both this Court's and the parties' opportunity to adequately brief, address, consider and decide the very significant issues relevant to summary judgment. This soon-to-be three year old litigation is a massive case involving a four year class period, numerous securities offerings, tens of millions of pages of documents, and likely nearly one hundred depositions. Although Countrywide would not oppose a thirty-day extension of all deadlines in the May 12 Scheduling Order, the present motion should be denied.

## I. BACKGROUND

On May 12, 2009, the Court adopted the parties' Joint Proposed Schedule. That schedule provided for the end of fact discovery as to the Countrywide defendants on January 31, 2010; the end of fact discovery as to the Underwriter Defendants and KPMG at the end of March 2010; and dates for the completion of expert discovery, briefing of summary judgment motions, and a hearing on summary judgment on June 9, 2010. *See* Joint Proposed Schedules for Fact Discovery, Expert Reports, and Summary Judgment Motions, May 11, 2009, Docket No. 442; May 12 Scheduling Order, Docket No. 443. The Court instructed that "[i]f the parties wish to change any aspect of this schedule, all parties must agree and file a stipulation with the Court. If all parties cannot agree, this schedule shall not be changed absent a showing of extraordinary circumstances." *Id.*

### A. Defendants' Compliance With Plaintiffs' Massive Discovery

**Demands.**

Plaintiffs served their first discovery requests on the Countrywide Defendants in April 2009, even before the adoption of a schedule. (*See* Plaintiffs' Joint First Request for Production of Documents Propounded to Defendant Countrywide Financial Corporation, April 15, 2009, attached as Exhibit ("Ex.") A to the Declaration of Mitchell D. Webber ("Webber Decl.").) **By the following month**, Countrywide had produced nearly 800,000 documents, comprised of 9.5 million pages, responsive to Plaintiffs' initial requests, including the bulk of Countrywide's voluminous document production to the U.S. Securities and Exchange Commission ("SEC") during its investigation. (*See* Webber Decl. ¶5.) On July 3, 2009, after serving several other requests for production, Plaintiffs served an omnibus Fourth Request for Production of Documents, which consisted of 142 separate requests, many of which contained multiple subparts. (*See* Plaintiffs' Fourth Request for Production of Documents Propounded to the Countrywide Defendants, July 3, 2009, attached as Exhibit B to the Webber Decl.) Many of those requests were extremely broad in scope.

For example, Plaintiffs' document requests contained demands for "[a]ll documents concerning Countrywide's underwriting standards, guidelines, or policies for all mortgage loans from 2000 to the present," "[a]ll documents concerning Countrywide's assessment or collection of historical data for default, delinquency, and foreclosure rates for prime and subprime loans in the U.S. housing market," – a nine (9) year period, "[a]ll documents concerning Countrywide's stock repurchase program[s]," and "[a]ll communications with any public or private institutional investor concerning Countrywide or any Countrywide security." *Id.* at Request Nos. 8, 33, 67-68, and 79. In all, to date, Plaintiffs have served the Countrywide Defendants with eight sets of document requests comprising 262 individual requests and three sets of interrogatories. (*See* Webber Decl, ¶3.) All requests sought information and materials covering at least the entire four-year class period. As to

4

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

some requests, Countrywide agreed to produce information going back several years before the commencement of the class period.

All of these requests were made of a company which, during the class period, employed as many as 60,000 people, and which has undergone a tremendous amount of turnover and downsizing in the wake of the financial markets' downturn and its acquisition by Bank of America Corporation in 2008. Despite the breadth of Plaintiffs' requests, Countrywide has sought in good faith to comply with them. From July through the present, Countrywide has worked tirelessly to compile, review, and produce on a rolling basis almost 20 million pages of documents responsive to Plaintiffs' requests.

### B. The Truth Is That There Was No "December Surprise" In Countrywide's Continued Document Production.

There is no objective, factual basis whatsoever for the assertion that is at the heart of Plaintiffs' motion for *ex parte* relief – that they were somehow surprised by Countrywide's continued rolling production of documents in December. Just the opposite is true. (Application, at 2, 5-6.)

