KREINDLER & KREINDLER LLP
GRETCHEN M. NELSON (#112566)
*gnelson@kreindler.com*
MARK LABATON (#159555)
*mlabaton@kreindler.com*
707 Wilshire Boulevard, Suite 4100
Los Angeles, California  90017
Telephone:  (213) 622-6469
Facsimile:  (213) 622-6019

*Liaison Counsel for Lead*
*Plaintiffs New York Funds*

LABATON SUCHAROW LLP
JOEL H. BERNSTEIN
*jbernstein@labaton.com*
JONATHAN M. PLASSE
*jplasse@labaton.com*
IRA A. SCHOCHET
*ischochet@labaton.com*
DAVID J. GOLDSMITH
*dgoldsmith@labaton.com*
MICHAEL H. ROGERS
*mrogers@labaton.com*
JOSHUA L. CROWELL
*jcrowell@labaton.com*
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Lead Counsel for Lead*
*Plaintiffs New York Funds*

[Additional counsel listed on signature pages below]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Relates to: All Actions | Lead Case No.<br>CV 07-05295 MRP (MANx)<br><br>**STIPULATION AND AGREEMENT OF SETTLEMENT** |

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Stipulation and Agreement of Settlement (the "Settlement Agreement") is entered into between and among (a) Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fund ("NYSCRF"), Lead Plaintiff New York City Employees' Retirement System, New York City Police Pension Fund, New York City Fire Department Pension Fund, New York City Board of Education Retirement System, and Teachers' Retirement System of the City of New York (the "New York City Pension Funds," and together with NYSCRF, "Lead Plaintiffs" or the "New York Funds"), and Plaintiff Barry Brahn ("Brahn"), on behalf of themselves and the Class defined herein, and Plaintiff Shelley B. Katzeff ("Katzeff") (collectively with Lead Plaintiffs and Plaintiff Brahn, "Plaintiffs"); and (b) Defendant Countrywide Financial Corporation ("Countrywide" or the "Company"), the other Countrywide Defendants defined herein, the Individual Defendants defined herein, the Underwriter Defendants defined herein, and Defendant KPMG LLP ("KPMG") (collectively, "Defendants"), by and through their respective duly authorized counsel.

This Settlement Agreement is intended by Plaintiffs and Defendants to fully and finally compromise, resolve, discharge, release and settle the Settled Claims, as defined herein, and to dismiss this Action with prejudice, subject to the terms and conditions set forth below and without any admission or concession as to the merits of any claim or defense by Plaintiffs or Defendants.

WHEREAS, starting in August 2007, multiple class action complaints alleging securities law violations were filed in this Court against Countrywide and certain of its current and former officers and directors, and certain other defendants;

WHEREAS, on November 28, 2007, the Court issued an order consolidating certain of these complaints and, pursuant to provisions of the Private Securities Litigation Reform Act of 1995, appointing the New York Funds as lead plaintiffs to pursue claims in this Action on behalf of purchasers of publicly traded Countrywide securities, and appointing Labaton Sucharow LLP to serve as lead counsel;

WHEREAS, on March 28, 2008, the Court issued an Order consolidating additional complaints in this Action;

WHEREAS, on April 11, 2008, following a confidential investigation that included interviews of many former Countrywide employees and analysis of certain nonpublic Countrywide documents, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "CAC"), naming Brahn and Katzeff as additional plaintiffs and asserting claims for violations of the federal securities laws variously against the Defendants defined below, four additional defendants—Grant Thornton LLP, Carlos Garcia, Andrew Gissinger III,[1] and Thomas McLaughlin—who subsequently were voluntarily or involuntarily dismissed from the Action, and one further defendant, Lehman Brothers Inc., the claims against which were automatically stayed when Lehman Brothers subsequently filed for bankruptcy protection;

WHEREAS, on June 10, 2008, all Defendants named in the CAC moved to dismiss or filed notices of joinder;

---

[1] On March 25, 2010, Lead Plaintiffs, on their own behalf and on behalf of the Class, stipulated to the voluntary dismissal with prejudice of defendants Carlos Garcia ("Garcia") and Andrew Gissinger III ("Gissinger"). That stipulation was lodged with the Court, but to date no order has been entered on the stipulation. Because Lead Plaintiffs previously agreed to their dismissal, Garcia and Gissinger are not parties to this Settlement Agreement. However, as former officers of Countrywide, they are intended to be treated as Released Parties as defined herein.

WHEREAS, on December 1, 2008, after hearing oral argument, the Court issued a 112-page Omnibus Order granting Grant Thornton LLP's motion to dismiss, and otherwise granting in part and denying in part the other motions to dismiss;

WHEREAS, on January 6, 2009, Plaintiffs filed a Second Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), asserting claims against the Countrywide Defendants and Individual Defendants as defined below, certain of the Underwriter Defendants as defined below, and KPMG, Garcia, Gissinger and McLaughlin;

WHEREAS, on February 6, 2009, all Defendants named in the Complaint moved to dismiss or filed notices of joinder;

WHEREAS, on April 6, 2009, the Court issued an Omnibus Order dismissing certain claims asserted against certain Individual Defendants and McLaughlin, and otherwise denying the motions to dismiss;

WHEREAS, on April 29, 2009, the Defendants named in the Complaint filed Answers denying the material allegations of the Complaint;

WHEREAS, in the course of this Action, the Countrywide Defendants, KPMG, the Underwriter Defendants, and other Defendants named in the Complaint produced more than 25 million pages of documents and voluminous additional data in electronic form;

WHEREAS, in the course of this Action, Lead Plaintiffs produced more than 245,000 pages of documents and voluminous additional data in electronic form;

WHEREAS, in the course of this Action, Plaintiffs Brahn and Katzeff produced documents in their possession, custody or control relevant to the Parties' claims and defenses;

WHEREAS, in the course of this Action, the Parties also reviewed substantial volumes of documents and data produced by various subpoenaed third-parties;

WHEREAS, in the course of this Action, the Parties have taken the depositions of 80 fact and expert witnesses in more than 20 cities;

WHEREAS, on May 21, 2009, certain Parties and Countrywide participated in arm's-length settlement discussions that were facilitated by Professor Eric D. Green, a private mediator engaged by the Parties;

WHEREAS, on September 24, 2009, the Parties participated in further arm's-length settlement discussions that focused on the Parties' significant disputes concerning damages and causation issues, as well as the Countrywide Defendants' position that the information that Plaintiffs alleged had not been disclosed to investors in fact had been publicly disclosed and was known to investors ("truth-on-the-market defense").  Such discussions were facilitated by Professor Green;

WHEREAS, on October 13, 2009, the Parties participated in further settlement discussions regarding all liability, damages, and causation issues, again facilitated by Professor Green;

WHEREAS, on December 9, 2009, after the completion of fact and expert discovery on various class certification issues and briefing and argument on Plaintiffs' motion for class certification, the Court issued an 80-page Memorandum of Decision, granting in part, and denying in part, the motion;

WHEREAS, on January 21, 2010, further to this Memorandum of Decision, the Court issued an Order certifying the Class defined below, appointing NYSCRF as class representative for the Common Stock Subclass, appointing the New York City Pension Funds as class representative for the Debt Securities Subclass, and appointing Plaintiff Brahn as class representative for the Capital Securities Subclass, all as defined below;

WHEREAS, on March 4, 2010, certain Parties participated in continued arm's-length settlement discussions that were facilitated by Professor Green;

WHEREAS, on March 24 and 31, 2010, the Parties collectively exchanged the reports of 20 testifying expert witnesses on various liability, causation and damages issues;

WHEREAS, on March 26, 2010, Defendants filed 11 separate motions for summary judgment;

WHEREAS, the Countrywide Defendants' motion for summary judgment addressed, among other things, their position that the information that Plaintiffs alleged had not been disclosed to the Class in fact had been publicly disclosed and was known to the Class throughout the Class Period as a result of: (a) Countrywide's disclosures provided in compliance with SEC Regulation FD (Fair Disclosure (17 C.F.R. § 243.100 *et seq.*) at numerous, regular investor forums sponsored by Countrywide, which forums were attended by securities analysts and institutional investors, among others; (b) periodic and other SEC filings (including filings with the SEC associated with the public offering and sale of mortgage-backed securities, which filings detailed the credit risk attributes associated with substantially all the loans that Countrywide entities originated during the Class Period); (c) quarterly investor calls; and (d) other disclosures to the popular news media, among other sources of public disclosure.  The Countrywide Defendants also argued in their summary judgment submissions that any decrease in the market price of the Countrywide securities at issue in the case had been caused by macro-economic factors unrelated to Countrywide, including the collapse of the U.S. capital markets (including the secondary mortgage market, a principal source of liquidity for Countrywide) and the precipitous drop in national home prices that began in the late summer of 2007, the first sustained national decline in home prices since the Great Depression.  Defendants further argued in their motions for

1   summary judgment that Plaintiffs had failed to adduce evidence of scienter, an

2   essential element of their claims under the Exchange Act;

3       WHEREAS, KPMG's motion for summary judgment asserted, among other

4   things, that the undisputed facts showed as a matter of law, that:  (1) KPMG did

5   not make any material misstatement of fact relating to its opinions and statements

6   in its audit reports that were incorporated into Countrywide's Form 10-K for the

7   years ended 2004, 2005 and 2006 because the statements in KPMG's audit

8   opinions were accurate; (2) KPMG did not act with scienter because (a) Plaintiffs

9   did not allege intentional fraud, (b) the undisputed facts established that KPMG

10  conducted an extensive and comprehensive audit for each year and (c) there were

11  no restatements for any of the relevant years, and hundreds of persons with

12  expertise in accounting worked on, reviewed, considered and opined on

13  Countrywide's 2004 to 2006 financial statements during the Class Period and

14  reached the same conclusions; and (3) there was no loss causation as to KPMG

15  because there was not a single corrective disclosure that either mentioned KPMG

16  or corrected the purported falsity of any KPMG-related statements;

17      WHEREAS, the Underwriter Defendants joined in the arguments of the

18  Countrywide Defendants and KPMG in their motions for summary judgment

19  insofar as they related to claims under the Securities Act of 1933, and also made

20  their own motion for summary judgment asserting (1) that Plaintiffs offered no

21  evidence of a material misstatement or omission in any of the offering materials,

22  (2) that the Underwriter Defendants (a) were in any event entitled to rely on the

23  expertised portions of the offering materials and (b) that they conducted reasonable

24  and customary due diligence with respect to the offerings, and (3) that Plaintiffs

