LINK: 842

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION | Lead Case No. CV 07-05295 MRP (MANx) **ORDER GRANTING PRELIMINARY APPROVAL TO SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS** |

Plaintiffs' counsel presented to the Court for preliminary approval a settlement of all remaining claims asserted against all defendants in the above-captioned case. The terms of the settlement are set out in an amended Stipulation and Agreement of Settlement (the "Settlement Agreement") executed by counsel for the parties as of June 29, 2010. At the time they executed the Settlement Agreement, counsel for the parties simultaneously countersigned a Supplemental Agreement, which was submitted under seal for the Court's review. All capitalized terms used herein have the meanings set forth and defined in the Settlement Agreement.

The Court, upon careful review of the Settlement Agreement and the Supplemental Agreement, and having held a hearing on August 2, 2010, to determine, among other things, whether the Settlement is sufficiently fair, reasonable, and adequate to warrant the issuance of notice of the proposed Settlement to the members of the Class certified by the Court, declares that it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.      Jurisdiction.  The Court has jurisdiction over the subject matter of this Action and over the Parties.

2.      Preliminary Findings Concerning Proposed Settlement.  The Court preliminarily finds that the proposed Settlement should be approved as: (i) the result of serious, extensive arm's-length and non-collusive negotiations; (ii) falling within a range of reasonableness warranting final approval; (iii) having no obvious deficiencies; (iv) not improperly granting preferential treatment to the Lead Plaintiffs, additional named Plaintiffs, or segments of the Class; and (v) warranting notice of the proposed Settlement to Class Members and further consideration of the Settlement at the fairness hearing described below.

3.      Fairness Hearing.  A hearing (the "Fairness Hearing") will be held on Monday, November 15, 2010 at 1:00 p.m. before the Honorable Mariana R. Pfaelzer in Courtroom 12 of the United States District Court for the Central District of California, 312 North Spring Street, Los Angeles, California 90012, to determine, among other things, (a) whether the proposed Settlement of the Action on the terms and conditions provided in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; (b) whether the proposed Plan of Allocation of the Net Settlement Fund is fair and reasonable and should be approved by the Court; (c) whether a Final Judgment and Order of Dismissal with Prejudice substantially in the form of Exhibit B to the Settlement Agreement should be entered in this Action; and (d) to consider Plaintiffs' Lead Counsel's application for a Fee and Expense Award.  Any papers in support of

1  final approval of the Settlement, approval of the Plan of Allocation, and Plaintiffs'

2  Lead Counsel's application for a Fee and Expense Award shall be filed with the

3  Court no later than thirty-five (35) days before the Fairness Hearing.

4      4.   Notice.  The Court approves the form, substance, and requirements of

5  the Notice and Summary Notice (together, the "Notices") and the Proof of Claim

6  form annexed to the Settlement Agreement as Exhibits A-1, A-3 and A-2,

7  respectively, and finds that the procedures established for publication, mailing and

8  distribution of the Notices and Proof of Claim substantially in the manner and form

9  set forth in paragraphs 5 and 7 of this Order (a) constitute the best notice to Class

10  members practicable under the circumstances, (b) are reasonably calculated, under

11  the circumstances, to describe the terms and effect of the Settlement Agreement

12  and of the Settlement and to apprise Class Members of their right to object to the

13  proposed Settlement or to exclude themselves from the Class, (c) are reasonable

14  and constitute due, adequate, and sufficient notice to all persons entitled to receive

15  such notice, and (d) satisfy all applicable requirements of the Federal Rules of

16  Civil Procedure (including Rules 23(c) and (d)), the United States Constitution

17  (including the Due Process Clause), the Private Securities Litigation Reform Act of

18  1995, the Rules of this Court, and any other applicable law.

19      5.   Retention of Claims Administrator and Manner of Notice.  Plaintiffs'

20  Lead Counsel is hereby authorized to retain Rust Consulting, Inc. (the "Claims

21  Administrator") to supervise and administer the notice procedure and the

22  processing of claims under the supervision of Plaintiffs' Lead Counsel as more

23  fully set forth below:

24          (a)   Not later than eighteen (18) days after entry of this Order by

25      this Court (the "Notice Date"), the Claims Administrator shall cause the

26      Notice, substantially in the form attached hereto as Attachment 1, along with

27      a Proof of Claim form substantially in the form attached hereto as

28      Attachment 2, to be sent to each Class Member who can be identified by

1  reasonable effort.  Such notice shall be sent by first-class mail, postage
2  prepaid, to the Class Member's last known address.  Countrywide shall
3  provide Plaintiffs' Lead Counsel, in accordance with paragraph 18 of the
4  Settlement Agreement, with the names and last known addresses of the Class
5  Members to the extent such information is within Countrywide's custody or
6  control.
7       (b)    Not later than fourteen (14) days after the Notice Date, the
8  Claims Administrator shall cause the Summary Notice, substantially in the
9  form attached hereto as Attachment 3, to be published on at least one
10  occasion in the *Wall Street Journal, USA Today,* and the *Los Angeles Times,*
11  and on *PR Newswire,* a national business-oriented wire service.  The
12  Summary Notice need not be published in each of these media on the same
13  day.
14       (c)    Not later than thirty-five (35) days before the Fairness Hearing,
15  Plaintiffs' Lead Counsel shall file with the Court one or more affidavits or
16  declarations showing timely compliance with the foregoing mailing and
17  publication requirements.
18       (d)    The Court relieves Plaintiffs' Lead Counsel *nunc pro tunc* from
19  the notice dissemination requirements in paragraphs 11 and 12 of this
20  Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for
21  Class Certification and Directing Dissemination of Notice to the Class, dated
22  January 21, 2010.
23       6.    <u>CAFA Notice.</u>  Not later than ten (10) days after the Settlement
24  Agreement was filed in this Court, Countrywide, on behalf of all Defendants, shall
25  provide the notice of the proposed Settlement to appropriate Federal and State
26  officials required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.  Not
27  later than thirty-five (35) days before the Fairness Hearing, Countrywide shall file
28

-4-

1  with the Court an affidavit or declaration showing timely compliance with this

2  CAFA Notice directive.

3        7.    <u>Nominee Purchasers</u>.  Banks, brokerage firms, institutions, and other

4  Persons who are nominees that purchased Countrywide securities for the beneficial

5  interest of other Persons during the Class Period ("Nominee Purchasers") shall,

6  within ten (10) days of receiving the Notice, (a) provide to the Claims

7  Administrator the name and last-known address of each such beneficial owner, or

8  (b) request additional copies of the Notice and Proof of Claim form and, within ten

9  (10) days of receipt, mail the Notice and Proof of Claim form directly to such

10  beneficial owners.  Nominee Purchasers following procedure (b) shall promptly

11  send a statement to the Claims Administrator confirming that the mailing was

12  made as directed.  The Claims Administrator shall, if requested, and upon receipt

13  of appropriate supporting documentation, reimburse Nominee Purchasers out of

14  the Gross Settlement Fund solely for Nominee Purchasers' reasonable out-of-

15  pocket expenses incurred in sending notice to the beneficial owners who are

16  potential Class Members, which expenses would not have been incurred except for

17  the sending of such notice, subject to further order of this Court with respect to any

18  dispute concerning such reimbursement.

19        8.    <u>Submission of Proof of Claim Forms</u>.  Any Class Member who wishes

20  to participate in the distributions from the Net Settlement Fund must sign and

21  return a completed Proof of Claim form in accordance with the instructions

22  contained therein and in the Notice.  All Proofs of Claim must be submitted by

23  first-class mail, postmarked no later than ninety (90) days after the Fairness

24  Hearing or such other date as may be set by the Court.  If a Class Member chooses

25  to return his, her or its Proof of Claim in a manner other than by first-class mail

26  (including electronic submission), then the Proof of Claim must be actually

27  received by the Claims Administrator no later than ninety (90) days after the

28  Fairness Hearing, or such other date as may be set by the Court.  Unless otherwise

ordered by the Court, any Class Member who does not sign and return a valid Proof of Claim within the time provided shall be barred from sharing in the distribution of the Net Settlement Fund, but shall nonetheless be bound by the Final Judgment and the releases therein. Notwithstanding the foregoing, Plaintiffs' Lead Counsel may, in its sole discretion, accept for processing late claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

9. Exclusions from the Class. Any potential Class Member who does not timely submit a valid written request for exclusion from the class in accordance with the instructions in the Notice is a Class Member and shall be bound by all of the terms and conditions of the Settlement Agreement, and by all proceedings, rulings, orders, and judgments in this Action regardless of whether such Class Member submits a Proof of Claim form. Requests for exclusion shall clearly indicate the name, mailing address, daytime telephone number, and e-mail address of the Person seeking exclusion; shall indicate the number of shares or units of Countrywide Securities owned as of March 12, 2004 (the first day of the Class Period); shall list the date(s), price(s), and number(s) of shares or units of all purchases and sales of Countrywide Securities during the Class Period and, for options that expired during the Class Period, the cash settlement or delivery amounts (if any); and state clearly that the Person wishes to be excluded from the Class in *In re Countrywide Financial Corporation Securities Litigation,* No. CV 07-05295 MRP (MANx) (C.D. Cal.). Requests for exclusion must be submitted by first-class mail, and postmarked no later than twenty-eight (28) days before the Fairness Hearing or such other date as may be set by the Court. If a Class Member chooses to submit his, her, or its exclusion in a manner other than by first-class mail, then it must be actually received at the address set forth in the Notice no later than twenty-eight (28) days before the Fairness Hearing or such other date as may be set by the Court. A request for exclusion shall not be effective unless it

provides the required information set forth herein and in the Notice and is made within the time stated herein, or the request for exclusion is otherwise accepted by the Court. Any Class Member who is excluded from the Class shall not be entitled to participate in any distributions from the Net Settlement Fund.

10.   <u>Objections to Settlement.</u> Any member of the Class who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to the Plan of Allocation, to any term of the Settlement Agreement, or to the proposed awards of attorneys' fees and expenses, may file an objection. An objector must file with the Court a written statement of his, her or its objection(s), (a) clearly indicating that objector's name, mailing address, daytime telephone number, and e-mail address; (b) stating that the objector is objecting to the proposed Settlement, Plan of Allocation, or awards of attorney's fees and expenses in *In re Countrywide Financial Corporation Securities Litigation,* No. CV 07-05295 MRP (MANx) (C.D. Cal.); (c) specifying the reason(s), if any, for each such objection made, including any legal support and/or evidence that such objector wishes to bring to the Court's attention or introduce in support of such objection; and (d) identifying and supplying documentation showing the date(s), price(s), and numbers of shares or units of all purchases and sales of Countrywide Securities by such objector during the Class Period and, for options that expired during the Class Period, the cash settlement or delivery amounts (if any). The objector must also mail the objection and all supporting documentation to Plaintiffs' Lead Counsel, counsel for the Countrywide Defendants, and counsel for Defendant KPMG LLP. The addresses for filing objections with the Court and service on counsel are as follows:

> *To the Court:*
> Clerk of the Court
> United States District Court
> for the Central District of California

1   United States Courthouse

2   312 North Spring Street

3   Los Angeles, CA  90012

4

5   *To Plaintiffs' Lead Counsel:*

6   Joel H. Bernstein, Esq.

7   Labaton Sucharow LLP

8   140 Broadway

9   New York, NY  10005

10

11   *To the Countrywide Defendants:*

12   Brian E. Pastuszenski, Esq.

13   Goodwin Procter LLP

14   Exchange Place

15   53 State Street

16   Boston, MA  02109

17

18   *To KPMG LLP:*

19

20   Gwyn Quillen, Esq.

21   Bingham McCutchen LLP

22   The Water Garden

23   Fourth Floor, North Tower

24   1620 26th Street

25   Santa Monica, CA  90404

26

27   The objector or his, her or its counsel (if any) must effect service of the

28   objection upon the counsel listed above and file it with the Court so that it is

-8-

1   received no later than twenty-eight (28) days before the Fairness Hearing.  A Class
2   Member may file an objection on his, her or its own or through an attorney hired at
3   his, her or its own expense.  If an objector hires an attorney to represent him, her or
4   it for the purposes of making such objection pursuant to this paragraph, the
5   attorney must both effect service of a notice of appearance on the counsel listed
6   above and file it with the Court no later than twenty-eight (28) days before the
7   Fairness Hearing.  Any member of the Class or other Person who does not timely
8   file and serve a written objection complying with the terms of this paragraph shall
9   be deemed to have waived, and shall be foreclosed from raising, any objection to
10  the Settlement, and any untimely objection shall be barred.  Any submissions by
11  the Parties in opposition or response to objections shall be filed with the Court no
12  later than seven (7) days before the Fairness Hearing.

13      11.    _Appearance at Fairness Hearing_.  Any objector who files and serves a
14  timely, written objection in accordance with the instructions above and herein, may
15  also appear at the Fairness Hearing either in person or through counsel retained at
16  the objector's expense.  Objectors or their attorneys intending to appear at the
17  Fairness Hearing must effect service of a notice of intention to appear, setting
18  forth, among other things, the name, mailing address, daytime telephone number,
19  and e-mail address of the objector (and, if applicable, the name, mailing address,
20  daytime telephone number, and e-mail address of the objector's attorney) on
21  Plaintiffs' Lead Counsel and on counsel for the Countrywide Defendants and
22  KPMG LLP (at the addresses set out above).  The objector must also file the notice
23  of intention to appear with the Court no later than twenty-eight (28) days before
24  the Fairness Hearing.  Any objector who does not timely file and serve a notice of
25  intention to appear in accordance with this paragraph shall not be permitted to
26  appear at the Fairness Hearing, except for good cause shown.

27      12.    _Garcia and Gissinger Dismissal_.  The Court preliminarily finds that
28  the stipulation of dismissal as to defendants Carlos Garcia and Andrew Gissinger

III, filed with this Court on March 25, 2010, should be approved.  A determination as to whether such dismissal should be finally approved as fair, reasonable and adequate shall be made at the Fairness Hearing described in Paragraph 3 above. Notice to the Class shall note the voluntary dismissal of these two defendants and shall inform Class Members of the hearing on this dismissal.

13.   <u>Service of Papers.</u>  Counsel for the Countrywide Defendants, counsel for KPMG LLP, and Plaintiffs' Lead Counsel shall promptly furnish all Parties with copies of any and all objections and notices of intention to appear that come into their possession.

14.   <u>Fees and Expenses.</u>  All reasonable Notice and Administration Expenses incurred in identifying and notifying Class Members, as well as in administering the Settlement, shall be paid as set forth in the Settlement Agreement.  In the event the Settlement is not approved by the Court, or otherwise fails to become effective, neither the Lead Plaintiffs nor Lead Counsel shall have any obligation to repay the reasonable and necessary Notice and Administration Expenses actually incurred as of the date the Settlement is terminated (as such date is determined pursuant to the terms of the Settlement Agreement), up to a maximum of Five Million Dollars ($5,000,000.00).  At or after the Fairness Hearing, the Court shall determine whether the Plan of Allocation and Plaintiffs' Lead Counsel's application for a Fee and Expense Award shall be approved. Neither Defendants nor Defendants' Counsel shall have any responsibility for any Plan of Allocation or any application for a Fee and Expense Award, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.

15.   <u>Bar on Litigating Settled Claims.</u>  Pending final determination of whether the Settlement should be approved, the Plaintiffs and all other Class Members, and anyone who acts or purports to act on their behalf, shall not

1  institute, prosecute, participate in, or assist in the institution, prosecution, or

2  assertion of, any Settled Claim against any of the Released Parties.

3      16.    <u>Bar Related to Other Litigation</u>.  The named Plaintiffs shall not

4  encourage or solicit any other Person in regard to, or in connection with, the

5  making of any demand, the assertion of any liability, or the prosecution or

6  commencement of any lawsuit or other judicial or administrative proceedings

7  against any of the Released Parties relating to Countrywide, any of its affiliates or

8  related entities, and/or securities offered, sold or issued by Countrywide or by any

9  Countrywide-related entity (including but not limited to mortgage-backed

10  securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS,

11  Inc.).

12      17.    <u>Termination of Settlement</u>.  This Order shall become null and void,

13  and shall be without prejudice to the rights of the Parties, all of whom shall be

14  restored to their respective positions existing immediately before this Court entered

15  this Order, if the Settlement is terminated in accordance with the Settlement

16  Agreement.  In such event, paragraph 37, 38 or 39 (as the context requires) of the

17  Settlement Agreement shall govern the rights of the Parties.

18      18.    <u>Use of Order</u>.  This Order shall not be construed or used as an

19  admission, concession, or presumption by or against any of the Released Parties of

20  any fault, wrongdoing, breach, or liability or as a waiver by any Party of any

21  arguments, defenses, or claims he, she, or it may have in the event that the

22  Settlement Agreement is terminated, nor shall it be used in any manner prohibited

23  by paragraph 51 of the Settlement Agreement.  In the event this Order becomes of

24

25

26

27

28

1  no force or effect, it shall not be construed or used as an admission, concession, or

2  presumption by or against the Released Parties, Plaintiffs or the Class.

