1    LABATON SUCHAROW LLP
     JOEL H. BERNSTEIN
2    *jbernstein@labaton.com*
     JONATHAN M. PLASSE
3    *jplasse@labaton.com*
     IRA A. SCHOCHET
4    *ischochet@labaton.com*
     DAVID J. GOLDSMITH
5    *dgoldsmith@labaton.com*
     MICHAEL H. ROGERS
6    *mrogers@labaton.com*
     JOSHUA L. CROWELL
7    *jcrowell@labaton.com*
     140 Broadway
8    New York, New York  10005
     Telephone:  (212) 907-0700
9    Facsimile:  (212) 818-0477

10   *Lead Counsel for Lead*
     *Plaintiffs New York Funds*
11
     [Additional counsel listed on signature page]
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16   IN RE COUNTRYWIDE FINANCIAL            Lead Case No.
     CORPORATION SECURITIES                 CV 07-05295 MRP (MANx)
17   LITIGATION
                                            **PLAINTIFFS' MEMORANDUM
18   This Document Applies to:  All Actions  OF POINTS AND AUTHORITIES
                                            RESPONDING TO OBJECTIONS,
19                                          CONCERNING REQUESTS
                                            FOR EXCLUSION FROM THE
20                                          CLASS, AND REPORTING ON
                                            SETTLEMENT OF SEC ACTION**
21
                                            Date:   December 14, 2010
22                                          Time:  1:00 p.m.
                                            Courtroom:  12
23                                          Judge:  Hon. Mariana R. Pfaelzer

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

Table of Authorities ........................................................................................ ii

3

Preliminary Statement ..................................................................................... 1

4

ARGUMENT ................................................................................................... 3

5

I.   THE TWO OBJECTIONS TO THE PLAN
     OF ALLOCATION ARE WITHOUT MERIT

6

     AND SHOULD BE OVERRULED .................................................. 3

7

     A.   Countrywide Financial Corporation
          401(k) Savings and Investment Plan ...................................... 3

8

     B.   David B. Orser ...................................................................... 12

9

II.  MANY OF THE REQUESTS

10

     FOR EXCLUSION ARE INVALID ............................................. 15

11

III. DISCLOSURE OF FACIALLY
     VALID REQUESTS FOR EXCLUSION ..................................... 18

12

IV.  THE SETTLEMENT IN *SEC v. MOZILO*

13

     WILL PROVIDE MORE THAN $48 MILLION
     IN ADDITIONAL CASH FOR THE

14

     BENEFIT OF CLASS MEMBERS HERE .................................... 20

15

Conclusion ..................................................................................................... 22

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

## CASES

*In re Abbott Laboratories Securities Litigation*,
No. 92-C-3869 MEA, 1995 WL 792083
(N.D. Ill. July 3, 1995) ............................................................. 13

*In re DJ Orthopedics, Inc. Securities Litigation*,
No. 01-CV-2238 KRBB, 2004 WL 1445101
(S.D. Cal. June 21, 2004) ............................................................. 6

*In re Immune Response Securities Litigation*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................... 14

*In re JDS Uniphase Corp. ERISA Litigation*,
No. C 03-04743 CW (WWS), 2005 WL 1662131
(N.D. Cal. July 14, 2005) ............................................................. 8

*Kurzweil v. Philip Morris Cos.*,
No. 94 Civ. 2373 (MBM), 2001 WL 25700
(S.D.N.Y. Jan. 10, 2001) ......................................................4, 5-6

*In re LDK Solar Securities Litigation*,
No. C 07-5182 WHA, 2010 WL 3001384
(N.D. Cal. July 29, 2010) ......................................................13-14

*In re The Mills Corp. Securities Litigation*,
265 F.R.D. 246 (E.D. Va. 2009) .........................................14-15

*National Rural Telecommunications
Cooperative v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................ 13

*In re Omnivision Technologies Inc.
Securities Litigation*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................... 14

*In re Quintus Securities Litigation*,
No. C 00-4263 VRW, 2006 WL 3507936
(N.D. Cal. Dec. 5, 2006) ............................................................. 14

*In re Reliant Energy ERISA Litigation*,
336 F. Supp. 2d 646 (S.D. Tex. 2004)................................ 8

*SEC v. Phan*,
500 F.3d 895 (9th Cir. 2007)................................................. 8

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
940 F.2d 564 (10th Cir. 1991)............................................. 11

*In re Veritas Software Corp. Securities Litigation,*
No. C 03-0283 MMC, 2005 WL 3096079
(N.D. Cal. Nov. 15, 2005), *aff'd in part and
vacated in part on other grounds,*
496 F.3d 962 (9th Cir. 2007) .................................................................. 14

**STATUTES**

Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7246(a) ................................. 21

17 C.F.R. § 230.428(b)(1)(i) ....................................................................... 8

17 C.F.R. § 239.16(b) .................................................................................. 8

**MISCELLANEOUS**

*Registration of Securities on Form S-8,* Securities Act
Release No. 33-7646, 64 Fed. Reg. 11,103 (Mar. 8, 1999) ...................... 8

**Preliminary Statement**

Pursuant to the Court's August 2, 2010 Order Granting Preliminary Approval to Settlement and Directing Dissemination of Notice to the Class (the "Preliminary Approval Order," Dkt. No. 976) and Minute Orders dated October 26 and November 17, 2010 (Dkt. Nos. 993 and 1002), Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as sole Trustee of the New York State Common Retirement Fund; Lead Plaintiffs New York City Employees' Retirement System, New York City Police Pension Fund, New York City Fire Department Pension Fund, New York City Board of Education Retirement System, and Teachers' Retirement System of the City of New York (collectively, the "New York Funds"); and Plaintiff Barry Brahn, on behalf of the Class, respectfully submit this memorandum of points and authorities in response to objections received following the dissemination of notice to the Class, and to provide the Court with pertinent information concerning *(i)* requests for exclusion from the Class and *(ii)* the settlements reached in the *SEC v. Mozilo* action in this Court before Judge Walter.

