LABATON SUCHAROW LLP
JOEL H. BERNSTEIN
*jbernstein@labaton.com*
JONATHAN M. PLASSE
*jplasse@labaton.com*
IRA A. SCHOCHET
*ischochet@labaton.com*
DAVID J. GOLDSMITH
*dgoldsmith@labaton.com*
MICHAEL H. ROGERS
*mrogers@labaton.com*
JOSHUA L. CROWELL
*jcrowell@labaton.com*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for Lead Plaintiffs New York Funds*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

IN RE COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION

This Document Relates to: All Actions

Lead Case No.
CV 07-05295 MRP (MANx)

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF FIRST AMENDMENT TO SETTLEMENT AGREEMENT**

Date: January 12, 2011
Time: 1:30 p.m.
Courtroom: 12
Judge: Hon. Mariana R. Pfaelzer

# TABLE OF CONTENTS


Table of Authorities .................... ii

Preliminary Statement .................... 1

Procedural and Factual Background .................... 4

A. Procedural History .................... 4

B. Negotiations of the Modified Settlement .................... 6

C. Subsequent Proceedings .................... 7

D. Principal Terms of the Amendment .................... 8

ARGUMENT .................... 9

I. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED MODIFICATIONS TO THE SETTLEMENT .................... 9

A. The Class Will Be No Worse Off, and Potentially Better-Off, Under the Amendment if Approved by the Court .................... 9

B. No Second Opt-Out Opportunity Is Necessary or Appropriate .................... 11

II. THE PROPOSED ADDITION TO THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .................... 14

III. THE COURT SHOULD APPROVE THE FORM OF SUPPLEMENTAL NOTICE AND PLAN FOR PROVIDING SUPPLEMENTAL NOTICE TO THE CLASS .................... 15

Conclusion .................... 17

# TABLE OF AUTHORITIES

## CASES

*In re Cement & Concrete Antitrust Litigation*, 817 F.2d 1435 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 93 (1989) .......... 15

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .......... 11, 12-13

*In re Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353 (9th Cir. 1979) .......... 15

*In re Lloyd's American Trust Fund Litigation*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .......... 11, 13

*In re Remeron End-Payor Antitrust Litigation*, No. Civ. 02-2007 (FSH), 2005 WL 2230314 (D.N.J. Sept. 13, 2005) .......... 13

*SEC v. Capital Consultants, LLC*, 397 F.3d 733 (9th Cir. 2005) .......... 15

*In re VISA Check/Mastermoney Antitrust Litigation*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd*, 396 F.3d 96 (2d Cir. 2005) .......... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .......... 11

## RULES

Fed. R. Civ. P. 23(c)(2)(B) .......... 16

Fed. R. Civ. P. 23(e)(1) .......... 16

## OTHER AUTHORITIES

1-IV Moore's Federal Rule Pamphlet § 23.8[3][b] .......... 13

## Preliminary Statement

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's directives during the telephonic status conference held on December 16, 2010, Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as sole Trustee of the New York State Common Retirement Fund; Lead Plaintiffs New York City Employees' Retirement System, New York City Police Pension Fund, New York City Fire Department Pension Fund, New York City Board of Education Retirement System, and Teachers' Retirement System of the City of New York (the "New York Funds" or "Lead Plaintiffs"); and Plaintiff Barry Brahn, on behalf of the Class (collectively with Lead Plaintiffs, "Plaintiffs"), respectfully submit this memorandum of points and authorities in support of their unopposed motion for preliminary approval of the proposed modifications to the Settlement of this class action.

The original $624 million Settlement, which this Court preliminarily approved on August 2, 2010, was fair, reasonable, and adequate in light of the maximum potential recovery at trial and the myriad risks of continued litigation.[1] Indeed, in response to the hundreds of thousands of Court-approved notices that were mailed, only ***two*** Class members objected, and even then only to discrete aspects of the Plan of Allocation of the Net Settlement Fund (the "Plan of Allocation" or "Plan").

