# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION | Lead Case No. CV 07-05295 MRP (MANx) |

**DECLARATION OF LUKE BIERMAN, ESQ., IN SUPPORT OF
FINAL APPROVAL OF SETTLEMENT, LEAD PLAINTIFF'S PROPOSED
PLAN OF ALLOCATION, AND AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES**

I, Luke Bierman, am General Counsel to the Comptroller of the State of New York, Thomas P. DiNapoli, the Administrative Head of the New York State and local Employees' Retirement System and the New York State and local Police and Fire Retirement System and sole Trustee of the New York State Common Retirement Fund ("NYSCRF"). NYSCRF and the New York City Pension Funds and Retirement Systems ("NYC Funds"), together the "New York Funds," serve as the Court-appointed Lead Plaintiff in this Action. I submit this Declaration in support of:

(a) Final approval of the Settlement;

(b) Approval of the proposed Plan of Allocation ("Plan of Allocation");

(c) Approval of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses; and

(d) Approval of NYSCRF's application for reimbursement of out-of-pocket expenses.

Unless otherwise indicated, the statements in this declaration are based on my personal knowledge.

1. NYSCRF was established by Article 9 of the New York Retirement and Social Security Law and holds and invests the assets of the New York State and local Employees' Retirement System and the New York State and local Police and Fire Retirement System. NYSCRF is the third largest public pension fund in the nation with total assets of $132.5 billion as of March 31, 2010. The Comptroller has sole investment and fiduciary responsibility for managing NYSCRF's assets.

2. As General Counsel, I directly oversee the unit that handles securities class action litigation in the Comptroller's office. This unit has a staff of four attorneys who have monitored all aspects of this action: Maurice Peaslee, Diane Foody, Maureen Madden and Henrik Westin; they have kept me fully informed as to the progress of this case. In addition, I have personally participated in all major aspects of this case including settlement negotiations.

3. NYSCRF has closely supervised, monitored, and/or participated in all aspects of this litigation. NYSCRF's involvement has included, among other things, frequent discussions with Lead Counsel regarding overall strategies for the case; reviewing, commenting on and approving the filing of pleadings, briefs and other submissions; testifying at depositions; reviewing briefs and other submissions by defendants; overseeing and approving, under terms and conditions NYSCRF believed to be appropriate, the retention of certain experts and consultants; and having representatives of NYSCRF appear in Court when such appearances would be appropriate and beneficial to the class. Furthermore, as is discussed more fully below, this office closely supervised and directly participated in the settlement mediations and negotiations.

4. My colleagues and I have communicated extensively and regularly with Lead Counsel concerning this case. We generally spoke with Lead Counsel several times a month and we often communicated weekly and even daily when important decisions had to be made.

5. This office is very familiar with securities class action litigation. NYSCRF has served as court-appointed lead plaintiff in similar cases that resulted in some of the biggest recoveries in history, such as WorldCom ($6 billion), Cendant ($3.2 billion), McKesson ($1 billion) and Raytheon ($460 million).

6. NYSCRF has carefully scrutinized the utility and cost of retaining experts, consultants and other entities that have assisted in the prosecution and administration of this case. We also considered multiple candidates for the position of Claims Administrator and required the submission of competitive proposals by various potential claims administrators before authorizing the retention of Rust Consulting, Inc.

7. I am familiar with the Implementation Contract, dated May 6, 2004 and extended by later amendment, entered into between NYSCRF and Lead Counsel in this action, which sets forth explicit terms for monitoring litigation and the fee structure to be utilized as the basis for any fee and expense application to be submitted by Lead Counsel. In general, the fee grid was designed so that the fee Lead Counsel could seek would be a function of both the timing and the size of recovery. The fee grid in the Implementation Contract was superseded by the revised fee proposal agreed to by Lead Counsel and the NYC Pension Funds, and adopted by NYSCRF, in October 2007. The revised fee proposal is less than the fee grid contained in NYSCRF's Implementation Contract.

8.  In this case, by virtue of the Settlement amount, and in accordance with the revised fee proposal, Lead Counsel is seeking a fee that is substantially less than its lodestar.

9.  The Implementation Contract also contains strict expense reimbursement provisions limiting the amount for which counsel can seek reimbursement in this Action. These limits include, among other things, maximum daily hotel and meal charges. We have continued to insist upon these provisions in the present expense reimbursement application.

