LINK: 1111

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORPORATION SECURITIES LITIGATION | Lead Case No. 07-CV-05295-MRP (MANx) |
| | **Amended Order Granting Plaintiffs' Motion for Approval of Proposed Plan for Final Distribution of Net Settlement Fund and Denying the Plan's Motion to Approve Claims Based on S-8 Stock and Unitized Interests** |

## I.   INTRODUCTION

On March 4, 2011, this Court approved a $624 million class action settlement resolving allegations that, *inter alia*, the officers and directors of Countrywide Financial Corporation ("CFC" or "Countrywide") intentionally failed to disclose material and adverse information in violation of Section 10(b) of the Securities Exchange Act of 1934.  Lead Plaintiffs on behalf of the certified class of CFC shareholders (collectively, "Plaintiffs") now move for approval of the proposed plan for final distribution of the Net Settlement Fund.[1]  The proposed plan seeks to distribute, *inter alia*, approximately $30 million in Settlement proceeds held in abeyance during the pendency of an appeal brought by the 401(k) Savings & Investment Plan ("401(k) Plan" or "Plan") before the United States Court of Appeals for the Ninth Circuit.  The 401(k) Plan opposes Plaintiffs' motion and requests that the Court approve the claims of the Plan and Plan participants with respect to shares acquired directly from CFC pursuant to an S-8 registration statement and through cross-trades with other Plan participants.  This matter has been fully briefed and the Court heard oral arguments on February 24, 2014.  For the reasons set forth below, the Plan's motion is **DENIED** and the Plaintiffs' motion is **GRANTED**.

## II.   BACKGROUND

On December 9, 2009, this Court issued an 80-page memorandum of decision granting in part Plaintiffs' motion for class certification.  *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586 (C.D. Cal. 2009).  The Court, with the benefit of extensive fact and expert discovery, adopted a Class definition

---

[1] Capitalized terms not defined herein have the meanings set forth and defined in the Amended Stipulation and Agreement of Settlement dated June 29, 2010 (Dkt. No. 841) and the First Amendment to Amended Stipulation and Agreement of Settlement dated January 4, 2011 (Dkt. No. 1015).

distinct from the one Plaintiffs had proposed in their certification motion. The Court certified a class defined in relevant part as "[a]ll persons or entities that, between March 12, 2004 and March 7, 2008, either in the open market or pursuant or traceable to a registration statement purchased or otherwise acquired [Countrywide] publicly traded common stock and were damaged thereby." (Order at 3.) Several months later, while summary judgment motions were pending, the parties reached a settlement in the amount of $624 million. On August 2, 2010, the Court granted preliminary approval of the proposed settlement, plan of allocation ("POA"), and method for informing class members of their right to opt out or object.

Independent Fiduciary Services, Inc., as a successor to the 401(k) Plan and objector to the Settlement, requested that the Court amend or clarify the definition of the class to recognize trading losses incurred in connection with (1) common stock registered by Countrywide pursuant to a Form S-8 registration statement and issued directly from the company treasury to the 401(k) Plan to support matching and discretionary contributions to Plan participants ("S-8 Stock") and (2) unitized interests in the 401(k) Plan's Company Stock Fund acquired by individual Plan participants from the Plan or from each other via intra-fund transfers.

During the February 25, 2011 fairness hearing, the Court overruled the Plan's objections and rejected the argument that the class definition includes common stock "not purchased on the open market" and "transactions which occurred outside of the class period." (Hr'g Tr. at 61.) The Court ruled that, although the Plan may recover on shares it purchased directly from the open market during the Class Period, S-8 Stock and unitized interests fall outside the Class definition and are not compensable under the POA. In addition, the Court found that the settlement was "fair, adequate, and reasonable, as required by Rule 23." (Hr'g Tr. at 54–55.)

The Plan appealed this Court's decision to overrule the objection.  During the pendency of the appeal, the claims administrator commenced an initial distribution of the Net Settlement Fund to authorized claimants.  A $30 million reserve was withheld from the initial distribution in order to pay valid claims upon final resolution of the Plan's appeal.

On appeal, the Plan argued that the POA should recognize losses in connection with S-8 Stock and unitized interests for two principal reasons.  The first involved an interpretation of the POA.  The Plan asserted that, contrary to this Court's ruling, common stock need not be purchased "in the open market" because the POA is phrased in the disjunctive, allowing for purchases "either in the open market *or* pursuant or traceable to a registration statement."  *Pappas v. The Bank of America 401(k) Plan for Legacy Companies, as a Successor to the Countrywide Financial Corp. 401(k) Savings & Investment Plan*, 526 F. App'x 785, 789 (9th Cir. 2009) ("*Pappas*").  The Ninth Circuit rejected this reading of the POA by pointing to the complaint's theory of liability and the Court's class certification ruling, which were "premised on the allegation that Countrywide's fraudulent statements caused fraud on the market by inflating the price of stock purchased in the open market, therefore creating a presumption of reliance."  *Id.*  The Ninth Circuit concluded that "[s]ecurities in the Common Stock Subclass must have been purchased on the open market during the class period.  It is not enough that securities in the Common Stock Subclass were purchased or acquired pursuant to a registration statement."  *Id.*  The Ninth Circuit, citing concerns of an undeveloped factual record, declined to address whether S-8 Stock and unitized interests "should be treated the same as common stock purchased in the open market," noting that "this determination is for the district court to make in the first instance."  *Id.* at 790–91.