Plaintiffs argue that "Countrywide's counsel suggested that Countrywide's production would be substantially complete well before December." (Application, at 6.) But Plaintiffs identify no such representation, and there was none. Rather, the September 16, 2009 e-mail from Countrywide counsel Mr. Lindenbaum (attached as Exhibit I to Plaintiff's Application) merely identifies the broad categories of documents requests made by Plaintiffs that the Countrywide Defendants had fully produced, those it was in the process of producing, and ***those it had not yet begun to produce***. Plaintiffs cannot credibly claim that they were operating under the misconception that Countrywide's production would be complete in October. During those months, Countrywide continued to produce documents on essentially a weekly basis. (*See* Production Cover Letters, dated October 21, 2009; October 27, 2009; November 6, 2009; November 9, 2009; November 23, 2009; November 30, 2009;

5

1 December 1, 2009; and December 7, 2009, attached as Ex. C to the Webber Decl.) In
2 fact, in October and November, Countrywide counsel and Plaintiffs' counsel were in
3 daily contact about document discovery issues.

Plaintiffs also vastly exaggerate the scale of the document productions made in December, which they describe as including three million pages. (Application, at 2, 4.) As Plaintiffs know, the bulk of that production resulted from the format of the electronic production of Excel spreadsheets, resulting in millions of pages of documents containing no substantive information. Because of this formatting (which caused single documents to be reproduced over multiple pages), the numbers of distinct documents produced in December actually numbered only in the tens of thousands. (See Webber Decl. ¶6.) To make review of these documents less cumbersome for Plaintiffs, Countrywide has since produced versions of those documents in "native" format, reducing the volume of documents greatly. Prior to the filing of Plaintiffs' *ex parte* motion, Countrywide's counsel expressly informed Plaintiffs that it was due to the formatting of this relatively small subset of documents that Countrywide produced 3 million pages. Plaintiffs, however, nowhere mention this fact to the Court in their *ex parte* submission.

Moreover, as late as mid-December, Plaintiffs continued to renew document demands that the parties had earlier discussed and had set aside. Indeed, as recently as December 18, 2009 – just two weeks ago – Plaintiffs contacted Defendants for the first time in several months regarding a request for loan file information that the parties had discussed but which Plaintiffs then failed to promptly pursue. More specifically, in this December communication, Plaintiffs asked Countrywide to produce 1,000 complete loan files (each of which is several hundred pages long) and electronic data on 100,000 additional loans. (*See* e-mail from Mr. Rogers to Mr. Pastuszenski, December 18, 2009, attached as Exhibit D to the Webber Decl.) Countrywide has begun the expensive and time-consuming process of collecting and compiling the documents and information sought. This process will take a number of

6

weeks to complete. Plaintiffs surely knew that these documents could not be produced overnight when they asked for them in the third week of December, one week before Christmas, with the current fact discovery deadline approaching.

Countrywide is now in the process of completing its production of documents in response to Plaintiffs' almost 300 document requests. Countrywide believes that it can substantially complete production within the fact discovery period ending on January 31.

### C. The Plaintiffs Have Been Dilatory In Regard To Depositions.

By the end of August 2009, Countrywide had produced to Plaintiffs nearly 25 million pages of documents. The documents included the bulk of the documents Countrywide had to produce to the Enforcement Division of the SEC in connection with the SEC's investigation of Countrywide, and those transcripts of SEC investigative testimony that Countrywide had in its possession.[1] Despite having these millions of pages of documents, including transcripts, Plaintiffs did not notice a single deposition until October 2009, and took their first deposition on October 29, 2009.

Although Plaintiffs have told Countrywide that they intend to take some 65 depositions of its present and former employees, they have taken only seventeen – including seven depositions in November and nine in December. They themselves have chosen to wait until the final month of fact discovery to take the vast majority of their depositions. They have not taken advantage of months of time in which they could have conducted deposition testimony. They now seek to use an inappropriate *ex parte* motion to make up for their delay.

### D. Plaintiffs' Proposed Schedule Is Unnecessary And Unreasonable.

---

[1] These transcripts are inadmissible hearsay taken outside of the presence of the parties to this case, and thus of course the defendants do not consent to their admissibility as though they were deposition transcripts. They do, however, provide Plaintiffs with an unusually helpful tool for examining the witnesses examined by the SEC.