25  had no evidence they sustained a legally cognizable loss;

26      WHEREAS, Plaintiffs contend, based on the voluminous evidentiary record

27  developed in this Action and their investigation of the relevant facts and law, that

28

the motions for summary judgment filed by the Countrywide Defendants, KPMG, the Underwriter Defendants, and all Individual Defendants would have been denied by the Court in their entirety;

WHEREAS, on March 31 and April 1 and 2, 2010, the Parties participated in further arm's-length settlement negotiations facilitated by the Honorable A. Howard Matz, a sitting judge of this Court, and the aforementioned private mediator, Professor Green (together, the "Mediators"), which resulted in an agreement-in-principle between Plaintiffs and KPMG to settle this Action as to KPMG, and a separate agreement-in-principle between Plaintiffs and the remaining Defendants to settle this Action as to the remaining Defendants.  These joint mediation sessions focused on the Parties' respective positions and evidence regarding alleged material misrepresentations and omissions of fact, damages, causation, and Countrywide's truth-on-the-market defense;

WHEREAS, Lead Plaintiffs assert that Defendants committed certain acts or omissions that subject them to liability under the federal securities laws, and state that they are entering into this Settlement in view of, among other things, the significant cash benefits the Settlement will provide to Class Members and in order to eliminate the uncertainties, burden, risk, and expense of further litigation;

WHEREAS, Defendants expressly deny that they have committed any act or omission giving rise to any liability or violation of law whatsoever, and state that they are entering into this settlement solely to eliminate the uncertainties, burden, risk and expense of further litigation; and

WHEREAS, without admitting the strengths or weaknesses of any claims or defenses, the Parties have agreed to the Settlement set forth herein, which Plaintiffs and Plaintiffs' Counsel believe is in the best interests of Plaintiffs and the entire Class;

1  NOW, THEREFORE, IT HEREBY IS STIPULATED AND AGREED,

2  among Plaintiffs, on behalf of themselves and each of the other Class Members, by

3  and through their duly authorized counsel, and Defendants, by and through their

4  respective duly authorized counsel, that subject to the approval of the Court, this

5  Action hereby will be settled, compromised, and dismissed on the merits with

6  prejudice, on the terms and conditions set forth in this Settlement Agreement dated

7  as of June 4, 2010.

8

9  **I.     CERTAIN DEFINITIONS**

10  1.     As used in this Settlement Agreement and the exhibits annexed

11  hereto, the following terms, listed alphabetically, have the following meanings

12  unless a Paragraph or Subparagraph of this Settlement Agreement or an exhibit

13  otherwise provides:

14  a)     "Action" means the above-captioned action titled *In re*

15  *Countrywide Financial Corporation Securities Litigation,* Lead Case

16  No. CV 07-05295 MRP (MANx) (C.D. Cal.), and all actions

17  consolidated therein.

18  b)     "Alternative Judgment" shall have the meaning set forth

19  in Paragraph 34(d) hereto.

20  c)     "Authorized Claimant" means a Class Member (or the

21  representative of such Class Member including, without limitation, its

22  agents, administrators, executors, heirs, successors, and assigns) who

23  (i) timely returns a valid and signed Proof of Claim to the Claims

24  Administrator, (ii) whose Proof of Claim is not rejected, and (iii) who

25  is entitled to a distribution from the Net Settlement Fund pursuant to

26  the terms and conditions set forth in this Settlement Agreement and

27  the Plan of Allocation.

28

d)      "Bank of America" means non-party Bank of America Corporation.

e)      "Claims Administrator" means Rust Consulting, Inc. or such other entity that the Court shall appoint to administer the Settlement and to perform other administrative functions under this Settlement Agreement.

f)      "Class" means all persons or entities that, between March 12, 2004 and March 7, 2008, inclusive (the "Class Period"), either in the open market or pursuant or traceable to a registration statement: (i) purchased or otherwise acquired Countrywide Financial Corporation ("Countrywide") publicly traded common stock or call options, and/or sold Countrywide publicly traded put options (the "Common Stock Subclass"); or (ii) purchased or otherwise acquired Countrywide Capital V 7% Capital Securities (the "Capital Securities Subclass"); or (iii) purchased or otherwise acquired Countrywide Series A Medium-Term Notes, Series B Medium-Term Notes, 6.25% Subordinated Notes Due May 15, 2016, Series L Medium-Term Notes (limited to CUSIP Nos. 22237LNR9 and 22237LPA4), and/or Series M Medium-Term Notes (limited to CUSIP No. 22237LPM8) (the "Debt Securities Subclass) and were damaged thereby (these subclasses will collectively be referred to as the "Class" and the securities identified above will collectively be referred to as the "Countrywide Securities").  Excluded from the Class are: the Defendants; members of the Individual Defendants' immediate families; any entity in which any Underwriter Defendant has a majority interest; any entity in which any other Defendant has a majority or controlling interest; any person who was an officer, director, partner, or controlling person of

Countrywide (including any officer, director, partner or controlling person of any of its subsidiaries or any other entity in which Countrywide has a majority or controlling interest) or any other Defendant during the Class Period; any person whose purchases of Countrywide stock, during the Class Period, were made solely to cover short positions (a.k.a. "short sellers"); any person or entity that purchased or otherwise acquired or sold the Countrywide securities above and was not damaged thereby; and the legal representatives, heirs, successors and assigns of any such excluded person or entity. Also excluded from the Class are those persons who submit valid and timely requests for exclusion from the Class in accordance with the requirements set forth in the Notice.

g)      "Class Member" means a member of the Class.

h)      "Class Period" means the period of time between March 12, 2004 and March 7, 2008, inclusive.

i)      "Complaint" means the Second Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws, filed in this Action on January 6, 2009.

j)      "Contribution Bar and Judgment Reduction Provision" means a provision which bars claims for contribution, and allows for a reduction in judgment, consistent with the language of 15 U.S.C. § 78u-4(f)(7), but applies to all claims asserted in the Action, provided that nothing in such bar order shall affect any rights or obligations (i) between the Countrywide Defendants and the Underwriter Defendants set forth in any underwriting agreement relating to Countrywide Securities, or (ii) among the Underwriter Defendants set forth in any agreement among underwriters relating to Countrywide Securities.

k)      "Counsel for the Countrywide Defendants" means the law firm of Goodwin Procter LLP.

l)      "Counsel for KPMG" means the law firm of Bingham McCutchen LLP.

m)      "Countrywide" or the "Company" means Defendant Countrywide Financial Corporation.

n)      "Countrywide Defendants" means Defendants Countrywide Financial Corporation, Countrywide Securities Corporation, and Countrywide Capital V.

o)      "Countrywide Securities" shall have the meaning set forth in Paragraph 1(f).

p)      "Court" means the United States District Court for the Central District of California.

q)      "Court of Appeals" means the United States Court of Appeals for the Ninth Circuit.

r)      "Defendants" means the Countrywide Defendants, the Individual Defendants, the Underwriter Defendants and KPMG, all as defined herein.

s)      "Defendants' Counsel" means the law firms of Goodwin Procter LLP; Irell & Manella LLP; Orrick, Herrington & Sutcliffe LLP; DLA Piper LLP (US); Caldwell Leslie & Proctor, PC; Morrison & Foerster LLP; Skadden, Arps, Slate, Meagher & Flom LLP; Gibson, Dunn & Crutcher LLP; and Bingham McCutchen LLP.

t)      "Effective Date" has the meaning set forth in Paragraph 34 below.

u)      "Execution Date" means the date on which this Settlement Agreement has been executed by all Parties.

v)      "Fairness Hearing" means the hearing to be held by the Court to determine, among other things, whether to grant final approval of the Settlement, as contemplated by the Preliminary Approval Order annexed hereto as Exhibit A.

w)      "Fee and Expense Award" means such amounts as may be awarded by the Court to Plaintiffs' Lead Counsel to compensate them for their fees and reimburse them for their expenses in connection with the Action, which may include some or all of the following: (i) an award of attorneys' fees, (ii) reimbursement of expenses incurred in connection with prosecuting the Action, including, without limitation, expenses attributable to experts and/or consultants retained by Plaintiffs' Counsel, and (iii) interest on such attorneys' fees and expenses at the same rate as earned by the Gross Settlement Fund, from the date the Court orders such award until the date paid from the Gross Settlement Fund.

x)      "Final Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be entered by the Court approving the Settlement, substantially in the form annexed hereto as Exhibit B.

y)      "Final," with respect to any Court order, including but not limited to the Final Judgment, means the latest to occur of the following: (a) the date as of which the time to seek review, alteration or appeal of the Court's order has expired without any review, alteration, amendment or appeal having been sought or taken, i.e., thirty (30) days after entry of the order; or (b) if an appeal, petition, motion or other application for review, alteration or amendment is filed, sought or taken, the date as of which such appeal, petition, motion or other application shall have been finally determined in such

a manner as to affirm the Court's original order in its entirety and the time, if any, for seeking further review has expired.  Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of review pertaining solely to (i) any application for attorneys' fees or expenses, and/or (ii) the Plan of Allocation, shall not in any way delay or preclude the Final Judgment or an Alternative Judgment from becoming Final.

z)  "First Escrow Account" means the interest-bearing escrow account in which Six Hundred Million Dollars ($600,000,000.00) of the Settlement Amount will be deposited by Countrywide and/or the applicable insurer(s) under this Settlement.

aa)  "Gross Settlement Fund" means the fund described in Paragraph 5 of this Settlement Agreement.

bb)  "Immediate Family" shall mean spouse, domestic partner, parents, grandparents, children and grandchildren.

cc)  "Individual Defendants" means Angelo R. Mozilo, David Sambol, Eric P. Sieracki, Stanford L. Kurland, Henry G. Cisneros, Jeffrey M. Cunningham, Robert J. Donato, Ben M. Enis, Edwin Heller, Gwendolyn S. King, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell, Harley W. Snyder, Michael E. Dougherty and Kathleen Brown.

dd)  "KPMG" means Defendant KPMG LLP.

ee)  "Lead Plaintiffs" means Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fund; New York City Employees' Retirement System; New York City Police Pension Fund;

New York City Fire Department Pension Fund; New York City Board of Education Retirement System; and Teachers' Retirement System of the City of New York, in both their individual and representative capacities.

ff)    "Net Settlement Fund" has the meaning set forth in Paragraph 13 herein.