3      19.   Stay.  All proceedings in this Action are stayed until further order of

4  the Court, except as may be necessary to implement the Settlement or comply with

5  the terms of the Settlement Agreement and this Order.  This Court retains

6  exclusive jurisdiction over the Action to consider all further matters arising out of

7  or connected with the Settlement.

8      20.   Continuance of Hearing.  The Court reserves the right to continue or

9  adjourn the Fairness Hearing from time to time without further notice to the Class.

10  The Court may approve the Settlement, with such modifications as may be agreed

11  to by the Parties, if appropriate, without further notice to the Class.

13      IT IS SO ORDERED.

15  August 2, 2010

_Mariana R. Pfaelzer_

HON. MARIANA R. PFAELZER

UNITED STATES DISTRICT JUDGE

-12-

# ATTACHMENT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Applies To: All Actions | Lead Case No.<br>CV 07-05295 MRP (MANx) |

## NOTICE OF PENDENCY AND PROPOSED
## SETTLEMENT OF CLASS ACTION AND FAIRNESS HEARING

**If, between March 12, 2004 and March 7, 2008, inclusive (the "Class Period"), you purchased or acquired Countrywide Financial Corporation common stock, call options, 6.25% Subordinated Notes Due 5/15/2016, Series A Medium-Term Notes, Series B Medium-Term Notes, certain Series L Medium-Term Notes, certain Series M Medium Term Notes, and/or Countrywide Capital V 7% Capital Securities, or you sold Countrywide put options during the Class Period, and you were damaged thereby, then you may be entitled to receive money from a class action settlement.**

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

The purpose of this Notice is to inform you of (a) the pendency of this class action (the "Action"), (b) the proposed settlement of the Action (the "Settlement"), and (c) the hearing to be held by the Court (the "Fairness Hearing") to consider (i) whether the Settlement should be approved, (ii) the application of Plaintiffs' Lead Counsel for attorneys' fees and expenses, and (iii) certain other matters.  This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement or wish to be excluded from the Class.

- The Settlement provides a total recovery of $624 million in cash for the benefit of the Class described herein.

- The Settlement resolves a lawsuit alleging that Countrywide Financial Corporation ("Countrywide" or the "Company"), certain of its former officers and directors, Countrywide's outside auditor, KPMG LLP ("KPMG"), and various investment banks that helped bring certain Countrywide securities to market (the "Underwriter Defendants"), misled investors about Countrywide's lending practices and its financial condition, claims that Countrywide, KPMG, and all other Defendants have denied.

- **Your legal rights will be affected by this Action and this Settlement whether you act or do not act.  Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A PROOF OF CLAIM FORM** | The <u>only</u> way to get a payment. |
| **EXCLUDE YOURSELF** | You will get no payment.  This is the only option that allows you to ever bring or maintain your own lawsuit against the Defendants and the other Released Parties, or to be part of another lawsuit, concerning the Settled Claims. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the Settlement. |
| **DO NOTHING** | You will get no payment, and you will give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will be made to all Class Members who timely submit a valid proof of claim form, if the Court approves the Settlement and after any appeals are resolved and all proof of claim forms have been reviewed and processed.  Please be patient.

## SUMMARY NOTICE

<u>Statement of Plaintiff Recovery</u>

Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fund ("NYSCRF"), Lead Plaintiffs New York City Employees' Retirement System, New York City Police Pension Fund, New York City Fire Department Pension Fund, New York City Board of Education Retirement System, and Teachers' Retirement System of the City of New York (collectively, the "New York City Pension Funds"), and Plaintiff Barry Brahn, on behalf of themselves and the Class (collectively, "Plaintiffs") have entered into a proposed Settlement with all Defendants that, if approved by the Court, will resolve this Action in its entirety.

A settlement fund of $624 million in cash, plus interest ("Gross Settlement Fund"), is being established for the benefit of the Class described herein.  Countrywide and certain insurers are paying $600 million in settlement.  KPMG is paying $24 million.

2

Plaintiffs estimate that the average recovery per damaged share of Countrywide common stock under the Settlement is $0.40 before deduction of Court-awarded attorneys' fees and expenses. This is based upon Plaintiffs' estimate, as determined by their damages consultant consistent with the Plan of Allocation of the Net Settlement Fund described below, that there were approximately 1.228 billion shares of Countrywide common stock traded during the Class Period that may have been damaged, and the estimated amount of damages to purchasers of common stock as compared with estimated total damages to purchasers of all Countrywide securities that are in the Class. Please note that a damaged share may have been traded more than once during the Class Period, and the indicated average recovery represents the total of such recovery for each such share.

Plaintiffs estimate that the average recovery per damaged share of Countrywide Capital V 7% Capital Securities under the Settlement is $0.10 before deduction of Court-awarded attorneys' fees and expenses. This is based upon Plaintiffs' estimate, as determined by their damages consultant consistent with the Plan of Allocation, that there were approximately 75.8 million 7% Capital Securities traded during the Class Period that may have been damaged, and the estimated amount of damages to purchasers of 7% Capital Securities as compared with estimated total damages to purchasers of all Countrywide securities that are in the Class. Please note that a damaged 7% Capital Security may have been traded more than once during the Class Period, and the indicated average recovery represents the total of such recovery for each such security.

The average recoveries per share of damaged common stock and 7% Capital Securities also assume that **all** Class Members who purchased such securities timely submit valid claims seeking a payment from the Net Settlement Fund. The number of Class Members who submit claims varies widely from case to case, and historically is less than 100%. If not all Class Members submit claims, your actual recovery could be more than the estimated average amount. Additionally, a Class Member's actual recovery will be determined by the Plan of Allocation of the Net Settlement Fund described below, and will depend upon, among other things, when during the Class Period a Class Member purchased Countrywide securities, and whether those securities were held at the end of the Class Period or sold during the Class Period, and, if sold, when they were sold. The average per-share recovery may be further reduced by amounts that, under the Plan of Allocation, may be claimed by purchasers of the publicly traded Countrywide debt and option securities that are part of this case. Under one or more of these factors, individual Class Members could receive more or less than the estimated average per-share amounts.

<u>Statement of Potential Outcome of Case</u>

The parties vigorously disagree about both liability and damages and do not agree on the average amount of damages per share, 7% Capital Security (preferred share), option or bond that would be recoverable if Plaintiffs were to prevail on each claim asserted against Defendants.

Plaintiffs estimate, based on the opinions and analyses of their experts, that the average amount of damages per share of Countrywide common stock that would be recoverable if Plaintiffs prevailed on each claim asserted is $3.56 before deduction of Court-awarded attorneys' fees and expenses. Please note that a damaged share of common stock may have been traded more than

3

once during the Class Period, and the indicated average damages represents the total of such recovery for each such share.

Plaintiffs estimate, based on the opinions and analyses of their experts, that the average amount of damages per share of Countrywide Capital V 7% Capital Securities that would be recoverable if Plaintiffs prevailed on each claim asserted is $0.88 before deduction of Court-awarded attorneys' fees and expenses.  Please note that a damaged 7% Capital Security may have been traded more than once during the Class Period, and the indicated average damages represents the total of such recovery for each such security.

Defendants state, based on the opinions and analyses of their experts, that aggregate class recovery—and therefore average amount of damages per share of Countrywide common stock and Countrywide Capital V 7% Capital Securities that would be recoverable if Plaintiffs prevailed on each claim asserted—would be zero.

The issues on which the parties disagree include: (a) whether the statements made or facts allegedly omitted were materially false or misleading, or otherwise actionable under the federal securities laws; (b) whether Countrywide accounted for the value of certain assets and reserved for certain potential losses in accordance with generally accepted accounting principles (GAAP); (c) whether any allegedly materially false or misleading statements made by Defendants subject to securities fraud claims were made with the requisite level of intent or recklessness; (d) the amounts by which Countrywide common stock, options, preferred shares, and bonds were allegedly artificially inflated (if at all) during the Class Period; (e) the appropriate economic models for determining the amounts by which Countrywide common stock, options, preferred shares, and bonds were allegedly artificially inflated (if at all) during the Class Period; (f) the effect of various market forces that influenced the trading prices of Countrywide common stock, options, preferred shares, and bonds during the Class Period, including but not limited to the precipitous drop in national home prices that began in 2007 (the first sustained national decline in home prices since the Great Depression); (g) the extent to which external factors, such as general market, economic and industry conditions, or unusual levels of volatility, influenced the trading prices of Countrywide common stock, options, preferred shares, and bonds at various times during the Class Period; (h) the extent to which the various matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the trading prices of Countrywide common stock, options, preferred shares, and bonds during the Class Period; (i) the extent to which the alleged concealment of various allegedly adverse material facts influenced (if at all) the trading prices of Countrywide common stock, options, preferred shares, and bonds during the Class Period; (j) whether and to what extent the various allegedly adverse material facts that Plaintiffs alleged were concealed actually were publicly disclosed in Securities and Exchange Commission ("SEC") filings, quarterly investor calls, popular news media, or otherwise; (k) whether and to what extent Countrywide disclosed allegedly concealed information at investor forums held pursuant to SEC Regulation FD and attended by securities analysts and institutional investors; (l) whether a Class should have been certified; (m) whether certain Countrywide bonds traded in an efficient market during the Class Period, entitling Plaintiffs to a presumption of reliance; (n) whether KPMG recklessly failed to conduct its audits of Countrywide's annual financial statements in accordance with generally accepted auditing standards (GAAS); (o) whether Defendant Angelo R. Mozilo, Countrywide's former Chairman of the Board of Directors and Chief Executive Officer, sold shares of Countrywide common stock while in

4

possession of material undisclosed facts; (p) whether the Underwriter Defendants (defined below) conducted appropriate due diligence in connection with the relevant offerings of Countrywide securities; and (q) whether Defendant Kurland and the Individual Defendants who are non-management members of Countrywide's Board of Directors acted diligently and with good faith in discharging their responsibilities.

All Defendants deny that they are liable to the Plaintiffs or the Class and deny that the Plaintiffs or the Class have suffered any recoverable damages relating to their investments in Countrywide securities.

Statement of Attorneys' Fees and Costs Sought

Plaintiffs' Lead Counsel will make an application to the Court for an award of attorneys' fees from the Gross Settlement Fund in connection with this Settlement. It is expected that the application will seek the sum of approximately $47,346,000.00, which constitutes approximately 7.59% of the Gross Settlement Fund, plus interest earned at the same rate as the Gross Settlement Fund. As explained below, the precise amount of attorneys' fees sought will vary depending upon the precise amount of out-of-pocket costs and expenses that are reimbursed to Plaintiffs' Lead Counsel and the precise amount of notice and administration costs that ultimately are paid out of the Gross Settlement Fund and approved by the Court. These costs and expenses are taken into consideration in determining the fee that Plaintiffs' Lead Counsel is authorized to seek. Plaintiffs' Lead Counsel will also apply for reimbursement of out-of-pocket costs and expenses incurred in prosecuting the Class's claims, including the fees of Lead Plaintiffs' damages, accounting, mortgage lending, and other experts and consultants, in the estimated total amount of $8,750,000.00, plus interest earned at the same rate as the Gross Settlement Fund.

These requested fees and expenses combined ($56,096,000.00) would amount to an average of approximately $0.04 per damaged share of Countrywide common stock in total, based upon Plaintiffs' estimate, as determined by their damages consultant consistent with the Plan of Allocation, that there were approximately 1.228 billion shares of Countrywide common stock traded during the Class Period that may have been damaged, and the estimated amount of damages to purchasers of common stock as compared with estimated total damages to purchasers of all Countrywide securities that are in the Class. These requested fees and expenses combined would amount to an average of approximately $0.009 (nine-tenths of one cent) per damaged share of Countrywide Capital V 7% Capital Securities in total, based upon Plaintiffs' estimate, as determined by their damages consultant consistent with the Plan of Allocation, that there were approximately 75.8 million 7% Capital Securities traded during the Class Period that may have been damaged, and the estimated amount of damages to purchasers of 7% Capital Securities as compared with estimated total damages to purchasers of all Countrywide securities that are in the Class.

The attorneys representing Plaintiffs and the Class have expended considerable time and effort in prosecuting this litigation on a contingent-fee basis, and have advanced all of the expenses of the litigation, totaling millions of dollars, with the expectation that if they were successful in obtaining a recovery for the Class they would be paid from such recovery. In this type of litigation, it is customary for Plaintiffs' counsel to be awarded a percentage of the common fund recovery as their attorneys' fees.

5

The attorneys' fee to be requested is consistent with agreements entered into between Plaintiffs' Lead Counsel and NYSCRF and the New York City Pension Funds ~~approved~~ Under the terms of these agreements, the attorneys' fee Plaintiffs' Lead Counsel will seek is dependent in part upon, and limited to a defined degree by, the out-of-pocket costs and expenses awarded by the Court and the notice and administration costs paid out of the Gross Settlement Fund.  The requested fee estimate of $47,346,000 assumes that the reimbursed out-of-pocket costs and expenses and approved notice and administration costs, taken together, will total $15.35 million.  In the event that reimbursed out-of-pocket costs and expenses and approved notice and administration costs, taken together, are less than the estimated $15.35 million amount, Plaintiffs' Lead Counsel will be permitted to seek a proportionately higher fee, at a ratio of $40 in fees for each $1,000 of expenses or notice and administration costs.  Conversely, in the event that reimbursed out-of-pocket costs and expenses and approved notice and administration costs exceed the estimated amount, the fee sought by Plaintiffs' Lead Counsel will be reduced by $40 for each $1,000 in expenses or notice and administration costs.

Identification of Attorneys' Representatives

Plaintiffs' Lead Counsel is available to answer questions concerning all matters contained in this Notice: Joel H. Bernstein, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, 800-321-0476 (toll-free), e-mail: info@CountrywideSecuritiesClassAction.com.

Reasons for the Settlement

Plaintiffs and Plaintiffs' Lead Counsel, who have extensive experience in securities class action litigation, agreed to the Settlement after considering, among other things: (a) the substantial cash benefits to Class Members of the Settlement; (b) the uncertainty of being able to prove the allegations in the Complaint; (c) the inherent problems of proof and possible defenses to the federal securities law claims asserted against Defendants; (d) the risk that the Court may grant, in whole or in part, some or all of the numerous motions for summary judgment filed by Defendants; (e) the uncertainty, even if Plaintiffs were to establish liability at trial against all Defendants, inherent in the Parties' various and competing theories of macroeconomic and microeconomic loss causation and damages; (f) Defendants' likely positions, expressed during the pendency of the litigation and also in connection with settlement negotiations, concerning the various liability, causation, and damages issues; (g) certain views expressed during the settlement negotiations by a sitting federal judge, whom the Court appointed to serve as Settlement Judge in this matter, and a private mediator engaged by the parties; (h) the attendant risks of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation (including any appeals); (i) the desirability of consummating this Settlement Agreement in order to provide certain and effective relief to Class Members at this juncture of the Action and without further delay; and (j) Plaintiffs' and Plaintiffs' Lead Counsel's belief that the Settlement is fair, reasonable, and adequate and in the best interests of all Class Members.