**Objections.**  In a large, widely publicized Settlement such as this, where more than 903,000 Court-approved Notices have been mailed as of November 28, 2010,[1] the number and nature of objections is a particularly useful indicator of the fairness, reasonableness and adequacy of the Settlement and the other matters to be considered during the Fairness Hearing.  There have been ***no*** objections to the $624 million Settlement amount or Lead Counsel's petition for an award of attorney's fees and reimbursement of expenses.

---

[1] *See* accompanying Supplemental Declaration of Thomas R. Glenn of Rust Consulting, Inc. Regarding Notice to the Class, ¶ 3.

1    Lead Plaintiffs received only **two** objections to the Plan of Allocation of the

2    Net Settlement Fund (the "Plan of Allocation").  Both should be overruled.  The

3    first objection, from Countrywide's internal 401(k) Plan, seeks three assurances

4    concerning the treatment of the 401(k) Plan and its former employee participants

5    under the Plan of Allocation.  *See* Dkt. Nos. 994-997.  Lead Plaintiffs will provide

6    the first two assurances based on certain representations and subject to certain

7    reasonable caveats as detailed below.

8    The 401(k) Plan's third proposal would treat Countrywide's matching and

9    discretionary contributions of unitized common stock interests to 401(k) Plan

10   participants as ordinary open market purchases.  This proposal should be rejected

11   because such interests are not, and are not linked to, "publicly traded" common

12   stock as provided in the Class definition certified by the Court.  Indeed, separate

13   pending litigation against Countrywide seeks to recover damages with respect to

14   these specific, nonpublic securities on behalf of the same 401(k) Plan participants

15   for part of the Class Period, and the 401(k) Plan acknowledges in its objection that

16   this Settlement will not release those claims.

17   The second "objection" to the Plan of Allocation should be overruled

18   because it is not an objection at all.  The Class member, an individual common

19   stock purchaser, apparently misunderstands the pertinent language of the Plan of

20   Allocation and in fact has a Recognized Claim entitling him to recovery subject to

21   the *de minimus* threshold.

22   **Opt-Outs.**  Lead Plaintiffs have received 57 requests for exclusion from the

23   Class.  Twenty-four (24) of these opt-outs should be deemed invalid by the Court

24   because the investors submitting them failed to sufficiently disclose their purchases

25   and sales of Countrywide securities during the Class Period, apparently are not

26   Class members in the first place, or submitted the opt-out request late.  Nearly all

27

28

1  of the institutional investors that submitted facially valid opt-outs are represented

2  by two plaintiffs' law firms.

3       **Settlement of SEC Action.**  The action brought by the SEC against former

4  Countrywide executives was settled on October 15, 2010.  The disgorgement and

5  civil penalties to be paid by these defendants, totaling $48,150,000 in new cash,

6  will not be made to the U.S. Treasury.  Instead, as contemplated by Judge Walker

7  and the SEC, these sums have been or will be deposited with the Clerk of the

8  Court, and will be administered jointly with this Settlement for the direct benefit of

9  a large segment of the Class in this action.

10

11 **ARGUMENT**

12 **I.   THE TWO OBJECTIONS TO THE PLAN
      OF ALLOCATION ARE WITHOUT
      MERIT AND SHOULD BE OVERRULED**

13

14      **A.   Countrywide Financial Corporation
          401(k) Savings and Investment Plan**

15      Independent Fiduciary Services, Inc. ("IFS"), acting as independent

16 fiduciary of the Bank of America 401(k) Plan for Legacy Companies, as a

17 successor to the Countrywide Financial Corporation 401(k) Savings and

18 Investment Plan (the "401(k) Plan"), seeks three assurances with regard to the

19 treatment of proofs of claim to be submitted by the 401(k) Plan and its participants

20 under the Plan of Allocation.

21      First, IFS wants assurance that a proof of claim by the 401(k) Plan reflecting

22 all acquisitions and sales of unitized interests in the Countrywide Company Stock

23 Fund by individual participants during the Class Period will be accepted and

24 deemed eligible "to the extent that such unitized interests are directly tied to shares

25 of Countrywide . . . common stock purchased by the Plan on the open market,

26

27

28

1  regardless of whether or not purchased by the Plan during the Class Period."  IFS

2  Objection at 1 (Dkt. No. 994).[2]

3       Lead Plaintiffs will provide this assurance, emphasizing that the 401(k)

4  Plan's proof of claim, as IFS acknowledges, will be honored only to the extent that

5  unitized interests are *directly tied* to shares of Countrywide common stock

6  purchased by the 401(k) Plan *on the open market*, meaning that such unitized

7  interests are linked to publicly traded common stock.

8       Lead Plaintiffs give this assurance in reliance on IFS's representations that

9  the 401(k) Plan "purchased and sold Countrywide stock ***on the open market*** for

10 the Company Stock Fund [in connection with] ***all*** participant elections to acquire

11 or dispose of Company Stock Fund units" except for matching contributions, and,

12 similarly, that participant acquisitions of all unitized interests other than matching

13 contributions ***"required*** the purchase of Countrywide stock [by the 401(k) Plan] ***on***

14 ***the open market*** at one time or another."  *Id.* at 4-5 (emphases added); *see*

15 *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373 (MBM), 2001 WL 25700, at *3

16 (S.D.N.Y. Jan. 10, 2001) (rejection of proof of claim submitted by employee

17 benefit plan on behalf of former employees who acquired unitized interests in

18 common stock fund "sacrifice[d] substance to form" where the consequences of

19 transactions in units "were identical for these would-be claimants to the

20 consequences suffered by open market purchasers and sellers whose claims have

21 been honored").  The Claims Administrator will review the proof of claim

22 submitted by the 401(k) Plan to confirm the accuracy of these representations.