Nonetheless, about two dozen institutional investors (most of which are represented by one of two law firms), together with a handful of individual

[1] *See* Plaintiffs' Mem. of P&A in Supp. of Mot. for Final Approval of Proposed Settlement and Plan of Allocation of Net Settlement Fund, dated Oct. 11, 2010 (Dkt. No. 984).

investors, submitted valid requests for exclusion from the Class. The total losses suffered by such investors ("Opt-Outs"), as measured pursuant to a Supplemental Agreement previously entered into among Plaintiffs, the Countrywide Defendants ("Countrywide"), and Defendant KPMG LLP ("KPMG"), were high enough to give Countrywide and KPMG the right to terminate the Settlement. In response, and in keeping with their fiduciary duties to the Class as a whole, the New York Funds and their counsel expended considerable effort to preserve this valuable, hard-earned Settlement while also ensuring that continuing Class members' rights are protected and their recoveries are not diminished.

The parties have entered into a First Amendment to the Amended Stipulation and Agreement of Settlement (the "Amendment") that sets aside up to $22.5 million from the $624 million Settlement Amount for Countrywide's use in settling litigation brought or threatened to be brought by Opt-Outs. As discussed below, the operation of this "Set-Aside" ensures that individual Class members will be no worse off—and may well be better-off—under the Settlement as modified. The modified Settlement remains, and is, fair, reasonable and adequate and ultimately deserving of final approval by this Court.

Separate and apart from the Amendment, the recovery to certain Class members will also be enhanced by the $48.15 million in new cash obtained by the SEC in the recent settlement of its enforcement action against former Countrywide executives. The SEC recovery was publicly disclosed after dissemination of the original Notice to the Class.

Further, Plaintiffs have added a new term to the proposed Plan of Allocation to prevent the scenario where Opt-Outs, in satisfaction of actual or potential opt-out litigation, seek to opt back into the Class and receive a payment from the Net Settlement Fund while also receiving additional money from Countrywide or any other Released Parties directly. As discussed below, such

"double-dipping" is unfair to the many thousands of Class members who have tacitly accepted the Settlement by not excluding themselves.

Lead Plaintiffs respectfully request that this Court enter the proposed Order Granting Preliminary Approval to First Amendment to Settlement Agreement and Directing Dissemination of Supplemental Notice to the Class (the "Second Preliminary Approval Order") annexed to the Amendment and submitted separately herewith for the Court's convenience. The Second Preliminary Approval Order, among other things: (i) preliminarily finds that the proposed Amendment should be approved; (ii) schedules a hearing (the "Fairness Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses; (iii) approves the forms and methods of disseminating supplemental notice to the Class, and directs that such notice be issued; (iv) establishes procedures and the deadline for Class members to object to the terms of the Amendment or modification to the Plan of Allocation; (v) states that no additional requests for exclusion shall be allowed; (vi) establishes a new, extended deadline for Class members to submit Proofs of Claim for payments from the Net Settlement Fund; and (vii) finds that notice under the Class Action Fairness Act, 28 U.S.C. § 1715, has been fulfilled.

If the Court grants preliminary approval to the Amendment, Lead Plaintiffs respectfully propose the following schedule for key points in the settlement consideration and approval process:

- Mailing of individual Supplemental Notice of Proposed Modified Settlement of Class Action and Fairness Hearing (the "Supplemental Notice") to all Class members who can be identified through reasonable effort: nine (9) days after entry of the Second Preliminary Approval Order.

- Deadline for filing with the Court any supplemental papers in support of final approval of the Settlement, approval of the Plan of Allocation, and Plaintiffs' Lead Counsel's application for a fee and expense award: twenty-one (21) days before the Fairness Hearing.