10. Pursuant to the Implementation Contract, Lead Counsel provided our office with periodic reports summarizing the status of the time, lodestar and expenses incurred by Lead Counsel as well as five other firms retained to assist Lead Counsel in prosecuting this action (collectively, "Plaintiffs' Counsel" or "Counsel"). Periodically, Lead Counsel provided us with daily time records and back-up documentation for the expenses both it and the five other firms incurred in this case. This office carefully reviewed and analyzed:

   a) The time and expense summaries of Plaintiffs' Counsel;

   b) The detailed time records of Plaintiffs' Counsel, which included the daily time records of each attorney and paraprofessional who devoted time to this case;

   c) The hourly rates for each attorney and paraprofessional who devoted time to this case; and

   d) The back-up documentation for the expenses incurred by Plaintiffs' Counsel and the experts and consultants who provided their services for the benefit of the class.

11. After a review of the billing reports, this Office reduced Lead Counsel's expenses for non-reimbursable expenses. Below are three examples of the detail involved in NYSCRF's oversight of Counsel's expenses:

   a. Between August 2007 and May 31, 2010, Lead Counsel charged the Class $108,837.80 for local taxi transportation. NYSCRF eliminated this charge.

   b. During the same period, Lead Counsel charged the Class $48,311.73 for local meals incurred other than while traveling. NYSCRF eliminated this charge.

   c. Lead Counsel charged the Class $1,540.55 for reference books and seminars. NYSCRF eliminated this charge.

These are a few examples of billing concerns that were addressed prior to the submission of Lead Counsel's lodestar and expenses to the Court.

12. NYSCRF found the number of attorneys that Lead Counsel used to staff this litigation to be reasonable. Our office reviewed the daily time records of the attorneys and paraprofessionals who worked on this case and we are satisfied that the hours and resources that Plaintiffs' Counsel devoted to this action were a benefit to the Class.

13. My colleagues and I oversaw and directly participated in the lengthy settlement mediations and negotiations. As required in the Implementation Contract, Lead Counsel kept us apprised of all offers and responses made during settlement negotiations. We participated in five mediation sessions, as well as several settlement conferences with Lead Counsel. We approved all substantive settlement correspondence and had numerous communications with Lead Counsel concerning the mediations and negotiations.

14. As the settlement was negotiated, we reviewed, conferred with Lead Counsel regarding, and ultimately approved the Stipulation of Settlement, the Form of Judgment, the Notices to the Class and all the other exhibits submitted to the Court in connection with the settlement. We also reviewed and commented on the briefs and other documents submitted in support of preliminary approval of the Settlement. We also reviewed and commented on the briefs and other documents submitted in support of final approval of the Settlement, including approval of the proposed Plan of Allocation and the approval of the Application for an Award of Attorney's Fees and Reimbursement of Expenses.

15. We endorse the settlement in this action and believe it to be a fair recovery for the Class due to all of the factors identified in the Notice sent to potential Class Members concerning the Settlement, as further detailed in the Declaration of Joel Bernstein.

16. The Implementation Contract provides that no application for fees and expenses may be made to the Court without the prior written approval of Lead Plaintiff. After reviewing the periodic time reports, the daily time records, and the hourly rates for the attorneys and paraprofessionals who devoted time to this action, we are assured that the fee request is in accordance with the Implementation Contract and the revised fee proposal and we have given our approval and endorsement of Lead Counsel's fee application.

17. NYSCRF carefully considered the risks inherent in the case, the potential damages and recoveries that Lead Counsel might achieve, and the developments in the case prior to settlement.

18.     After settlement was reached, NYSCRF again looked at the issue of attorneys' fees and, in light of the risks of litigation, the results achieved, and the time and effort expended by Counsel, NYSCRF approved Lead Counsel's requested fee.

19.     After reviewing the periodic expense reports and the back-up documentation provided by Counsel, we concluded that the litigation expenses requested for reimbursement are reasonable, as they represent the necessary costs and expenses for the prosecution of this securities fraud case, but are capped at the rates set in the Implementation Contract. As a result, NYSCRF has approved the request for reimbursement of expenses submitted by Lead Counsel.

20.     In sum, NYSCRF believes that the recovery obtained is a fair settlement for the Class and that the Plan of Allocation is a fair method for distributing the settlement proceeds among Settlement Class Members. We further believe that the fee request comports with the Implementation Contract and the revised fee proposal and that it is fair and reasonable compensation for Counsel's efforts in obtaining this recovery for the Class. We further believe that the amounts requested for expense reimbursement are reasonable.

I declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct.

Executed on this 6th day of October 2010.

_____
LUKE BIERMAN
General Counsel
Office of the New York State Comptroller