1   Plaintiffs now move for final distribution of the remaining funds held in
2   abeyance and urge the Court to deny the Plan's request that the Settlement include
3   trading losses incurred in connection with S-8 Stock and unitized interests.

### III.   DISCUSSION

5   It is beyond reasonable dispute that S-8 Stock and the units derived
6   therefrom were neither "purchased on the open market" as required by the Ninth
7   Circuit, *Pappas*, 526 F. App'x at 789, nor "publically traded" as contemplated by
8   the Class definition.  Such terms, by their plain meaning, refer to securities that
9   were offered to the investing public and traded freely on an exchange or in the
10  secondary market.  S-8 Stock, by contrast, was contributed directly to the Plan
11  from  Countrywide's treasury and was not purchased in open-market transactions.
12  Moreover, units acquired by Plan participants are derived from S-8 Stock, and
13  intra-fund transfers of units among Plan participants only rarely required the Plan
14  to purchase stock in the open market.[2]  While this would have ended the Court's
15  inquiry in favor of Plaintiffs, the Ninth Circuit leaves open the possibility that S-8
16  Stock and units should nevertheless be "treated the same as common stock
17  purchased on the open market."  *Id.*

18  On this front, the Plan contends, as a factual matter, that the price of S-8
19  Stock and unitized interests reflected the same allegedly inflated price, and thereby
20  suffered the same economic damages, as publicly traded common stock on the
21  New York Stock Exchange ("NYSE").  The Plan has adduced virtually no
22  evidence, and the Court finds none in the record, to support this assertion.  Indeed,
23  Plaintiffs' citation to the phenomenon known as "investment drag"—*i.e.*, when the
24  cash component of a company fund acts as a "drag" on the appreciation of a unit
25  compared to the underlying stock—suggests that unitized interests behaved

---

27  [2] Neither party disputes that the Plan's purchases on the open market, if any, are
28  compensable under the Settlement.

differently than publicly traded common stock.  To assess such a claim, the Court would require, at a minimum, expert testimony to address whether and to what extent investment drag affected acquisitions by Plan participants, or how the value of unitized interests reacted to alleged corrective disclosures. *Cf.  Bennett v. Sprint Nextel Corp.*, 09-2122-EFM, 2013 WL 1197124, at *1 (D. Kan. Mar. 25, 2013) ("Due to the complex issues involved, courts often benefit from the statistical, economic, and mathematical analysis of experts in determining market efficiency for the purpose of class certification."); *see also Elcommerce.com, Inc. v. SAP AG*, –F.3d–, No. 2011-1369, 2014 WL 685622, at *12 (Fed. Cir. Feb. 24, 2014) ("This court has noted that typically expert testimony will be necessary in cases involving complex technology.") (internal quotation marks and citation omitted).

Beyond the need for expert analysis, the parties controvert other facts essential to resolving the Plan's motion.  For example, the Plan states that the price of S-8 Stock was determined "by the closing price of CFC common stock on the NYSE on the date of the contribution."  (Opp'n at 7.)  Plaintiffs, however, contend that the price of S-8 Stock was established by either an average closing price "for the last five (5) business days of the calendar quarter for which the contribution [was] being made" or by "the closing price for the last business day of the period for which the contribution is being made."  (Reply at 9.)  The Plan's assertions regarding employee stock options, stock clubs, and mutual funds are equally disputed.  For example, the Plan asserts, without support, that "[c]ross-trades among participants in the CFC Plan were no different from the cross-trades that routinely occur among mutual funds[.]"  (Opp'n at 14.)  According to Plaintiffs, however, a number of factors differentiate mutual funds from unitized interests, one of which is the method for setting the price of each.  (Reply at 15.)  In sum, many of the Plan's assertions are either unsupported in the record or controverted by the parties, preventing the Court from assigning them any weight.

1    　But even if the evidentiary record supported the Plan's assertions, two

2    independent considerations militate against treating S-8 Stock and units the same

3    as publically traded common stock.  First, there is no indication that such

4    transactions were ever considered a part of the Class definition or settlement.