THE COUNTRYWIDE DEFENDANTS' OPPOSITION    LEAD CASE NO. 07-CV-05295-MRP (MANx)
TO PLAINTIFFS' EX PART APPLICATION

On December 15, 2009, Plaintiffs informed Countrywide that they would seek to amend the May 12 Scheduling Order to extend the fact discovery deadline. (*See* Joel Bernstein letter, December 15, 2009, attached as Ex. A to the Declaration of Jonathan M. Plasse ("Plasse Decl.").) In response, Defendants advised Plaintiffs' counsel they did not think the proposed schedule change was appropriate or necessary. But Countrywide, the Underwriter Defendants, and KPMG, did inform Plaintiffs that they would consent to a 30-day extension of all deadlines.[2] (*See* John J. Falvey, Jr. e-mail, dated December 29, 2009, attached as Ex. C to the Plasse Decl.) Defendants explained that such a uniform 30-day extension of all deadlines would preserve the parties' ability adequately to address, and the court's ability adequately to consider and decide, the range of summary judgment issues in this case prior to trail. Plaintiffs rejected that proposal, and then filed this request for an *ex parte* modification to the May 12 Scheduling Order.

## II. ARGUMENT
### A. There Is No Basis For Ex Parte Relief Because Plaintiffs Created The "Emergency."

It is well established in this District that a party may not apply for an *ex parte* motion if that part is in an any way at fault for precipitating the situation purportedly necessitating the *ex parte* order:

> To obtain *ex parte* relief, the moving party must show (a) that the moving party's cause will be irreparably prejudiced if relief is not granted, and (b) that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.

*Benton v. Allstate Ins. Co.*, CV-00-00499 CAS, 2001 U.S. Dist. LEXIS 9448, at *28

---

[2] Plaintiffs argue that "defendants will not be prejudiced by this application" because Defendants have noticed numerous depositions for the month of January. But that fact is irrelevant to this Application – Countrywide is prepared to either complete or forego the noticed depositions by January 31, 2010 or, if the Court modifies the schedule by 30 days, during the ensuing next 30 days.

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

(C.D. Cal. Feb. 26, 2001) (denying plaintiff's ex parte motion to extend fact discovery because its "averments do not show that plaintiff could not have conducted the pertinent discovery" in the timeframe provided by the court). The movant in an *ex parte* motion must essentially show that it is blameless with respect to the matter claimed to warrant emergency relief:

> To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis – the necessity for bypassing regular motion procedures – that requires explanation. For example, merely showing that trial is fast approaching and that the opposing party still has not answered crucial interrogatories is insufficient to justify *ex parte* relief. **The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period.**

*Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 493 (C.D. Cal. 1995) (emphasis added). Thus, it would not be sufficient for Plaintiffs to show that the defendants alone caused a discovery delay (which is not even the case here). Rather, they must show why they could not have sought this relief earlier rather than seek ex parte relief now.

Here, plaintiffs' have failed to use the many months of the discovery period to date "efficiently," and the current sense of urgency Plaintiffs are trying to invoke derives from a situation of their own making. They could certainly have commenced depositions in September and October, when they had millions of defendants' documents in hand, yet delayed doing so.

Based on the alleged "extraordinary circumstances" created by Plaintiffs' own dilatory conduct, Plaintiffs now seek to burden the Defendants with an additional two-and-a-half months of discovery, while at the same time reducing the amount of time the defendants would have to draft their summary judgment briefs and replies and reducing the time this Court presumably thought it needed adequately to address,

9

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

consider and decide the range of summary judgment issues it will be asked to consider. In effect, Plaintiffs propose that the Court and the Defendants pay the price for their delay.[3]

It is disingenuous for Plaintiffs to claim that they were not able to take most of their depositions before the final month of fact discovery, because Countrywide has not concluded its document productions. The Countrywide Defendants have diligently responded to all of Plaintiffs' discovery requests, from the Summer of 2009 through the present. Countrywide has produced responsive documents as soon as they could be identified and gathered. The rolling productions of documents that Countrywide told the Plaintiffs it would be making – and that it has in fact been making – are the only feasible means of responding to Plaintiffs' requests. Plaintiffs understood that there would be continuing rolling productions and did not object and did not seek Court intervention. Moreover, the rolling productions Countrywide has made and is making are consistent with the May 12 Scheduling Order, which did not provide for phased document discovery. If the parties or the Court had intended that document production should conclude prior to the close of fact discovery, and prior to the taking of depositions, such a deadline would have been written into the schedule.