gg)    "Notice" means the notice of the proposed Settlement and Fairness Hearing, substantially in the form annexed hereto as Attachment 1 to Exhibit A, which is to be mailed to Class Members, pursuant to the Preliminary Approval Order.

hh)    "Notice and Administration Expenses" means all costs associated with providing notices to the Class and the administration of the Settlement, including, without limitation, the costs associated with preparing, printing and mailing the Notice and Proof of Claim to Class Members; reimbursing brokers and other nominees for costs associated with forwarding the Notice and Proof of Claim to Class Members; publishing the Summary Notice; maintenance and staffing by the Claims Administrator of the toll-free telephone hotline and case-dedicated website; review and processing by the Claims Administrator of written communications from Class Members and others; processing Proofs of Claim; and distributing the Net Settlement Fund; *provided, however,* that Notice and Administration Expenses shall not include any of the Fee and Expense Award.

ii)    "Parties" means Lead Plaintiffs, Plaintiff Barry Brahn, both in their individual capacities and as representatives of the Class, Plaintiff Shelley B. Katzeff, and all Defendants.

jj)    "Person" means an individual, partnership, firm, corporation, limited liability company, trust, governmental entity or any other form of entity or organization.

kk)    "Plaintiffs" means Lead Plaintiffs and Plaintiff Barry Brahn, both in their individual capacities and as representatives of the Class, and Plaintiff Shelley B. Katzeff.

ll)    "Plaintiffs' Counsel" means the law firms of Labaton Sucharow LLP; Kaplan Fox & Kilsheimer LLP; Kreindler & Kreindler LLP; Hennigan, Bennett & Dorman LLP; Klafter Olsen & Lesser LLP; and Lockridge Grindal Nauen, P.L.L.P.

mm)    "Plaintiffs' Lead Counsel" means the law firm of Labaton Sucharow LLP.

nn)    "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Fund among, and distributing the Net Settlement Fund to, Authorized Claimants as proposed by Plaintiffs' Lead Counsel with the approval of Lead Plaintiffs and set forth in the Notice, or such other Plan of Allocation as the Court shall approve.

oo)    "Preliminary Approval Order" means the Order to be entered by the Court preliminarily approving the Settlement and providing for notice, substantially in the form annexed hereto as Exhibit A.

pp)    "Proof of Claim" means the form that will be mailed to Class Members with the Notice and pursuant to which Class Members submit a claim by completing, signing, dating, and returning it to the Claims Administrator in accordance with the procedures set forth therein.  A sample Proof of Claim proposed by Plaintiffs is annexed hereto as Attachment 2 to Exhibit A.

qq)    "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

rr)    "Released Parties"[2] means (a) any and all of the Defendants and any person, partnership, firm, corporation, limited liability company, trust or other entity or organization in which any Defendant has a controlling interest or which is or was related to or affiliated with any of the Defendants; and (b) with respect to each of the Persons in subsection (a), their respective past or present directors, officers, employees, insurers, reinsurers, attorneys, agents, partners, principals, advisors, investment advisors, auditors, accountants, trustees, underwriters, investment bankers, subsidiaries, parents (including without limitation Bank of America Corporation and each of its subsidiaries), any other entity in which any such parent has a controlling interest or which is or was related to or affiliated with any such parent, successors and predecessors, heirs, Immediate Family, and anyone acting or purporting to act for or on behalf of any of them or their successors.

ss)    "Second Escrow Account" means the interest-bearing escrow account in which Twenty-Four Million Dollars ($24,000,000.00) of the Settlement Amount will be deposited by KPMG under this Settlement.

tt)    "Settled Claims" means any and all claims, debts, demands, disputes, rights, causes of action, suits, matters, damages, or liabilities of any kind, nature, and character whatsoever (including but

---

[2] As discussed in footnote 1, although they are not parties to this Settlement, Garcia and Gissinger are intended to be included within the definition of "Released Parties."

not limited to any claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature (collectively, "Claims"), including both known Claims and Unknown Claims (as defined herein), against any of the Released Parties (i) that were asserted or could have been asserted in the Action, (ii) that would have been barred by *res judicata* had the Action been fully litigated to a final judgment, or (iii) that could have been, or could in the future be, asserted in any forum or proceeding or otherwise by any Class Member against any of the Released Parties (a) that concern, arise out of, refer to, are based upon, or are related in any way to, any of the subject matter, allegations, transactions, facts, matters, occurrences, representations, statements, or omissions alleged, involved, set forth, or referred to in the Complaint; and (b) that relate to the purchase, sale, acquisition or holding of the Countrywide Securities, and, as to Plaintiffs, that relate to the purchase, sale, acquisition or holding of any security issued by Countrywide or any Countrywide-related entity (including but not limited to mortgage-backed securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS, Inc.), whether such Countrywide-related entity is a corporation, partnership, limited liability company, trust, or other entity, and whether or not such securities are Countrywide Securities; *provided, however,* that the term "Settled Claims" shall not include the following:

(1)     claims to enforce the Settlement; and

(2)     claims as alleged as of April 2, 2010 in the following actions:  *In re Countrywide Financial Corp. Shareholder Derivative Litigation,* Case No. BC 375275 (Cal. Supr. Ct., Los Angeles County) and *In re Countrywide Financial Corp. Derivative Litigation*, Lead Case No. 2:07-cv-06923-MRP (MANx) (C.D. Cal.).

Notwithstanding the foregoing, nothing in this definition of "Settled Claims" shall prevent Plaintiffs from seeking to participate as unnamed class members in any settlement or other recovery in any class action, including but not limited to *Maine State Retirement System v. Countrywide Financial Corp.,* Case No. CV 10-00302 MRP (MANx) (C.D. Cal.), that relates to the purchase, sale, acquisition or holding of any security, other than Countrywide Securities, issued by Countrywide or any Countrywide-related entity (including but not limited to mortgage-backed securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS, Inc.), whether such Countrywide-related entity is a corporation, partnership, limited liability company, trust or other entity.

uu)     "Settled Defendants' Claims" means any and all claims, rights, causes of action, damages, or liabilities of any kind, nature, and character whatsoever in law, equity, or otherwise, including both known and Unknown Claims (as defined herein), which were, could have been, or could be asserted in any forum by the Defendants or any of them against Plaintiffs or Plaintiffs' Counsel, whether under United States federal, state, local, statutory, or common law, or any other law, rule, or regulation, based upon, arising out of or relating to, directly or indirectly, the institution, prosecution, assertion, settlement or

resolution of the Action; *provided, however*, that "Settled Defendants' Claims" shall not include claims to enforce the Settlement.

vv)  "Settlement" means the settlement contemplated by this Settlement Agreement.

ww)  "Settlement Agreement" means this Stipulation and Agreement of Settlement and its accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

xx)  "Settlement Amount" means Six Hundred Twenty-Four Million Dollars ($624,000,000.00), to be paid in accordance with Paragraphs 2-6 of this Settlement Agreement.

yy)  "Summary Notice" means the notice of the proposed Settlement and Fairness Hearing, substantially in the form annexed hereto as Attachment 3 to Exhibit A, which is to be published pursuant to the Preliminary Approval Order.

zz)  "Supreme Court" means the Supreme Court of the United States.

aaa)  "Taxes and Tax Expenses" means (i) all taxes (including any estimated taxes, interest or penalties) on the income of the Gross Settlement Fund and (ii) expenses and costs incurred in connection with the operation and implementation of the provisions in Part III.B below and the taxation of the Gross Settlement Fund, including, without limitation, expenses of tax attorneys and/or accountants related to filing the tax returns described in Part III.B below.

bbb)  "Underwriter Defendants" means Barclays Capital Inc.; BNY Mellon Capital Markets, LLC (successor to BNY Capital Markets, Inc.); Citigroup Global Markets Inc.; Deutsche Bank

Securities Inc.; Dresdner Kleinwort Securities LLC; Banc of America Securities LLC; HSBC Securities (USA) Inc.; Goldman, Sachs & Co.; J.P. Morgan Securities Inc.; Merrill, Lynch, Pierce, Fenner & Smith Incorporated; BNP Paribas Securities Corp.; ABN AMRO Incorporated; A.G. Edwards & Sons, Inc.; Morgan Stanley & Co., Incorporated; RBC Capital Markets Corp.; RBC Dain Rauscher Inc.; RBC Dominion Securities Inc.; Scotia Capital Inc.; RBS Securities, Inc. (successor to Greenwich Capital Markets, Inc.); SG Americas Securities LLC; TD Securities Inc.; UBS Securities LLC; Wachovia Capital Markets, LLC; and Wachovia Securities, Inc.

ccc) "Unknown Claims" means any and all Settled Claims that any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor as of the Effective Date that, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement, or might have affected such party's decision not to object to this settlement. With respect to any and all Settled Claims, upon the Effective Date, the Lead Plaintiffs shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of this Final Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, and of any U.S. federal or state law, or principle of common law or otherwise, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides, in relevant part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiffs and other Class Members or certain of them may hereafter discover facts in addition to or different from those which such party now knows or believes to be true with respect to the subject matter of the Settled Claims, but the Lead Plaintiffs and the Class Members, upon the Effective Date, by operation of the Final Judgment shall have, fully, finally, and forever settled and released, any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, claims relating to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

Lead Plaintiffs and Defendants acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and was a key element of the Settlement.

## II.    THE GROSS SETTLEMENT FUND

2.    In full settlement of the Settled Claims, Countrywide shall pay or cause to be paid Six Hundred Million Dollars ($600,000,000.00) in cash into the First Escrow Account, and KPMG shall pay or cause to be paid Twenty-Four Million Dollars ($24,000,000.00) in cash (collectively, the "Settlement Amount"), into the Second Escrow Account, as follows:

a)  No later than ten (10) business days (excluding July 5, 2010, which shall be deemed a holiday) after the Court's entry of the Preliminary Approval

Order), Countrywide shall pay or cause to be paid Four Hundred Fifty-Five Million Dollars ($455,000,000.00) of the Settlement Amount into the First Escrow Account.  This settlement payment shall be made by wire transfer or similar means.  All interest accruing on this settlement payment from the time of deposit shall become part of the Gross Settlement Fund to be used for the benefit of the Class.

b)  No later than twenty-one (21) business days (excluding July 5, 2010, which shall be deemed a holiday) after the Court's entry of the Preliminary Approval Order, KPMG shall pay or cause to be paid Twenty-Four Million Dollars ($24,000,000.00) of the Settlement Amount into the Second Escrow Account.  This settlement payment shall be made by wire transfer or similar means.  All interest accruing on this settlement payment from the time of deposit shall become part of the Gross Settlement Fund to be used for the benefit of the Class.

c)  No later than thirty (30) business days (excluding July 5, 2010, which shall be deemed a holiday) after the Court's entry of the Preliminary Approval Order, Countrywide shall pay or cause to be paid One Hundred Forty-Five Million Dollars ($145,000,000.00) of the Settlement Amount into the First Escrow Account.  This settlement payment shall be made by wire transfer or similar means.  All interest accruing on this settlement payment from the time of deposit shall become part of the Gross Settlement Fund to be used for the benefit of the Class.