6

14.   If I do not exclude myself, can I sue the Defendants and the other Released Parties for the same thing later? ...........................................20

15.   If I exclude myself, can I get money from the proposed Settlement? ...................20

THE LAWYERS REPRESENTING YOU ...........................................................20

16.   Do I have a lawyer in this case?.......................................................20

17.   How will the lawyers be paid?.........................................................21

OBJECTING TO THE SETTLEMENT ...........................................................21

18.   How do I tell the Court that I do not like the proposed Settlement? ...................21

19.   What is the difference between objecting and excluding?......................................22

THE SETTLEMENT FAIRNESS HEARING ...........................................................23

20.   When and where will the Court decide whether to approve the proposed Settlement?...........................................................23

21.   Do I have to come to the hearing? ........................................................23

22.   May I speak at the hearing? ...........................................................24

IF YOU DO NOTHING ...........................................................24

23.   What happens if I do nothing at all? ...........................................................24

GETTING MORE INFORMATION...........................................................24

24.   Are there more details about the proposed Settlement?.........................................24

25.   How do I get more information?...........................................................25

PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND...........................................................25

SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES.........................................36

## BASIC INFORMATION

| 1. | Why did I get this notice package? |
|---|---|

The Court authorized this Notice to be sent to you because you or someone in your family, between March 12, 2004 and March 7, 2008, inclusive, may have purchased or otherwise acquired Countrywide Financial Corporation common stock, call options, 6.25% Subordinated

8

Notes Due May 15, 2016, Series A Medium-Term Notes, Series B Medium-Term Notes, certain Series L Medium-Term Notes, certain Series M Medium-Term Notes and/or Countrywide Capital V 7% Capital Securities, or sold Countrywide put options.

If this description applies to you or someone in your family, you have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the Settlement allows.

This Notice explains the lawsuit, the Settlement, Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of this Action is the United States District Court for the Central District of California, in Los Angeles, California, and the case is known as *In re Countrywide Financial Corporation Securities Litigation,* No. CV 07-05295 MRP (MANx) (C.D. Cal.). The Action is assigned to and overseen by the Honorable Mariana R. Pfaelzer, United States District Judge.

The institutions and individual that are suing, namely NYSCRF, the New York City Pension Funds, and Barry Brahn, are called Plaintiffs. The companies and persons being sued, namely Countrywide Financial Corporation; Countrywide Securities Corporation, a broker-dealer; Countrywide Capital V, an entity formed for the purpose of issuing certain preferred securities; certain of Countrywide's former officers and directors (the "Individual Defendants" listed below); KPMG, Countrywide's outside auditing firm; and various investment banks that underwrote offerings of Countrywide securities (the "Underwriter Defendants" listed below), are called the Defendants.

The Individual Defendants are Angelo R. Mozilo, Countrywide's founder and former Chief Executive Officer and Chairman of the Board ("Mozilo"); David Sambol, former President and Chief Executive Officer of Countrywide Home Loans, Inc., the Company's principal home loan business ("Sambol"); Eric P. Sieracki, former Chief Financial Officer ("Sieracki"); Stanford L. Kurland, former President ("Kurland"); and Kathleen Brown, Henry G. Cisneros, Jeffrey M. Cunningham, Robert J. Donato, Michael E. Dougherty, Ben M. Enis, Edwin Heller, Gwendolyn Stewart King, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell, and Harley W. Snyder, all of whom were non-management members of Countrywide's Board of Directors during the Class Period.

Additionally, while the litigation was ongoing and before entering into the Settlement, Plaintiffs agreed to dismiss the claims asserted against Thomas K. McLaughlin, a former Chief Financial Officer ("McLaughlin"); Carlos M. Garcia ("Garcia"), a senior executive of Countrywide Bank; and Andrew Gissinger III ("Gissinger"), a senior executive of Countrywide Home Loans.

The Underwriter Defendants are ABN AMRO Incorporated, A.G. Edwards & Sons, Inc., Banc of America Securities LLC, Barclays Capital Inc., BNP Paribas Securities Corp.; Citigroup Global Markets Inc., Deutsche Bank Securities Inc., Goldman, Sachs & Co., Greenwich Capital Markets, Inc. (now RBS Securities, Inc.), HSBC Securities (USA) Inc., J.P. Morgan Securities

Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, RBC Dain Rauscher Inc., UBS Securities LLC, and Wachovia Capital Markets, LLC.

Additionally, while the litigation was ongoing and before entering into the Settlement, Plaintiffs agreed to suspend the claims asserted against BNY Capital Markets, LLC, Dresdner Kleinwort Securities LLC, RBC Capital Markets Corp., RBC Dominion Securities Inc., Scotia Capital Inc., SG Americas Securities LLC, TD Securities Inc., and Wachovia Securities Inc. because all of the Countrywide bonds for which they acted as underwriters had matured and were paid in full, and thus it was unlikely that these eight Underwriter Defendants would owe significant damages to Plaintiffs assuming a finding of liability.

Finally, Plaintiffs' claims against Lehman Brothers Inc. were automatically stayed under the federal bankruptcy laws when Lehman Brothers filed for bankruptcy protection in September 2008.

| 2. | What is this lawsuit about? |
|---|---|

Countrywide, headquartered in Calabasas, California, was one of the nation's largest mortgage and home equity lenders.

Plaintiffs allege generally that Defendants violated the federal securities laws by making false and misleading statements concerning Countrywide's loan origination and underwriting practices, and the creditworthiness of its borrowers and riskiness of its loans. Plaintiffs also allege, among other things, that Countrywide's financial statements during the Class Period were false and misleading and presented in violation of generally accepted accounting principles (GAAP) by overvaluing the Company's retained interests in securitized loans and its mortgage servicing rights, while under-reserving for losses on loans held on the Company's books and in connection with loans sold onto the secondary mortgage market.

Plaintiffs assert that Defendants Countrywide, Mozilo, Sambol, Sieracki, and KPMG allegedly made false and misleading statements intentionally or recklessly, subjecting them to potential liability under the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants Mozilo, Sieracki, Kurland, and the Individual Defendants who were non-management members of the Board of Directors allegedly signed some or all (depending on the Defendant) of the offering documents for Countrywide's offerings of Series A Medium-Term Notes, Series B Medium-Term Notes, 6.25% Subordinated Notes Due May 15, 2016, and Countrywide Capital V 7% Capital Securities. These offering documents incorporated by reference certain reports filed with the SEC that were allegedly false and misleading, subjecting these Defendants to potential liability under the Securities Act of 1933 (the "Securities Act"). KPMG consented to the inclusion of certain of its audit opinions in certain of these offering documents, subjecting KPMG to potential liability under the Securities Act. Finally, the Underwriter Defendants and Defendant Countrywide Securities Corporation served as underwriters for such offerings of debt and preferred securities, subjecting these Defendants as well to potential liability under the Securities Act.

The Action seeks money damages against Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, and Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77*l*(a)(2), and 77*o*. The Action also seeks disgorgement of profits that Defendant Mozilo allegedly received from selling Countrywide common stock while allegedly in possession of material adverse information, in violation of Section 20A of the Exchange Act, 15 U.S.C. § 78t-1. The Defendants all vigorously deny the allegations of wrongdoing or any liability whatsoever. The Court has made no decision regarding the merits of the claims.

| | |
|---|---|
| 3. | Why is this a class action? |

In a class action, one or more persons or entities (in this case, NYSCRF, the New York City Pension Funds, and Barry Brahn), sue on behalf of people who have similar claims. All these people are a Class, and each is a Class Member. Bringing a case, such as this one, as a class action allows the adjudication of many similar claims of persons and entities that might be economically too small to bring as individual actions. One court resolves the issues for all Class Members at the same time, except for those who exclude themselves from the Class.

| 4. | Why is there a settlement? |
|---|---|

This Action was commenced on August 14, 2007 by the filing of the *Pappas* class action complaint alleging violations of the federal securities laws. Between August 31, 2007 and January 25, 2008, six additional securities class action complaints, titled *Norfolk County Retirement System, McBride, Saratoga Advantage Trust, Brahn, Steele,* and *New York City Employees' Retirement System,* were filed and subsequently consolidated into this Action.

On November 28, 2007, the Court issued an Order Consolidating Cases and Appointing Lead Plaintiff and Lead Counsel. The Court consolidated the *Norfolk County Retirement System, McBride, Saratoga Advantage Trust,* and *Brahn* complaints into this Action. Further, pursuant to provisions of the Private Securities Litigation Reform Act of 1995, the Court appointed NYSCRF and the New York City Pension Funds as Lead Plaintiffs in this Action on behalf of purchasers of Countrywide publicly traded securities, and approved their selection of Labaton Sucharow LLP to serve as Lead Counsel.

On March 28, 2008, the Court issued an Order consolidating the *New York City Employees' Retirement System* and *Steele* complaints into this Action.

On April 11, 2008, following a confidential investigation that included interviews of many former Countrywide employees and analysis of certain nonpublic Countrywide documents, Lead Plaintiffs filed a 416-page Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "CAC"), naming Barry Brahn and another individual investor as additional plaintiffs and asserting claims against the Defendants specified above and certain additional defendants.

On June 10, 2008, all Defendants named in the CAC moved to dismiss or joined the other Defendants' motions. Plaintiffs filed opposition submissions on August 11, 2008, and Defendants filed reply submissions on September 30, 2008. The Court held a four-hour hearing on the motions to dismiss on October 20, 2008.

On December 1, 2008, the Court issued a 112-page Omnibus Order on Defendants' Motions to Dismiss the Consolidated Amended Complaint and All Pending Requests for Judicial Notice. The Court denied Defendants' motions to dismiss in part, dismissed certain allegations and claims (including all claims against Defendant Grant Thornton LLP) with prejudice, and granted Plaintiffs leave to amend with respect to (a) alleged violations of GAAP with respect to certain Countrywide quarterly and annual financial statements; (b) scienter as to Defendant KPMG with respect to its audits certifying certain year-end Countrywide financial statements; (c) the reasonableness as a matter of law of the Underwriter Defendants' reliance on certain Countrywide financial statements in acting as underwriters for offerings of Countrywide securities; (d) loss causation with respect to the Exchange Act claims asserted against Defendant Kurland; and (e) pleading of claims under Section 12(a)(2) of the Securities Act to allege that Plaintiffs purchased securities directly from or traceable to specific Underwriter Defendants.

On January 6, 2009, Plaintiffs filed a 415-page Second Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint").

12

On February 6, 2009, all Defendants named in the Complaint moved to dismiss or joined the other Defendants' motions. Plaintiffs filed a memorandum of law in opposition on March 9, 2009, and Defendants filed reply submissions on March 26, 2009.

On April 6, 2009, the Court issued an Omnibus Order on Motions Related to the Second Amended Complaint and the Unopposed Motion to Correct the Order of December 1, 2008. The Court dismissed the Exchange Act claims against Defendant Kurland, dismissed the Section 20A claim against Defendant Sambol, dismissed the Section 20A claim against Defendant Mozilo in part, dismissed the Securities Act claims against Defendant McLaughlin in significant part, and otherwise denied the motions to dismiss.

On April 29, 2009, the Defendants named in the Complaint filed Answers, denying the substantive allegations.

On December 9, 2009, after the completion of extensive fact and expert discovery on various class certification issues and briefing and argument on Plaintiffs' motion for class certification, the Court issued an 80-page Memorandum of Decision granting in part and denying in part the motion.

On January 21, 2010, further to this Memorandum of Decision, the Court issued an Order certifying the Class defined in Section 5 below, appointing NYSCRF as class representative for the Common Stock Subclass, appointing the New York City Pension Funds as class representative for the Debt Securities Subclass, and appointing Plaintiff Brahn as class representative for the Capital Securities Subclass, all as defined in Section 5 below.

On March 26, 2010, after fact discovery was essentially completed, Defendants filed 11 separate motions for summary judgment. Despite the risks these motions posed to Plaintiffs' claims and their ability to proceed to trial, the Parties agreed to enter into this Settlement shortly thereafter.

Between April 2009 and March 2010, the Parties engaged in extensive pretrial discovery and analyzed the facts, claims and defenses in this Action. Countrywide, KPMG, the Underwriter Defendants, and the Individual Defendants produced to Plaintiffs more than 25 million pages of documents and voluminous additional data in electronic form. Lead Plaintiffs produced more than 245,000 pages of documents and voluminous additional data in electronic form. Third-party witnesses also produced substantial volumes of documents and data. The Parties have taken the depositions of 80 fact and expert witnesses that proceeded in more than 20 cities. The Parties also commenced expert discovery, and on March 24 and 31, 2010, collectively exchanged the reports of 20 testifying expert witnesses on various liability, causation and damages issues.

Settlement discussions were extensive and protracted:

- On May 21, 2009, certain Parties and Bank of America participated in preliminary settlement discussions facilitated by Professor Eric D. Green of Boston University, a private mediator engaged by the Parties.

- On September 24, 2009, the Parties participated in further settlement discussions facilitated by Professor Green.

- On October 13, 2009, the Parties participated in further settlement discussions on all liability, damages, and causation issues, facilitated by Professor Green.

- On March 4, 2010, certain Parties participated in continued settlement discussions facilitated by Professor Green.

- From March 31 to April 2, 2010, the Parties participated in a final two-and-a-half days of arm's-length settlement negotiations on all issues facilitated by the Honorable A. Howard Matz, a sitting judge of the U.S. District Court for the Central District of California, and Professor Green.

Thus, the Court did not finally decide in favor of Plaintiffs or Defendants, who continue to deny liability. Instead, both sides formally agreed to a settlement. By settling, the parties avoid the risks, uncertainty and additional costs of a trial, and the affected Class Members may receive compensation. Lead Plaintiffs and Plaintiffs' Lead Counsel, and Plaintiff Barry Brahn and all Plaintiffs' Counsel, think the Settlement is best for all Class Members.

### WHO IS IN THE SETTLEMENT

To see if you may get money from this Settlement, you first have to determine whether you are a Class Member.

| 5. | How do I know if I am part of the Settlement? |
|---|---|

The Court decided that everyone who fits this description is a Class Member:

**All persons or entities that, between March 12, 2004 and March 7, 2008, inclusive (the "Class Period"), either in the open market or pursuant or traceable to a registration statement:**

> **(i) Purchased or otherwise acquired Countrywide Financial Corporation ("Countrywide") publicly traded common stock[1] or call options, and/or sold Countrywide publicly traded put options[2] (the "Common Stock Subclass"); or**

> **(ii) Purchased or otherwise acquired Countrywide Capital V 7% Capital Securities[3] (the "Capital Securities Subclass"); or**

> **(iii) Purchased or otherwise acquired Countrywide Series A Medium-Term Notes,[4] Series B Medium-Term Notes,[5] 6.25% Subordinated Notes Due May**

---

[1] The common stock has CUSIP No. 222372104.

[2] See Exhibit A at the back of this Notice for a list of call and put options that allegedly are potentially damaged.

[3] The 7% Capital Security has CUSIP No. 222388209.

[4] See Exhibit B at the back of this Notice for a list of Series A Medium-Term Notes that allegedly are potentially damaged.

15, 2016,[6] Series L Medium-Term Notes (limited to CUSIP Nos. 22237LNR9 and 22237LPA4), and/or Series M Medium-Term Notes (limited to CUSIP No. 22237LPM8) (the "Debt Securities Subclass");

and were damaged thereby (these subclasses are collectively referred to as the "Class").

The Court appointed Lead Plaintiff NYSCRF as the class representative for the Common Stock Subclass, Plaintiff Barry Brahn as the class representative for the Capital Securities Subclass, and Lead Plaintiff New York City Pension Funds as the class representative for the Debt Securities Subclass.

If you are part of the Class, you are a Class Member and part of the Settlement unless one of the exceptions described in the answer to question 6 below apply to you.

| 6. | Are there exceptions to being included? |
|----|------------------------------------------|

Yes. You are not a Class Member if you are a Defendant in this Action; a member of the immediate family of any of the Individual Defendants; an entity in which any Underwriter Defendant has a majority interest; an entity in which any other Defendant has a majority or controlling interest; a person who was an officer, director, partner, or controlling person of Countrywide (including any officer, director, partner or controlling person of any of its subsidiaries or any other entity in which Countrywide has a majority or controlling interest) or any other Defendant during the Class Period; a person whose purchases of Countrywide stock, during the Class Period, were made solely to cover short positions (a.k.a. "short sellers"); a person or entity that purchased or otherwise acquired or sold the Countrywide securities above and was not damaged thereby; or a legal representative, heir, successor or assign of any such excluded person or entity.

Additionally, anyone who submits a valid and timely request for exclusion from the Class, in accordance with the procedures set forth in question 13, is not considered a Class Member and cannot participate in the Settlement.

If one of your mutual funds purchased Countrywide common stock or bonds during the Class Period, that alone does not make you a Class Member. You are a Class Member only if you **directly** purchased Countrywide securities (or **directly** sold Countrywide put options) during the Class Period. Check your investment records or contact your broker to see if you purchased Countrywide securities or sold put options during the Class Period.