23

24

25

26 _____

    [2] According to IFS, the Company Stock Fund was a unitized fund invested primarily in shares of Countrywide common stock, and was one of the investment options offered under the 401(k) Plan during the Class Period.  *See* IFS Objection at 3.

27

28

1       Lead Plaintiffs also rely on IFS's representation that "[a] recovery by the

2   Plan would ultimately funnel back to the participants' individual accounts

3   according to the amount invested in the Company Stock Fund."  IFS Objection at 5

4   n.4.  Lead Plaintiffs further rely on IFS's representation that IFS does not seek

5   double recovery on unitized interests for which 401(k) Plan participants recovered

6   in the settlement of the Countrywide ERISA action, *Alvidres v. Countrywide*

7   *Financial Corp.*, No. CV 07-5810 JFW (CTx) (C.D. Cal.).  IFS Objection at 10

8   n.6.  The Claims Administrator will not deem a proof of claim submitted by the

9   401(k) Plan or any individual participant to be eligible until and unless it is

10   reasonably assured that no participant will receive an improper double recovery.

11       Moreover, the 401(k) Plan's proof of claim will be deemed eligible by the

12   Claims Administrator only if the claim discloses all Class Period acquisitions and

13   dispositions of unitized interests in the Company Stock Fund by each individual

14   401(k) Plan participant (and the names of such participants), and the claim is

15   otherwise valid and timely.  The underlying information will enable the Claims

16   Administrator to identify any participants who are excluded from the Class, such as

17   the Individual Defendants, as well as any duplicative claims that participants may

18   submit individually.  *See Kurzweil*, 2001 WL 25700, at *4 ("[A]ny individual

19   investors who wish to pursue their claims on their own may do so, provided that no

20   claim filed by the Fund may duplicate a claim filed by an individual investor.").

21       <u>Second</u>, IFS wants assurance that the Claims Administrator will treat trading

22   losses incurred with respect to such individual unitized interests of 401(k) Plan

23   participants as a "Trading Loss" for purposes of and as defined in the Plan of

24   Allocation.  IFS Objection at 1.  This proposal is essentially derivative of the first.

25   *See Kurzweil*, 2001 WL 25700, at *3 ("The damage that was suffered by those to

26   whom or from whom shares were simply reallocated within the Fund was identical

27   to the damage to those who bought and sold in the open market, and arose from the

28

1   same source."). Lead Plaintiffs will give this assurance subject to the

2   representations by IFS and caveats noted above, and with the additional caveat that

3   proofs of claim submitted individually by 401(k) Plan participants will be rejected

4   to the extent they duplicate transactions in unitized interests in the Company Stock

5   Fund reflected in the proof of claim submitted by the 401(k) Plan. *See id.* at *4.

6       <u>Third</u>, IFS wants assurance that all unitized interests in the Company Stock

7   Fund received by a 401(k) Plan participant as a result of matching or discretionary

8   contributions made by Countrywide during the Class Period will be treated as

9   acquisitions of Countrywide common stock to the extent that such unitized

10  interests are directly tied to shares of Countrywide common stock "regardless of

11  how or when the shares were acquired by the Plan," and that a trading loss on such

12  unitized interests will be treated as a "Trading Loss" under the Plan of Allocation,

13  with the purchase price set as of the date of the contribution. IFS Objection at 1-2.

14      This aspect of IFS's objection should be overruled.[3] Countrywide common

15  stock must be "publicly traded" to be included in the Class and participate in the

16

17  _____

18      [3] The Court's disposition of an objection to the Plan of Allocation does not
    impact the fairness or finality of the Settlement itself or any of its terms. *See* Am.

19  Stip. & Agmt. of Settlement ¶ 21(f) ("The Plan of Allocation shall not be a part of
    the Settlement Agreement and any order or proceeding related to said Plan of

20  Allocation shall not operate to terminate or cancel this Settlement Agreement or
    affect the finality of the Court's Final Judgment approving this Settlement

21  Agreement and the Settlement it describes, or any other orders entered pursuant to
    this Settlement Agreement.") (Dkt. No. 841); *see also In re DJ Orthopedics, Inc.*

22  *Sec. Litig.*, No. 01-CV-2238 KRBB, 2004 WL 1445101, at *5 (S.D. Cal. June 21,
    2004) ("Any Plan of Allocation submitted by Lead Counsel or any order entered

23  regarding the attorneys' fees application shall in no way disturb or affect this Final
    Judgment and shall be considered separate from this Final Judgment.").

24      Similarly, the Court can change the Plan of Allocation in its discretion without
    further notice to the Class. *See* Notice of Pendency and Settlement of Class Action

25  and Fairness Hearing ("Notice") at 18 ("The Court has reserved jurisdiction to
    modify, amend or alter the Plan of Allocation without further notice to anyone, and

26  to allow, disallow or adjust any Authorized Claimant's claim to ensure a fair and
    equitable distribution of settlement funds."). The complete printed Notice,

27  including the Plan of Allocation, was filed with the Court on October 11, 2010 as
    Exhibit I to the Glenn Declaration (Dkt. No. 986-1).

28

Settlement.  Matching and discretionary contributions of unitized interests in the 401(k) Plan's Company Stock Fund are not, and are not tied to, publicly traded common stock.

This Court appointed the New York Funds as lead plaintiffs specifically for "claims involving purchases of ***public securities.***"  Order Consolidated Cases and Appointing Lead Plaintiff and Lead Counsel, at 11 (emphasis added) (Dkt. No. 67, Nov. 28, 2007).  In so doing, the Court specifically distinguished the privately placed registered securities at issue in the *Argent* matter, No. CV 07-7097.  *Id.* at 7, 12-13.  Consistent with this mandate, the Class is defined in pertinent part as "[a]ll persons or entities that [during the Class Period,] either in the open market or pursuant or traceable to a registration statement: (i) Purchased or otherwise acquired Countrywide . . . ***publicly traded*** common stock[.]"  Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification and Directing Dissemination of Notice to the Class, ¶ 2 (emphasis added) (Dkt. No. 704, Jan. 22, 2010); *see also* Notice at 7.