- Deadline for filing with the Court one or more affidavits or declarations by Plaintiffs' Lead Counsel showing timely compliance with the mailing requirement: twenty-one (21) days before the Fairness Hearing.
- Deadline for submission of objections to the Amendment or modification to the Plan of Allocation: seven (7) days before the Fairness Hearing.
- Fairness Hearing: If the Court enters the proposed Second Preliminary Approval Order on January 12, 2011, the noticed hearing date, Plaintiffs respectfully request that the Fairness Hearing proceed on **February 25, 2011.**
- New postmark deadline for submission of Proofs of Claim: sixty (60) days after the Fairness Hearing.

## Procedural and Factual Background

### A. Procedural History

On or about June 29, 2010, the parties entered into an Amended Stipulation and Agreement of Settlement (the "Settlement Agreement") resolving this case in its entirety. As described in paragraph 43 of the Settlement Agreement, Plaintiffs, Countrywide and KPMG also executed a Supplemental Agreement, which provided that the Settlement Agreement could be terminated at the option and in the sole discretion of Countrywide or KPMG, as to their respective settlements with Plaintiffs and the Class, in the event that Class members who timely and validly requested exclusion from the Class collectively incurred at least a certain dollar amount of losses in connection with their purchases and sales of the Countrywide securities at issue (the "Termination Threshold").

On June 29, 2010, Plaintiffs filed the Settlement Agreement (Dkt. No. 841), a Renewed Unopposed Motion for Preliminary Approval of Proposed Settlement (Dkt. No. 843), and the Supplemental Agreement with the Court (Dkt. No. 851). Pursuant to this Court's Order dated June 16, 2010 (Dkt. No. 839), Plaintiffs filed the Supplemental Agreement under seal due to the confidential nature of its contents.

On August 2, 2010, the Court held a hearing and entered an Order Granting Preliminary Approval to Settlement and Directing Dissemination of Notice to the Class (the "Preliminary Approval Order"), and scheduled a final Fairness Hearing for November 15, 2010 (Dkt. No. 976). The Preliminary Approval Order also gave Class members until October 18, 2010 to exclude themselves from the Class.

Although only 25 institutional investors, as well as several individual investors (collectively, "Opt-Outs") elected to exclude themselves from the Class by the October 18 deadline, such Opt-Outs had an aggregate "Opt-Out Value" under the Supplemental Agreement that exceeded the Termination Threshold.

On October 26, 2010, Countrywide and KPMG submitted an unopposed application *in camera*, asking this Court to continue the Fairness Hearing from November 15 to December 6, 2010, thereby enabling an extension of the Termination Deadline set forth in the Supplemental Agreement. By Order dated October 26, 2010, the Court continued the Fairness Hearing to December 6, 2010 (Dkt. No. 993).

On October 28, 2010, Plaintiffs, Countrywide and KPMG signed a Modification of the Supplemental Agreement reflecting the new Termination Deadline.

On November 16, 2010, the Court held a status conference with all parties by telephone. Bernstein Litowitz Berger & Grossmann LLP, counsel for most of the institutional Opt-Outs, also participated in the call. Countrywide advised the Court that it was continuing to consider and speak with Lead Plaintiffs concerning the issues raised in the *in camera* application (Dkt. No. 1003).

By Order dated November 17, 2010, the Court continued the Fairness Hearing to December 14, 2010 (Dkt. No. 1002).

On November 18, 2010, counsel for Lead Plaintiffs and Countrywide jointly called the Court's courtroom deputy clerk to advise that they, together with

KPMG, would participate in mediation on December 1, 2010 before the Honorable A. Howard Matz and Professor Eric D. Green concerning the settlement termination issues.

On November 29, 2010, Plaintiffs, Countrywide and KPMG agreed to extend the Termination Deadline further and signed a Second Modification of the Supplemental Agreement reflecting that new deadline. This was done principally to accommodate the date of the mediation.