5    Indeed, there is ample evidence to the contrary.  As the Ninth Circuit observed,

6    both the class certification order and the Plaintiffs' complaint concerning Section

7    10(b) liability relied on a fraud-on-the-market theory.  *Pappas*, 526 F. App'x at

8    789.  Plaintiffs, moreover, never sought to include S-8 Stock in the Class, and this

9    Court—although well aware of the Plan[3]—never ruled it into the Class.  In the

10   course of evaluating the fundamental fairness of the Settlement, the Court never

11   labored under the assumption that losses in connection with S-8 Stock and unitized

12   interests were compensable.  This is because, in addition to the plain language of

13   the Class definition, remedies for alleged wrongdoing against the Plan were being

14   pursued in *Alvidres* and *Layne v. Countrywide Financial Corp.*, No. BC 389208

15   (Cal. Super. Ct. Los Angeles Cnty.) ("*Layne*").  To inject the Plan and Plan

16   participants into the Settlement, and with them a high volume of claims, would

17   distort assumptions underlying the Court's prior determinations.[4]

18

19   [3] In *Alvidres v. Countrywide Financial Corp.*, No. 07-CV-5810 JFW (CTx) (C.D.
     Cal.) ("*Alvidres*"), Plan participants received $55 million to settle claims against
20   the Plan fiduciaries under ERISA.  By order dated January 22, 2008, this Court
     denied a motion to transfer *Alvidres*, which was ultimately overseen by Judge
21   Walter.
22   [4]  For example, a point of contention at the class certification stage was whether
23   Plaintiffs had established a presumption of reliance under *Basic Inc. v. Levinson*,
     485 U.S. 224, 247 (1988).  The Supreme Court has accepted the notion that "most
24   publicly available information is reflected in market price" and "[a]n investor who
     buys or sells stock at the price set by the market does so in reliance on the integrity
25   of that price."  *Id.*  But the Court would likely have declined to apply such a
26   presumption to Plan participants, who as employees of Countrywide may have
     possessed significant knowledge beyond what was available in the market.
27
28
                                                            *(footnote continues . . .)*

-7-

Second, precluding S-8 Stock and units from the Settlement does not leave the Plan without recompense.  The $55 million *Alvidres* settlement provided significant compensation exclusively for the Plan and its participants, whereas the proceeds in this Settlement have thus far been spread amongst 85,566 Authorized Claimants.  (Schachter Decl. ¶ 14.)  It is true that *Alvidres* settled claims under ERISA and did not compensate the Plan for alleged violations of Section 10(b).  But to allow the Plan an additional recovery here for the same essential wrongdoing, and thereby diminish the available recovery for the Class, weighs against the Plan's request.  *Cf. In re Motorola Sec. Litig.*, No. 03-C-287, slip op. at 2 (N.D. Ill. Mar. 2, 2009), *aff'd*, 644 F.3d 511 (7th Cir. 2011) ("[T]his action is not the only avenue for relief for Plan participants.  Their ERISA action against the Plan fiduciaries remains pending, and . . . in that action Plan participants may be 'entitled to similar relief' as class members in this case will enjoy.").  Moreover, the record shows that the settlement in *Layne*, which did assert federal securities violations, yielded an additional $2.05 million for the Plan and its participants.

## IV.   CONCLUSION

For the foregoing reasons, the Plan's motion to approve the claims of the Plan and Plan participants with respect to shares acquired directly from CFC pursuant to an S-8 registration statement and through cross-trades with other Plan participants is **DENIED**.  The 401(k) Plan shall be eligible to participate in the Net Settlement Fund only to the extent that the Plan itself, at the "trust" level,

*(. . . footnote continued)*

In addition, there is good reason to believe that granting the Plan's motion would distort assumptions underlying the Settlement negotiations.  S-8 Stock and unitized interests were neither part of the public float of common stock nor reflected in public trading volume data.  It is difficult to conceive how Plaintiffs' damages expert could have considered such private transactions in the course of estimating class-wide damages for settlement purposes or trial.

-8-

purchased shares of Countrywide common stock in the open market during the Class Period.  Shares of stock acquired by 401(k) Plan participants directly from Countrywide or through intra-Plan trades during the Class Period are not included in the Common Stock Subclass because they were not purchased in the open market during the Class Period.  It is not enough that those securities were purchased or acquired pursuant to a registration statement.  The Court further concludes that such shares of stock acquired by 401(k) Plan participants directly from Countrywide or through intra-Plan trades should not be treated the same as common stock purchased in the open market.  Accordingly, transactions in shares of stock issued pursuant or traceable to Countrywide's May 11, 2007 Form S-8 registration statement, and transactions in unitized interests in the Company Stuck Fund by the 401(k) Plan participants, are ineligible and noncompensable under the terms of the Settlement and the Plan of Allocation of the Net Settlement Fund. Plaintiff's motion for approval of the proposed plan for final distribution of the Net Settlement Fund is **GRANTED**.

IT IS SO ORDERED

DATED: March 10, 2014

_____
Hon. Mariana R. Pfaelzer
United States District Judge