In short, Countrywide has produced approximately 25 million pages of documents in response to nearly three hundred broad document requests, many of them produced by Countrywide in the Summer. (See Webber Decl. ¶4.) Countrywide is continuing, and nearly finished with, its production of responsive documents. This is to be expected given the vast breadth of the document requests covering the four years of the class period and in many cases – as with Plaintiffs' loan file requests –

---

[3] Even if the Court were to determine that *both* Plaintiffs and defendants were to blame for the backlog of depositions, such a finding would still preclude Plaintiffs from obtaining an *ex parte* order. *See Cook v. City of Pomona*, 884 F. Supp. 1457, 1460 (C.D. Cal. 1995) (denying plaintiffs' *ex parte* motion to extend the trial date based on the court's finding that "both the plaintiffs and defendant have been dilatory in conducting discovery").

going back nearly 10 years. Countrywide expects to complete its production within the discovery period.

### B. Plaintiffs' Proposed Schedule Would Unnecessarily Prolong Fact Discovery And Compress The Summary Judgment Schedule.

The Court set an aggressive pre-trial schedule in this matter, and the Defendants have worked extremely hard to comply with it. Though a substantial amount of discovery remains to be conducted, Countrywide believes that a thirty-day, across the board extension, would provide adequate time without wreaking havoc on the agreed-upon schedule set forth in the May 12 Order. Countrywide has attached to this memorandum a chart showing the existing schedule, Plaintiffs' proposed modifications, and the effect of the uniform thirty-day extension the Underwriter Defendants, KPMG and the Countrywide Defendants told Plaintiffs they would consent to. (*See* Exhibit E, attached to the Webber Decl.)

The Plaintiffs' proposal is unreasonable in at least four respects. First, for the first time, it would impose a new, arbitrary document discovery completion date, nine days from today. No such date appeared in the May 12 Scheduling Order entered by this Court. Although Countrywide has completed the vast bulk of its document production and believes it can complete production by January 31, 2010, completion in nine days would be logistically impossible.

Second, it unnecessarily and unfairly would give Plaintiffs two and a half additional months to take depositions of current and former Countrywide personnel. If that much time truly was needed it is impossible to imagine why Plaintiffs failed to present this motion months ago, with ordinary notice and time for response. Countrywide believes that thirty days would be reasonable and would suffice.

Third, it would unduly shorten the time for briefing summary judgment in an extremely complex case. Defendants would have only two weeks to file summary judgment reply briefs, which will help the Court and the parties focus on the most important issues for decision.

11

THE COUNTRYWIDE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' EX PART APPLICATION

LEAD CASE NO. 07-CV-05295-MRP (MANx)

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

Fourth, it would cut two weeks from the time this Court otherwise would have under the current schedule to deliberate on the summary judgment motions. In a complex securities fraud case with multiple defendants – each of whom can be expected to move for summary judgment – a four-year class period, multiple securities issuances, and roughly 25 million pages of documents produced to date, six weeks between summary judgment hearing and trial would be is unrealistic and unfair both to the Defendants and to the Court. As noted above, the Court understandably required to two and a half months to issue its Memorandum and Decision Resolving All Class Certification Issues.

## III. CONCLUSION

The Countrywide Defendants are not opposed to an across the board reasonable extension of all remaining deadlines, including the trial date, by 30 days or another reasonable amount of time. But for the foregoing reasons, the Countrywide Defendants respectfully request that the Court deny Plaintiffs' *Ex Parte* Application for an Order Modifying Pretrial Schedule.

Dated: January 6, 2010                    GOODWIN PROCTER LLP

By:   /s/ Brian E. Pastuszenski
Brian E. Pastuszenski (*Pro Hac Vice*)
Lloyd Winawer
Inez H. Friedman-Boyce (*Pro Hac Vice*)
Stuart M. Glass (*Pro Hac Vice*)
Matthew G. Lindenbaum (*Pro Hac Vice*)

*Attorneys for the Countrywide Defendants*