3.      The Second Escrow Account shall be maintained at an institution that is not an audit client of KPMG.  Plaintiffs' Lead Counsel shall provide KPMG with notice, at least twenty-one (21) business days (excluding July 5, 2010, which shall be deemed a holiday), prior to KPMG's payment of the Settlement Amount into the Second Escrow Account, of the following information regarding the institution that will maintain the Second Escrow Account:

a)  name;

b)  address;

c)  ABA Routing Number; and

d)  Federal Tax Identification Number.

4.     The Settlement Amount shall be the full and sole monetary contribution made by or on behalf of the Defendants and the Released Parties in connection with the Settlement, and without limiting the generality of the foregoing in any way, all costs of notice and settlement administration shall be paid out of the Gross Settlement Fund.  Except as otherwise provided in this Settlement Agreement with respect to payment of Plaintiffs' Counsel's fees and expenses out of the Gross Settlement Fund, the Parties shall bear their own costs and expenses (including attorneys' fees) in connection with effectuating the Settlement and securing all necessary Court orders and approvals with respect to the same.

5.     The Settlement Amount, together with any interest earned thereon from the date of deposit into the First Escrow Account and Second Escrow Account, shall be the "Gross Settlement Fund."  No funds in the First Escrow Account shall be commingled with funds in the Second Escrow Account and vice versa.  Notwithstanding anything to the contrary herein, all payments from the Gross Settlement Fund shall be made on a *pro rata* basis from the First Escrow Account and Second Escrow Account based on the respective percentages of the Settlement Amount deposited therein in accordance with this Settlement.

6.     No Defendant other than Countrywide and KPMG shall have any responsibility for payment of any portion of the Settlement Amount.

## III.   ADMINISTRATION OF THE GROSS SETTLEMENT FUND

### A.   The Escrow Agents

7.     Citibank, N.A. shall serve as escrow agent for the First Escrow Account (the "First Escrow Agent") pursuant to an escrow agreement to be approved by Countrywide.  Such approval shall not be unreasonably withheld. The First Escrow Agent shall invest that portion of the Gross Settlement Fund held in the First Escrow Account in U.S. Treasury Bills.  The Released Parties shall not have any responsibility or liability whatsoever for investment decisions.  The First Escrow Agent shall bear all risks related to investment of that portion of the Gross Settlement Fund held in the First Escrow Account, and shall indemnify the Released Parties, Plaintiffs and Plaintiffs' Counsel and hold them harmless from any losses arising from the investment or disbursement of any of such portion of the Gross Settlement Fund.

8.     The First Escrow Agent shall not use or disburse all or any part of that portion of the Gross Settlement Fund held in the First Escrow Account except as provided for in this Settlement Agreement, or by an order of the Court, or with the written agreement of Counsel for the Countrywide Defendants and Plaintiffs' Lead Counsel, with the approval of Lead Plaintiffs.

9.     Labaton Sucharow LLP shall serve as escrow agent for the Second Escrow Account (the "Second Escrow Agent" and, together with the First Escrow Agent, the "Escrow Agents") pursuant to an escrow agreement to be approved by KPMG.  Such approval shall not be unreasonably withheld.  The Second Escrow Agent shall invest that portion of the Gross Settlement Fund held in the Second Escrow Account in U.S. Treasury Bills.  The Released Parties shall not have any responsibility or liability whatsoever for investment decisions.  The Second Escrow Agent shall bear all risks related to investment of that portion of the Gross Settlement Fund held in the Second Escrow Account, and shall indemnify the

Released Parties and hold them harmless from any losses arising from the investment or disbursement of any of such portion of the Gross Settlement Fund.

10.    The Second Escrow Agent shall not use or disburse all or any part of that portion of the Gross Settlement Fund held in the Second Escrow Account except as provided for in this Settlement Agreement, or by an order of the Court, or with the written agreement of Counsel for KPMG and Plaintiffs' Lead Counsel, with the approval of Lead Plaintiffs.

11.    The First Escrow Agent and Second Escrow Agent are each authorized to execute such transactions on behalf of Plaintiffs and the Class Members as are consistent with the terms of the Settlement Agreement.

12.    All monies held by the Escrow Agents shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement, the Plan of Allocation, and/or further order(s) of the Court, or returned to Countrywide and/or the applicable insurer(s) (with respect to monies in the First Escrow Account) or to KPMG (with respect to monies in the Second Escrow Account), with the exception of those monies disbursed pursuant to Paragraph 19 below, in the event that this Settlement is not consummated or is terminated pursuant to the provisions of Part IX below.

13.    The Gross Settlement Fund shall be used to pay (i) any Fee and Expense Award; (ii) any Notice and Administration Expenses; and (iii) any Taxes and Tax Expenses.  The balance of the Gross Settlement Fund (inclusive of interest earned) shall be the "Net Settlement Fund."

**B.    Taxes and Tax Expenses**

14.    The Parties and the Escrow Agents agree to treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Plaintiffs' Lead Counsel, with approval of

Lead Plaintiffs, shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Part III.B, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.

15.    For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Labaton Sucharow LLP or its successor or, at its election, the Claims Administrator, which shall be responsible for timely and properly filing all informational and other tax returns necessary or advisable with respect to the Gross Settlement Fund (including without limitation the tax returns described in Treas. Reg. § 1.468B-2(k)).  Such tax returns (as well as the election described in Paragraph 14 above) shall be consistent with this Part III.B and in all events shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in Paragraph 16 below.

16.    All Taxes and Tax Expenses shall be paid out of the Gross Settlement Fund; in all events, the Released Parties shall have no liability or responsibility for the Taxes and Tax Expenses, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agents out of the Gross Settlement Fund without prior order from the Court, and the Escrow Agents shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to the Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); the Released Parties are not responsible and shall

have no liability therefor, or for any reporting or other requirements that may relate thereto.  Plaintiffs, Countrywide and KPMG agree to cooperate with the Escrow Agents, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Part III.B.  Each Escrow Agent shall hold harmless the Released Parties, Plaintiffs, and Plaintiffs' Counsel for Taxes and Tax Expenses (including, without limitation, taxes payable by reason of any indemnification payments).

## IV.   PRELIMINARY APPROVAL HEARING AND ORDER

17.   Promptly after this Settlement Agreement has been fully executed, but in any event no later than June 4, 2010, Plaintiffs' Lead Counsel shall submit the fully executed Settlement Agreement together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form annexed hereto as Exhibit A.  All Parties shall consent to entry of the Preliminary Approval Order in the form annexed hereto as Exhibit A.

## V.   ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND SUPERVISION AND DISTRIBUTION OF THE NET SETTLEMENT FUND

18.   The Claims Administrator, acting on behalf of the Class, and subject to such supervision and direction of the Court or Plaintiffs' Lead Counsel, with approval of Lead Plaintiffs, as may be necessary or as the circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. The Released Parties shall not have any role in, or responsibility or liability to any Person, including, without limitation, the Class Members or Plaintiffs' Lead Counsel, for, the administration of the Settlement or the solicitation, review or evaluation of Proofs of Claim, nor shall any discovery be taken of Defendants in

connection with such matters.  However, Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including Counsel for the Countrywide Defendants' providing Plaintiffs' Lead Counsel, without charge, reasonable information from the Company's transfer records in the Company's possession or control concerning the identity of Class Members.  The Parties acknowledge that any information provided by Countrywide to Plaintiffs' Lead Counsel shall be treated as confidential pursuant to the Protective Order entered in this Action; the Parties further acknowledge, however, that such information may be used by Plaintiffs' Lead Counsel solely to deliver the Notice and/or implement the Settlement, including the Plan of Allocation.

19.   Following entry of the Preliminary Approval Order, and without further order of the Court, Plaintiffs' Lead Counsel, with approval of Lead Plaintiffs, may expend (a) up to Five Million Dollars ($5,000,000.00) from the Gross Settlement Fund to pay Notice and Administration Expenses actually incurred; and (b) amounts necessary to pay Taxes and Tax Expenses.

20.   All payments of Notice and Administration Expenses, Taxes and Tax Expenses, any other fees or costs of the Claims Administrator, and any portion of the Fee and Expense Award shall be paid solely from the Gross Settlement Fund and not by Plaintiffs, Plaintiffs' Counsel, members of the Class or the Released Parties.  Except as expressly stated in this Settlement Agreement, there shall be no liability on the part of Plaintiffs, Plaintiffs' Counsel, members of the Class or the Released Parties for Notice and Administration Expenses, Taxes and Tax Expenses, any other fees or costs of the Claims Administrator, any other cost of administering the Gross Settlement Fund, or any portion of the Fee and Expense Award, and in no event shall the Released Parties have any monetary obligation

whatsoever beyond their respective payment obligations to the Gross Settlement Fund as provided herein.