If you **sold** Countrywide securities (other than put options) during the Class Period, that alone does not make you a Class Member. You are a Class Member only if you **purchased** or otherwise acquired Countrywide securities (or **sold** put options) during the Class Period.

---

[5] See Exhibit B at the back of this Notice for a list of Series B Medium-Term Notes that allegedly are potentially damaged.

[6] The 6.25% Subordinated Notes Due 5/15/2016 has CUSIP No. 222372AJ3.

| 7. | What if I am still not sure if I am included? |
|----|------------------------------------------------|

If you are still not sure whether you are included in the Settlement, you can ask for free help. You can call 877-465-4142 toll-free, send an e-mail to info@CountrywideSecuritiesClassAction.com, or write to Countrywide Financial Corporation Securities Litigation, c/o Rust Consulting, Inc., P.O. Box 2284, Faribault, MN 55021-2419. Or you can fill out and return the Proof of Claim form described in question 10 to see if you qualify.

## THE SETTLEMENT BENEFITS — WHAT YOU GET

| 8. | What does the Settlement provide? |
|----|-----------------------------------|

In exchange for the Settlement and dismissal of the action, the Defendants have agreed to create a Six Hundred Twenty-Four Million Dollar ($624,000,000.00) settlement fund to be distributed, after various Court-approved fees and expenses, among all Class Members who send in a valid Proof of Claim form and are entitled to a distribution from the Net Settlement Fund ("Authorized Claimants").

Countrywide and certain of its insurance carriers are paying $600 million in settlement, and KPMG is paying $24 million in settlement.

| 9. | How much will my payment be? |
|----|------------------------------|

If you are an Authorized Claimant entitled to a payment, your share of the settlement fund will depend on how many Class Members timely send in valid Proof of Claim forms, the total Recognized Claims represented by those valid Proof of Claim forms that Class Members send in, how many shares of Countrywide common stock or other Countrywide securities you bought, how much you paid for them, and when you bought and whether or when you sold them, and if so for how much you sold them.

You can calculate your Recognized Claim in accordance with the formulas shown below in the Plan of Allocation of the Net Settlement Fund. It is unlikely that you will get a payment for all of your Recognized Claim. After all Class Members have sent in their Proof of Claim forms, the payment you get will be a part of the Net Settlement Fund equal to your Recognized Claim divided by the total of everyone's Recognized Claims. See the Plan of Allocation of Net Settlement Fund on pages ___ for more information on your Recognized Claim.

## HOW YOU GET A PAYMENT — SUBMITTING A PROOF OF CLAIM FORM

| 10. | How can I get a payment? |
|-----|--------------------------|

To qualify for a payment, you must send in a timely and valid Proof of Claim form. A Proof of Claim form is included with this Notice. If you did not receive a Proof of Claim form, you can

get one on the Internet at www.CountrywideSecuritiesClassAction.com or www.labaton.com. You can also ask for a Proof of Claim form by calling 877-465-4142 toll-free, sending an e-mail to info@CountrywideSecuritiesClassAction.com, or writing to Countrywide Financial Corporation Securities Litigation, c/o Rust Consulting, Inc., P.O. Box 2284, Faribault, MN 55021-2419.

Read the instructions carefully, fill out the Proof of Claim form, include all the documents the form asks for, sign it, and mail it to the P.O. Box address on the form by first-class mail, postmarked **no later than** _____, **2010.**

| 11. | When will I get my payment? |
|---|---|

The Court will hold a hearing on _____, **2010** to decide whether to approve the Settlement. If the Court approves the Settlement after that, there may be appeals. It is always uncertain how these appeals will be resolved, and resolving them can take a long time, perhaps more than a year. It also takes a long time, often as much as a year, for all of the Proofs of Claim to be accurately reviewed and processed. Please be patient.

| 12. | What am I giving up to get a payment or stay in the Class? |
|---|---|

Unless you exclude yourself, you are staying in the Class, and that means that, upon the "Effective Date," you will release all "Settled Claims" (as defined below) against the "Released Parties" (as defined below).

"Settled Claims" means any and all claims, debts, demands, disputes, rights, causes of action, suits, matters, damages, or liabilities of any kind, nature, and character whatsoever (including but not limited to any claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature (collectively, "Claims"), including both known Claims and Unknown Claims (as defined herein), against any of the Released Parties (i) that were asserted or could have been asserted in the Action, (ii) that would have been barred by *res judicata* had the Action been fully litigated to a final judgment, or (iii) that could have been, or could in the future be, asserted in any forum or proceeding or otherwise by any Class Member against any of the Released Parties (a) that concern, arise out of, refer to, are based upon, or are related in any way to, any of the subject matter, allegations, transactions, facts, matters, occurrences, representations, statements, or omissions alleged, involved, set forth, or referred to in the Complaint; and (b) that relate to the purchase, sale, acquisition or holding of the Countrywide Securities, and, as to Plaintiffs, that relate to the purchase, sale, acquisition or holding of any security issued by Countrywide or any Countrywide-related entity (including but not limited to mortgage-backed securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS, Inc.), whether such Countrywide-related entity is a corporation, partnership, limited liability company, trust, or other entity, and whether or not such securities are Countrywide Securities; *provided, however,* that the term "Settled Claims" shall not include the following: (1) claims to

17

enforce the Settlement; and (2) shareholder derivative claims asserted as of April 2, 2010 on behalf of Countrywide Financial Corporation in the following actions for recovery by Countrywide as to injury allegedly caused to it: *In re Countrywide Financial Corp. Shareholder Derivative Litigation,* Case No. BC 375275 (Cal. Supr. Ct., Los Angeles County) and *In re Countrywide Financial Corp. Derivative Litigation,* Lead Case No. 2:07-cv-06923-MRP (MANx) (C.D. Cal.).

Notwithstanding the foregoing, nothing in this definition of "Settled Claims" shall prevent Plaintiffs from seeking to participate as unnamed class members in any settlement or other recovery in any class action, including but not limited to *Maine State Retirement System v. Countrywide Financial Corp.,* Case No. CV 10-00302 MRP (MANx) (C.D. Cal.), that relates to the purchase, sale, acquisition or holding of any security, other than Countrywide Securities, issued by Countrywide or any Countrywide-related entity (including but not limited to mortgage-backed securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS, Inc.), whether such Countrywide-related entity is a corporation, partnership, limited liability company, trust or other entity.

"Released Parties" means (a) any and all of the Defendants and any person, partnership, firm, corporation, limited liability company, trust or other entity or organization in which any Defendant has a controlling interest or which is or was related to or affiliated with any of the Defendants; and (b) with respect to each of the Persons in subsection (a), their respective past or present directors, officers, employees, insurers, reinsurers, attorneys, agents, partners, principals, advisors, investment advisors, auditors, accountants, trustees, underwriters, investment bankers, subsidiaries, parents (including without limitation Bank of America Corporation and each of its subsidiaries), any other entity in which any such parent has a controlling interest or which is or was related to or affiliated with any such parent, successors and predecessors, heirs, Immediate Family, and anyone acting or purporting to act for or on behalf of any of them or their successors.

"Unknown Claims" means any and all Settled Claims that any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor as of the Effective Date that, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement, or might have affected such party's decision not to object to this settlement. With respect to any and all Settled Claims, upon the Effective Date, the Lead Plaintiffs shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of this Final Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, and of any U.S. federal or state law, or principle of common law or otherwise, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides, in relevant part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiffs and other Class Members or certain of them may hereafter discover facts in addition to or different from those which such party now knows or believes to be true with

18

respect to the subject matter of the Settled Claims, but the Lead Plaintiffs and the Class Members, upon the Effective Date, by operation of the Final Judgment shall have, fully, finally, and forever settled and released, any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, claims relating to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiffs and Defendants acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and was a key element of the Settlement.

The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes final and not subject to appeal.

If you remain a member of the Class, all of the Court's orders will apply to you and legally bind you.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, but you want to keep any right you may have to sue or continue to sue the Defendants and the other Released Parties, on your own, concerning the Settled Claims, then you must take steps to exclude yourself. This is called excluding yourself or "opting out" of the Class.

| 13. | How do I exclude myself from the proposed Settlement? |
|-----|-------------------------------------------------------|

To exclude yourself from the Class, you must mail a signed letter stating that you "request exclusion from the Class in *In re Countrywide Financial Corporation Securities Litigation,* No. CV 07-05295 MRP (MANx) (C.D. Cal.)." You cannot exclude yourself by telephone or e-mail. Your letter must state the number of shares or units of Countrywide securities that are part of the Class and that you owned as of March 12, 2004 (the first day of the Class Period), and the date(s), price(s), and number(s) of shares or units of all of your purchases and sales of Countrywide securities during the Class Period (*i.e.,* all transactions in common stock, bonds that are in the Class, 7% Capital Securities, and call and put options). For options that expired during the Class Period, you must state the cash settlement or delivery amounts (if any). Your letter must include your name, mailing address, daytime telephone number, e-mail address, and your signature. You must mail your exclusion request by first-class mail, postmarked **no later than** _____, **2010** to:

Countrywide Financial Corporation Securities Litigation
c/o Rust Consulting, Inc.
P.O. Box 2284
Faribault, MN 55021-2419

If you ask to be excluded, you will not get any Settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue (or continue to sue) the Defendants and the other Released Parties in the future.

| 14. | If I do not exclude myself, can I sue the Defendants and the other Released Parties for the same thing later? |
|-----|---|

No. Unless you properly exclude yourself, you give up any rights to sue the Defendants and the other Released Parties for any and all Settled Claims. **If you do not exclude yourself, you will not be entitled to receive any recovery in any other action against any of the Released Parties based on or arising out of the Settled Claims.** If you have a pending lawsuit, speak to your lawyer in that case immediately. You must exclude yourself from **this** Class to continue your own lawsuit. Remember, the exclusion deadline is _____, 2010.

| 15. | If I exclude myself, can I get money from the proposed Settlement? |
|-----|---|

No. If you exclude yourself, do not send in a Proof of Claim form to ask for any money. But, you may exercise any right you may have to sue, continue to sue, or be part of a different lawsuit against the Defendants and the other Released Parties.

It is Lead Plaintiffs' and Plaintiffs' Lead Counsel's position that the confidential evidentiary record developed in this Action is a valuable asset of the Class, and should not be made available to persons who exclude themselves from the Class absent an order of the Court.

## THE LAWYERS REPRESENTING YOU

| 16. | Do I have a lawyer in this case? |
|-----|---|

The Court ordered that the law firm of Labaton Sucharow LLP, in New York, New York, will represent NYSCRF, the New York City Pension Funds, and all Class Members. These lawyers are called Plaintiffs' Lead Counsel. The law firms of Kreindler & Kreindler LLP and Hennigan, Bennett & Dorman LLP, both in Los Angeles, California, also serve as counsel for Lead Plaintiffs and the Class. The law firm of Klafter Olsen & Lesser LLP, in Rye Brook, New York, served as additional counsel for Lead Plaintiffs. The law firms of Kaplan Fox & Kilsheimer LLP, in New York, New York, and Lockridge Grindal Nauen, P.L.L.P., in Minneapolis, Minnesota, represent Plaintiff Barry Brahn.

You will not be separately charged for any of these lawyers. The Court will determine the amount of Plaintiffs' Counsel's fees and expenses, which will be paid from the Gross Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

20

| 17. | How will the lawyers be paid? |
|---|---|

Plaintiffs' Lead Counsel will ask the Court, on behalf of all Plaintiffs' Counsel, to award attorneys' fees from the Gross Settlement Fund of approximately $47,346,000.00, or approximately 7.59% of the Gross Settlement Fund, plus interest on such fees at the same rate as earned by the Gross Settlement Fund. Plaintiffs' Lead Counsel will also seek reimbursement of expenses incurred by Plaintiffs' Counsel in connection with the prosecution of this Action in the approximate amount of $8,750,000.00, plus interest on such expenses at the same rate as earned by the Gross Settlement Fund.

Under the terms of the agreements between Lead Plaintiffs and Plaintiffs' Lead Counsel, the attorneys' fee Plaintiffs' Lead Counsel will seek is dependent in part upon, and limited to a defined degree by, the amount of out-of-pocket costs and expenses awarded by the Court and the amount of notice and administration costs ultimately paid out of the Gross Settlement Fund and approved by the Court. The requested fee estimate assumes that all of these costs and expenses ultimately will total $15.35 million. In the event that all of these costs and expenses are less than this estimated amount, Plaintiffs' Lead Counsel will be permitted to seek a proportionately higher fee, at a ratio of $40 in fees for each $1,000 of expenses. In the event that all of these costs and expenses exceed this estimated amount, the fee sought by Plaintiffs' Lead Counsel will be reduced by $40 for each $1,000 in expenses.

Plaintiffs' Lead Counsel, without further notice to the Class, may subsequently apply to the Court for additional expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class and any proceedings subsequent to the Fairness Hearing.

The motion for attorneys' fees and expenses will be submitted on behalf of the following Plaintiffs' Counsel: Labaton Sucharow LLP, 140 Broadway, New York, NY 10005; Kreindler & Kreindler LLP, 707 Wilshire Boulevard, Suite 4100, Los Angeles, CA 90017; Hennigan, Bennett & Dorman LLP, 865 South Figueroa Street, Suite 2900, Los Angeles, CA 90017; Kaplan Fox & Kilsheimer LLP, 850 Third Avenue, New York, NY 10022; Klafter Olsen & Lesser LLP, Two International Drive, Suite 350, Rye Brook, NY 10573; and Lockridge Grindal Nauen, P.L.L.P., 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

| 18. | How do I tell the Court that I do not like the proposed Settlement? |
|---|---|

If you are a Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or the application by Plaintiffs' Lead Counsel for an award of attorneys' fees and expenses. You may write to the Court setting out your objection. You may give reasons why you think the Court should not approve any or all of the

Settlement terms or arrangements.  If you would like the Court to consider your views, you must
file a proper objection within the deadline identified, and according to the following procedures.

To object, you must send a signed letter stating that you object to the proposed Settlement in *In
re Countrywide Financial Corporation Securities Litigation,* No. CV 07-05295 MRP (MANx)
(C.D. Cal.).  Be sure to include your name, address, daytime telephone number, e-mail address,
and your signature, identify and supply documentation showing the date(s), price(s), and
number(s) of shares or units of all of your purchases and sales of Countrywide securities during
the Class Period (*i.e.,* all transactions in common stock, bonds that are in the Class, 7% Capital
Securities, and call and put options; and for options that expired during the Class Period, state the
cash settlement or delivery amounts (if any)), and state the reasons why you object to the
Settlement, including all legal support you wish to bring to the Court's attention and any
evidence you have to support your objection.  Your objection must be filed with the Court **and**
mailed or delivered to the following counsel at all of the following addresses, **on or before**
_____, 2010:

| **The Court:** | **Plaintiffs' Lead Counsel:** |
|---|---|
| Clerk of the Court<br>United States District Court for<br>the Central District of California<br>United States Courthouse<br>312 North Spring Street<br>Los Angeles, CA  90012 | Joel H. Bernstein, Esq.<br>Labaton Sucharow LLP<br>140 Broadway<br>New York, NY  10005 |
| **Counsel for Countrywide:** | **Counsel for KPMG:** |
| Brian E. Pastuszenski, Esq.<br>Goodwin Procter LLP<br>Exchange Place<br>53 State Street<br>Boston, MA  02109 | Gwyn Quillen, Esq.<br>Bingham McCutchen LLP<br>The Water Garden<br>Fourth Floor, North Tower<br>1620 26th Street<br>Santa Monica, CA  90404 |

You do not need to go to the Fairness Hearing to have your written objection considered by the
Court.  Any Class Member who has not previously submitted a request for exclusion from the
Class and who has complied with the procedures set out in this question 18 may also appear at
the Fairness Hearing and be heard, to the extent allowed by the Court, to state any objection
to the Settlement, the Plan of Allocation, or Plaintiffs' Lead Counsel's motion for an award of
attorneys' fees and reimbursement of expenses.  Any such objector may appear in person or
arrange, at his or her own expense, for a lawyer to represent him or her at the Hearing.

| 19. | What is the difference between objecting and excluding? |
|---|---|

Objecting is telling the Court that you do not like something about the proposed Settlement.  You
can object only if you stay in the Class and follow the objection procedures described above.

Excluding yourself is telling the Court that you do not want to be part of the Class. If you
exclude yourself, you have no basis to object because the case no longer affects you.