As IFS acknowledges, matching or discretionary contributions of unitized interests in the Company Stock Fund—in contrast to direct purchases by 401(k) Plan participants—are not tied to shares of Countrywide common stock purchased by the Plan on the open market.  Instead, all of the stock underlying such "matching" interests was issued internally by Countrywide pursuant to a Form S-8 registration statement.  *See* IFS Objection at 4 (401(k) Plan purchased and sold stock on the open market for all participant acquisitions ***"except*** for acquisitions by virtue of the Company's ***matching contributions,*** for which the Company contributed shares issued pursuant to an S-8 registration statement") (emphases

1   added).[4]   These shares went directly to the Company Stock Fund for matching

2   contributions of 401(k) Plan units, and never traded publicly or otherwise on the

3   open market.  *See Registration of Securities on Form S-8*, Securities Act Release

4   No. 33-7646, 64 Fed. Reg. 11,103, 11,103-04 (Mar. 8, 1999) ("Since the 1990

5   revisions, some issuers and promoters have misused Form S-8 as a means to

6   distribute securities to the public with the protections of registration under Section

7   5 of the Securities Act. . . .   Registration of the shares on Form S-8 does not

8   accomplish Section 5 registration of these public sales.  The transaction that takes

9   place (a capital-raising transaction with the public) is a different transaction from

10   the transaction registered on Form S-8 (a compensatory transaction with

11   employees, including consultants).") (codified at 17 C.F.R. § 239.16(b)); *SEC v.*

12   *Phan*, 500 F.3d 895, 899 (9th Cir. 2007) ("A Form S-8 provides a streamlined

13   method of registering stock issued to compensate employees and consultants, as

14   opposed to the more detailed and prolonged process required to register shares

15   used to raise capital.") (citing SEC release).  Accordingly, the stock underlying

16   matching contributions of unitized interests is not linked to publicly traded

17   common stock, and such "matching" stock—and the unitized interests derived

18   therefrom—falls outside the scope of the Class.

19        IFS does not seriously contend otherwise, and indeed tacitly concedes this

20   important distinction.  *Compare* IFS Objection at 1 (requesting, first, that 401(k)

21

22   ――――――――――――――――

23        [4] Form S-8 is a document required by the SEC by which companies must
      register securities they offer to their employees under an employee benefit plan.
      *See In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 660-61 & nn.29-30
24   (S.D. Tex. 2004); *see also In re JDS Uniphase Corp. ERISA Litig.*, No. C 03-
      04743 CW (WWS), 2005 WL 1662131, at *12 (N.D. Cal. July 14, 2005) ("[T]he
25   federal securities laws require corporations that sponsor a 401(k) plan offering an
      employer's securities to file a Form S-8 registration statement with the SEC, and
26   Part I of the Form S-8 is the Section 10(a) prospectus that must be disseminated to
      employees under the Securities Act."); 17 C.F.R. § 230.428(b)(1)(i) (Form S-8
27   SEC rules).

28

1  Plan proof of claim be honored to extent unitized interests are "directly tied to

2  shares of . . . common stock purchased by Plan on the open market") *with id.* at 1-2

3  (requesting, third, that unitized interests received as matching contributions and

4  directly tied to common stock be honored ***"regardless of how*** or when the shares

5  were acquired by the Plan") (emphasis added).  And because these "matching"

6  shares were not publicly traded, they were not included in the float of Countrywide

7  common stock considered by Lead Plaintiffs' damages experts in estimating

8  damages for trial and settlement purposes.

9        IFS argues that unitized interests acquired from matching contributions

10  should be entitled to recovery under the Plan of Allocation because "such

11  contributions result from shares of stock provided to the Company Stock Fund

12  through SEC registration statements."  *Id.* at 11.  This assertion ignores the fact

13  that under the Class definition, common stock must be "publicly traded" regardless

14  of whether it is purchased on the open market or pursuant to a registration

15  statement.  Indeed, Countrywide made no secondary offerings of common stock to

16  the public during the Class Period, which is why Lead Plaintiffs did not assert

17  claims under the Securities Act of 1933 based on common stock.  As determined

18  by the Court, the securities that Class members purchased or acquired pursuant to a

19  registration statement during the Class Period are limited to the Countrywide

20  Capital V 7% Capital Securities, the 6.25% Subordinated Notes Due May 15,

21  2016, and the Series A and B Medium-Term Notes.

22        The existence of a separate, unrelated action titled *Layne v. Countrywide*

23  *Financial Corp.*, Case No. BC 389208 (Cal. Super. Ct., Los Angeles County),

24  which no defendant even sought to consolidate with this action, confirms that the

25  S-8 common stock Countrywide contributed to the 401(k) Plan for matching grants

26  of unitized interests is not publicly traded and not within the scope of the Class.

27  *Layne* is a class action asserting violations of Sections 11, 12(a)(2), and 15 of the

28

1  Securities Act on behalf of Countrywide employees who acquired shares of

2  Countrywide common stock pursuant or traceable to a May 11, 2007 Form S-8

3  registration statement.  *Layne* was originally filed on April 15, 2008, after Lead

4  Plaintiffs filed the Consolidated Amended Complaint in this action.  *See Layne*

5  Docket, Ex. 1.[5]  The amended complaint in *Layne*, filed on June 25, 2009, alleges

6  that the Form S-8 registration statement "was filed with the SEC so that

7  Countrywide could offer 3 million shares of stock valued at $38.00 per share to

8  employees under the Countrywide Financial Corporation 401(k) Savings and

9  Investment Plan"—the same 401(k) Plan represented by IFS here—and, broadly

10  speaking, alleges the same undisclosed facts and misconduct that Lead Plaintiffs

11  alleged here.  *Layne* Compl., Ex. 2, *e.g.*, ¶¶ 1, 3-4, 25, 31, 33.