Additionally, on November 29, 2010, pursuant to the Preliminary Approval Order and October 26 and November 17, 2010 Minute Orders, Plaintiffs filed a memorandum and associated submissions (Dkt. Nos. 1005-1007): (i) responding to the two objections submitted in response to the original Notice; (ii) requesting that the Court reject invalid and late-submitted requests for exclusion;[2] (iii) disclosing the names of the facially valid Opt-Outs and identifying their counsel; and (iv) discussing the $48.15 million in additional value to the Class resulting from the settlements approved by Judge Walter in *SEC v. Mozilo*, No. CV 09-3994 JFW (MANx) (C.D. Cal.) (the "SEC Action").

**B. Negotiations of the Modified Settlement**

On December 1, 2010, Lead Plaintiffs, Countrywide and KPMG participated in an all-day mediation before Judge Matz and Professor Green concerning the Opt-Outs and Countrywide's and KPMG's termination rights under the Supplemental Agreement. The General Counsel and an Associate Counsel to the New York State Comptroller, the General Counsel to the New

[2] After that brief was filed, the Claims Administrator received one late and invalid request for exclusion. Plaintiffs also received a further letter from one of the two objectors, and a communication from a potential Class member objecting to Plaintiffs' request that his opt-out request be deemed invalid. Plaintiffs will address these communications in supplemental final approval submissions to be filed in advance of the Fairness Hearing.

York City Comptroller, and a Senior Counsel in the New York City Law Department, together with Plaintiffs' Lead Counsel and the Hennigan, Bennett & Dorman firm, attended on behalf of Lead Plaintiffs. An Associate General Counsel of Bank of America Corporation, together with counsel for Countrywide, attended on Countrywide's behalf. KPMG was represented by counsel.

Owing to Judge Matz's and Professor Green's skill and tenacity, Plaintiffs, Countrywide and KPMG reached an agreement-in-principle to modify certain terms of the Settlement Agreement in exchange for Countrywide and KPMG's waiver of their termination rights under the Supplemental Agreement.

**C. Subsequent Proceedings**

On December 7, 2010, Lead Plaintiffs, Countrywide and KPMG contacted the Court's courtroom deputy clerk by telephone and requested, in view of the proposed modified Settlement, that the Fairness Hearing scheduled to proceed on December 14, 2010 at 1:00 p.m. be continued without date; that a status conference in chambers be scheduled for that date and time, and that the parties be permitted to make an *in camera* submission concerning these matters on December 10, 2010.

On December 8, 2010, the Court's courtroom deputy clerk advised Lead Plaintiffs by telephone that the Court would accept an *in camera* submission on December 10, 2010, and would schedule a telephonic status conference at a future date. Lead Plaintiffs promptly communicated this to Countrywide and KPMG. Later the same day, the Court issued an Order continuing the December 14, 2010 Fairness Hearing until further notice (Dkt. No. 1010).

Also on December 8, Plaintiffs, Countrywide and KPMG signed a Third Modification of Supplemental Agreement further extending the Termination Deadline contingent on certain events.

Plaintiffs, Countrywide and KPMG made a joint *in camera* submission on December 10, 2010 describing the material terms of the proposed modified Settlement and discussing its impact on the Class recovery. On December 14 and 16, 2010, the Court held telephonic status conferences with counsel for Lead Plaintiffs, Countrywide and KPMG concerning the proposed modified Settlement and related scheduling matters.

### D. Principal Terms of the Amendment

In exchange for Countrywide and KPMG's agreement to waive their right to terminate the Settlement under the Supplemental Agreement, Plaintiffs have agreed to set aside up to $22.5 million of the $624 million Settlement Amount for a period of two (2) years from the date the Court issues the Final Judgment approving the Settlement (the "Set-Aside").[3] The Set-Aside may be used by Countrywide to settle litigation brought, or threatened to be brought, by Opt-Outs but may not be used for defense costs. Any portion of the Set-Aside not used after this two-year period will revert to the Settlement Fund.

The Set-Aside has a provision that may result in its reduction. If the "Opt-Out Payout"—the amount the Opt-Outs would actually have received in the Settlement as their *pro rata* share of the Net Settlement Fund if they had stayed in the Class (as if they had never opted out in the first place) and submitted valid proofs of claim—is less than $22.5 million, the Set-Aside will be reduced to that lesser amount. The Opt-Out Payout will be determined when the proof of claim review and audit process is essentially complete.