21.     Following the Effective Date, in accordance with the terms of this Settlement Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Claims Administrator shall disburse the Net Settlement Fund, under Plaintiffs' Lead Counsel's supervision, subject to and in accordance with the following:

    a)     Each Class Member who wishes to participate in the distributions from the Net Settlement Fund must return a signed Proof of Claim, supported by such documents as are designated therein, including proof of the claimant's loss.  A sample Proof of Claim proposed by the Parties is annexed hereto as Attachment 2 to Exhibit A.  The address to which the Proof of Claim must be mailed shall be set forth on the Proof of Claim itself and shall also be printed in the Notice.  If sent by first-class mail, such Proof of Claim must be postmarked no later than a date set forth in the Notice (unless that date is extended by order of the Court).  If sent by any manner other than by first-class mail, the Proof of Claim must actually be received by the Claims Administrator by the date set forth in the Notice (unless that date is extended by order of the Court).

    b)     The Proof of Claim must be sworn to under oath or made subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

    c)     The validity of each claim submitted will be initially determined by the Claims Administrator, acting under Plaintiffs' Lead Counsel's supervision as necessary, in accordance with the Plan of Allocation approved by the Court.  Plaintiffs' Lead Counsel, the Claims Administrator, and the Released Parties shall not have any

liability arising out of said determination.  In the event a Class Member disagrees with such determination, the dispute shall be submitted to the Court for summary resolution.  Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to that Class Member's claim against the Net Settlement Fund.

d)      All initial determinations as to the validity of a Proof of Claim, the calculation of the extent to which each Authorized Claimant will participate in the Net Settlement Fund, the preparation and mailing of distributions to Authorized Claimants, and the distribution of the Net Settlement Fund shall be performed by the Claims Administrator subject, as circumstances may require, to supervision by Plaintiffs' Lead Counsel or such other persons or entities as Plaintiffs' Lead Counsel may, in their sole discretion, deem necessary or advisable to assist them in the administration of this Settlement Agreement.  All proceedings with respect to the administration of the Gross Settlement Fund and Net Settlement Fund, and the administration, processing and determination of Class Members' claim requests, and the determination of all controversies related thereto, including disputed questions of law and fact with respect to the validity of any Proof of Claim or regarding rejection of any claims submitted, shall remain under the jurisdiction of the Court and shall be governed by, and construed in accordance with, the laws of the State of California without regard to choice or conflicts-of-laws principles.

e)      Except as otherwise ordered by the Court, any Class Member who fails to timely return a properly completed and signed Proof of Claim consistent with the procedures set forth in this

Paragraph shall be forever barred from receiving a distribution from the Net Settlement Fund, but shall nevertheless be bound by and subject to this Settlement Agreement, the Final Judgment, and all proceedings, rulings, orders, and judgments in this Action, including, without limitation, the release of the Settled Claims and the dismissal with prejudice of this Action.  Notwithstanding the foregoing, Plaintiffs' Lead Counsel, with approval of Lead Plaintiffs, may accept for processing late claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

f)      The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice mailed to Class Members and approved by the Court.  The Released Parties shall have neither the right nor the duty to participate in the determination of how the Net Settlement Fund is distributed to the Class.  The Plan of Allocation shall not be a part of the Settlement Agreement and any order or proceeding related to said Plan of Allocation shall not operate to terminate or cancel this Settlement Agreement or affect the finality of the Court's Final Judgment approving this Settlement Agreement and the Settlement it describes, or any other orders entered pursuant to this Settlement Agreement.

g)      Plaintiffs' Lead Counsel, with approval of Lead Plaintiffs, will apply to the Court, on notice to Defendants' Counsel, for a Distribution Order approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the submitted Proofs of Claim and approving any Notice and Administration Expenses (including but not limited to the fees and

expenses of the Claims Administrator) or Taxes and Tax Expenses not previously applied for and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Allocation and the Claims Administrator's determinations.  Simultaneously upon application to the Court for a Distribution Order, Plaintiffs' Lead Counsel shall provide Counsel for the Countrywide Defendants and Counsel for KPMG with an electronically searchable list of all Persons who submitted a Proof of Claim.  Further, Plaintiffs' Lead Counsel shall, upon reasonable request from Counsel for the Countrywide Defendants or Counsel for KPMG, provide a copy of any requested Proof of Claim in electronic form within ten (10) business days of such request.

h) If there is any balance remaining in the Net Settlement Fund (whether by reason of unclaimed funds, tax refunds, uncashed checks, or otherwise), at a date one hundred eighty (180) days from the later of (a) the date on which the Court enters a Distribution Order pursuant to Subparagraph 21(g) above, or (b) the Effective Date, then Plaintiffs' Lead Counsel shall, upon approval of the Court, distribute such balance among the Authorized Claimants as many times as is necessary, in a manner consistent with the Plan of Allocation, until each Authorized Claimant has received its Recognized Claim (but no greater than its Recognized Claim) as defined by the Plan of Allocation.  If Plaintiffs' Lead Counsel determines that it is not cost-effective to conduct such further distribution, or following such further distribution any balance still remains in the Net Settlement Fund, Plaintiffs' Lead Counsel shall, with the consent of Lead

Plaintiffs and upon approval of the Court, and without further notice
to the Class, cause the remaining balance to be returned to
Countrywide and KPMG, in the same proportion as those entities
contributed (or caused to be contributed) to the Settlement Amount.
Any orders or proceedings relating to the Plan of Allocation shall not
operate to terminate or cancel this Settlement Agreement, and shall
have no effect on the Final Judgment becoming Final.

22.     No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel,
or the Claims Administrator based on distributions, determinations, or claim
rejections made substantially in accordance with this Settlement Agreement, the
Plan of Allocation, or further orders of the Court, except in the case of fraud or
willful misconduct.  No Person shall have any claim under any circumstances
against the Released Parties, based on any distributions, determinations, claim
rejections or the design, terms or implementation of the Plan of Allocation.

23.     None of the Released Parties shall have any responsibility for or
liability whatsoever with respect to (i) any act, omission or determination of
Plaintiffs' Lead Counsel or the Escrow Agents, or any of their respective designees
or agents, in connection with the administration of the Settlement or otherwise; (ii)
the management, investment or distribution of the Gross Settlement Fund; (iii) the
determination, administration, calculation or payment of any claims asserted
against the Gross Settlement Fund; (iv) any losses suffered by, or fluctuations in
the value of, the Gross Settlement Fund; or (v) the payment or withholding of any
Taxes, expenses and/or costs incurred in connection with the taxation of the Gross
Settlement Fund or the filing of any returns.

## VI.   RELEASES

24.   Pursuant to this Settlement Agreement and the Final Judgment, upon the Effective Date:

a.   Plaintiffs and every Class Member, on behalf of themselves and any of their personal representatives, spouses, domestic partners, trustees, heirs, executors, administrators, successors or assigns, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Settled Claims against the Released Parties, and shall be forever barred and enjoined from instituting, prosecuting, participating, continuing, maintaining or asserting any Settled Claim, or assisting any Person in instituting, prosecuting, participating, continuing, maintaining or asserting any Settled Claim, against any of the Released Parties, whether directly or indirectly, whether in the United States or elsewhere, whether on their own behalf or on behalf of any class or any other Person, and regardless of whether or not such Class Member executes and delivers a Proof of Claim.  By entering into this Settlement Agreement, Plaintiffs represent and warrant that they have not assigned, hypothecated, conveyed, transferred or otherwise granted or given any interest in the Settled Claims, or any of them, to any other Person.

b.   Each of the Released Parties shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of the Class Members, Plaintiffs, and Plaintiffs' Counsel from all Settled Defendants' Claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Settled Claims.  By entering this Settlement Agreement, the Defendants represent and warrant that they have not assigned, hypothecated, transferred or otherwise granted any interest in the Settled Defendants' Claims, or any of them, to any other Person.

In addition, at no time, before or after the Effective Date, shall Plaintiffs encourage or solicit any other Person in regard to, or in connection with, the making of any demand, the assertion of any liability, or the prosecution or commencement of any lawsuit or other judicial or administrative proceedings against any of the Released Parties relating to Countrywide, any of its affiliates or related entities, and/or securities offered, sold or issued by Countrywide or by any Countrywide-related entity (including but not limited to mortgage-backed securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS, Inc.).

25.     To the extent that the Settlement does not release claims asserted in certain other actions involving Countrywide, all of which are enumerated in the definition of "Settled Claims" set forth in Paragraph 1(tt) above, the question of the extent, if any, to which any payment made pursuant to the Plan of Allocation in this litigation may constitute an offset or credit against, or a reduction in the gross amount of, any claim asserted in any other action relating to Countrywide is to be determined in such other action, and the Parties reserve all rights with respect to the position they may take on that question in those actions.

## VII.   ATTORNEY'S FEE AND EXPENSE AWARDS

26.     Plaintiffs' Lead Counsel will apply to the Court for a Fee and Expense Award to be paid from the Gross Settlement Fund.

27.     Plaintiffs' Lead Counsel may make additional applications for reimbursement of expenses (including Notice and Administration Expenses) incurred subsequent to the initial application for a Fee and Expense Award.

28.     Subject to the restrictions in Paragraph 29 below, any Fee and Expense Award shall become payable from the Gross Settlement Fund five (5) days after entry by the Court of the Order granting the Fee and Expense Award,

notwithstanding the existence of any timely filed objections thereto, or potential to appeal therefrom, or collateral attack on the Settlement or any part thereof. Plaintiffs' Lead Counsel shall thereafter allocate the Fee and Expense Award payable to Plaintiffs' Lead Counsel among Plaintiffs' Counsel in a manner that, in Plaintiffs' Lead Counsel's good-faith judgment, reflects such counsel's contribution to the institution, prosecution, or resolution of the Action.

29.     Any Fee and Expense Award may be paid to Plaintiffs' Lead Counsel five (5) days after entry by the Court of an order awarding fees and expenses (as referred to in Paragraph 28) and prior to the Effective Date, only if each of Plaintiffs' Counsel receiving a portion of the Fee and Expense Award posts an irrevocable standby letter of credit in the amount of that portion of the Fee and Expense Award actually withdrawn from the Gross Settlement Fund.  Such standby letters of credit shall be issued by banks selected by, and have terms and conditions negotiated by, Plaintiffs' Counsel and Lead Plaintiffs and approved by Countrywide and KPMG (which approval shall not be unreasonably withheld), to secure Plaintiffs' Counsel's obligation to pay back such amounts received, plus accrued interest at the same rate as is earned by the Gross Settlement Fund, in the event that, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the Settlement is terminated or the Fee and Expense Award is reduced or required to be returned.

30.     If the Effective Date does not occur or if this Settlement Agreement is terminated, then any Fee and Expense Award is no longer payable.  In the event that any portion of the Fee and Expense Award is paid from the Gross Settlement Fund, and the Effective Date does not occur or this Settlement Agreement is terminated, Plaintiffs' Lead Counsel and Lead Plaintiff shall, within ten (10) business days from the event which precludes the Effective Date from occurring or the termination of the Settlement Agreement, refund to the Gross Settlement Fund

the Fee and Expense Award paid to Plaintiffs' Lead Counsel and Lead Plaintiffs, respectively, and in addition shall pay into the Gross Settlement Fund interest on the amount refunded at the average rate earned on the Gross Settlement Fund from the time of payment of the Fee and Expense Award until the date of refund.  Each of Plaintiffs' Counsel, as a condition of receiving such Fee and Expense Award, agrees that it is subject to the jurisdiction of the Court for the purpose of enforcing the provisions in this paragraph.