## THE SETTLEMENT FAIRNESS HEARING

The Court will hold a hearing, called a Fairness Hearing, to consider whether to approve the
proposed Settlement. At or after the Fairness Hearing, the Court will also decide whether to
approve the Plan of Allocation of the Net Settlement Fund and Plaintiffs' Lead Counsel's
application for attorneys' fees and expenses.

| 20. | When and where will the Court decide whether to approve the proposed Settlement? |
|---|---|

The Court will hold the Fairness Hearing on _____, 2010, at ___:___ __.m., in
Courtroom 12 at the United States District Court for the Central District of California, United
States Courthouse, 312 North Spring Street, Los Angeles, California 90012.

At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate
and should be approved, and will also consider the proposed Plan of Allocation and the
application of Plaintiffs' Lead Counsel for attorneys' fees and reimbursement of expenses. The
Court will take into consideration any written objections filed in accordance with the instructions
at question 18. The Court may also decide how much to pay to Plaintiffs' Counsel for their fees
and expenses. At or after the hearing, the Court will decide whether to approve the Settlement.
We do not know how long these decisions will take.

Also at the hearing the Court will decide whether to approve the dismissal with prejudice of all
claims against Defendants Garcia and Gissinger, and claims under the Securities Act against
Defendant Sambol. Prior to entering the Settlement Agreement, Plaintiffs agreed to voluntarily
dismiss each of these claims.

| 21. | Do I have to come to the hearing? |
|---|---|

No. Plaintiffs' Lead Counsel will answer any questions the Court may have. But, you are
welcome to attend at your own expense. If you send an objection, you do not have to come to
Court to discuss it. As long as you filed your written objection on time, the Court will consider
it. You may also pay your own lawyer to attend, but it is not required. If you do hire your own
lawyer, he or she must file and serve a Notice of Appearance in the manner described in the
answer to question 22 below.

Please be aware that the Court may change the date or time of the Fairness Hearing without
further notice to Class Members. If you or your attorney plan to come to the hearing, you should
check with Plaintiffs' Lead Counsel before coming to be sure that the date or time has not
changed.

Class Members do not need to appear at the hearing or take any other action to indicate their
approval of the matters being considered at the hearing.

| 22. | May I speak at the hearing? |
|-----|-----|

You may speak at the Fairness Hearing if you are a Class Member and you filed an objection to the Settlement, the Plan of Allocation, and/or Plaintiffs' Lead Counsel's application for an award of attorneys' fees and expenses in the manner and the time period described in the answer to question 18 above. If you plan to have an attorney speak on your behalf at the Fairness Hearing, your attorney must, on or before _____, 2010, file a Notice of Appearance in this Action with the Clerk of the Court and deliver a copy to Plaintiffs' Lead Counsel, Counsel for the Countrywide Defendants, and Counsel for Defendant KPMG at the addresses listed in the answer to question 18 above.

If you or your attorney plan to attend the Fairness Hearing **and** present evidence at the hearing, your written objections (prepared and submitted in accordance with the answer to question 18 above) must identify any witness you or your attorney may seek to call to testify, and must identify any documents or other exhibits you or your attorney may seek to introduce into evidence.

## IF YOU DO NOTHING

| 23. | What happens if I do nothing at all? |
|-----|-----|

If you do nothing, you will get no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against the Defendants and the other Released Parties concerning the Settled Claims, ever again. To share in the Net Settlement Fund, you must submit a Proof of Claim form (see question 10). To start, continue or be a part of any other lawsuit against the Defendants and the other Released Parties concerning the Settled Claims in this case, you must exclude yourself from the Class (see question 13).

## GETTING MORE INFORMATION

| 24. | Are there more details about the proposed Settlement? |
|-----|-----|

This Notice summarizes the proposed Settlement. More details are in an Amended Stipulation and Agreement of Settlement dated as of June 29, 2010 (the "Settlement Agreement"). You can get a copy of the Settlement Agreement by writing to Joel H. Bernstein, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, toll-free telephone 800-321-0476.

You also can call the Claims Administrator toll-free at 877-465-4142; send an e-mail to info@CountrywideSecuritiesClassAction.com; write to Countrywide Financial Corporation Securities Litigation, c/o Rust Consulting, Inc., P.O. Box 2284, Faribault, MN 55021-2419; or visit the website at www.CountrywideSecuritiesClassAction.com, where you will find answers to common questions about the Settlement, a Proof of Claim form, and other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

24

| 25. | How do I get more information? |
|-----|-------------------------------|

For even more detailed information concerning the matters involved in this action, reference is made to the pleadings, to the Settlement Agreement, to the Orders entered by the Court and the other papers filed in the action, most of which may be inspected at the Office of the Clerk of the United States District Court for the Central District of California, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012, on weekdays (other than court holidays) between 10:00 a.m. and 4:00 p.m. Subscribers to PACER, a fee-based service, can also view the papers filed publicly in the action through the Court's on-line Case Management/Electronic Case Files System at https://ecf.cacd.uscourts.gov.

## PLAN OF ALLOCATION OF
## THE NET SETTLEMENT FUND

### A.    Preliminary Matters

As discussed in this Notice, Lead Plaintiffs have recovered $624 million in cash for the benefit of the Class (the "Settlement Amount"). The Settlement Amount and the interest earned thereon is the "Gross Settlement Fund." The Gross Settlement Fund, after deduction of Court-approved attorneys' fees and expenses, notice and administration expenses, and taxes and tax expenses, is the "Net Settlement Fund." The Net Settlement Fund will be distributed to Class Members who are entitled to share in the distribution, who submit timely and valid Proofs of Claim ("Authorized Claimants"), and whose payment from the Net Settlement Fund would equal or exceed ten dollars ($10.00).

The purpose of this Plan of Allocation of the Net Settlement Fund ("Plan of Allocation" or "Plan") is to establish a reasonable and equitable method of distributing the Net Settlement Fund among Authorized Claimants. For purposes of determining the amount an Authorized Claimant may recover under this Plan, Plaintiffs' Lead Counsel has consulted with their damages consultants and others. This Plan is intended to be generally consistent with an assessment of, among other things, the damages that Plaintiffs' Lead Counsel and Lead Plaintiffs believe could have been recovered had they prevailed at trial. The Plan is not intended to and does not exactly replicate such assessment of damages, however. Certain Class Members who may not have had recoverable damages at trial may be eligible to receive a distribution under this Plan.

Because the Net Settlement Fund is less than the total losses alleged to be suffered by Class Members, the formulas described below for calculating Recognized Losses and Recognized Claims are not intended to estimate the amount that will actually be paid to Authorized Claimants. Rather, these formulas provide the basis on which the Net Settlement Fund will be distributed among Authorized Claimants.[7]

---

[7] Defendants do not concede any of the factual assertions contained in the Plan of Allocation.

**B.    Eligible Securities**

The Countrywide securities ("Eligible Securities") for which an Authorized Claimant may be entitled to receive a distribution from the Net Settlement Fund consist of the following eight "Types of Eligible Securities":

- Common stock (CUSIP No. 222372104)
- Exchange-traded call and put options (listed in Exhibit A)[8]
- Countrywide Capital V 7% Capital Securities (trust preferred security) (CUSIP No. 222388209)
- Series A Medium-Term Notes (listed in Exhibit B)[9]
- Series B Medium-Term Notes (listed in Exhibit B)[10]
- Series L Medium-Term Notes (CUSIP Nos. 22237LNR9 and 22237LPA4 only)
- Series M Medium-Term Notes (CUSIP No. 22237LPM8 only)
- 6.25% Subordinated Notes Due May 15, 2016 (CUSIP No. 222372AJ3)

**C.    Principles and Additional Definitions**

This Plan is based on the following principles and additional definitions (listed alphabetically), among others:

1.    An "Authorized Claimant" is a Class Member who is entitled under this Plan to share in the distribution of the Net Settlement Fund and who submits a timely and valid Proof of Claim.

---

[8] Exhibit A excludes those options that expired before July 24, 2007 because disclosure of the alleged Countrywide fraud did not affect prices of Countrywide securities until that date. Exhibit A also excludes the options which, according to available pricing data, were first listed after August 16, 2007. Class Members who purchased call options (or sold put options) which are excluded from Exhibit A do not have a claim compensable from the Net Settlement Fund with respect to those particular securities.

[9] Exhibit B excludes those Series A Medium-Term Notes that matured before July 24, 2007, namely the Series A Medium-Term Notes with CUSIP numbers 22238HAA8 (due 03/21/06), 22238HAB6 (due 04/11/07), 22238HAJ9 (due 06/20/06), 22238HAL4 (due 07/31/06), 22238HAP5 (due 09/13/06), 22238HAQ3 (due 11/03/06), and 22238HAT7 (due 12/05/06). Because disclosure of the alleged Countrywide fraud did not affect prices of Countrywide securities until July 24, 2007, investors who purchased Countrywide debt securities during the Class Period that matured before July 24, 2007 are not entitled to collect damages. Class Members who purchased these particular Series A Medium-Term Notes do not have a claim compensable from the Net Settlement Fund with respect to these particular securities.

[10] Exhibit B excludes those Series B Medium-Term Notes that matured before July 24, 2007, namely the Series B Medium-Term Notes with CUSIP numbers 22238HBL3 (due 05/15/07), 22238HBN9 (due 05/15/07), 22238HBQ2 (due 05/15/07), 22238HBS8 (due 05/15/07), 22238HBU3 (due 06/15/07), 22238HBW9 (due 06/15/07), 22238HBY5 (due 06/15/07), 22238HCB4 (due 06/27/07), 22238HCA6 (due 06/15/07), 22238HCC2 (due 07/16/07), 22238HCE8 (due 07/16/07), 22238HCG3 (due 07/16/07), and 22238HCJ7 (due 07/16/07). For the same reasons discussed in the preceding footnote with respect to Series A Medium-Term Notes, Class Members who purchased these particular Series B Medium-Term Notes do not have a claim compensable from the Net Settlement Fund with respect to these particular securities.

2.     "Deflation" means the amount by which the price of a put option was undervalued on each day in the Class Period because of the alleged misrepresentations.

3.     The "Distribution Amount" is the actual amount to be distributed to an Authorized Claimant from the Net Settlement Fund.

4.     The "Holding Price" is the value of the security after full disclosure of the alleged misrepresentations that is used to assess losses for Eligible Securities held after the full disclosure, and is calculated by the methodology described below.

5.     "Inflation" is the amount by which the price of each Eligible Security was overvalued on each day in the Class Period because of the alleged misrepresentations.

6.     A "purchase" is the acquisition of an Eligible Security by any means other than a purchase transaction conducted for the purpose of covering a "short sale" transaction.

7.     "Purchase Price Per Unit" is the amount paid per unit by an Authorized Claimant to purchase an Eligible Security.

8.     "Recognized Claim" is the amount of a claim under this Plan and is the number used to calculate an Authorized Claimant's Distribution Amount.

9.     "Recognized Loss" is the amount of loss, as calculated under this Plan based on the amount of inflation in the Eligible Security's prices.

10.     A "sale" is the disposition of an Eligible Security by any means other than a "short sale" transaction.

11.     "Sales Price Per Unit" is the amount received per unit by an Authorized Claimant upon the sale of an Eligible Security.

12.     "Total Purchase Amount" is the Purchase Price Per Unit multiplied by the number of units purchased by an Authorized Claimant during the Class Period.

13.     "Total Sales Proceeds" is (a) the Sales Price Per Unit multiplied by the number of units sold by an Authorized Claimant during the Class Period, or (b) the Holding Price per Unit multiplied by the number of units purchased during the Class Period held as of the close of trading on March 7, 2008.

14.     "Trading Gain" means the amount by which the Total Sales Proceeds exceeds the Total Purchase Amount for the Eligible Security.

15.     "Trading Loss" means the amount by which the Total Purchase Amount exceeds the Total Sales Proceeds for the Eligible Security.

16.     A "unit" is the measure by which the security is denominated (i.e., share, options).

17.     Authorized Claimants must have purchased or otherwise acquired an Eligible Security between March 12, 2004 and March 7, 2008, inclusive (the "Class Period"). Further, in order for the Authorized Claimant to share in the distribution of the Net Settlement Fund, the market price (or value, if market prices are not available) of the Eligible Security must have declined due to disclosure of the alleged Countrywide fraud. Because disclosure of the alleged Countrywide fraud did not affect prices of Countrywide securities until July 24, 2007, in order for a Claimant to share in the distribution, the Eligible Security must have been (a) purchased during the Class Period prior to July 24, 2007 and held until at least July 24, 2007, or (b) purchased on or after July 24, 2007 but before March 8, 2008; and, in either case, the Claimant must have suffered an overall net Trading Loss as described below.

18.     For purposes of computing both Trading Losses (Gains) and Recognized Losses (Gains) for a Claimant's multiple purchases or sales of a given Eligible Security, purchases will be matched to sales using "first-in/first out" (FIFO) inventory method, which matches sales to purchases based on the dates of those transactions. Specifically, when any Proof of Claim includes a Class Period sale of an Eligible Security acquired during the Class Period, the earliest sale during the Class Period of a specific Eligible Security will be matched first against the Authorized Claimant's opening position on the first day of the Class Period, if any, for that specific Eligible Security, and then matched chronologically thereafter against each purchase or acquisition of that specific Eligible Security during the Class Period. Sales matched to units from a Claimant's opening position are excluded from the calculation of Trading Loss or Recognized Loss. Note: Short sales and purchases to cover short sales (whether they occurred before, during, or after the Class Period) are not included when calculating Trading Losses (Gains) or Recognized Losses (Gains).

19.     *Effect of stock splits:* The stock splits that occurred in Countrywide common stock in April and August 2004 will be considered under this Plan as follows. The number of common shares purchased or sold will be adjusted to reflect the effect of the 3-for-2 stock split that became effective on April 13, 2004 and the 2-for-1 stock split that became effective on August 31, 2004. Each share of Countrywide common stock purchased or sold before April 13, 2004 will be considered to be three (3) shares for purposes of computing losses under the Plan. Each share of Countrywide common stock purchased or sold between April 13, 2004 and August 30, 2004 will be considered to be two (2) shares for purposes of computing losses under the Plan.

20.     *Effect of shares acquired from the exercise of options*: Countrywide common stock acquired during the Class Period through the exercise of an exchange-traded call option shall be treated as a purchase of Countrywide common stock on the date of exercise. The purchase price paid for such stock shall be the closing price of Countrywide common stock on the date of exercise.

21.     *Limit on settlement proceeds allocable to purchasers of call options and sellers of put options:* Because of the derivative nature of option securities, which are not issued by Countrywide, among other things, the aggregate amount of the Net Settlement Fund payable to Authorized Claimants in connection with transactions in Countrywide call and put options will not exceed five percent (5%) of the Net Settlement Fund.

## D.    Trading Loss

The Trading Loss (or Gain) for each Eligible Security (other than put options) is computed as the Total Purchase Amount minus the Total Sales Proceeds. A Trading Loss exists if the Total Purchase Amount exceeds the Total Sales Proceeds. For put options, a Trading Loss exists if the Total Sales Proceeds received from the sale of the option is less than the Total Purchase Amount when the option was repurchased or exercised (or zero if not exercised).

An Eligible Security's Holding Price is (1) the sale price for Eligible Securities sold after March 7, 2008 and before July 1, 2008, the date of Countrywide's merger with Bank of America Corporation; or (2) for Eligible Securities held as of the close of trading on June 30, 2008, the price of the Eligible Security on June 30, 2008, as shown in Exhibit C.

For all Eligible Securities purchased by a Claimant during the Class Period, the Trading Loss (or Gain) for all of the Claimant's Eligible Securities will be totaled. If a Claimant has an overall net Trading Gain or has a net Trading Loss equal to zero (Total Sales Proceeds exceed or are equal to Total Purchase Amount) on **all** of the Claimant's purchases and sales of **all** Types of Eligible Securities during the Class Period, the Claimant "made money" or "broke even" overall and accordingly will not be eligible to receive a distribution from the Net Settlement Fund. In computing such net Trading Gains or net Trading Losses, the Claims Administrator (i) will offset Trading Gains in any one or more of the Eligible Securities against Trading Losses in any other of the Eligible Securities, and (ii) will treat any Eligible Security held at the end of the Class Period as if it were sold for the Holding Price.

If there is not an overall net Trading Loss, the Claimant will not be eligible to receive a distribution from the Net Settlement Fund. If there is an overall Trading Loss, the Claims Administrator will then compute the Recognized Loss (and Recognized Claim), if any, on each Type of Eligible Security as indicated herein.