12      It is undisputed that the proposed release in this Settlement will ***not*** release

13  any of the claims asserted in *Layne*.[6]  The definition of "Settled Claims" in

14  paragraph 1(tt) of the Settlement Agreement does not provide an express carve-out

15  for the claims asserted in *Layne* (or *Teratsonian*).  This is because the parties here,

16  as well as counsel for plaintiffs in *Layne*, understood from the outset that the stock

17  at issue in *Layne* is not publicly traded and is not part of the Class here.  IFS

18  acknowledges this in its objection.  *See* IFS Objection at 13 n.8 ("IFS has been

19  informed by counsel for the parties here ***and in Layne*** that the claims of the *Layne*

20  case are separate and distinct from the claims in this lawsuit, and all parties have

21

22

23        [5] Citations to "Ex. ___ " herein refer to exhibits annexed to the accompanying Declaration of Joel H. Bernstein Responding to Objections, Concerning Requests for Exclusion from the Class, and Reporting on Settlement of SEC Action.

24        [6] It is also undisputed that this Settlement will not release the claims asserted in

25  *Teratsonian v. Countrywide Financial Corp.*, Case No. BC 389332 (Cal. Supr. Ct., Los Angeles County, filed Apr. 18, 2008), which similarly asserts Securities Act claims in connection with the August 8, 2006 Form S-8 registration statement by

26  which Countrywide contributed 22 million shares of common stock to its 2006 Equity Incentive Plan.  IFS's objection, however, does not concern the 2006 or any

27  other Countrywide Equity Incentive Plan.

28

1  represented that nothing in the release herein will be deemed to be a release of any

2  claims asserted in *Layne*.") (emphasis added).

3        The pendency of the *Layne* action shows that the common stock issued

4  internally by Countrywide for purposes of making matching contributions to

5  401(k) Plan participants is not part of the Class and should not be eligible to

6  recover until the Plan of Allocation.  And to the extent that IFS contends

7  otherwise, the pendency of *Layne* shows that IFS seeks to have 401(k) Plan

8  participants receive a improper double recovery in connection with matching or

9  discretionary contributions of unitized interests in the Company Stock Fund made

10  between May 11, 2007 and March 7, 2008, the end of the Class Period.  *See id.*

11  ("Nothing herein shall be deemed a release by the Plan of the claims in *[Layne]*.").

12        IFS observes that the common stock Countrywide contributed to the 401(k)

13  Plan is subject to the federal securities laws because the 401(k) Plan was voluntary

14  and contributory.  *Id.* at 12 (citing *International Bhd. of Teamsters v. Daniel*, 439

15  U.S. 551, 570 (1979)).  This argument misses the point because it does not cure the

16  threshold problem that the stock at issue was not publicly traded.  Indeed, IFS's

17  assertion is particularly inapposite given the pendency of the *Layne* action which,

18  as noted above, asserts Securities Act claims in connection with a registration

19  statement for common stock Countrywide contributed to the 401(k) Plan.

20  Similarly, *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564

21  (10th Cir. 1991), does no more than confirm that certain voluntary, contributory

22  employee benefit plans are subject to the investor protection provisions of the

23  federal securities laws.  *Id.* at 582-84 (*cited in* IFS Objection at 12 & n.7).[7]

24

25        [7] Finally, IFS argues that matching or discretionary contributions of unitized
    interests are properly viewed as gifted securities, which are recognized by the Plan
26  of Allocation under certain circumstances.  IFS Objection at 11-12; *see* Notice at
    14.  This argument sidesteps the dispositive fact that such "matching" interests are
27  not linked to publicly traded common stock.  In any event, the matching

                                                              *(continued . . . )*
28

1   In sum, Lead Plaintiffs respectfully request that IFS's objection be overruled
2   insofar as it requests *(i)* that unitized interests in the Company Stock Fund received
3   by a 401(k) Plan participant during the Class Period as a result of matching or
4   discretionary contributions be treated as eligible purchases or acquisitions of
5   Countrywide common stock for purposes of the Plan of Allocation, and *(ii)* that the
6   definition of "Class Member" in the Settlement Agreement be amended in any
7   respect.[8]

8   **B.   David B. Orser**

9   David B. Orser purchased 8,000 shares of Countrywide common stock
10  between October 11, 2007 and January 9, 2008, and held them through the end of
11  the Class Period.  Orser Objection, Ex. 3.  Mr. Orser objects to the language in the
12  Plan of Allocation stating "zero for those units purchased during the Class Period
13  and held past March 7, 2008" because he has "real substantial losses that seem to
14  be ignored, if my reading of the meaning is correct."  *Id.*; *see also* Notice at 15.

15  Mr. Orser misreads the Plan of Allocation by viewing the above language
16  out of context.  The fragment he quotes does not mean that common stock

17
18  *( . . . continued)*
19  contributions in this case were a form of compensation for work performed, not a "gift" as that term is normally understood.  *See* IFS Objection at 3 ("The Plan also
20  ***required*** that the Company make a matching contribution of 50% of participants' contribution up to 6% of a participant's eligible compensation and the Company
21  chose to make those matching contributions to the Plan during the Class Period in the form of Countrywide stock.  Those shares were allocated to separate Plan
22  accounts on the basis of participants' voluntary contributions to the Plan.") (emphasis added) (footnote omitted).
23  [8] There is no need to amend the Class definition.  Regardless of whether the Court sustains or overrules IFS's objection, the issues IFS raises are issues of
24  allocation, not Class membership.  The 401(k) Plan is a Class member by having purchased Countrywide common stock on the open market during the Class
25  Period, and accordingly it is the 401(k) Plan that will submit a proof of claim and funnel any settlement payment to the accounts of individual 401(k) Plan
26  participants.  *See* IFS Objection at 5 n.4.  Proofs of claim that individual 401(k) Plan participants might submit will be duplicative of the proof of claim submitted
27  by the 401(k) Plan itself.  Thus, the only issue is how the 401(k) Plan's proof of claim is to be treated under the Plan of Allocation.