Subject to the Court's approval, a Supplemental Notice will be mailed to the Class explaining the terms of the Amendment, discussing the $48.15 million in

[3] Plaintiffs' Lead Counsel will adjust its attorney's fee request downward to reflect the potential reduction of the total Settlement amount from $624 million to $601.5 million.

additional value to the Class resulting from the settlements approved by Judge Walter in the SEC Action, advising of a new Fairness Hearing date, and advising of new deadlines for submitting proofs of claim and for objecting to the Amendment or new term of the Plan of Allocation. The costs of the Supplemental Notice will be paid out of the Set-Aside.

Plaintiffs respectfully submit that the Court should grant preliminary approval to the Amendment because its terms ensure that individual Class members will recover as much as—and, as a practical matter, likely more than—they would have recovered under the original Settlement. Plaintiffs further submit, for the same reason, that providing a second opt-out opportunity to Class members is neither necessary nor appropriate.

## ARGUMENT

### I. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED MODIFICATIONS TO THE SETTLEMENT

#### A. The Class Will Be No Worse Off, and Potentially Better-Off, Under the Amendment if Approved by the Court

Under the proposed Amendment as stated above, up to $22.5 million will be set aside from the Countrywide Settlement Fund to settle potential or actual opt-out litigation. The Class is now smaller, however, because the Opt-Outs have removed themselves from the action and relinquished their rights to submit a claim against the Net Settlement Fund.

Estimating the Opt-Out Payout (the estimated amount the Opt-Outs would have received from the Net Settlement Fund had they stayed in the Class and submitted proofs of claim) is an inexact process and depends on the final calculation of the proofs of claim that Class members ultimately submit. Nonetheless, both Lead Plaintiffs and Countrywide are reasonably confident,

based upon independent analyses, that the Opt-Out Payout—even assuming 100% participation by Class members in the Settlement—would have materially exceeded the $22.5 million Set-Aside. Countrywide estimated that the Opt-Out Payout, assuming 100% participation, could have been as high as $45.7 million. With less than 100% participation by the Class, which is virtually certain, the theoretical Opt-Out Payout likely would be even greater. Nonetheless, because the Set-Aside will equal the ***lesser*** of $22.5 million or the Opt-Out Payout, the Class is protected from any instance in which the Set-Aside might exceed the Opt-Out Payout.

Accordingly, the amount of "additional" settlement money now available to current Class members because the Opt-Outs excluded themselves from the Class (which amount otherwise would have been allocated to the Opt-Outs had they stayed in the Class) likely will be ***greater*** than the amount being set aside from the Settlement to pay the Opt-Outs. Individual Class members will recover no less (and potentially more) in the modified Settlement than they would have recovered in the original Settlement if the Opt-Outs had not excluded themselves in the first place. While Class members were made aware of the possibility of exclusions upon receipt of the prior Notice, they did not know that a substantial number of institutional investors would opt out, leaving a larger share of the Net Settlement Fund for remaining Class members. This is an unexpected benefit that the Amendment is intended to preserve. Indeed, as disclosed in the proposed Supplemental Notice, the average per-share settlement recoveries estimated in the original Notice assumed that there would be no opt-outs. Because the Set-Aside cannot be greater than the Opt-Out Payout, and will most likely be less than the Opt-Out Payout, the average per-share recoveries in the original Notice will not be less under the modified Settlement.

Moreover, Class members who elected to remain in the Class and the Settlement took the risk that there would be no opt-outs at all, thus reducing the amount available to the Class members who elected to stay in the Class. Because the maximum amount of the Set-Aside is less than the estimated Opt-Out Payout assuming full participation, and is some fraction of the estimated Opt-Out Payout assuming less than full participation, remaining Class members will, in all likelihood, receive more than they expected to receive based on the assumption in the Notice that no one would opt out.