31.     The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any fees, costs or expenses (including without limitation any Fee and Expense Award) incurred or sought by Plaintiffs' Lead Counsel or any other Person who may assert any claim, right or entitlement thereto.

32.     The procedures for and the allowance or disallowance by the Court of an application for a Fee and Expense Award to be paid out of the Gross Settlement Fund are not part of the Settlement set forth in this Settlement Agreement and are to be considered by the Court at the Fairness Hearing, but separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Settlement Agreement.  None of the Parties may terminate or cancel the Settlement Agreement on the basis of the amount of any Fee and Expense Award.  Any order or proceedings related to any application for a Fee and Expense Award by Plaintiffs' Lead Counsel or any appeal from any order relating to such a Fee and Expense Award or any reversal or modification thereof shall not modify, terminate or cancel this Settlement Agreement or affect or delay the finality of the Final Judgment approving the Settlement Agreement and the Settlement of the Action.

## VIII.  FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

33.     Upon the Court's approval of this Settlement Agreement, the Parties shall request that the Court enter a Final Judgment in all material respects in the form set forth in Exhibit B, dismissing this Action with prejudice.

## IX.    EFFECTIVE DATE OF SETTLEMENT, MODIFICATION AND TERMINATION

34.     The "Effective Date" of the Settlement shall be the date on which all the following conditions of settlement shall have occurred:

a)      with respect to Defendants other than KPMG, deposit of the portion of the Settlement Amount into the First Escrow Account in accordance with Paragraph 2;

b)      with respect to KPMG, deposit of the portion of the Settlement Amount into the Second Escrow Account in accordance with Paragraph 2;

c)      final approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

d)      entry by the Court of the Final Judgment in all material respects in the form set forth in Exhibit B, and the Final Judgment becoming Final, or, in the event that the Court enters a judgment in a form other than that provided above ("Alternative Judgment") and neither Lead Plaintiffs on the one hand, nor the Countrywide Defendants and KPMG on the other, elect to terminate this Settlement, the date that such Alternative Judgment becomes Final; and

e)      if the circumstances described in Paragraphs 36 and 43 occur, the expiration of the time for Lead Plaintiffs on the one hand, or the Countrywide Defendants and KPMG on the other, to exercise the termination rights provided in the applicable paragraph(s) without the termination rights being exercised.

35.     The terms and provisions of this Settlement Agreement may be amended, modified, or expanded only by written agreement of the Parties and approval of the Court; *provided, however,* that after entry of the Final Judgment (or any applicable Alternative Judgment), the parties thereto may by unanimous written agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) without notice to or approval by the Court if such changes are not materially inconsistent with the Court's Final Judgment and do not (a) materially limit the rights of Class Members under the Settlement Agreement; or (b) materially limit the rights of the Released Parties under the Settlement Agreement.

36.     The Lead Plaintiffs and each of the Defendants shall, in each of their separate discretions, have the right to terminate the Settlement, and thereby this Settlement Agreement, as to themselves, by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of:

(a)     the Court's declining to enter the Preliminary Approval Order in any respect that the terminating Party reasonably and in good faith believes is materially adverse to it;

(b)     the Court refusing to approve the Settlement as set forth in this Settlement Agreement;

(c)     the Court's declining to enter the Final Judgment in any respect that the terminating Party reasonably and in good faith believes is materially adverse to it;

(d)     the date upon which the Final Judgment is modified or reversed by the Court of Appeals or the Supreme Court in any respect

that the terminating Party reasonably and in good faith believes is materially adverse to it; or

      (e)    the date upon which an Alternative Judgment is modified or reversed by the Court of Appeals or the Supreme Court in any respect that the terminating Party reasonably and in good faith believes is materially adverse to it.

37.    If the Settlement is terminated by Lead Plaintiffs or both the Countrywide Defendants and KPMG (a "Complete Termination"): (a) the Settlement shall be without force and effect upon the rights of the Parties, and none of its terms (other than this paragraph and Paragraph 51) shall be effective or enforceable; (b) the Parties shall revert to their litigation positions immediately prior to the Execution Date and no claims, rights or defenses, whether legal or equitable, of any of the Parties hereto that existed prior to executing this Settlement Agreement shall be diminished or prejudiced in any way; and (c) within ten (10) business days from the date of such Complete Termination, Lead Plaintiffs shall return (or cause to be returned) to Countrywide and/or the applicable insurer(s) any monies remaining in the First Escrow Account and to KPMG any monies remaining in the Second Escrow Account, including any accrued interest thereon but less any Notice and Administration Expenses reasonably and actually incurred and paid or payable as of the date of the Complete Termination, and any Taxes and Tax Expenses actually incurred and paid or payable as of the date of the Complete Termination, out of the Gross Settlement Fund.

38.    The Parties agree that if the Countrywide Defendants, but not KPMG, elect to terminate the Settlement (a "Partial Termination"), the Settlement shall proceed with respect to Plaintiffs and KPMG (and the Effective Date shall not be impacted by such Partial Termination), and then the Countrywide Defendants and all other Defendants other than KPMG (collectively, the "Non-KPMG

Defendants") shall be treated as non-settling defendants and, solely with respect to the Non-KPMG Defendants, the following provisions shall apply: (a) the Settlement shall be without force and effect upon the rights and obligations between, on the one hand, Plaintiffs and the Class, and, on the other, the Non-KPMG Defendants, and none of its terms (other than this paragraph and Paragraph 51) shall be effective or enforceable with respect to the Non-KPMG Defendants; (b) Plaintiffs and the Non-KPMG Defendants shall revert to their litigation positions immediately prior to the Execution Date with respect to the Non-KPMG Defendants; (c) within ten (10) business days from the date of such Partial Termination, Lead Plaintiffs shall return (or cause to be returned) to Countrywide and/or the applicable insurer(s) any monies remaining in the First Escrow Account, including any accrued interest thereon but less its *pro rata* portion (based on the percentage of the Settlement Amount deposited into the First Escrow Account) of any Notice and Administration Expenses and Taxes and Tax Expenses paid out of, or incurred by, the Gross Settlement Fund as of the date of the Partial Termination; and (d) Lead Plaintiffs and KPMG shall submit an Alternative Judgment to the Court reflecting Partial Termination by the Countrywide Defendants, and such Alternative Judgment shall contain a Contribution Bar and Judgment Reduction Provision.

38. The Parties agree that if KPMG, but not the Countrywide Defendants, elects to terminate the Settlement (a "Partial Termination"), the Settlement shall proceed with respect to Plaintiffs and the Non-KPMG Defendants (and the Effective Date shall not be impacted by such Partial Termination), and then KPMG shall be treated as a non-settling defendant and, solely with respect to KPMG, the following provisions shall apply: (a) the Settlement shall be without force and effect upon the rights and obligations between, on the one hand, Plaintiffs and the Class, and, on the other, KPMG, and none of its terms (other than this paragraph

and Paragraph 50) shall be effective or enforceable with respect to KPMG; (b) Plaintiffs and KPMG shall revert to their litigation positions immediately prior to the Execution Date with respect to KPMG; (c) within ten (10) business days from the date of such Partial Termination, Lead Plaintiffs shall return (or cause to be returned) to KPMG any monies remaining in the First Escrow Account, including its *pro rata* portion (based on the percentage of the Settlement Amount deposited into the Second Escrow Account) of any accrued interest thereon but less any Notice and Administration Expenses and Taxes and Tax Expenses paid out of, or incurred by, the Gross Settlement Fund as of the date of the Partial Termination; and (d) Lead Plaintiffs and the Countrywide Defendants shall submit an Alternative Judgment to the Court reflecting Partial Termination by KPMG, and such Alternative Judgment shall contain a Contribution Bar and Judgment Reduction Provision.

40.   The Parties agree that if any Individual Defendant or Underwriter Defendant, but not the Countrywide Defendants, elects to terminate the Settlement ("Terminating Defendant"), the Settlement shall proceed with respect to Plaintiffs and all Defendants who have not elected to terminate (and the Effective Date shall not be impacted by such Partial Termination), and then the Terminating Defendant shall be treated as a non-settling defendant and, solely with respect to the Terminating Defendant, the following provisions shall apply: (a) the Settlement shall be without force and effect upon the rights and obligations between, on the one hand, Plaintiffs and the Class, and, on the other, the Terminating Defendant, and none of its terms (other than this paragraph and Paragraph 51) shall be effective or enforceable with respect to the Terminating Defendant; (b) Plaintiffs and the Terminating Defendant shall revert to their litigation positions immediately prior to the Execution Date with respect to the Terminating Defendant; and (c) all Parties other than the Terminating Defendant shall submit an Alternative Judgment

to the Court reflecting Partial Termination by the Terminating Defendant, and such Alternative Judgment shall contain a Contribution Bar and Judgment Reduction Provision.  In the event an Individual Defendant or Underwriter Defendant elects to terminate the Settlement pursuant to this paragraph, the Countrywide Defendants shall have the right to terminate the Settlement, and thereby this Settlement Agreement, as to all Non-KPMG Defendants within seven (7) days of receipt of notice of termination from the Terminating Defendant, or within the time prescribed by Paragraph 36 hereof, whichever is longer.

41.     Notwithstanding any other provision in this Settlement Agreement (including but not limited to Paragraphs 36 and 37 above), the settlement agreement between Plaintiffs and KPMG, and the settlement agreement between Plaintiffs and the Non-KPMG Defendants, are each severable from the other.  If this Settlement is deemed unenforceable or not approved for any reason unrelated to KPMG, then Plaintiffs and KPMG shall submit to the Court for approval a settlement agreement reflecting the terms of this Settlement Agreement applicable to Plaintiffs and KPMG only.  Likewise, if this Settlement is deemed unenforceable or not approved for any reason related solely to KPMG, then Plaintiffs and the Non-KPMG Defendants shall submit to the Court for approval a settlement agreement reflecting the terms of this Settlement Agreements applicable to Plaintiffs and the Non-KPMG Defendants only.  This Paragraph in no way limits or alters Lead Plaintiffs' obligations under Paragraphs 38(c) and 39(c).