If a Class Member acquired an Eligible Security during the Class Period by means of a gift, inheritance or operation of law, the Trading Loss (Gain) for that acquisition will be computed by using the price of such Eligible Security on the original date of purchase—if the original purchase was during the Class Period—and not the date of transfer, unless the transfer resulted in a taxable event or other change in the cost basis of the Eligible Security. To the extent that any Eligible Security was originally purchased prior to or after the end of the Class Period, and there was no taxable event or change in cost basis at the time of transfer during the Class Period, the Class Member's Trading Loss (Gain) for that acquisition shall be zero.

## E.    Recognized Loss

If a Claimant has a net Trading Loss on all of the Claimant's Eligible Securities, the Claims Administrator will calculate a Claimant's Recognized Loss (Gain). For each Eligible Security purchased during the Class Period, the calculation of Recognized Loss (Gain) is the dollar amount of inflation per unit at date of acquisition multiplied by the number of units acquired, minus either (1) the dollar amount of inflation per unit at the date of sale multiplied by the number of units sold if sold on or before March 7, 2008, or (2) zero for those units purchased

during the Class Period and held past March 7, 2008.[11]  Inflation (deflation) per unit is based, in part, on the price changes (net of market/industry movements) in the securities caused by disclosures that allegedly corrected the previous alleged misrepresentations.

Recognized Loss will be reduced dollar-for-dollar to the extent that (i) publicly traded Countrywide securities were purchased or acquired at a price below the lowest trading or published price for such publicly traded security on the date during the Class Period on which the purchase or acquisition was made (e.g., in a private sale or at a discounted price), or (ii) publicly traded Countrywide securities were sold at a price above the highest trading or published price for such publicly traded security on the date during the Class Period on which the sale was made.

1.      **Inflation for Transactions in Countrywide Common Stock**

For Countrywide common stock, a unit is a share of common stock.  The dollar amount of inflation in the price of a share of Countrywide common stock for purposes of calculating Recognized Loss appears in the table below.

*Inflation in Prices of Countrywide Common Stock*

| Period Start | Period End | Inflation at Time of Purchase or Sale |
|---|---|---|
| 03/12/2004 | 01/30/2006 | $0.06 |
| 01/31/2006 | 06/30/2006 | $0.60 |
| 07/01/2006 | 09/30/2006 | $4.56 |
| 10/01/2006 | 12/31/2006 | $7.14 |
| 01/01/2007 | 07/23/2007 | $8.60 |
| 07/24/2007 | 08/13/2007 | $5.84 |
| 08/14/2007 | 08/14/2007 | $4.08 |
| 08/15/2007 | 08/15/2007 | $1.44 |
| 08/16/2007 | 03/07/2008 | $0.03 |

2.      **Inflation (Deflation) for Transactions in Options on Countrywide Common Stock**

Exchange-traded options are typically traded in units called contracts.  Each contract entitles the option buyer/owner to 100 shares of the underlying stock upon exercise or expiration. For options, a unit is an option with one share of Countrywide common stock as the underlying security.  Price inflation per option is the dollar amount of inflation in one option (with one share of Countrywide common stock as the underlying security).

Inflation in the prices of call and put options on Countrywide common stock is calculated

---

[11]  For sales (writing) of put options, the calculation of Recognized Loss is based, in part, on the amount of deflation in the prices of the put options when the put option was written and the amount of deflation when the option was repurchased or exercised, or if not exercised, the amount of deflation at expiration.

based on the Black-Scholes option pricing model and the estimated inflation in Countrywide common stock which appears in the table above.

Exhibit A is a table titled "Per-Option Inflation for Potentially Damaged Exchange-Traded Options on Countrywide Common Stock." This table displays the daily inflation in Countrywide exchange-traded call options and deflation for exchange-traded put options during the Class Period that have expiration dates on or after July 24, 2007 and that were first listed before August 16, 2007.

In addition to the general calculation of Recognized Losses (Gains) described previously, the Recognized Losses for options contain additional provisions specific to the nature of financial options:

*Purchase of Exchange-Traded Call Options*

- For exchange-traded call options purchased or acquired during the Class Period that were exercised, the Recognized Loss per option is equal to the difference between the price inflation per option on the date of purchase/acquisition and the price inflation per option on the date of exercise.
- For call options purchased or acquired during the Class Period that expired unexercised while still owned, the Recognized Loss per option is equal to the price inflation per option on the date of purchase/acquisition.

*Sales of Exchange-Traded Put Options:*

- For put options written during the Class Period that were subsequently re-purchased during the Class Period, the Recognized Loss per option is the difference between the price deflation per option on the date of sale (writing) and the price deflation per option on the date the put option was re-purchased.
- For put options written during the Class Period that were exercised during the Class Period, the Recognized Loss per option is equal to the difference between the price deflation per option on the date of sale (writing) and the price deflation per option on the date of exercise.
- For put options written during the Class Period that expired unexercised during the Class Period, the Recognized Loss per option is equal to the difference between the price deflation per option on the date of sale (writing) and the price deflation per option on the date of expiration.
- The Recognized Loss on a sale of any put option that was previously purchased shall be $0.

**3.  Inflation for Transactions in Series L Medium-Term Notes With CUSIP Nos. 22237LNR9 and 22237LPA4 and Series M Medium-Term Notes with CUSIP No. 22237LPM8**

For the following three Countrywide Medium-Term Notes, CUSIP Nos. 22237LNR9, 22237LPA4 and 22237LPM8, each $1,000 of face-value is a unit. These three securities are the

subject of claims under Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b) claims), and are not the subject of Section 11 claims.

The dollar amount of inflation in the price of the notes for purposes of calculating Recognized Loss appears in the table below.

*Inflation in Prices of Series L Medium-Term Notes with CUSIP 22237LNR9 (per $1,000 face value)*

| Period Start | Period End | Inflation at Time of Purchase or Sale |
|---|---|---|
| 03/12/2004 | 01/30/2006 | $0.37 |
| 01/31/2006 | 06/30/2006 | $3.70 |
| 07/01/2006 | 09/30/2006 | $28.02 |
| 10/01/2006 | 12/31/2006 | $43.88 |
| 01/01/2007 | 07/23/2007 | $52.87 |
| 07/24/2007 | 08/13/2007 | $54.26 |
| 08/14/2007 | 08/14/2007 | $45.95 |
| 08/15/2007 | 08/15/2007 | $22.57 |
| 08/16/2007 | 03/07/2008 | $0.19 |

*Inflation in Prices of Series L Medium-Term Notes with CUSIP 22237LPA4 (per $1,000 face value)*

| Period Start | Period End | Inflation at Time of Purchase or Sale |
|---|---|---|
| 03/17/2004 | 01/30/2006 | $0.31 |
| 01/31/2006 | 06/30/2006 | $3.10 |
| 07/01/2006 | 09/30/2006 | $23.50 |
| 10/01/2006 | 12/31/2006 | $36.80 |
| 01/01/2007 | 07/23/2007 | $44.34 |
| 07/24/2007 | 08/13/2007 | $41.06 |
| 08/14/2007 | 08/14/2007 | $42.06 |
| 08/15/2007 | 03/07/2008 | $0.16 |

*Inflation in Prices of Series M Medium-Term Notes with CUSIP 22237LPM8 (per $1,000 face value)*

| Period Start | Period End | Inflation at Time of Purchase or Sale |
|---|---|---|
| 09/13/2004 | 01/30/2006 | $0.48 |
| 01/31/2006 | 06/30/2006 | $4.84 |
| 07/01/2006 | 09/30/2006 | $36.67 |
| 10/01/2006 | 12/31/2006 | $57.43 |
| 01/01/2007 | 07/23/2007 | $69.19 |

| | | |
|---|---|---|
| 07/24/2007 | 08/13/2007 | $65.74 |
| 08/14/2007 | 08/14/2007 | $71.81 |
| 08/15/2007 | 03/07/2008 | $0.24 |

**4.    Inflation for Transactions in Countrywide Capital V 7% Capital Securities, 6.25% Subordinated Notes Due May 15, 2016, and Series B Medium-Term Notes with CUSIP No. 22238HGQ7**

For Countrywide Capital V 7% Capital Securities (CUSIP No. 222388209), a unit is a share of the stock for the 7% Capital Security.  For the 6.25% Subordinated Notes Due May 15, 2016 (CUSIP No. 222372AJ3) and Series B Medium-Term Notes with CUSIP No. 22238HGQ7, each $1,000 of face-value is a unit.  These three types of securities are the subject of both Section 10(b) claims and Section 11 claims.

The dollar amount of inflation for purposes of calculating Recognized Loss appears in the tables below.

*Inflation in Prices of Countrywide Capital V 7% Capital Securities*

| *Period Start* | *Period End* | *Inflation at Time of Purchase or Sale* |
|---|---|---|
| 11/01/2006 | 12/31/2006 | $0.92 |
| 01/01/2007 | 07/23/2007 | $1.11 |
| 07/24/2007 | 08/13/2007 | $0.35 |
| 08/14/2007 | 03/07/2008 | $0.02 |

*Inflation in Prices of 6.25% Subordinated Notes Due May 15, 2016 (per $1,000 face value)*

| *Period Start* | *Period End* | *Inflation at Time of Purchase or Sale* |
|---|---|---|
| 05/11/2006 | 06/30/2006 | $6.53 |
| 07/01/2006 | 09/30/2006 | $49.43 |
| 10/01/2006 | 12/31/2006 | $77.41 |
| 01/01/2007 | 07/23/2007 | $93.27 |
| 07/24/2007 | 08/13/2007 | $85.63 |
| 08/14/2007 | 08/14/2007 | $69.57 |
| 08/15/2007 | 08/15/2007 | $42.58 |
| 08/16/2007 | 03/07/2008 | $0.33 |

*Inflation in Prices of Series B Medium-Term Note With CUSIP No. 22238HGQ7 (per $1,000 face value)*

| *Period Start* | *Period End* | *Inflation at Time of Purchase or Sale* |
|---|---|---|

33

| 06/04/2007 | 07/23/2007 | $48.90 |
|------------|------------|--------|
| 07/24/2007 | 08/13/2007 | $39.85 |
| 08/14/2007 | 08/14/2007 | $33.57 |
| 08/15/2007 | 08/15/2007 | $10.75 |
| 08/16/2007 | 03/07/2008 | $0.54  |

5.    **Inflation for Transactions in Series A Medium-Term Notes and Series B Medium-Term Notes (other than CUSIP No. 22238HGQ7)**

For the Countrywide Series A Medium-Term Notes, and Series B Medium-Term Notes other than CUSIP No. 22238HGQ7, each $1,000 of face-value is a unit. These types of securities are the subject of Section 11 claims only.

The dollar amount of inflation for purposes of calculating Recognized Loss appears in the table below.

*Inflation in Prices of Series A Medium-Term Notes and Series B Medium-Term Notes other than CUSIP No. 22238HGQ7 (per $1,000 face value)[12]*

| Period Start | Period End | Inflation at Time of Purchase or Sale |
|--------------|------------|----------------------------------------|
| 03/12/2004 | 01/30/2006 | $0.37  |
| 01/31/2006 | 06/30/2006 | $3.70  |
| 07/01/2006 | 09/30/2006 | $28.02 |
| 10/01/2006 | 12/31/2006 | $43.88 |
| 01/01/2007 | 07/23/2007 | $52.87 |
| 07/24/2007 | 08/13/2007 | $54.26 |
| 08/14/2007 | 08/14/2007 | $45.95 |
| 08/15/2007 | 08/15/2007 | $22.57 |
| 08/16/2007 | 03/07/2008 | $0.19  |

An Authorized Claimant's Recognized Gains will be netted against that Claimant's Recognized Losses for transactions in each Eligible Security to determine the Claimant's net Recognized Loss for each Eligible Security. For all Eligible Securities purchased by a Claimant during the Class Period, the Recognized Loss (or Gain) for all of the Claimant's Eligible Securities will be totaled. Recognized Gains and Losses, in other words, will be netted or aggregated across all Types of Eligible Securities. If a Claimant has an overall net Recognized Gain on **all** of the Claimant's purchases and sales of **all** Eligible Securities during the Class Period, the Claimant will not be eligible to receive a distribution from the Net Settlement Fund.

---

[12] There are approximately 150 separate Series A Medium-Term Notes and Series B Medium-Term Notes (other than CUSIP No. 22238HGQ7) that are Eligible Securities. These notes were offered and traded at varying times during the Class Period. The estimated inflation values for the Series L Medium-Term Note (CUSIP No. 22237LNR9), which traded throughout the Class Period, are used for the determination of Recognized Loss for these Series A and B Medium-Term Notes.

34

If a Claimant has an overall net Recognized Loss on **all** of the Claimant's purchases and sales of **all** Eligible Securities during the Class Period, the Claims Administrator will then calculate the Claimant's Recognized Claim.

**F.      Recognized Claim**

Each Authorized Claimant's aggregate Recognized Claim will be calculated as the sum of his, her or its Recognized Claims for each Type of Eligible Security as computed based on the preceding provisions.

If a Claimant has an overall net Trading Loss and a net Recognized Loss on **all** of the Claimant's transactions in **all** Eligible Securities, then for each Eligible Security, a Claimant's Recognized Claim is (a) the applicable factor multiplied by (b) the **lesser** of (x) the Recognized Loss or (y) the Trading Loss.

For those Types of Eligible Securities that are the subject of claims for violations of Section 11 of the Securities Act of 1933 (*i.e.,* 7% Capital Securities, 6.25% Subordinated Notes Due May 15, 2016, Series A Medium-Term Notes, and Series B Medium-Term Notes), the applicable factor is 1.25.

For all other types of Eligible Securities (*i.e.,* common stock, options, Series L Medium-Term Notes (22237LNR9 and 22237LPA4), and Series M Medium-Term Notes (22237LPM8)), which are the subject of claims for violations of Section 10(b) of the Securities Exchange Act of 1934 only, the applicable factor is 1.00.

The applicable factor is 1.25 for Eligible Securities with Section 11 claims because Section 11 claims, as opposed to Section 10(b) claims, do not require evidence of fraudulent or reckless intent, and accordingly would likely be easier to prove at trial.

**G.      Distributions from the Net Settlement Fund**

The Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund.  In general, each Authorized Claimant will receive an amount (the "Distribution Amount") determined by multiplying the Net Settlement Fund by a fraction, the numerator of which is the Authorized Claimant's Recognized Claim and the denominator of which is the aggregate Recognized Claims of all Authorized Claimants, provided that no Authorized Claimant will receive more than its Recognized Claim.

Payments made pursuant to this Plan of Allocation above shall be conclusive against all Authorized Claimants.  No Person shall have any claim against the Lead Plaintiffs, Plaintiffs' Counsel or the Claims Administrator based on distributions, determinations or claim rejections made substantially in accordance with this Plan or further orders of the Court, except in the case of fraud or willful misconduct.  No Person shall have any claim under any circumstances against the Released Parties based on any distributions, determinations or claim rejections or the design, terms of implementation of this Plan.  Authorized Claimants who fail to complete and file a valid and timely Proof of Claim form shall be barred from participating in distributions from the Net

Settlement Fund, unless the Court otherwise orders.  Class Members who do not either submit a request for exclusion or submit a valid and timely Proof of Claim will nevertheless be bound by the Settlement and the Order and Final Judgment of the Court dismissing this Action.

The Court has reserved jurisdiction to modify, amend or alter the Plan of Allocation without further notice to anyone, and to allow, disallow or adjust any Authorized Claimant's claim to ensure a fair and equitable distribution of settlement funds.

Distributions will be made to Authorized Claimants whose claims entitle them to a payment of no less than $10.00 after all claims have been processed and after the Court has finally approved the Settlement.  If there is any balance remaining in the Net Settlement Fund (whether by reason of unclaimed funds, tax refunds, uncashed checks, or otherwise), at a date one hundred eighty (180) days from the later of (a) the date on which the Court enters a order directing the Net Settlement Fund to be distributed to Authorized Claimants, or (b) the date the Settlement is final and becomes fully effective, then Plaintiffs' Lead Counsel shall, upon approval of the Court, distribute such balance among the Authorized Claimants as many times as is necessary, in a manner consistent with this Plan of Allocation, until each Authorized Claimant has received its Recognized Claim (but no greater than its Recognized Claim) as defined in this Plan.  If Plaintiffs' Lead Counsel determines that it is not cost-effective to conduct such further distribution, or following such further distribution any balance still remains in the Net Settlement Fund, Plaintiffs' Lead Counsel shall, with the consent of Lead Plaintiffs and upon approval of the Court, and without further notice to the Class, cause the remaining balance to be returned to Countrywide and KPMG, in the same proportion as those entities contributed (or caused to be contributed) to the Settlement Amount.