28

1  purchased during the Class Period and held through the end of the Class Period

2  will have a Recognized Loss of zero.  To the contrary, it means the Recognized

3  Loss for such shares is the dollar artificial inflation amount per share, *minus* zero

4  because the shares were held through the end of the Class Period:

> For each Eligible Security purchased during the Class Period, the calculation of Recognized Loss (Gain) is the dollar amount of inflation per unit at date of acquisition multiplied by the number of units acquired, ***minus either*** (1) the dollar amount of inflation per unit at the date of sale multiplied by the number of units sold if sold on or before March 7, 2008, ***or*** (2) zero for those units purchased during the Class Period and held past March 7, 2008.

10  Notice at 15 (emphases added).

11       Mr. Orser purchased his shares when artificial inflation for purposes of

12  calculating Recognized Loss is 3 cents per share.  *Id.*  He accordingly has a

13  Recognized Loss (and a Recognized Claim) of $240.  Because Mr. Orser's

14  objection is based on a misreading of the Plan of Allocation rather than an actual

15  grievance, the objection should be overruled.  *See In re Abbott Labs. Sec. Litig.*,

16  No. 92-C-3869 MEA, 1995 WL 792083, at *16 (N.D. Ill. July 3, 1995) (overruling

17  objection that inaccurately assumed impact of fee award on settlement payment).

18                    *           *           *

19       Lead Plaintiffs respectfully submit that the lack of objections to the

20  Settlement, and the lack of any meritorious objection to the Plan of Allocation,

21  support findings by this Court that the Settlement and Plan of Allocation are

22  fundamentally fair, reasonable, and adequate and should be approved.  *See*, *e.g.*,

23  *National Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D.

24  Cal. 2004) ("It is established that the absence of a large number of objections to a

25  proposed class action settlement raises a strong presumption that the terms of a

26  proposed class settlement action *[sic]* are favorable to the class members."); *In re*

27  *LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, at *2-3 (N.D.

28

Cal. July 29, 2010) (reaction of class supported settlement where no objections to

settlement and one objection to plan of allocation); *In re Omnivision Techs. Inc.*

*Sec. Litig.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (class "nearly silent"

where three of 57,630 potential class members objected and "[b]y any standard, the

lack of objection of the Class Members favors approval of the Settlement.") (citing

*Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 577 (9th Cir. 2004)); *In re*

*Veritas Software Corp. Sec. Litig.*, No. C 03-0283 MMC, 2005 WL 3096079, at

*6-11 (N.D. Cal. Nov. 15, 2005) (settlement and plan of allocation approved where

no objections to settlement amount and one objection to plan of allocation), *aff'd in*

*part and vacated in part on other grounds*, 496 F.3d 962 (9th Cir. 2007); *see also*

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257-58 (E.D. Va. 2009) (lack of

objections to settlement gave court "a great deal of confidence" in adequacy of

settlement).

Similarly, Lead Counsel respectfully submits that the lack of any objection

to its petition for an award of attorney's fees and reimbursement of expenses,

submitted pursuant to *ex ante* representation agreements with Lead Plaintiffs,

supports a finding that the fee and expenses requested are reasonable and should be

awarded.  *See, e.g., In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177

(S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the

attorneys' fee award."); *Omnivision*, 559 F. Supp. 2d at 1048 ("None of the

objectors raised any concern about the amount of the fee.  This factor . . . also

supports the requested award of 28% of the Settlement Fund."); *In re Quintus Sec.*

*Litig.*, No. C 00-4263 VRW, 2006 WL 3507936, at *5 (N.D. Cal. Dec. 5, 2006)

("The requested attorney fees and expenses are reasonable compensation for the

value provided to the class.  This is further evidenced by the lack of class member

objections to the preliminarily approved attorney fees and expenses included in the

class notice."); *cf. Mills*, 265 F.R.D. at 261 (only two objections to fee and expense

1    application from 128,000 potential class members "[f]urther indicate[d] the Class'

2    approval of the result realized by this Settlement").[9]

3

4    **II.    MANY OF THE REQUESTS**
     **FOR EXCLUSION ARE INVALID**

5

6         The Preliminary Approval Order provides in paragraph 9 that requests for

7    exclusion must disclose, among other information, "the number of shares or units

8    of Countrywide Securities owned as of March 12, 2004" and "the date(s), price(s),

9    and number(s) of shares or units of all purchases and sales of Countrywide

10   Securities during the Class Period[.]"

11        Twenty-four (24) of the 57 requests for exclusion fail to provide some or all

12   of this necessary information, or are untimely.  Indeed, many of these opt-outs

13   affirmatively state that the person did not purchase Countrywide Securities during

14   the Class Period or is unaware of any such purchases, suggesting that the person is

15   not a Class member in the first place.  Four (4) of the requests for exclusion were

16   postmarked after the October 18, 2010 postmark deadline set forth in paragraph 9

17   of the Preliminary Approval Order.

18        Lead Plaintiffs submit that the following requests for exclusion are invalid:

19        • Ken Armstrong (no information concerning purchases or
            sales of Countrywide Securities) (Ex. 4)

20

21        • Evelyn Awid (no information concerning purchases or
            sales of Countrywide Securities) (Ex. 5)

22

23        • Josephine Barnes ("I have no proof of purchase to these
            claims.") (Ex. 6)

24

25   _____

26       [9] Notably, the Underwriter Defendants have stated that they do not oppose
     Plaintiffs' motion for final approval of the proposed Settlement and Plan of
     Allocation of the Net Settlement Fund and Lead Counsel's petition for an award of
27   attorney's fees and reimbursement of expenses (Dkt. No. 1000).