Additionally, as discussed in Plaintiffs' brief filed on November 29, 2010 (Dkt. No. 1005), the settlements in the related SEC Action have yielded $48.15 million in new cash that has been or shortly will be paid by Defendants Angelo R. Mozilo, David Sambol and Eric P. Sieracki. Consistent with the final judgments issued by Judge Walter, these additional funds will be jointly administered with this Settlement for the benefit of certain Class members and will be distributed consistent with the Plan of Allocation. The addition of the SEC Action settlement money means that the total amount available to Class members today is greater than the total amount available to Class members at the time the Settlement was originally reached and when the original Notice was initially mailed.

### B. No Second Opt-Out Opportunity Is Necessary or Appropriate

The decision as to whether to allow a new opt out opportunity is within a court's discretion. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (affirming refusal to grant second opt out opportunity); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005) (same); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *12 (S.D.N.Y. Nov. 26, 2002) (refusing to grant second opt out opportunity). Here, given that the proposed amendment to the Settlement at a minimum maintains,

and more likely enhances the recovery available to Class members, the parties respectfully submit that no new opportunity to opt out need be given.

The Second Circuit's opinion in *Denney v. Deutsche Bank* is on point. The parties in *Denney*, like those here, reached an amended settlement agreement after their original settlement agreement resulted in opt outs sufficient to trigger defendant's termination rights. *Denney*, 443 F.3d at 261. The amended settlement agreement provided for an additional set aside fund to be used for resolving opt out claims. *Id.* at 262.[4] In preliminarily approving the amended settlement, the district court ordered new notice be sent, but did not offer class members a new opportunity to opt out. *Id.* at 261.

After the district court granted final approval to the settlement, two class members appealed, arguing that because "terms of the settlement differed from those described in the original class notice," the district court should have ordered a second opportunity for class members to opt out. *Id.* at 270. More specifically, the class members argued that new notice was required because the "the terms for opt-outs improved: originally, nothing had been provided for opt-outs, and the existence of funds to pay opt-outs was uncertain" whereas in the amended settlement, money had been set aside for them. *Id.* at 270-71. Rejecting this argument in full, the Second Circuit held that "[n]either due process nor Rule 23(e)(3) requires . . . a second opt-out period whenever the final terms change after the initial opt-out period." *Id.* at 271. The Second Circuit explained that:

> there is always the chance that a better deal will come along for those who opt out. . . . [W]hen the class notice was sent, [the availability of any funds] for non-settling plaintiffs was uncertain. . . . [Plaintiffs] chose not to take that risk. [Plaintiffs] evidently believe that they lost the gamble; but they

---

[4] The amendment provided for an additional $24.9 million to be set-aside to be used for resolving opt-out claims. *Denney*, 443 F.3d at 262. In addition, the defendants in *Denney* agreed to contribute an additional $6 million to the original $75 million settlement fund. *Id.*

> make no argument that warrants disruption of an otherwise fair settlement so that they can place new bets.

*Id.* at 271. Thus, the Second Circuit held there was "no abuse of discretion in the district court's refusal to provide a second opt-out period . . . ." *Id.*

As in *Denney*, as a result of the Amendment here, "[t]he terms for class members have only improved since the [original] notice was sent." *Id.* Thus, neither due process nor Rule 23 nor any other principle requires a new opt out period. *See id.*; *In re VISA Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 n.18 (E.D.N.Y. 2003) ("due process does not afford Class members a second opportunity to opt out"), *aff'd*, 396 F.3d 96 (2d Cir. 2005); *Lloyd's Am.*, 2002 WL 31663577, at *12 ("Due process requires only that Class Members have notice of the proposed settlement and an opportunity to be heard at a fairness hearing. If the proposed settlement is fair, adequate and reasonable, due process does not afford Class Members a second opportunity to opt out."). *Accord* 1-IV Moore's Federal Rule Pamphlet § 23.8[3][b] ("If the recovery obtained through settlement appears to be more favorable than what was contemplated during the initial opt-out period, the fact that the settlement does not permit a second opportunity to opt-out does not require disapproval of the settlement.").[5]