42.     Lead Plaintiffs shall also have the right to terminate this Settlement if Countrywide or KPMG does not timely make (or cause to be made) their respective payments as provided in Part II of this Settlement Agreement, subject to Countrywide's and KPMG's respective rights to cure any such failure to pay within five (5) business days of receiving a written notice of deficiency from Plaintiffs' Lead Counsel.  More specifically, if Countrywide fails to timely make

1  (or cause to be made) its respective payment, Lead Plaintiffs shall have the right to

2  terminate the Settlement as to all Defendants other than KPMG.  Such termination

3  shall be considered a Partial Termination, and the provisions of Paragraph 38 shall

4  apply.  If KPMG fails to timely make (or cause to be made) its respective payment,

5  Lead Plaintiffs shall have the right to terminate the Settlement as to KPMG only.

6  Such termination shall be considered a Partial Termination, and the provisions of

7  Paragraph 39 shall apply.

8      43.     The Settlement may be terminated at the option and in the sole

9  discretion of the Countrywide Defendants or KPMG, as to their respective

10  settlements with Plaintiffs and the Class, in the event that Class Members who,

11  during the Class Period, purchased or otherwise acquired the Countrywide

12  Securities, timely and validly request exclusion from the Class and the Termination

13  Threshold, as such term is defined in a separate letter from Counsel for the

14  Countrywide Defendants and Counsel for KPMG to Lead Plaintiffs countersigned

15  simultaneously herewith ("Supplemental Agreement"), is met.  The total amount of

16  Countrywide Securities purchased or acquired by such Class Members shall be

17  calculated using the information provided by such Class Members in their requests

18  for exclusion.  The Supplemental Agreement shall not be filed with the Court

19  unless and until a dispute among the parties to the Supplemental Agreement

20  concerning its interpretation or application arises, in which case those parties shall

21  seek to file it with the Court under seal.  In the event either the Countrywide

22  Defendants or KPMG terminates the Settlement pursuant to the Supplemental

23  Agreement, but the other does not, such termination shall be considered a Partial

24  Termination and the provisions of Paragraph 38 or 39 apply.

25      44.     If both the Countrywide Defendants and KPMG exercise Partial

26  Termination rights pursuant to this Settlement Agreement, it will be considered a

27  Complete Termination and the provisions of Paragraph 37 shall apply.

28

45.     Upon the Effective Date, any and all remaining interest or right of Defendants in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished, except for as stated in Paragraph 21(h) above.

## X.     GENERAL MATTERS

46.     The Parties (i) acknowledge that it is their intent to consummate this Settlement; and (ii) agree to cooperate to the full extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement.  To the extent the Parties are unable to reach agreement concerning such best efforts, any Party may refer the matter to the Mediators for resolution, subject to Court approval, with the fees and expenses of the Mediators to be divided equally between Lead Plaintiffs on the one hand, and Defendants on the other hand.

47.     The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes that have arisen or could have arisen between or among the Plaintiffs and the Class Members on the one hand, and the Released Parties on the other hand, and all claims that have been asserted or that could have been asserted by Plaintiffs and the Class Members against the Released Parties, with respect to the Settled Claims or the Action.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense.  The Parties agree that the amount paid into the Gross Settlement Fund and the other terms of the Settlement were negotiated in good faith and at arm's length by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent and experienced legal counsel.  The Parties and their counsel agree not to contend in any forum that the Action was brought or defended in bad faith, without a reasonable basis, or in

violation of Rule 11 of the Federal Rules of Civil Procedure, and reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any forum that the Action was brought or defended in bad faith, without a reasonable basis, or in violation of Rule 11 of the Federal Rules of Civil Procedure.

48.     The Parties and their respective counsel also agree to keep the information disclosed to them in connection with mediation and settlement negotiations confidential unless required to publicly disclose such information by applicable law, in which case written notice as to the content of any public communication shall be provided to all other Parties at least three (3) business days prior to disclosure.  In the event any of the Parties wish to make a voluntary public disclosure regarding the Settlement, its terms, conditions, or obligations (other than the fact that this case was resolved by Settlement), such Party shall provide at least three (3) business days' advance notice to all other Parties as to the content of any such public communication.

49.     If a case is commenced under Title 11 of the United States Code (Bankruptcy) in respect of any entity contributing funds to the Settlement Amount on behalf of any Defendant(s), or a trustee, receiver or conservator is appointed as to any such person or entity under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Gross Settlement Fund or any portion thereof by such Defendant(s) (or insurer) to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be, and is capable of being, returned or disgorged by the Gross Settlement Fund and is so returned or disgorged, and replacement funds are not promptly deposited into the Gross Settlement Fund by others, then, at the election of Plaintiffs' Lead Counsel, with approval of Lead Plaintiffs, the Parties shall jointly move the Court to vacate and set aside the releases given as to that Defendant(s), as well as the Final Judgment

entered pursuant to this Settlement Agreement as to that Defendant(s), which releases and Final Judgment shall be null and void, and the Parties shall be restored to their respective positions in the Action as of the day immediately prior to the Execution Date and any amounts in the Gross Settlement Fund shall be returned as provided in Paragraphs 38 or 39.  The Settlement (including the related waivers and releases of claims) shall remain in effect as to any Defendant (and its related Released Parties) whose respective Settlement Amount is not returned or disgorged, or if returned or disgorged is promptly replaced.

50.     Nothing in this Settlement Agreement constitutes or reflects a waiver or release of any rights or claims of Defendants against their insurers, or their insurers' subsidiaries, predecessors, successors, assigns, affiliates, or representatives.  Nothing in this Settlement Agreement constitutes or reflects a waiver or release of any rights or claims of Defendants or Garcia or Gissinger relating to indemnification, advancement or any undertakings by an indemnified party to repay amounts advanced or paid by way of indemnification or otherwise.

51.     This Settlement Agreement, whether or not it is consummated and whether or not it is terminated, any of its provisions, any negotiations, proceedings or agreements relating to the Settlement Agreement and the Settlement, all matters arising in connection with such negotiations, proceedings or agreements, and all acts performed or documents executed pursuant to or in furtherance of this Settlement Agreement:

i.     shall not be offered or received against any of the Defendants as evidence of a presumption, concession, or admission of any kind;

ii.     shall not be offered or received against any of the Defendants as evidence of an admission by any of those Defendants with respect to the truth of any fact alleged in the Complaint or the validity of any Settled Claim, or the

deficiency of any defense that has been or could have been asserted, or of any liability, negligence, fault, or wrongdoing of the Defendants;

        iii.       shall not be offered or received against the Defendants as evidence of any fault, misrepresentation, omission or other actionable conduct with respect to any statement or written document approved or made by any of the Defendants;

        iv.       shall not be offered or received against the Defendants as evidence of any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; *provided, however,* that if this Settlement Agreement is approved by the Court, the Released Parties may refer to it to effectuate the release of Settled Claims and other liability protections granted them hereunder;

        v.       shall not be construed against any of the Defendants as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial;

        vi.       shall not be construed as or received in evidence as an admission, concession or presumption against Plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable in the Action would not have exceeded the Settlement Amount; and

        vii.       shall not, in the event of a Complete Termination, be used by any Party for any purpose in any trial in this Action.

Any Party may file this Settlement Agreement and/or the Final Judgment in any action that may be brought to enforce the terms of this Settlement Agreement

and/or the Final Judgment, or any action related to rights or claims of Defendants relating to indemnification and/or advancement in connection with this Action.

52.    All of the Exhibits to this Settlement Agreement are fully incorporated herein by reference as though fully set forth herein.

53.    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

54.    This Settlement Agreement, the Exhibits annexed hereto, and the Supplemental Agreement referred to in Paragraph 43 hereto constitute the sole and entire agreement among the Parties, and no representations, warranties, inducements, promises or agreements, oral or otherwise, have been made by or to any Party concerning this Settlement Agreement or its Exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.  Any and all prior or contemporaneous discussions, negotiations, agreements, commitments, and understandings related thereto are superseded hereby.  Except as otherwise provided herein, each Party shall bear his, her, or its own fees and costs.

55.    Plaintiffs' Lead Counsel, with approval of Lead Plaintiffs, on behalf of the Class, is expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Class that it deems appropriate.

56.    Each counsel or other Person executing the Settlement Agreement or any related settlement documents on behalf of any Party hereby warrants and represents that such Person has the full authority to do so and that such Person has

1   the authority to take reasonable, necessary and appropriate action required or

2   permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

3        57.    This Settlement Agreement may be executed in one or more

4   counterparts.  All executed counterparts and each of them shall be deemed to be

5   one and the same instrument.  This Settlement Agreement may be executed by

6   exchange of faxed or e-mailed (in .pdf format) executed signature pages, and any

7   signature thereby transmitted shall be deemed an original signature for purposes of

8   this Settlement Agreement.

9        58.    The Settlement Agreement shall be binding upon, and inure to the

10  benefit of, the, heirs, executors, administrators, trustees, parents, successors and

11  assigns of the Parties, including any corporation, trust, partnership or other entity

12  into which any Party heretofore has merged or with which it has been consolidated

13  or hereafter may merge or consolidate.

14       59.    The construction, interpretation, operation, effect and validity of this

15  Settlement Agreement and any ancillary documents necessary to effectuate it, shall

16  be governed by and interpreted according to the law of the State of California,

17  without regard to choice or conflicts-of-laws principles, except to the extent that

18  federal law requires that federal law governs.  Any dispute relating to this

19  Settlement Agreement shall be brought exclusively in the United States District

20  Court for the Central District of California, and each of the Parties agrees not to

21  contest subject matter jurisdiction, personal jurisdiction or assert that such forum is

22  inconvenient for any such dispute brought in this Court.  This is a mandatory

23  forum selection clause.

24       60.    The Court shall retain jurisdiction with respect to implementation and

25  enforcement of the terms of this Settlement Agreement, and the administration and

26  consummation of the Settlement embodied therein.  All Parties submit to the

27

28

jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Settlement Agreement.

61.     The Parties reserve the right, upon the agreement of all of them and subject to the Court's approval, to make any reasonable extensions of time or modifications to the Exhibits that might be necessary to carry out any of the provisions of this Settlement Agreement.

62.     All Parties agree that this Settlement Agreement was drafted by counsel for the Parties in good faith and at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Settlement Agreement was made or executed.  This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared or drafted by counsel for that Party.  It is recognized that this Settlement Agreement was the result of arm's length negotiations between counsel for the Parties and that counsel for all Parties contributed substantially and materially to the preparation of this Settlement Agreement.

63.     This Settlement Agreement shall be effective on its Execution Date, but the terms of the Settlement set forth herein shall become effective only on the Effective Date.

64.     The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Settlement Agreement or the intent of any provision hereof.

65.     In the event any one or more of the material provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, this Settlement Agreement shall not be binding on a

Party without the consent of such Party to the change resulting from such finding or holding.