*Please note that the term "Recognized Claim" is used solely for calculating the amount of participation by Authorized Claimants in the Net Settlement Fund.  It is not the actual amount an Authorized Claimant can expect to recover.*

### SPECIAL NOTICE TO SECURITIES
### BROKERS AND OTHER NOMINEES

If, between March 12, 2004 and March 7, 2008, inclusive, you purchased or otherwise acquired any of the Countrywide publicly traded securities specified herein for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN TEN (10) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (a) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased such Countrywide security during such time period or (b) request additional copies of this Notice and the Proof of Claim form, which will be provided to you free of charge, and within ten (10) days mail the Notice and Proof of Claim form directly to the beneficial owners of that security.  If you choose to follow alternative procedure (b), the Court has directed that, upon such mailing, you send a statement to the Claims Administrator confirming that the mailing was made as directed.  You are entitled to reimbursement from the Gross Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners.  Those expenses will be paid upon request and submission of

appropriate supporting documentation. All communications concerning the foregoing should be addressed to the Claims Administrator:

Countrywide Financial Corporation Securities Litigation
c/o Rust Consulting, Inc.
P.O. Box 2284
Faribault, MN 55021-2419
Toll-free telephone: 877-465-4142
E-mail: info@CountrywideSecuritiesClassAction.com

**_PLEASE DIRECT YOUR QUESTIONS TO THE CLAIMS ADMINISTRATOR OR TO PLAINTIFFS' LEAD COUNSEL. DO NOT CONTACT THE COURT._**

Dated: Los Angeles, California
_____, 2010

BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# ATTACHMENT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Applies To: All Actions | Lead Case No.<br>CV 07-05295 MRP (MANx) |

## PROOF OF CLAIM

### I.    GENERAL INSTRUCTIONS

1.    To recover as an Authorized Claimant based on your claims in the action entitled *In re Countrywide Financial Corporation Securities Litigation,* Lead Case No. CV 07-05295 MRP (MANx) (C.D. Cal.) (the "Action"), you must complete and, on page 11 hereof, sign this Proof of Claim form. If you fail to submit a properly completed and addressed Proof of Claim form, your claim may be rejected and you may be precluded from any recovery from the Net Settlement Fund created in connection with the Settlement of the Action.

2.    Submission of this Proof of Claim form, however, does not assure that you will share in the Net Settlement Fund.

3.    YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM FORM POSTMARKED NO LATER THAN _____, 2010, ADDRESSED AS FOLLOWS:

Countrywide Financial Corporation Securities Litigation
c/o Rust Consulting, Inc.
P.O. Box 2284
Faribault, MN 55021-2419

4.    If you are NOT a Class Member (as defined in the Notice of Pendency and Proposed Settlement of Class Action and Fairness Hearing ("Notice") that accompanies this Proof of Claim), DO NOT submit a Proof of Claim form.

5.    If you are a Class Member and have not requested exclusion, you will be bound by the terms of the Settlement and any judgment entered in the Action, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM FORM.

### II.    DEFINITIONS

Capitalized terms not defined in this Proof of Claim have the same meaning as defined in the Notice that accompanies this form.

### III.    CLAIMANT IDENTIFICATION

1.    If you purchased or otherwise acquired Countrywide securities and held the certificate(s) in your name, you are the beneficial purchaser as well as the record purchaser. If, however, you purchased the securities but the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

2.    Use Part I of this form entitled "Claimant Identification" to identify each purchaser of record ("nominee"), if different from the beneficial purchaser of Countrywide securities which form the basis of this claim. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER OR PURCHASERS, OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER OR PURCHASERS OF THE SECURITIES UPON WHICH THIS CLAIM IS BASED.

**NOTE:**  Separate Proofs of Claim should be submitted for each separate legal entity (for example, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name). Conversely, a single Proof of Claim should be submitted on behalf of one legal entity including all transactions made by that entity, no matter how many separate accounts that entity has (for example, a corporation with multiple brokerage accounts should include all transactions made in Countrywide securities during the Class Period on one Proof of Claim, no matter how many accounts the transactions were made in).

1

3.      All joint purchasers must sign this claim.  Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of Persons represented by them and proof of their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## IV.     CLAIM FORM

1.      Use Part II of this form entitled "Schedule of Transactions in Countrywide Securities" to supply all required details of your transaction(s) in such securities.  If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

2.      On the schedules, provide all of the requested information with respect to all of your purchases or other acquisitions and all of your sales or other dispositions of Countrywide securities which took place at any time from March 12, 2004 through June 30, 2008, inclusive, whether such transactions resulted in a profit or a loss.  Failure to report all such transactions may result in the rejection of your claim.

3.      List each transaction separately and in chronological order, by trade date, beginning with the earliest.  You must accurately provide the month, day and year of each transaction you list.

4.      Broker confirmations or other documentation of your transactions in Countrywide securities must be attached to your claim.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

5.      USE PART II SECTION A **ONLY** FOR COUNTRYWIDE COMMON STOCK.  USE PART II SECTION B **ONLY** FOR COUNTRYWIDE CAPITAL V 7% CAPITAL SECURITIES (PREFERRED TRUST SECURITY).  USE PART II SECTIONS C & D **ONLY** FOR COUNTRYWIDE OPTIONS.  USE PART II SECTION E **FOR ALL COUNTRYWIDE DEBT SECURITIES** (i.e. NOTES) AND IDENTIFY THE SECURITY BY NAME AND IDENTIFYING CUSIP NUMBER SHOWN IN THE PLAN OF ALLOCATION (FOR 6.25% SUBORDINATED NOTES DUE MAY 15, 2016 AND ELIGIBLE SERIES L AND M MEDIUM-TERM NOTES) AND SHOWN ON EXHIBIT B ACCOMPANYING THE NOTICE AND THIS PROOF OF CLAIM (FOR ELIGIBLE SERIES A AND B MEDIUM-TERM NOTES).

6.      A purchase or sale of Countrywide common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date; please provide only "contract" or "trade" dates in your claim.

7.      NOTICE REGARDING ELECTRONIC FILES:  Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  All Claimants MUST submit a manually signed paper Proof of Claim form whether or not they also submit electronic copies.  If you wish to file your claim electronically, you must call the Claims Administrator toll-free at 877-465-4142, send an e-mail to info@CountrywideSecuritiesClassAction.com, or visit the website for this Settlement at www.CountrywideSecuritiesClassAction.com to obtain the required file layout.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the Claimant a report listing all transactions contained in the electronic file.

8.      A Proof of Claim received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by _____, **2010** and if a postmark is indicated on the envelope and it is mailed first class, and addressed in accordance with the above instructions.  In all other cases, a Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

9.      You should be aware that it will take a significant amount of time to process fully all of the Proofs of Claim and to administer the Settlement.  This work will be completed as promptly as time permits, given the need to investigate and tabulate each Proof of Claim.  Please notify the Claims Administrator of any change of address.

---

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.**

**THANK YOU FOR YOUR PATIENCE.**

---

| MUST BE POSTMARKED NO LATER THAN _____, 2010 | **CWFC** | For Official Use Only |
|---|---|---|

*In re Countrywide Financial Corporation Securities Litigation*

### PROOF OF CLAIM AND RELEASE
Use Blue or Black Ink Only

**PART I.** __CLAIMANT IDENTIFICATION__ - Complete either Section A or B and then proceed to C.  Please type or print.

A.  Complete this Section ONLY if the Beneficial Owner is an individual, joint, or IRA account.  Otherwise, proceed to B.

Last Name (Beneficial Owner)

First Name (Beneficial Owner)

Last Name (Joint Beneficial Owner, if applicable)

First Name (Joint Beneficial Owner)

Name of IRA Custodian, if applicable

If this account is an IRA, and if you would like any check that you MAY be eligible to receive made payable to the IRA account, please include "IRA" in the "Last Name" box above (e.g., Jones IRA).

B.  Complete this Section ONLY if the Beneficial Owner is an Entity; i.e., corporation, trust, estate, etc.  Then, proceed to C.

Entity Name

Name of Representative, if applicable (Executor, administrator, trustee, c/o, etc.)

C.  Account/Mailing Information:

Specify one of the following:

☐ Individual(s)  ☐ Corporation  ☐ UGMA Custodian  ☐ IRA  ☐ Partnership  ☐ Estate  ☐ Trust
☐ Other:

Number and Street or P.O. Box

City

State

Zip Code

Foreign Province and Postal Code

Foreign Country

Telephone Number (Day)

Telephone Number (Evening)

E-mail Address

Account Number

Enter Taxpayer Identification Number below for the Beneficial Owner(s).

Social Security No. (for individuals)          or          Taxpayer Identification No.

# *CWFC*

**PART II:** **SCHEDULE OF TRANSACTIONS IN COUNTRYWIDE SECURITIES**

## A. COUNTRYWIDE COMMON STOCK – CUSIP No. 222372104 *ONLY*

*YOU MUST SUBMIT DOCUMENTATION SUPPORTING THE INFORMATION BELOW.*

### COMMON STOCK BEGINNING HOLDINGS

1.  Number of shares of Countrywide common stock *held at the beginning of trading on* **March 12, 2004.**
    (If none, write "zero" or "0"; if other than zero, must be documented)

    Number of Shares

### COMMON STOCK PURCHASES

2.  List (in chronological order) all purchases and/or acquisitions of Countrywide common stock made between **March 12, 2004** and **June 30, 2008, inclusive:**

| Check Box if result of an Option Exercised/ Assigned | Date(s) of Purchase *(List Chronologically)* Month/Day/Year | Number of Shares of Common Stock Purchased | Purchase Price Per Share of Common Stock | Amount Paid *(Including Commissions, Taxes & Fees)* | Purchased on the Open Market | |
|---|---|---|---|---|---|---|
| | | | | | Yes | No |
| ☐ | | | | | ☐ | ☐ |
| ☐ | | | | | ☐ | ☐ |
| ☐ | | | | | ☐ | ☐ |
| ☐ | | | | | ☐ | ☐ |

### COMMON STOCK SALES

3.  List (in chronological order) all sales of Countrywide common stock made between **March 12, 2004** and **June 30, 2008**, inclusive.

| Check Box if result of an Option Exercised/ Assigned | Date(s) of Sale *(List Chronologically)* Month/Day/Year | Number of Shares of Common Stock Sold | Sale Price Per Share of Common Stock | Amount Received *(Excluding Commissions, Taxes & Fees)* | Sold on the Open Market | |
|---|---|---|---|---|---|---|
| | | | | | Yes | No |
| ☐ | | | | | ☐ | ☐ |
| ☐ | | | | | ☐ | ☐ |
| ☐ | | | | | ☐ | ☐ |
| ☐ | | | | | ☐ | ☐ |

### COMMON STOCK ENDING HOLDINGS

4.  Number of shares of Countrywide common stock *held at the close of trading on* **June 30, 2008:**
    (If none, write "zero" or "0"; if other than zero, must be documented)

    Number of Shares

*IF ANY OF THE ABOVE TRANSACTIONS RELATE TO SHORT SALES, PLEASE CHECK THIS BOX* ☐

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, PHOTOCOPY THIS PAGE.

4

**PART II:   SCHEDULE OF TRANSACTIONS IN COUNTRYWIDE SECURITIES**

**B. COUNTRYWIDE CAPITAL V 7% CAPITAL SECURITIES – CUSIP No. 222388209 *ONLY***

*YOU MUST SUBMIT DOCUMENTATION SUPPORTING THE INFORMATION BELOW.*

**CAPITAL SECURITIES PURCHASES**

1.   I (We) made the following purchases of Countrywide Capital V 7% Capital Securities during the period **November 1, 2006** through **June 30, 2008**, inclusive

| Date of Purchase (list chronologically) (Month/Day/Year) | Number of Shares | Purchase Price Per Security | Amount Paid (including commissions, taxes and fees) | Purchased on the Open Market? Yes | No |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**CAPITAL SECURITIES SALES**

2.   I (We) made the following sales of Countrywide Capital V 7% Capital Securities during the period **November 1, 2006** through **June 30, 2008**, inclusive:   (If none, write "zero" or "0"; if other than zero, must be documented.)

| Date of Sale (list chronologically) (Month/Day/Year) | Number of Shares | Sale Price Per Security | Amount Received (excluding commissions, taxes and fees) | Sold on the Open Market? Yes | No |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**CAPITAL SECURITIES UNSOLD HOLDINGS AS OF JUNE 30, 2008**

3.   At the close of trading on **June 30, 2008**, I (we) owned the following Countrywide Capital V 7% Capital Securities: (If none, write "zero" or "0"; if other than zero, must be documented.)

Number of Shares

*IF ANY OF THE ABOVE TRANSACTIONS RELATE TO SHORT SALES, PLEASE CHECK THIS BOX* ☐

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, PHOTOCOPY THIS PAGE.

**PART II:    SCHEDULE OF TRANSACTIONS IN COUNTRYWIDE SECURITIES**

## C. COUNTRYWIDE CALL OPTIONS *ONLY*

*YOU MUST SUBMIT DOCUMENTATION SUPPORTING THE INFORMATION BELOW.*

*1.   THIS PAGE CONTAINS TRANSACTIONS FOR THE FOLLOWING **CALL** OPTION CONTRACT ONLY:*

| Expiration Date | Strike Price |
|---|---|
| /        / | $ |
| (Month  /  Day  /  Year) | |

**IF YOU ARE LISTING MORE THAN ONE TYPE OF CALL OPTION CONTRACT, YOU _MUST_ PHOTOCOPY THIS PAGE AND LIST EACH SEPARATE TYPE OF CALL OPTION CONTRACT ON ITS OWN SEPARATE PAGE.**

**CALL OPTION BEGINNING POSITION:**

2.   Number of call options *listed in #1 above* on Countrywide common stock *held at the beginning of trading on* March 12, 2004.  (If none, write "zero" or "0"; if other than zero, must be documented)

Number of Call Options

**CALL OPTION PURCHASES AND THEIR DISPOSITION**

3.   I (We) made the following purchases of call options *listed in #1 above* on Countrywide common stock *listed in #1 above* during the period March 12, 2004 through June 30, 2008, inclusive (in chronological order) (must be documented):  All transactions must be displayed as pre-split share and strike price.

| Date of Purchase Month/Day/Year | Number of Contracts | Strike Price | Expiration Date Month/Year | Purchase Price Per Contract | Amount Paid (including commissions taxes & fees) | FINAL DISPOSITION Exercised (E), Expired (X), Sold/Closed(C) | DISPOSITION DATE Exercise, Expiration, or Sale Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**CALL OPTION SALES AND THEIR DISPOSITION**

4.   I (We) made the following sales of call options *listed in #1 above* on Countrywide common stock during the period March 12, 2004 through June 30, 2008, inclusive (in chronological order) (must be documented):  All transactions must be displayed as pre-split share and strike price.

| Date of Sale Month/Day/Year | Number of Contracts | Strike Price | Expiration Date Month/Year | Sale Price Per Contract | Amount Received (excluding commissions taxes & fees) | FINAL DISPOSITION Assigned (A), Expired (X), Sold/Closed(C) | DISPOSITION DATE Assigned, Expiration, or Sale Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**CALL OPTION HOLDINGS**

5.   Number of call options *listed in #1 above* of Countrywide common stock *held at the close of trading on* June 30, 2008:  (If none, write "zero" or "0"; if other than zero, must be documented)

Number of Call Options

***IF ANY OF THE ABOVE TRANSACTIONS RELATE TO SHORT SALES, PLEASE CHECK THIS BOX*** ☐

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, PHOTOCOPY THIS PAGE.