28

- Evellyn Booth (no information concerning purchases or sales of Countrywide Securities) (Ex. 7)
- Maxine M. Chartier ("I never heard of Countrywide Fin. Corp.—In fact I own nothing in stocks any longer") (Ex. 8)
- Sydney F. Chavasse ("The fact that I bought and/or sold ANY Countrywide Securities of any kind during the Class action period Is UNKNOWN to me.") (Ex. 9)
- Jay Y. Cherner (no information concerning purchases or sales of Countrywide Securities) (Ex. 10)
- E.D. DuCharme Consulting Inc. (no information concerning purchases or sales of Countrywide Securities) (Ex. 11)
- Elaine Fisher (no information concerning purchases or sales of Countrywide Securities) (Ex. 12)
- Marnie J. Fisher (no information concerning purchases or sales of Countrywide Securities) (Ex. 13)
- Shirley Fox (postmarked after October 18 postmark deadline) (Ex. 14)
- Jennifer Gale (no information concerning purchases or sales of Countrywide Securities) (Ex. 15)
- William Scott Haskell ("The fact that I bought and/or sold ANY Countrywide Securities of any kind during the Class action period Is UNKNOWN to me.") (Ex. 16)
- James Jamieson (no information concerning purchases or sales of Countrywide Securities) (Ex. 17)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Aubrey J. Keet (no information concerning purchases or sales of Countrywide Securities, and postmarked after October 18 postmark deadline) (Ex. 18)

- Marquette Financial Companies ("We are unable to identify any Countrywide securities which are included in the class action and [were] purchased or acquired during the [Class Period].") (Ex. 19)

- Byron B. Mathews, Jr. (no information concerning purchases or sales of Countrywide Securities, and postmarked after October 18 postmark deadline) (Ex. 20)

- Cynthia Matthews ("I am unaware of the number of shares I owned as of March 12, 2004 and do not have the time or resources to research this.") (Ex. 21)

- Lynne E. Munro (no information concerning purchases or sales of Countrywide Securities) (Ex. 22)

- Radost Limited (no information concerning purchases or sales of Countrywide Securities) (Ex. 23)

- Estate of George Schumacher in Trust for Linda Gogol (no information concerning purchases or sales of Countrywide Securities) (Ex. 24)

- SRM Global Fund Limited Partnership (no prices for purchases and sales of Countrywide common stock) (Ex. 25)

- P. Susan Steele ("I am unable to give the number of shares I owned for Countrywide since that was not disclosed to me from my portfolio.") (Ex. 26)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Gary Stone/Jem Stone Investment Co. (no information concerning purchases or sales of Countrywide Securities, and postmarked after October 18 postmark deadline) (Ex. 27)

## III.   DISCLOSURE OF FACIALLY VALID REQUESTS FOR EXCLUSION

The Claims Administrator received the following 33 facially valid requests for exclusion:

- T. Rowe Price Associates, Inc.
- BlackRock Investment Management, LLC
- Teachers Insurance and Annuity Association – College Retirement Services
- Nuveen Investments, Inc.
- California Public Employees' Retirement System
- Royal Mail
- American Century Investment Management
- Norges Bank
- SunAmerica Asset Management Corporation
- Thrivent Financial for Lutherans
- Maryland State Retirement and Pension System
- Montana Board of Investments
- Stichting Pensioenfonds Zorg en Welzijn
- Teacher Retirement System of Texas
- State Board of Administration of Florida
- Government of Guam Retirement Fund
- Weitz Value Fund, Weitz Partners Value Fund, Weitz Hickory Fund, Weitz Balanced Fund, Research Fund,

1        Partners III Opportunity Fund, and Heider Weitz

2        Partnership (collectively, the "Weitz Funds")

3      • Peter Kiewitt Foundation

4      • Children's Hospital & Medical Center Foundation of

5        Omaha

6      • Hastings College Foundation

7      • State Treasurer of the State of Michigan, as Custodian of

8        the Michigan Public School Employees Retirement

9        System, State Employees' Retirement System, Michigan

10      State Police Retirement System, and Michigan Judges

11      Retirement System (commonly known as State of

12      Michigan Retirement Systems)

13     • Oregon Public Employees Retirement Fund and Oregon

14      State Accident Insurance Fund (together, "Oregon")

15     • Ballantyne Re plc

16     • Fresno County Employees' Retirement Association

17      ("Fresno")

18     • Mary Lou Kent

19     • Millard M. Kent

20     • Virginia C. Kuta

21     • Patrick J. Lynn, Jr.

22     • Marion J. McLaren

23     • Steve Snider

24     • Norma Strait

25     • Michael Syer-Postance

26     • Marion Jean Wellwood

27

28

1    The first 16 opt-outs listed above, from T. Rowe Price Associates, Inc.

2 through the Government of Guam Retirement Fund, are all represented by the law

3 firm of Bernstein Litowitz Berger & Grossmann LLP.  Bernstein Litowitz served

4 as co-counsel for plaintiffs in *In re Countrywide Financial Corporation Derivative*

5 *Litigation*, Lead Case No. CV 07-06923 MRP (MANx) (C.D. Cal.), in which this

6 Court entered judgment in favor of defendants (Dkt. No. 257, Dec. 11, 2008), and,

7 more recently, denied plaintiffs' motion for reconsideration (Dkt. No. 278, June

8 22, 2010).

9    The Weitz Funds, Peter Kiewitt Foundation, Children's Hospital & Medical

10 Center Foundation of Omaha, and Hastings College Foundation are all represented

11 by the law firm of Dietrich Siben Thorpe LLP.

12    The State of Michigan Retirement Systems and Fresno are represented by

13 the law firm of Berman DeValerio.

14    Oregon is represented by the law firm of Stoll Stoll Berne Lokting &

15 Shlachter P.C.

16    Lead Plaintiffs will submit these 33 requests for exclusion to the Court *in*

17 *camera* if the Court so requests.