---

[5] Some courts have held that when class members are benefited by post-notice modifications, the parties need not send out new notice, let alone afford a new opt-out period. *See, e.g.*, *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007 (FSH), 2005 WL 2230314, at *19 (D.N.J. Sept. 13, 2005) (holding modifications to the settlement agreement which were "favorable to the class" did not require additional class notice). Nonetheless, Lead Plaintiffs, as public pension funds and active institutional investors, strongly prefer to give notice as contemplated in the Second Preliminary Approval Order. Defendants do not oppose providing notice in the form proposed here. All parties request that no new opt-out period be offered.

## II. THE PROPOSED ADDITION TO THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

As set forth in the Supplemental Notice, Plaintiffs have slightly modified the Plan of Allocation by adding the following proposed language to Part G of the Plan, titled "Distributions from the Net Settlement Fund": "A Claimant's Distribution Amount will be reduced dollar-for-dollar by any amount separately paid or required to be paid to the Claimant by any of the Released Parties to resolve a Settled Claim."

The purpose of this term of the Plan is to prevent double-dipping by Opt-Outs who may successfully opt back into the Class and submit a Proof of Claim against the Net Settlement Fund and, separately, enter into a "side settlement" with Countrywide or other Released Parties to resolve their opt-out claims. This term provides that in the event that Opt-Outs and Countrywide or any other Released Party enter into a settlement agreement where the Opt-Outs (1) opt back into the Class (with leave of Court) and thus receive a Distribution Amount from the Net Settlement Fund, and (2) receive a separate, additional payment directly from Countrywide or any other Released Party for Settled Claims, the Distribution Amount will be reduced by that separate settlement payment. It would be grossly unfair to the current, smaller Class for Opt-Outs—having already excluded themselves from and destabilized a fair, reasonable, and adequate Settlement—to share in the Net Settlement Fund now ***and*** get additional money on the side as a reward for having opted-out. No Class member should get money directly from any Released Party over and above the valuable recovery provided in the Settlement in satisfaction of its Settled Claims. Thus, this term of the Plan ensures that Opt-Outs (a) stay outside the Class and commence whatever individual litigation they see fit to commence, or (b) rejoin the Class (assuming leave of Court) but recover nothing more in the Settlement than the tens of thousands of

Class members who accepted the Settlement and never sought to exclude themselves in the first place.[6]

The Ninth Circuit has approved offset provisions in allocation plans supported by similar equitable considerations. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738-41 (9th Cir. 2005) (approving allocation plan whereby each dollar obtained from third-party actions against company in receivership reduced distribution from the receiver by 50 cents); *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1438-39 (9th Cir. 1987) (approving, to prevent double recovery, allocation plan in partial settlement that offset payment by amounts recovered from non-settling defendants), *rev'd on other grounds*, 490 U.S. 93 (1989); *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1363-67 (9th Cir. 1979) (approving, based in part on double-recovery concerns, offset in plan of allocation that reduced class member's settlement payment by amount received in related bankruptcy reorganization).

Plaintiffs respectfully submit that this term of the Plan of Allocation is fair and reasonable, should be included in the Supplemental Notice, and should be approved together with the complete Plan at the time of the Fairness Hearing.

## III. THE COURT SHOULD APPROVE THE FORM OF SUPPLEMENTAL NOTICE AND PLAN FOR PROVIDING SUPPLEMENTAL NOTICE TO THE CLASS

The Court should approve the form of Supplemental Notice annexed to the Amendment. The Supplemental Notice is written in plain language and (i) describes the modifications to the Settlement and new term of the Plan of

[6] With respect to potential "Opt-Ins," the Amendment provides that if a sufficient number of Opt-Outs are not excluded from the Class as set forth in the Final Judgment such that the Termination Threshold is no longer reached, the parties will revert to the original $624 million Settlement with no Set-Aside and no termination rights under the Supplemental Agreement.