66.    By making their application for approval of this Settlement, Plaintiffs' Lead Counsel and Defendants' Counsel shall not be deemed to have waived any attorney-client privilege or other privilege, work product protection or other protection, or immunity, and all information and documents transmitted between Plaintiffs' Lead Counsel and Defendants' Counsel in connection with this Settlement shall be inadmissible in any proceeding in any federal or state court or other tribunal or otherwise, in accordance with Rule 408 of the Federal Rules of Evidence as if such Rule applied in all respects in any such proceeding or tribunal.

67.    Pursuant to Paragraph 23 of the *Order Governing the Treatment of Confidential Information* entered in this Action:  Except as a disclosing party otherwise expressly authorizes in writing, within thirty (30) days after the Effective Date, each Party's counsel shall, at the option of the disclosing party, and subject to commercially reasonable efforts, either (a) return all documents and information designated as confidential, whether produced during discovery or otherwise, in that counsel's possession, custody or control, and all copies, portions, summaries, or abstracts thereof to counsel for the disclosing party or (b) destroy and certify destruction thereof; *provided, however,* that counsel for a Party may retain a file copy of work product created in connection with this Action that includes Confidential Materials, but such work product shall continue to be kept confidential and shall not be shared with any third party including, without limitation, any plaintiff or claimant, or any counsel to any such plaintiff or claimant, in any other action or proceeding against any Defendant.  This provision shall not apply to Defendants who have, in connection with other pending, threatened or reasonably expected action(s), obligations not to destroy or dispose of the documents and information produced in this Action, regardless of whether

such Defendants may be able to contend in such other action(s) that they are not required to produce the documents and information designated as confidential in this Action; *provided, however*, that such Defendants shall comply with the requirements of this Paragraph 67 within the later of (i) thirty (30) days after Final termination of such other litigation or (ii) such time as the Defendant no longer is aware of any threatened or reasonably expected action(s).

68.     Unless otherwise indicated, any notice or other communication that may or must be given by any Party or its counsel, or by the Claims Administrator, under this Settlement Agreement shall be in writing and shall be delivered by e-mail and by prepaid overnight mail to counsel for the Party or Parties to which such notice or communication is directed at the e-mail and street addresses for such counsel set forth above and below.  Any party may change the address at which it is to receive notice by written notice delivered to all other Parties in the manner described above.

Agreed to as of June 4, 2010.

LABATON SUCHAROW LLP

By: _/s/ Joel H. Bernstein_
  JOEL H. BERNSTEIN
  JONATHAN M. PLASSE
  IRA A. SCHOCHET
  DAVID J. GOLDSMITH
  MICHAEL H. ROGERS
  JOSHUA L. CROWELL

  *Lead Counsel for Lead Plaintiff*
  *Thomas P. DiNapoli, Comptroller*
  *of the State of New York, as*
  *Administrative Head of the New*
  *York State and Local Retirement*
  *Systems and as Trustee of the New*
  *York State Common Retirement*
  *Fund, and Lead Plaintiffs*
  *New York City Pension Funds*


KREINDLER & KREINDLER LLP

By: _/s/ Gretchen M. Nelson_
  GRETCHEN M. NELSON
  MARK LABATON

  *Liaison Counsel for Lead Plaintiffs*


KAPLAN FOX & KILSHEIMER LLP

By: _/s/ Joel B. Strauss_
  JOEL B. STRAUSS
  *jstrauss@kaplanfox.com*
  JEFFREY P. CAMPISI
  *jcampisi@kaplanfox.com*
  850 Third Avenue
  New York, New York  10022
  Telephone:  212-687-1980
  Facsimile:  212-687-7714

  *Attorneys for Plaintiffs*
  *Barry Brahn and Shelley B. Katzeff*

HENNIGAN, BENNETT & DORMAN LLP

By: _/s/ J. Michael Hennigan_____
    J. MICHAEL HENNIGAN
    *hennigan@hbdlawyers.com*
    KIRK D. DILLMAN
    *dillmank@hbdlawyers.com*
    MICHAEL SWARTZ
    *swartzm@hbdlawyers.com*
    865 South Figueroa Street, Suite 2900
    Los Angeles, California  90017
    Telephone:  213-694-1200
    Facsimile:  213-694-1234

    *Liaison Counsel for Lead Plaintiffs*

GOODWIN PROCTER LLP

By: _/s/ Brian E. Pastuszenski_____
    BRIAN E. PASTUSZENSKI
    *bpastuszenski@goodwinprocter.com*
    ALEXIS L. SHAPIRO
    *ashapiro@goodwinprocter.com*
    Exchange Place
    53 State Street
    Boston, Massachusetts  02109
    Telephone:  617-570-1000
    Facsimile:  617-523-1231

    LLOYD WINAWER
    *lwinawer@goodwinprocter.com*
    10250 Constellation Boulevard., 21st Fl.
    Los Angeles, California  90067
    Telephone:  310-788-5177
    Facsimile:  310-286-0992

    *Attorneys for Defendants*
    *Countrywide Financial Corporation,*
    *Countrywide Securities Corporation,*
    *and Countrywide Capital V*

1

KPMG LLP

2

By: _ /s/ Joseph I. Loonan _

3
JOSEPH I. LOONAN
*jloonan@kpmg.com*

4
757 Third Avenue
New York, New York  10017

5

6
*General Counsel*
*KPMG LLP*

7
*For purposes of any notice to KPMG LLP:*

8
GWYN QUILLEN
*gwyn.quillen@bingham.com*

9
BINGHAM McCUTCHEN LLP
The Water Garden

10
Fourth Floor, North Tower
1620 26th Street

11
Santa Monica, California  90404-4060
Telephone:  310.907.1000

12
Facsimile:   310.907.2000

13
*Attorneys for KPMG LLP*

14

15
IRELL & MANELLA LLP

16
By: _ /s/ David Siegel _

17
DAVID SIEGEL
*dsiegel@irell.com*

18
DANIEL LEFLER
*dlefler@irell.com*

19
CHARLES ELDER
*celder@irell.com*

20
RANDALL JACKSON
*rjackson@irell.com*

21
1800 Avenue of the Stars, Suite 900
Los Angeles, California  90067

22
Telephone:  310-277-1010
Facsimile:   310-203-7199

23
*Attorneys for Defendant*

24
*Angelo R. Mozilo*

25

26

27

28

1

ORRICK, HERRINGTON & SUTCLIFFE LLP

2

By:  /s/ Lori Lynn Phillips

3

LORI LYNN PHILLIPS
*lphillips@orrick.com*
701 Fifth Avenue, Suite 5700

4

Seattle, Washington  98104-7097
Telephone:  206-839-4300

5

Facsimile:   206-839-4301

6

7

MICHAEL D. TORPEY
*mtorpey@orrick.com*
PENELOPE A. GRABOYS BLAIR

8

*pgraboysblair@orrick.com*
The Orrick Building

9

405 Howard Street
San Francisco, California  94105-2669

10

Telephone:  415-773-5700
Facsimile:   415-773-5759

11

12

MICHAEL C. TU
*mtu@orrick.com*
777 South Figueroa Street, Suite 3200

13

Los Angeles, California  90017
Telephone:  213-629-2020

14

Facsimile:   213-612-2499

15

*Attorneys for Defendant*
*David Sambol*

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)

By: */s/ Shirli Fabbri Weiss*
SHIRLI FABBRI WEISS
*shirli.weiss@dlapiper.com*
401 B Street, Suite 1700
San Diego, California  92101-4297
Telephone:  619-699-2700
Facsimile:  619-699-2701

NICOLAS MORGAN
*nicolas.morgan@dlapiper.com*
1999 Avenue of the Stars, Suite 400
Los Angeles, California  90067-6022
Telephone:  310-595-3000
Facsimile:   310-595-3300

DAVID PRIEBE
*david.priebe@dlapiper.com*
JEFFREY B. COOPERSMITH
*jeff.coopersmith@dlapiper.com*
2000 University Avenue
East Palo Alto, California  94303-2248
Telephone:  650-833-2000
Facsimile:   650-833-2001

*Attorneys for Defendant*
*Eric P. Sieracki*


CALDWELL LESLIE & PROCTOR, PC

By: */s/ Christopher G. Caldwell*
CHRISTOPHER G. CALDWELL
*caldwell@caldwell-leslie.com*
ANDREW ESBENSHADE
*esbenshade@caldwell-leslie.com*
DAVID K. WILLINGHAM
*willingham@caldwell-leslie.com*
1000 Wilshire Boulevard, Suite 600
Los Angeles, California  90017-2463
Telephone:  213-629-9040
Facsimile:   213-629-9022

*Attorneys for Defendant*
*Stanford L. Kurland*

MORRISON & FOERSTER LLP

By: _/s/ Jordan Eth_
     JORDAN ETH
     *jeth@mofo.com*
     JUDSON E. LOBDELL
     *jlobdell@mofo.com*
     425 Market Street
     San Francisco, California  94105
     Telephone:  415-268-7000
     Facsimile:  415-268-7522

     *Attorneys for Defendants*
     *Henry Cisneros, Jeff Cunningham,*
     *Robert Donato, Ben M. Enis,*
     *Edwin Heller, Gwendolyn S. King,*
     *Martin Melone, Robert Parry,*
     *Oscar Robertson, Keith Russell,*
     *and Harley Snyder*

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: _/s/ Eric S. Waxman_
     ERIC S. WAXMAN
     *ewaxman@skadden.com*
     PETER B. MORRISON
     *peter.morrison@skadden.com*
     VIRGINIA F. MILSTEAD
     *virginia.milstead@skadden.com*
     300 South Grand Avenue
     Los Angeles, California  90071-3144
     Telephone:  213-687-5000
     Facsimile:  213-687-5600

     *Attorneys for Defendants*
     *Kathleen Brown and*
     *Michael E. Dougherty*

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Dean J. Kitchens_
     DEAN J. KITCHENS
     *dkitchens@gibsondunn.com*
     LINDSAY PENNINGTON
     *lpennington@gibsondunn.com*
     333 South Grand Avenue
     Los Angeles, California  90071-3197
     Telephone:  213-229-7000
     Facsimile:  213-229-7520

     JONATHAN DICKEY
     *jdickey@gibsondunn.com*
     200 Park Avenue, 48th Floor
     New York, New York  10166-0193
     Telephone:  212-351-2399
     Facsimile:  212-351-6399

     *Attorneys for Underwriter Defendants*