**PART II:**     **SCHEDULE OF TRANSACTIONS IN COUNTRYWIDE SECURITIES**

**D. COUNTRYWIDE PUT OPTIONS** *ONLY*

*YOU MUST SUBMIT DOCUMENTATION SUPPORTING THE INFORMATION BELOW.*

*1.* *THIS PAGE CONTAINS TRANSACTIONS FOR THE FOLLOWING* **PUT** *OPTION CONTRACT* *ONLY:*

| Expiration Date | Strike Price |
|---|---|
| /     / | $ |
| (Month / Day / Year) | |

**IF YOU ARE LISTING MORE THAN ONE TYPE OF PUT OPTION CONTRACT, Y***OU* ***MUST*** *PHOTOCOPY THIS PAGE AND LIST EACH SEPARATE TYPE OF PUT OPTION CONTRACT ON ITS OWN SEPARATE PAGE.*

**PUT OPTION BEGINNING POSITION:**

2.  Number of put options *listed in #1 above* on Countrywide common stock *held at the beginning of trading on* **March 12, 2004.**  (If none, write "zero" or "0"; if other than zero, must be documented)

| |
|---|
| Number of Put Options |

**PUT OPTION SALES AND THEIR DISPOSITION**

3.  I (We) made the following sales of put options *listed in #1 above* on Countrywide common stock during the period **March 12, 2004** through **June 30, 2008**, inclusive (in chronological order) (must be documented):  All transactions must be displayed as pre-split share and strike price.

| Date of Sale Month/Day/Year | Number of Contracts | Strike Price | Expiration Date Month/Year | Sale Price Per Contract | Amount Received (excluding commissions taxes & fees) | FINAL DISPOSITION Assigned (A), Expired (X), Re-Purchased/ Closed(C) | DISPOSITION DATE Assigned, Expiration, or Re-Purchased Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**PUT OPTION RE-PURCHASES AND THEIR DISPOSITION**

4.  I (We) made the following re-purchases of put options *listed in #1 above* on Countrywide common stock *listed in #1 above* during the period **March 12, 2004** through **June 30, 2008**, inclusive (in chronological order) (must be documented):   All transactions must be displayed as pre-split share and strike price.

| Date of Re-Purchase Month/Day/Year | Number of Contracts | Strike Price | Expiration Date Month/Year | Purchase Price Per Contract | Amount Paid (including commissions taxes & fees) | FINAL DISPOSITION Exercised (E), Expired (X), Sold/Closed(C) | DISPOSITION DATE Exercise, Expiration, or Sale Date (Month/Day/Year) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**PUT OPTION HOLDINGS**

5.  Number of put options *listed in #1 above* of Countrywide common stock *held at the close of trading on* **June 30, 2008:**  (If none, write "zero" or "0"; if other than zero, must be documented)

| |
|---|
| Number of Put Options |

*IF ANY OF THE ABOVE TRANSACTIONS RELATE TO SHORT SALES, PLEASE CHECK THIS BOX* ☐

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, PHOTOCOPY THIS PAGE.

**PART II:   SCHEDULE OF TRANSACTIONS IN COUNTRYWIDE SECURITIES**

### E. COUNTRYWIDE DEBT SECURITIES (i.e. NOTES) *ONLY*

*YOU MUST SUBMIT DOCUMENTATION SUPPORTING THE INFORMATION BELOW.*

For Series A and B Medium-Term Notes, please refer to the Notice, Exhibit B, pages ____, to obtain the Security Code, Security Name and CUSIP for the debt security below.

1. *THIS PAGE CONTAINS TRANSACTIONS FOR THE FOLLOWING DEBT SECURITY ONLY:*

| Security Code | Security Name | CUSIP |
|---|---|---|
|  |  |  |

**IF YOU ARE LISTING MORE THAN ONE SECURITY CODE, SECURITY NAME OR CUSIP, Y*OU MUST PHOTOCOPY THIS PAGE AND LIST EACH SEPARATE DEBT SECURITY ON ITS OWN SEPARATE PAGE.***

**DEBT SECURITY BEGINNING POSITION**

2. Number of Countrywide debt securities *listed in #1 above held at the beginning of trading on* **March 12, 2004.**  (If none, write "zero" or "0"; if other than zero, must be documented)

Principal Amount
(i.e., Face Value or Par Value)

**DEBT SECURITY PURCHASES**

3. I (We) made the following purchases of the Countrywide Note *listed in #1 above* during the period **March 12, 2004** through **June 30, 2008,** inclusive:

| Date of Purchase (list chronologically) (Month/Day/Year) | Principal Amount (i.e., Face Value or Par Value) | Purchase Price Per Note | Amount Paid (including commissions, taxes and fees) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**DEBT SECURITY SALES**

4. I (We) made the following sales of the Countrywide Note *listed in #1 above* during the period **March 12, 2004** through **June 30, 2008,** inclusive:   (If none, write "zero" or "0"; if other than zero, must be documented.)

| Date of Sale (list chronologically) (Month/Day/Year) | Principal Amount (i.e., Face Value or Par Value) | Sale Price Per Note | Amount Received (excluding commissions, taxes and fees) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**DEBT SECURITIES UNSOLD HOLDINGS AS OF JUNE 30, 2008**

5. Number of Countrywide debt securities *listed in #1 above held at the close of trading on* **June 30, 2008:**  (If none, write "zero" or "0"; if other than zero, must be documented)

Principal Amount
(i.e., Face Value or Par Value)

*IF ANY OF THE ABOVE TRANSACTIONS RELATE TO SHORT SALES, PLEASE CHECK THIS BOX* ☐

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS, PHOTOCOPY THIS PAGE.

### III.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I (We) submit this Proof of Claim form under the terms of the Plan of Allocation of Net Settlement Fund described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Central District of California, Western Division (the "Court"), with respect to my (our) claim as a Class Member and for purposes of enforcing the releases set forth herein. I (We) further acknowledge that I (we) will be bound by the terms of any judgment entered in connection with the Settlement in the Action, including the releases set forth herein. I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in Countrywide securities, or additional transactions in other Countrywide securities, if required to do so. I (We) have not submitted any other claim covering the same purchases, acquisitions or sales of Countrywide securities during the Class Period and know of no other person having done so on my (our) behalf.

### IV.    RELEASES AND WARRANTIES

1.      I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, and discharge with prejudice the Settled Claims as to each and all of the Released Parties (as these terms are defined below).

2.      I (We) hereby acknowledge that I (we) will not be entitled to receive recovery in any other action against any of the Released Parties based on or arising out of the Settled Claims (as these terms are defined below).

3.      "Released Parties" means (a) any and all of the Defendants and any person, partnership, firm, corporation, limited liability company, trust or other entity or organization in which any Defendant has a controlling interest or which is or was related to or affiliated with any of the Defendants; and (b) with respect to each of the Persons in subsection (a), their respective past or present directors, officers, employees, insurers, reinsurers, attorneys, agents, partners, principals, advisors, investment advisors, auditors, accountants, trustees, underwriters, investment bankers, subsidiaries, parents (including without limitation Bank of America Corporation and each of its subsidiaries), any other entity in which any such parent has a controlling interest or which is or was related to or affiliated with any such parent, successors and predecessors, heirs, Immediate Family, and anyone acting or purporting to act for or on behalf of any of them or their successors.

4.      "Settled Claims" means any and all claims, debts, demands, disputes, rights, causes of action, suits, matters, damages, or liabilities of any kind, nature, and character whatsoever (including but not limited to any claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature (collectively, "Claims"), including both known Claims and Unknown Claims (as defined herein), against any of the Released Parties (i) that were asserted or could have been asserted in the Action, (ii) that would have been barred by *res judicata* had the Action been fully litigated to a final judgment, or (iii) that could have been, or could in the future be, asserted in any forum or proceeding or otherwise by any Class Member against any of the Released Parties (a) that concern, arise out of, refer to, are based upon, or are related in any way to, any of the subject matter, allegations, transactions, facts, matters, occurrences, representations, statements, or omissions alleged, involved, set forth, or referred to in the Complaint; and (b) that relate to the purchase, sale, acquisition or holding of the Countrywide Securities, and, as to Plaintiffs, that relate to the purchase, sale, acquisition or holding of any security issued by Countrywide or any Countrywide-related entity (including but not limited to mortgage-backed securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS, Inc.), whether such Countrywide-related entity is a corporation, partnership, limited liability company, trust, or other entity, and whether or not such securities are Countrywide Securities; *provided, however,* that the term "Settled Claims" shall not include the following: (1) claims to enforce the Settlement; and (2) shareholder derivative claims asserted as of April 2, 2010 on behalf of Countrywide Financial Corporation in the following actions for recovery by Countrywide as to injury allegedly caused to it: *In re Countrywide Financial Corp. Shareholder Derivative Litigation,* Case No. BC 375275 (Cal. Supr. Ct., Los Angeles County) and *In re Countrywide Financial Corp. Derivative Litigation,* Lead Case No. 2:07-cv-06923-MRP (MANx) (C.D. Cal.).

Notwithstanding the foregoing, nothing in this definition of "Settled Claims" shall prevent Plaintiffs from seeking to participate as unnamed class members in any settlement or other recovery in any class action, including but not limited to *Maine State Retirement System v. Countrywide Financial Corp.,* Case No. CV 10-00302 MRP (MANx) (C.D. Cal.), that relates to the purchase, sale, acquisition or holding of any security, other than Countrywide Securities, issued by Countrywide or any Countrywide-related entity (including but not limited to mortgage-backed securities issued by CWALT, Inc., CWABS, Inc., CWHEQ, Inc. or CWMBS, Inc.), whether such Countrywide-related entity is a corporation, partnership, limited liability company, trust or other entity.

5.      "Unknown Claims means any and all Settled Claims that any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor as of the Effective Date that, if known by him, her or it, might have affected his, her or its decision(s) with respect to the Settlement, or might have affected such party's decision not to object to this settlement. With respect to

any and all Settled Claims, upon the Effective Date, the Lead Plaintiffs shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of this Final Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, and of any U.S. federal or state law, or principle of common law or otherwise, that is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides, in relevant part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiffs and other Class Members or certain of them may hereafter discover facts in addition to or different from those which such party now knows or believes to be true with respect to the subject matter of the Settled Claims, but the Lead Plaintiffs and the Class Members, upon the Effective Date, by operation of the Final Judgment shall have, fully, finally, and forever settled and released, any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, claims relating to conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

Lead Plaintiffs and Defendants acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and was a key element of the Settlement.

6.      I (We) hereby warrant and represent that I am (we are) a Class Member as defined in the Notice, that I am (we are) not one of the "Released Parties" as defined above, and that I (we) believe I am (we are) eligible to receive a distribution from the Net Settlement Fund under the terms and conditions of the Plan of Allocation, as set forth in the Notice.

7.      I (We) hereby warrant and represent that I (we) have included information about all of my (our) transactions in Countrywide securities which occurred between March 12, 2004 and June 30, 2008 as well as the number and type of Countrywide securities held by me (us) at the opening of trading on March 12, 2004 and the close of trading on June 30, 2008.

8.      I (WE) UNDERSTAND AND INTEND THAT THE SIGNATURE BELOW REGARDING CERTAIN INFORMATION FOR THE INTERNAL REVENUE SERVICE CONCERNING BACKUP WITHHOLDING ALSO SERVES AS THE SIGNATURE VERIFYING THE INFORMATION AND REPRESENTATIONS IN THIS PROOF OF CLAIM.

9.      This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

10.      I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

## V.      CERTIFICATION

Enter TIN on the appropriate line.

- For individuals, this is your Social Security Number ("SSN").

- However, for a resident alien, sole proprietor, or disregarded entity, see Part I of W-9 instructions.

- For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name. You may enter either your SSN or your Employer Identification Number ("EIN").

- For other entities, it is your EIN.

Social Security No. (for individuals)          or      Employer Identification Number

If you are exempt from backup withholding, enter your current TIN above and write "exempt" on the following line: _____

10

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:

1.     The number shown on this form is my current TIN; and

2.     I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because: (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

*NOTE:* If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

The Internal Revenue Service does not require your consent to any provision other than the certification required to avoid backup withholding.

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied on this Proof of Claim by the undersigned is true and correct.

Executed this _____ day of _____, 20___ in _____, _____.
                                                                              (City)                    (State/Country)

|  |  |
|---|---|
| Signature of Claimant | (Type or print name of Claimant) |

|  |  |
|---|---|
| Signature of Joint Claimant, if any | (Type or print name of Joint Claimant, if any) |

|  |  |
|---|---|
| Signature of person signing on behalf of Claimant | (Type of print name of person signing on behalf of Claimant) |

Capacity of person signing on behalf of Claimant, if other than an individual (e.g., Administrator, Executor, Trustee, President, Custodian, Power of Attorney, etc.)

# Reminder Checklist:

1.     Please sign the above release and declaration.  If this Proof of Claim is submitted on behalf of joint claimants, then both claimants must sign.

2.     Remember to attach supporting documentation, if available.  DO NOT USE HIGHLIGHTER ON YOUR SUPPORT DOCUMENTATION.

3.     Do NOT send original stock certificates or original brokerage statements.

4.     Keep a copy of your claim form for your records.

5.     The Claims Administrator will acknowledge receipt of your Proof of Claim by mail, within 45 days.  Your claim is not deemed filed until you receive an acknowledgment postcard.  If you do not receive an acknowledgment postcard within 45 days, please call the Claims Administrator toll free at 877-465-4142.

6.     If you move after submitting this Proof of Claim, please notify the Claims Administrator of the change in your address.

# ATTACHMENT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION<br><br>This Document Applies To: All Actions | Lead Case No.<br>CV 07-05295 MRP (MANx) |

### SUMMARY NOTICE OF PENDENCY AND PROPOSED <u>SETTLEMENT OF CLASS ACTION AND FAIRNESS HEARING</u>

**TO:    ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED COUNTRYWIDE FINANCIAL CORPORATION ("COUNTRYWIDE") COMMON STOCK, CALL OPTIONS, 6.25% SUBORDINATED NOTES DUE 5/16/2016, SERIES A AND B MEDIUM-TERM NOTES, CERTAIN SERIES L AND M MEDIUM-TERM NOTES, AND COUNTRYWIDE CAPITAL V 7% CAPITAL SECURITIES, OR WHO SOLD COUNTRYWIDE PUT OPTIONS, BETWEEN MARCH 12, 2004 AND MARCH 7, 2008, INCLUSIVE.**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Central District of California, that a hearing will be held before the Honorable Mariana R. Pfaelzer, United States District Judge, on _____, 2010 at _____.m. in Courtroom 12 of the United States Courthouse, 312 North Spring Street, Los Angeles, California 90012, for the purpose of determining, among other things, (i) whether the proposed Settlement of this Action for $624 million in cash is fair, reasonable, and adequate and should be approved; (ii) whether, thereafter, this Action should be dismissed with prejudice as against the Defendants as set forth in the Amended Stipulation and Agreement of Settlement dated as of June 29, 2010; (iii) whether the Plan of Allocation of the Net Settlement Fund is fair and reasonable and should be approved, and (iv) the reasonableness of an application of Plaintiffs' counsel for the payment of attorney's fees and expenses, with interest, incurred in connection with this Action.  The Court has reserved the right to reschedule the hearing from time to time without further notice.

If you purchased or otherwise acquired Countrywide stock, bonds, preferred securities, or call options, or if you sold Countrywide put options between March 12, 2004 and March 7, 2008, your rights may be affected by this Action and the settlement thereof.  If you have not received the detailed Notice of Pendency and Proposed Settlement of Class Action and Fairness Hearing (the "Notice") and Proof of Claim form, you may obtain them free of charge at www.CountrywideSecuritiesClassAction.com or www.labaton.com; by sending an e-mail to info@CountrywideSecuritiesClassAction.com; by calling the claims administrator toll-free at 877-465-4142; or by writing to Countrywide Financial Corporation Securities Litigation, c/o Rust Consulting, Inc., P.O. Box 2284, Faribault, MN 55021-2419.  You may also contact Plaintiffs' Lead Counsel directly: Joel H. Bernstein, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, 800-321-0476.

If you are a member of the Class and wish to share in the Settlement money, you must submit a Proof of Claim no later than _____, 2010 establishing that you are entitled to recovery. As further described in the Notice, you will be bound by any judgment entered in the Action, regardless of whether you submit a Proof of Claim, unless you exclude yourself from the Class, in accordance with the procedures set forth in the Notice, by no later than _____, 2010. Any objections to the Settlement, Plan of Allocation or attorney's fees and expenses must be filed and served, in accordance with the procedures set forth in the Notice, no later than _____, 2010.

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE ABOUT THIS NOTICE.**

DATED: _____, 2010         BY ORDER OF THE UNITED STATES
                                      DISTRICT COURT FOR THE CENTRAL
                                      DISTRICT OF CALIFORNIA