18

19 **IV.    THE SETTLEMENT IN *SEC v. MOZILO* WILL
   PROVIDE MORE THAN $48 MILLION IN ADDITIONAL
20    CASH FOR THE BENEFIT OF CLASS MEMBERS HERE**

21    The SEC's action against Defendants Angelo R. Mozilo, David Sambol, and

22 Eric P. Sieracki, *SEC v. Mozilo,* No. CV 09-3994 JFW (MANx) (C.D. Cal.) (the

23 "SEC Action"), was settled on October 15, 2010.  Mozilo agreed to pay

24 disgorgement of $45 million, of which $25 million has been deemed fully paid by

25 sums paid by Countrywide in this Settlement, plus a civil penalty of $22.5 million.

26

27

28

1  *See* Mozilo Consent, Ex. 28, ¶¶ 2(b) & (c); Final Judgment, Ex. 29, at 3-5.[10]

2  Sambol agreed to pay disgorgement of $5 million plus a civil penalty of $520,000.

3  *See* Sambol Consent, Ex. 30, at ¶¶ 2(b) & (c); Final Judgment, Ex. 31, at 3-4.[11]

4  Sieracki agreed to pay a civil penalty of $130,000.  *See* Sieracki Consent, Ex. 32,

5  ¶ 2(b); Final Judgment, Ex. 33, at 2-3.

6      With the parties' consent, Judge Walter has ordered that these disgorgement

7  payments and civil penalties, totaling $48.15 million in new cash, may be

8  distributed to Countrywide investors pursuant to the Fair Fund provisions of the

9  Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7246(a).  *See* Ex. 29, at 5 (Mozilo); Ex.

10  31, at 4 (Sambol); Ex. 33, at 3 (Sieracki).  In consultation with Lead Plaintiffs, the

11  SEC has agreed to have the Claims Administrator in this action jointly administer

12  both this Settlement and the settlement of the SEC Action.  More specifically, as

13  contemplated by the Final Judgments, the $48.15 million to be paid by Mozilo,

14  Sambol, and Sieracki will be delivered to the Clerk of the Court, invested as

15  directed by Judge Walter, and ultimately transferred to the Claims Administrator

16  for distribution to members of the Class in a manner consistent with the Plan of

17  Allocation.[12]

18      The relevant period in the SEC Action—May 9, 2005 to March 12, 2008—

19  overlaps almost entirely with the Class Period here.  Thus, essentially all persons

20  harmed by the conduct alleged in the SEC Action are also members of the Class.

21  Moreover, the SEC's relevant period embraces the entire January 2006-August

---

[10] Mozilo also agreed to a permanent bar from serving as an officer or director of a public company.  *See* Ex. 28, ¶ 4; Ex. 29, at 5-6.

[11] Sambol also agreed to a three-year bar from serving as an officer or director of a public company.  *See* Ex. 30, ¶ 4; Ex. 31, at 4-5.

[12] The SEC has advised Lead Plaintiffs that Mozilo, Sambol, and Sieracki paid $25,250,000; $5,520,000; and $130,000 respectively into the court registry on November 15, 2010.  Mozilo is obligated to make additional payments of $6 million no later than December 31, 2010, and $11,250,000 no later than February 1, 2011.

1   2007 subperiod during which Lead Plaintiffs' damages expert would testify that

2   Countrywide common stock was artificially inflated because of the alleged fraud.

3   Accordingly, the joint administration of this Settlement and the settlement of the

4   SEC Action not only will save significant administrative costs, but also will

5   directly and materially increase the recovery of the segment of the Class that

6   suffered the most damages.

7

8   <u>**Conclusion**</u>

9       For the foregoing reasons, Lead Plaintiffs New York Funds and Plaintiff

10   Brahn respectfully request that this Court *(i)* overrule the objections submitted by

11   Independent Fiduciary Services, Inc. and David B. Orser in their entirety; *(ii)* find

12   the requests for exclusion listed in Part II above to be invalid; *(iii)* grant final

13   approval to the Settlement; *(iv)* approve the Plan of Allocation; and *(v)* grant Lead

14   Counsel's petition for an award of attorney's fees and reimbursement of expenses.

15

16   Dated:  November 29, 2010        Respectfully submitted,

17                           LABATON SUCHAROW LLP

18           By:   */s/ Joel H. Bernstein*
                        JOEL H. BERNSTEIN

19                           JONATHAN M. PLASSE
                        IRA A. SCHOCHET

20                           DAVID J. GOLDSMITH
                        MICHAEL H. ROGERS

21                           JOSHUA L. CROWELL

22                           *Lead Counsel for Lead*
                        *Plaintiffs New York Funds*

23

24                           KREINDLER & KREINDLER LLP
                        GRETCHEN M. NELSON (#112566)

25                           *gnelson@kreindler.com*
                        707 Wilshire Boulevard, Suite 4100

26                           Los Angeles, California  90017
                        Telephone:  (213) 622-6469

27                           Facsimile:  (213) 622-6019

28

HENNIGAN, BENNETT
 & DORMAN LLP
J. MICHAEL HENNIGAN (#59591)
*hennigan@hbdlawyers.com*
KIRK D. DILLMAN (#110486)
*dillmank@hbdlawyers.com*
MICHAEL SWARTZ (#163590)
*swartzm@hbdlawyers.com*
865 South Figueroa Street, Suite 2900
Los Angeles, California  90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

*Liaison Counsel for Lead*
*Plaintiffs New York Funds*

KAPLAN FOX & KILSHEIMER LLP
JOEL B. STRAUSS
*jstrauss@kaplanfox.com*
JEFFREY P. CAMPISI
*jcampisi@kaplanfox.com*
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
Facsimile:  (212) 687-7714

*Attorneys for Plaintiff*
*Barry Brahn*