Allocation; (ii) sets forth the procedural history following the original Notice and leading to the Amendment; (iii) discusses, consistent with the disclosure requirements of the Private Securities Litigation Reform Act of 1995, the expected impact of the Amendment on Class members' recoveries on a estimated per-share basis; (iv) discusses the additional cash recovery made available to certain Class members from the settlement of the SEC Action; (v) discusses Plaintiffs' Lead Counsel's modified request for attorney's fees and expenses; (vi) gives notice of the upcoming Fairness Hearing; (vii) advises Class members of their right to object to the Amendment or the proposed modification to the Plan of Allocation and how to do so; (viii) advises that further opt-outs will not be permitted; (ix) advises Class members of the extended deadline for the submission of Proofs of Claim; and (x) provides multiple means for Class members to make inquiries or seek further information. Plaintiffs submit that the Supplemental Notice gives Class members clear and complete notice of their due process rights in connection with the Amendment as well as matters of general concern.

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement, voluntary dismissal, or compromise. Fed. R. Civ. P. 23(e)(1). The proposed notice program, which is set forth in the Second Preliminary Approval Order, readily meets these standards. Having disseminated the original Notice of Settlement and Proof of Claim form to

more than 650,000 potential Class members as of October 7, 2010,[7] Rust Consulting, Inc. ("Rust"), the Court-appointed Claims Administrator, ha developed a massive database of names and last-known addresses of Class members. Rust will use this information to mail the Supplemental Notice directly to most Class members. With respect to the relatively small number of Class members for whom Rust supplied broker-dealers with notices in bulk at their request, Rust will work closely with those broker-dealers to ensure that they promptly mail the Supplemental Notice to these Class members. The Supplemental Notice also will be posted promptly on the Internet site maintained for this Settlement, www.CountrywideSecuritiesClassAction.com. Because the notice is supplemental in nature, Rust is in a position to deliver the Supplemental Notice to Class members expeditiously, and the Supplemental Notice will be posted on the Internet, and as a means to save costs, Plaintiffs submit that further publication notice is unnecessary here. Plaintiffs respectfully request that the form and methods of disseminating the Supplemental Notice be approved.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval to the proposed modifications to the Settlement, approve the form and methods of Supplemental Notice to the Class, and issue the proposed Second Preliminary Approval Order annexed to the First Amendment to the Settlement Agreement and submitted herewith.

---

[7] *See* Declaration of Thomas R. Glenn of Rust Consulting, Inc. Regarding Notice to the Class, dated Oct. 8, 2010, ¶ 8 (Dkt. No. 986).

Dated: January 4, 2011

Respectfully submitted,

LABATON SUCHAROW LLP

By: /s/ Joel H. Bernstein

JOEL H. BERNSTEIN
JONATHAN M. PLASSE
IRA A. SCHOCHET
DAVID J. GOLDSMITH
MICHAEL H. ROGERS
JOSHUA L. CROWELL

*Lead Counsel for Lead Plaintiffs New York Funds*

KREINDLER & KREINDLER LLP
GRETCHEN M. NELSON (#112566)
*gnelson@kreindler.com*
707 Wilshire Boulevard, Suite 4100
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

HENNIGAN, BENNETT & DORMAN LLP
J. MICHAEL HENNIGAN (#59591)
*hennigan@hbdlawyers.com*
KIRK D. DILLMAN (#110486)
*dillmank@hbdlawyers.com*
MICHAEL SWARTZ (#163590)
*swartzm@hbdlawyers.com*
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

*Liaison Counsel for Lead Plaintiffs New York Funds*

KAPLAN FOX & KILSHEIMER LLP
JOEL B. STRAUSS
*jstrauss@kaplanfox.com*
JEFFREY P. CAMPISI
*jcampisi@kaplanfox.com*
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Attorneys for Plaintiff Barry Brahn*